# EXHIBIT 1

P.L. 2018, CHAPTER 138, *approved November 8, 2018*
Senate, No. 2465 *(Third Reprint)*

1   **AN ACT** concerning [1][untraceable][1] firearms and amending
2   [2][N.J.S.2C:39-9] various parts of the statutory law[2].
3
4   **BE IT ENACTED** *by the Senate and General Assembly of the State*
5   *of New Jersey:*
6
7     [2]1.  N.J.S.2C:39-1 is amended to read as follows:
8     2C:39-1.   Definitions. The following definitions apply to this
9   chapter and to chapter 58:
10     a.  "Antique firearm" means any rifle or shotgun and "antique
11   cannon" means a destructive device defined in paragraph (3) of
12   subsection c. of this section, if the rifle, shotgun or destructive device,
13   as the case may be, is incapable of being fired or discharged, or which
14   does not fire fixed ammunition, regardless of date of manufacture, or
15   was manufactured before 1898 for which cartridge ammunition is not
16   commercially available, and is possessed as a curiosity or ornament or
17   for its historical significance or value.
18     b.  "Deface" means to remove, deface, cover, alter or destroy the
19   name of the maker, model designation, manufacturer's serial number
20   or any other distinguishing identification mark or number on any
21   firearm.
22     c.  "Destructive device" means any device, instrument or object
23   designed to explode or produce uncontrolled combustion, including (1)
24   any explosive or incendiary bomb, mine or grenade; (2) any rocket
25   having a propellant charge of more than four ounces or any missile
26   having an explosive or incendiary charge of more than one-quarter of
27   an ounce; (3) any weapon capable of firing a projectile of a caliber
28   greater than 60 caliber, except a shotgun or shotgun ammunition
29   generally recognized as suitable for sporting purposes; (4) any
30   Molotov cocktail or other device consisting of a breakable container
31   containing flammable liquid and having a wick or similar device
32   capable of being ignited.  The term does not include any device
33   manufactured for the purpose of illumination, distress signaling, line-
34   throwing, safety or similar purposes.
35     d.  "Dispose of" means to give, give away, lease, loan, keep for
36   sale, offer, offer for sale, sell, transfer, or otherwise transfer
37   possession.
38     e.  "Explosive" means any chemical compound or mixture that is
39   commonly used or is possessed for the purpose of producing an
40   explosion and which contains any oxidizing and combustible materials

**EXPLANATION** – Matter enclosed in bold-faced brackets [thus] in the above bill is
not enacted and is intended to be omitted in the law.

Matter underlined thus is new matter.
Matter enclosed in superscript numerals has been adopted as follows:
[1]Senate SLP committee amendments adopted April 16, 2018.
[2]Assembly AJU committee amendments adopted September 17, 2018.
[3]Assembly floor amendments adopted September 27, 2018.

**S2465** [3R]
2

1   or other ingredients in such proportions, quantities or packing that an
2   ignition by fire, by friction, by concussion or by detonation of any part
3   of the compound or mixture may cause such a sudden generation of
4   highly heated gases that the resultant gaseous pressures are capable of
5   producing destructive effects on contiguous objects. The term shall not
6   include small arms ammunition, or explosives in the form prescribed
7   by the official United States Pharmacopoeia.
8       f.  "Firearm" means any handgun, rifle, shotgun, machine gun,
9   automatic or semi-automatic rifle, or any gun, device or instrument in
10  the nature of a weapon from which may be fired or ejected any solid
11  projectable ball, slug, pellet, missile or bullet, or any gas, vapor or
12  other noxious thing, by means of a cartridge or shell or by the action of
13  an explosive or the igniting of flammable or explosive substances.  It
14  shall also include, without limitation, any firearm which is in the
15  nature of an air gun, spring gun or pistol or other weapon of a similar
16  nature in which the propelling force is a spring, elastic band, carbon
17  dioxide, compressed or other gas or vapor, air or compressed air, or is
18  ignited by compressed air, and ejecting a bullet or missile smaller than
19  three-eighths of an inch in diameter, with sufficient force to injure a
20  person.
21      g.  "Firearm silencer" means any instrument, attachment, weapon
22  or appliance for causing the firing of any gun, revolver, pistol or other
23  firearm to be silent, or intended to lessen or muffle the noise of the
24  firing of any gun, revolver, pistol or other firearm.
25      h.  "Gravity knife" means any knife which has a blade which is
26  released from the handle or sheath thereof by the force of gravity or
27  the application of centrifugal force.
28      i.  "Machine gun" means any firearm, mechanism or instrument
29  not requiring that the trigger be pressed for each shot and having a
30  reservoir, belt or other means of storing and carrying ammunition
31  which can be loaded into the firearm, mechanism or instrument and
32  fired therefrom.  A machine gun also shall include, without limitation,
33  any firearm with a trigger crank attached.
34      j.  "Manufacturer" means any person who receives or obtains raw
35  materials or parts and processes them into firearms or finished parts of
36  firearms, except a person who exclusively processes grips, stocks and
37  other nonmetal parts of firearms.  The term does not include a person
38  who repairs existing firearms or receives new and used raw materials
39  or parts solely for the repair of existing firearms.
40      k.  "Handgun" means any pistol, revolver or other firearm
41  originally designed or manufactured to be fired by the use of a single
42  hand.
43      l.  "Retail dealer" means any person including a gunsmith, except
44  a manufacturer or a wholesale dealer, who sells, transfers or assigns
45  for a fee or profit any firearm or parts of firearms or ammunition
46  which he has purchased or obtained with the intention, or for the
47  purpose, of reselling or reassigning to persons who are reasonably
48  understood to be the ultimate consumers, and includes any person who

S2465 [3R]

3

1 is engaged in the business of repairing firearms or who sells any
2 firearm to satisfy a debt secured by the pledge of a firearm.

3     m. "Rifle" means any firearm designed to be fired from the
4 shoulder and using the energy of the explosive in a fixed metallic
5 cartridge to fire a single projectile through a rifled bore for each single
6 pull of the trigger.

7     n. "Shotgun" means any firearm designed to be fired from the
8 shoulder and using the energy of the explosive in a fixed shotgun shell
9 to fire through a smooth bore either a number of ball shots or a single
10 projectile for each pull of the trigger, or any firearm designed to be
11 fired from the shoulder which does not fire fixed ammunition.

12     o. "Sawed-off shotgun" means any shotgun having a barrel or
13 barrels of less than 18 inches in length measured from the breech to
14 the muzzle, or a rifle having a barrel or barrels of less than 16 inches in
15 length measured from the breech to the muzzle, or any firearm made
16 from a rifle or a shotgun, whether by alteration, or otherwise, if such
17 firearm as modified has an overall length of less than 26 inches.

18     p. "Switchblade knife" means any knife or similar device which
19 has a blade which opens automatically by hand pressure applied to a
20 button, spring or other device in the handle of the knife.

21     q. "Superintendent" means the Superintendent of the State Police.

22     r. "Weapon" means anything readily capable of lethal use or of
23 inflicting serious bodily injury.  The term includes, but is not limited
24 to, all (1) firearms, even though not loaded or lacking a clip or other
25 component to render them immediately operable; (2) components
26 which can be readily assembled into a weapon; (3) gravity knives,
27 switchblade knives, daggers, dirks, stilettos, or other dangerous knives,
28 billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots,
29 cesti or similar leather bands studded with metal filings or razor blades
30 imbedded in wood; and (4) stun guns; and any weapon or other device
31 which projects, releases, or emits tear gas or any other substance
32 intended to produce temporary physical discomfort or permanent
33 injury through being vaporized or otherwise dispensed in the air.

34     s. "Wholesale dealer" means any person, except a manufacturer,
35 who sells, transfers, or assigns firearms, or parts of firearms, to
36 persons who are reasonably understood not to be the ultimate
37 consumers, and includes persons who receive finished parts of
38 firearms and assemble them into completed or partially completed
39 firearms, in furtherance of such purpose, except that it shall not
40 include those persons dealing exclusively in grips, stocks and other
41 nonmetal parts of firearms.

42     t. "Stun gun" means any weapon or other device which emits an
43 electrical charge or current intended to temporarily or permanently
44 disable a person.

45     u. "Ballistic knife" means any weapon or other device capable of
46 lethal use and which can propel a knife blade.

47     v. "Imitation firearm" means an object or device reasonably
48 capable of being mistaken for a firearm.

49     w. "Assault firearm" means:

S2465 [3R]

4

1      (1) The following firearms:

2      Algimec AGM1 type

3      Any shotgun with a revolving cylinder such as the "Street

4  Sweeper" or "Striker 12"

5      Armalite AR-180 type

6      Australian Automatic Arms SAR

7      Avtomat Kalashnikov type semi-automatic firearms

8      Beretta AR-70 and BM59 semi-automatic firearms

9      Bushmaster Assault Rifle

10      Calico M-900 Assault carbine and M-900

11      CETME G3

12      Chartered Industries of Singapore SR-88 type

13      Colt AR-15 and CAR-15 series

14      Daewoo K-1, K-2, Max 1 and Max 2, AR 100 types

15      Demro TAC-1 carbine type

16      Encom MP-9 and MP-45 carbine types

17      FAMAS MAS223 types

18      FN-FAL, FN-LAR, or FN-FNC type semi-automatic firearms

19      Franchi SPAS 12 and LAW 12 shotguns

20      G3SA type

21      Galil type Heckler and Koch HK91, HK93, HK94, MP5, PSG-1

22      Intratec TEC 9 and 22 semi-automatic firearms

23      M1 carbine type

24      M14S type

25      MAC 10, MAC 11, MAC 11-9mm carbine type firearms

26      PJK M-68 carbine type

27      Plainfield Machine Company Carbine

28      Ruger K-Mini-14/5F and Mini-14/5RF

29      SIG AMT, SIG 550SP, SIG 551SP, SIG PE-57 types

30      SKS with detachable magazine type

31      Spectre Auto carbine type

32      Springfield Armory BM59 and SAR-48 type

33      Sterling MK-6, MK-7 and SAR types

34      Steyr A.U.G. semi-automatic firearms

35      USAS 12 semi-automatic type shotgun

36      Uzi type semi-automatic firearms

37      Valmet M62, M71S, M76, or M78 type semi-automatic firearms

38      Weaver Arm Nighthawk.

39      (2) Any firearm manufactured under any designation which is

40  substantially identical to any of the firearms listed above.

41      (3) A semi-automatic shotgun with either a magazine capacity

42  exceeding six rounds, a pistol grip, or a folding stock.

43      (4) A semi-automatic rifle with a fixed magazine capacity

44  exceeding 10 rounds.  "Assault firearm" shall not include a semi-

45  automatic rifle which has an attached tubular device and which is

46  capable of operating only with .22 caliber rimfire ammunition.

47      (5) A part or combination of parts designed or intended to convert

48  a firearm into an assault firearm, or any combination of parts from

1   which an assault firearm may be readily assembled if those parts are in
2   the possession or under the control of the same person.

3       (6) A firearm with a bump stock attached.

4       x.  "Semi-automatic" means a firearm which fires a single
5   projectile for each single pull of the trigger and is self-reloading or
6   automatically chambers a round, cartridge, or bullet.

7       y.  "Large capacity ammunition magazine" means a box, drum,
8   tube or other container which is capable of holding more than 10
9   rounds of ammunition to be fed continuously and directly therefrom
10  into a semi-automatic firearm. The term shall not include an attached
11  tubular device which is capable of holding only .22 caliber rimfire
12  ammunition.

13      z.  "Pistol grip" means a well-defined handle, similar to that found
14  on a handgun, that protrudes conspicuously beneath the action of the
15  weapon, and which permits the shotgun to be held and fired with one
16  hand.

17      aa. "Antique handgun" means a handgun manufactured before
18  1898, or a replica thereof, which is recognized as being historical in
19  nature or of historical significance and either (1) utilizes a match,
20  friction, flint, or percussion ignition, or which utilizes a pin-fire
21  cartridge in which the pin is part of the cartridge or (2) does not fire
22  fixed  ammunition  or  for  which  cartridge  ammunition  is  not
23  commercially available.

24      bb. "Trigger  lock"  means  a  commercially  available  device
25  approved by the Superintendent of State Police which is operated with
26  a  key  or  combination  lock  that  prevents  a  firearm  from  being
27  discharged while the device is attached to the firearm.  It may include,
28  but need not be limited to, devices that obstruct the barrel or cylinder
29  of the firearm, as well as devices that immobilize the trigger.

30      cc. "Trigger locking device" means a device that, if installed on a
31  firearm and secured by means of a key or mechanically, electronically
32  or  electromechanically  operated  combination  lock,  prevents  the
33  firearm from being discharged without first deactivating or removing
34  the  device  by  means  of  a  key  or  mechanically,  electronically  or
35  electromechanically operated combination lock.

36      dd. "Personalized handgun" means a handgun which incorporates
37  within its design, and as part of its original manufacture, technology
38  which automatically limits its operational use and which cannot be
39  readily deactivated, so that it may only be fired by an authorized or
40  recognized user.  The technology limiting the handgun's operational
41  use may include, but not be limited to:  radio frequency tagging, touch
42  memory, remote control, fingerprint, magnetic encoding and other
43  automatic user identification systems utilizing biometric, mechanical
44  or electronic systems.  No make or model of a handgun shall be
45  deemed to be a "personalized handgun" unless the Attorney General
46  has determined, through testing or other reasonable means, that the
47  handgun meets any reliability standards that the manufacturer may
48  require  for  its  commercially  available  handguns  that  are  not
49  personalized or, if the manufacturer has no such reliability standards,

1     the handgun meets the reliability standards generally used in the
2     industry for commercially available handguns.
3       ee. "Bump stock" means any device or instrument for a firearm
4     that increases the rate of fire achievable with the firearm by using
5     energy from the recoil of the firearm to generate a reciprocating action
6     that facilitates repeated activation of the trigger.
7       ff.  "Trigger crank" means any device or instrument to be attached
8     to a firearm that repeatedly activates the trigger of the firearm through
9     the use of a lever or other part that is turned in a circular motion;
10    provided, however, the term shall not include any weapon initially
11    designed and manufactured to fire through the use of a crank or lever.
12      gg. "Armor piercing ammunition" means: (1) a projectile or
13    projectile core which may be used in a handgun and is constructed
14    entirely, excluding the presence of traces of other substances, from one
15    or a combination of tungsten alloys, steel, iron, brass, bronze,
16    beryllium copper, or depleted uranium; or (2) a full jacketed projectile
17    larger than .22 caliber designed and intended for use in a handgun and
18    whose jacket has a weight of more than 25 percent of the total weight
19    of the projectile. "Armor piercing ammunition" shall not include
20    shotgun shot required by federal or State environmental or game
21    regulations for hunting purposes, a frangible projectile designed for
22    target shooting, a projectile which the United States Attorney General
23    finds is primarily intended to be used for sporting purposes, or any
24    other projectile or projectile core which the United States Attorney
25    General finds is intended to be used for industrial purposes, including
26    a charge used in an oil gas well perforating device.
27      hh. "Covert firearm" means any firearm that is constructed in a
28    shape or configuration such that it does not resemble a handgun, rifle,
29    shotgun, or machine gun including, but not limited to, a firearm that
30    resembles a key-chain, pen, cigarette lighter, cigarette package,
31    cellphone, smart phone, wallet, or cane.
32      ii. "Undetectable firearm" means a firearm [3][constructed entirely
33    of non-metal substances, or a firearm that does not include at least one
34    major component, such as the barrel, slide, cylinder, frame or receiver
35    of the firearm, that is made entirely of metal such that,] that: (1) after
36    removal of all parts other than major components, is not as detectable
37    as the Security Exemplar, by walk-through metal detectors calibrated
38    and operated to detect the Security Exemplar; or (2) includes a major
39    component which,[3] if the firearm were subjected to inspection by the
40    types of detection devices commonly used at airports for security
41    screening, [3][it][3] would not generate an image that accurately depicts
42    the shape of the component.[2] [3]"Undetectable firearm" shall not be
43    construed to include a firearm subject to the provisions of paragraphs
44    (3) through (6) of subsection (p) of 18 U.S.C. s.922.
45      jj. "Major component" means the slide or cylinder or the frame or
46    receiver of a firearm and, in the case of a rifle or shotgun, also includes
47    the barrel.

1  kk.  "Security Exemplar" means the Security Exemplar fabricated
2  in accordance with subparagraph (C) of paragraph (2) of subsection (p)
3  of 18 U.S.C. s.922.[3]
4  (cf: P.L.2018, c.39, s.1)
5
6  [2]2.  N.J.S.2C:39-3 is amended to read as follows:
7  2C:39-3.  Prohibited Weapons and Devices.
8  a.  Destructive devices.  Any person who knowingly has in his
9  possession any destructive device is guilty of a crime of the third
10  degree.
11  b.  Sawed-off shotguns.  Any person who knowingly has in his
12  possession any sawed-off shotgun is guilty of a crime of the third
13  degree.
14  c.  Silencers.  Any person who knowingly has in his possession
15  any firearm silencer is guilty of a crime of the fourth degree.
16  d.  Defaced firearms.  Any person who knowingly has in his
17  possession any firearm which has been defaced, except an antique
18  firearm or an antique handgun, is guilty of a crime of the fourth
19  degree.
20  e.  Certain weapons.  Any person who knowingly has in his
21  possession any gravity knife, switchblade knife, dagger, dirk,
22  stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus
23  or similar leather band studded with metal filings or razor blades
24  imbedded in wood, ballistic knife, without any explainable lawful
25  purpose, is guilty of a crime of the fourth degree.
26  f.  Dum-dum or armor piercing ammunition.  (1) Any person,
27  other than a law enforcement officer or persons engaged in
28  activities pursuant to subsection f. of N.J.S.2C:39-6, who
29  knowingly has in his possession any hollow nose or dum-dum
30  bullet, or (2) any person, other than a collector of firearms or
31  ammunition as curios or relics as defined in Title 18, United States
32  Code, section 921 (a) (13) and has in his possession a valid
33  Collector of Curios and Relics License issued by the Bureau of
34  Alcohol, Tobacco, Firearms, and Explosives, who knowingly has in
35  his possession any armor piercing ammunition as defined in
36  subsection gg. of N.J.S.2C:39-1 is guilty of a crime of the fourth
37  degree.  For purposes of this section, a collector may possess not
38  more than three examples of each distinctive variation of the
39  ammunition described above. A distinctive variation includes a
40  different head stamp, composition, design, or color.
41  g.  Exceptions.  (1) Nothing in subsection a., b., c., d., e., f., j.
42  or k. of this section shall apply to any member of the Armed Forces
43  of the United States or the National Guard, or except as otherwise
44  provided, to any law enforcement officer while actually on duty or
45  traveling to or from an authorized place of duty, provided that his
46  possession of the prohibited weapon or device has been duly
47  authorized under the applicable laws, regulations or military or law
48  enforcement orders.

S2465 [3R]
8

1    Nothing in subsection h. of this section shall apply to any law
2  enforcement officer who is exempted from the provisions of that
3  subsection by the Attorney General.  Nothing in this section shall
4  apply to the possession of any weapon or device by a law
5  enforcement officer who has confiscated, seized or otherwise taken
6  possession of said weapon or device as evidence of the commission
7  of a crime or because he believed it to be possessed illegally by the
8  person from whom it was taken, provided that said law enforcement
9  officer promptly notifies his superiors of his possession of such
10  prohibited weapon or device.
11    (2)  a. Nothing in subsection f. (1) shall be construed to prevent a
12  pers from keeping such ammunition at his dwelling, premises or
13  other land owned or possessed by him, or from carrying such
14  ammunition from the place of purchase to said dwelling or land, nor
15  shall subsection f. (1) be construed to prevent any licensed retail or
16  wholesale firearms dealer from possessing such ammunition at its
17  licensed premises, provided that the seller of any such ammunition
18  shall maintain a record of the name, age and place of residence of
19  any purchaser who is not a licensed dealer, together with the date of
20  sale and quantity of ammunition sold.
21    b.  Nothing in subsection f.(1) shall be construed to prevent a
22  designated employee or designated licensed agent for a nuclear
23  power plant under the license of the Nuclear Regulatory
24  Commission from possessing hollow nose ammunition while in the
25  actual performance of his official duties, if the federal licensee
26  certifies that the designated employee or designated licensed agent
27  is assigned to perform site protection, guard, armed response or
28  armed escort duties and is appropriately trained and qualified, as
29  prescribed by federal regulation, to perform those duties.
30    (3)  Nothing in paragraph (2) of subsection f. or in subsection j.
31  shall be construed to prevent any licensed retail or wholesale
32  firearms dealer from possessing that ammunition or large capacity
33  ammunition magazine at its licensed premises for sale or disposition
34  to another licensed dealer, the Armed Forces of the United States or
35  the National Guard, or to a law enforcement agency, provided that
36  the seller maintains a record of any sale or disposition to a law
37  enforcement agency.  The record shall include the name of the
38  purchasing agency, together with written authorization of the chief
39  of police or highest ranking official of the agency, the name and
40  rank of the purchasing law enforcement officer, if applicable, and
41  the date, time and amount of ammunition sold or otherwise
42  disposed. A copy of this record shall be forwarded by the seller to
43  the Superintendent of the Division of State Police within 48 hours
44  of the sale or disposition.
45    (4)  Nothing in subsection a. of this section shall be construed to
46  apply to antique cannons as exempted in subsection d. of
47  N.J.S.2C:39-6.
48    (5)  Nothing in subsection c. of this section shall be construed to
49  apply to any person who is specifically identified in a special deer

S2465 [3R]

9

1    management permit issued by the Division of Fish and Wildlife to
2    utilize a firearm silencer as part of an alternative deer control
3    method implemented in accordance with a special deer management
4    permit issued pursuant to section 4 of P.L.2000, c.46 (C.23:4-42.6),
5    while the person is in the actual performance of the permitted
6    alternative deer control method and while going to and from the
7    place where the permitted alternative deer control method is being
8    utilized.  This exception shall not, however, otherwise apply to any
9    person to authorize the purchase or possession of a firearm silencer.
10       h.   Stun guns.  Any person who knowingly has in his possession
11   any stun gun is guilty of a crime of the fourth degree.
12       i.   Nothing in subsection e. of this section shall be construed to
13   prevent any guard in the employ of a private security company, who
14   is licensed to carry a firearm, from the possession of a nightstick
15   when in the actual performance of his official duties, provided that
16   he has satisfactorily completed a training course approved by the
17   Police Training Commission in the use of a nightstick.
18       j.   Any person who knowingly has in his possession a large
19   capacity ammunition magazine is guilty of a crime of the fourth
20   degree unless the person has registered:   (1) an assault firearm
21   pursuant to section 11 of P.L.1990, c.32 (C.2C:58-12) and the
22   magazine is maintained and used in connection with participation in
23   competitive shooting matches sanctioned by the Director of Civilian
24   Marksmanship of the United States Department of the Army ; or
25       (2) a firearm with a fixed magazine capacity or detachable
26   magazine capable of holding up to 15 rounds pursuant to section 7
27   of P.L.2018, c.39 (C.2C:39-20).
28       k.   Handcuffs.   Any person who knowingly has in his
29   possession handcuffs as defined in P.L.1991, c.437 (C.2C:39-9.2),
30   under circumstances not manifestly appropriate for such lawful uses
31   as handcuffs may have, is guilty of a disorderly persons offense.  A
32   law enforcement officer shall confiscate handcuffs possessed in
33   violation of the law.
34       l.   Bump stock or trigger crank.  Any person who knowingly
35   possesses a bump stock as defined in subsection ee. of N.J.S.2C:39-
36   1 or a trigger crank as defined in subsection ff. of N.J.S.2C:39-1,
37   regardless of whether the person is in possession of a firearm, is
38   guilty of a crime of the third degree.
39       Notwithstanding the provisions of N.J.S.2C:1-8 or any other
40   provision of law, a conviction arising out of this subsection shall
41   not merge with a conviction for possessing an assault firearm in
42   violation of subsection f. of N.J.S.2C:39-5 or a machine gun in
43   violation of subsection a. of N.J.S.2C:39-5 and a separate sentence
44   shall be imposed upon each conviction. Notwithstanding the
45   provisions of N.J.S.2C:44-5 or any other provisions of law, the
46   sentence imposed pursuant to this subsection shall be served
47   consecutively to that imposed for unlawfully possessing an assault
48   firearm in violation of subsection f. of N.J.S.2C:39-5.

1      m. Covert or undetectable firearms.   Any person who
2  knowingly possesses any covert firearm as defined in subsection hh.
3  of N.J.S.2C:39-1, an undetectable firearm as defined in subsection
4  ii. of N.J.S.2C:39-1, or a firearm enclosed in a container or covering
5  that is designed or modified to allow the firearm to be fired while so
6  enclosed and that disguises or obscures the shape of the firearm
7  such that it does not resemble a handgun, rifle, shotgun, or machine
8  gun is guilty a crime of the third degree.[2]
9  (cf: P.L.2018, c.39, s.2).

10

11    [2][1.] 3.[2] N.J.S.2C:39-9 is amended to read as follows:
12    2C:39-9.  Manufacture, Transport, Disposition and Defacement
13  of Weapons and Dangerous Instruments and Appliances.   a.
14  Machine guns.  Any person who manufactures, causes to be
15  manufactured, transports, ships, sells or disposes of any machine
16  gun without being registered or licensed to do so as provided in
17  chapter 58 [2]of Title 2C of the New Jersey Statutes[2] is guilty of a
18  crime of the third degree.
19    b.  Sawed-off shotguns.  Any person who manufactures, causes
20  to be manufactured, transports, ships, sells or disposes of any
21  sawed-off shotgun is guilty of a crime of the third degree.
22    c.  Firearm silencers.  Any person who manufactures, causes to
23  be manufactured, transports, ships, sells or disposes of any firearm
24  silencer is guilty of a crime of the fourth degree.
25    d.  Weapons.   Any person who manufactures, causes to be
26  manufactured, transports, ships, sells or disposes of any weapon,
27  including gravity knives, switchblade knives, ballistic knives,
28  daggers, dirks, stilettos, billies, blackjacks, metal knuckles,
29  sandclubs, slingshots, cesti or similar leather bands studded with
30  metal filings, or, except as otherwise provided in subsection i. of
31  this section, in the case of firearms if he is not licensed or registered
32  to do so as provided in chapter 58 [2]of Title 2C of the New Jersey
33  Statutes[2], is guilty of a crime of the fourth degree.  Any person who
34  manufactures, causes to be manufactured, transports, ships, sells or
35  disposes of any weapon or other device which projects, releases or
36  emits tear gas or other substances intended to produce temporary
37  physical discomfort or permanent injury through being vaporized or
38  otherwise dispensed in the air, which is intended to be used for any
39  purpose other than for authorized military or law enforcement
40  purposes by duly authorized military or law enforcement personnel
41  or the device is for the purpose of personal self-defense, is pocket-
42  sized and contains not more than three-quarters of an ounce of
43  chemical substance not ordinarily capable of lethal use or of
44  inflicting serious bodily injury, or other than to be used by any
45  person permitted to possess such weapon or device under the
46  provisions of subsection d. of N.J.S.2C:39-5, which is intended for
47  use by financial and other business institutions as part of an
48  integrated security system, placed at fixed locations, for the

1  protection of money and property, by the duly authorized personnel
2  of those institutions, is guilty of a crime of the fourth degree.
3   e.  Defaced firearms.  Any person who defaces any firearm is
4  guilty of a crime of the third degree.  Any person who knowingly
5  buys, receives, disposes of or conceals a defaced firearm, except an
6  antique firearm or an antique handgun, is guilty of a crime of the
7  fourth degree.
8   f.  (1)  Any  person  who  manufactures,  causes  to  be
9  manufactured, transports, ships, sell, or disposes of any **[**bullet,
10  which is primarily designed for use in a handgun, and which is
11  comprised of a bullet whose core or jacket, if the jacket is thicker
12  than .025 of an inch, is made of tungsten carbide, or hard bronze, or
13  other material which is harder than a rating of 72 or greater on the
14  Rockwell B. Hardness Scale, and is therefore capable of breaching
15  or penetrating body armor and**]**  armor piercing ammunition as
16  defined in subsection gg. of N.J.S.2C:39-1[2] which is intended to be
17  used for any purpose other than for authorized military or law
18  enforcement  purposes  by  duly  authorized  military  or  law
19  enforcement personnel, is guilty of a crime of the fourth degree.
20   (2) Nothing in this subsection shall be construed to prevent a
21  licensed collector of ammunition as defined in paragraph (2) of
22  subsection f. of N.J.S.2C:39-3 from transporting the bullets defined
23  in paragraph (1) of this subsection from (a) any licensed retail or
24  wholesale firearms dealer's place of business to the collector's
25  dwelling, premises, or other land owned or possessed by him, or (b)
26  to or from the collector's dwelling, premises or other land owned or
27  possessed by him to any gun show for the purposes of display, sale,
28  trade, or transfer between collectors, or (c) to or from the collector's
29  dwelling, premises or other land owned or possessed by him to any
30  rifle or pistol club organized in accordance with the rules prescribed
31  by the National Board for the Promotion of Rifle Practice; provided
32  that the club has filed a copy of its charter with the superintendent
33  of the State Police and annually submits a list of its members to the
34  superintendent,  and  provided  further  that  the  ammunition  being
35  transported shall be carried not loaded in any firearm and contained
36  in a closed and fastened case, gun box, or locked in the trunk of the
37  automobile in which it is being transported, and the course of travel
38  shall include only such deviations as are reasonably necessary under
39  the circumstances.
40   g.  Assault firearms.  Any person who manufactures, causes to
41  be manufactured, transports, ships, sells or disposes of an assault
42  firearm without being registered or licensed to do so pursuant to
43  N.J.S.2C:58-1 et seq. is guilty of a crime of the third degree.
44   h.  Large capacity ammunition magazines.  Any person who
45  manufactures, causes to be manufactured, transports, ships, sells or
46  disposes of a large capacity ammunition magazine which is
47  intended to be used for any purpose other than for authorized
48  military or law enforcement purposes by duly authorized military or
49  law enforcement personnel is guilty of a crime of the fourth degree.

1     i.   Transporting firearms into this State for an unlawful sale or
2 transfer. Any person who knowingly transports, ships or otherwise
3 brings into this State any firearm for the purpose of unlawfully
4 selling, transferring, giving, assigning or otherwise disposing of that
5 firearm to another individual is guilty of a crime of the second
6 degree. Any motor vehicle used by a person to transport, ship, or
7 otherwise bring a firearm into this State for unlawful sale or transfer
8 shall be subject to forfeiture in accordance with the provisions of
9 N.J.S.2C:64-1 et seq.; provided however, this forfeiture provision
10 shall not apply to innocent owners, nor shall it affect the rights of a
11 holder of a valid lien.
12     The temporary transfer of a firearm shall not constitute a
13 violation of this subsection if that firearm is transferred:
14     (1) while hunting or target shooting in accordance with the
15 provisions of section 1 of P.L.1992, c.74 (C.2C:58-3.1);
16     (2) for shooting competitions sponsored by a licensed dealer,
17 law enforcement agency, legally recognized military organization,
18 or a rifle or pistol club which has filed a copy of its charter with the
19 superintendent in accordance with the provisions of section 1 of
20 P.L.1992, c.74 (C.2C:58-3.1); or
21     (3) for participation in a training course conducted by a certified
22 instructor in accordance with the provisions of section 1 of
23 P.L.1997, c.375 (C.2C:58-3.2).
24     The transfer of any firearm that uses air or carbon dioxide to
25 expel a projectile; or the transfer of an antique firearm shall not
26 constitute a violation of this subsection.
27     j.   Any person who manufactures, causes to be manufactured,
28 transports, ships, sells, or disposes of a bump stock as defined in
29 subsection ee. of N.J.S.2C:39-1 or a trigger crank as defined in
30 subsection ff. of N.J.S.2C:39-1 is guilty of a crime of the third
31 degree.
32     k.  Purchasing firearm parts to manufacture [1][untraceable] a[1]
33 firearm [1]without a serial number[1]. In addition to any other
34 [1][penalty imposed] criminal penalties provided[1] under [1][current][1]
35 law, a person who [1], with the purpose to manufacture [2]or otherwise
36 assemble[2] a firearm and without being registered or licensed do so
37 as provided in chapter 58 of Title 2C of the New Jersey Statutes,[1]
38 purchases [1]or otherwise obtains[1] separately or as [1]part of[1] a kit [1]a
39 firearm frame or firearm receiver which is not imprinted with a
40 serial number registered with a federally licensed manufacturer or[1]
41 any combination of parts from which a firearm [1]without a serial
42 number[1] may be readily [1][assembled with the purpose to
43 manufacture an untraceable firearm] manufactured [2]or otherwise
44 assembled[2] , but which does not have the capacity to function as a
45 firearm unless manufactured[1] [2]or otherwise assembled[2] is guilty of
46 a crime of the third degree. Notwithstanding the provisions of
47 N.J.S.2C:1-8 or any other law, a conviction under this subsection
48 shall not merge with a conviction for any other criminal offense and

1 the court shall impose separate sentences upon a violation of this
2 subsection and any other criminal offense.
3     As used in this subsection, [1][“untraceable firearm” means an
4 unlawfully manufactured firearm for which the sale or distribution
5 chain from a licensed retailer to the point of its first retail sale
6 cannot be traced by law enforcement officials] “firearm frame or
7 firearm receiver” means the part of a firearm that provides housing
8 for the firearm’s internal components, such as the hammer, bolt or
9 breechblock, action, and firing mechanism[1] [2], and includes without
10 limitation any object or part which is not a firearm frame or receiver
11 in finished form but is designed or intended to be used for that
12 purpose and which may readily be made into a firearm frame or
13 receiver through milling or other means[2].
14     [2]l. Manufacturing or facilitating the manufacture of a firearm
15 using a three-dimensional printer.  In addition to any other criminal
16 penalties provided under law it is a third degree crime for:
17     (1) a person who is not registered or licensed to do so as a
18 manufacturer as provided in chapter 58 of Title 2C of the New
19 Jersey Statutes, to use a three-dimensional printer or similar device
20 to manufacture or produce a firearm, firearm receiver, magazine, or
21 firearm component; or
22     (2) a person to distribute by any means, including the Internet,
23 to a person in New Jersey who is not registered or licensed as a
24 manufacturer as provided in chapter 58 of Title 2C of the New
25 Jersey Statutes, digital instructions in the form of computer-aided
26 design files or other code or instructions stored and displayed in
27 electronic format as a digital model that may be used to program a
28 three-dimensional printer to manufacture or produce a firearm,
29 firearm receiver, magazine, or firearm component.
30     As used in this subsection: “three-dimensional printer” means a
31 computer or computer-driven machine or device capable of
32 producing a three-dimensional object from a digital model; and
33 “distribute” means to sell, or to manufacture, give, provide, lend,
34 trade, mail, deliver, publish, circulate, disseminate, present, exhibit,
35 display, share, advertise, offer, or make available via the Internet or
36 by any other means, whether for pecuniary gain or not, and includes
37 an agreement or attempt to distribute.
38     m.  Covert or undetectable firearms.  Any person who
39 manufactures, causes to be manufactured, transports, ships, sells or
40 disposes of any covert firearm as defined in subsection hh. of
41 N.J.S.2C:39-1 or any undetectable firearm as defined in subsection
42 ii. of N.J.S.2C:39-1 is guilty of a crime of the third degree.[2]
43 (cf: P.L.2018, c.38, s.3)
44
45     [2][2.] 4.[2]  This act shall take effect immediately.

**S2465** [3R]
14

_____

Establishes crimes of purchasing firearm parts to unlawfully manufacture firearms without a serial number, manufacturing or possessing covert or undetectable firearms, and manufacturing or facilitating the manufacture of firearms using a three-dimensional printer.