# EXHIBIT 4



PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

### *State of New Jersey*
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
DIVISION OF LAW
PO Box 45029
Newark, NJ 07101

GURBIR S. GREWAL
*Attorney General*

MICHELLE L. MILLER
*Director*

July 30, 2018

**<u>VIA HAND DELIVERY</u>**
Deputy Clerk of the Court
Superior Court of New Jersey
Chancery Division, General Equity Part
Wilentz Justice Complex
212 Washington Street – 8th Floor
Newark, New Jersey 07102

      Re:  Grewal v. Defense Distributed, et al.
           Docket No.: ESX-C-  -18 _____

Dear Sir/Madam:

I am the Deputy Attorney General responsible for the representation of plaintiff Gurbir S. Grewal, Attorney General of the State of New Jersey ("Plaintiff"), in the above-referenced action.

Enclosed please find an original and two (2) copies of the following documents in support of the filing of this action: (1) Order to Show Cause with Temporary Restraints Pursuant to Rule 4:5-2; (2) Verified Complaint; (2) Certification of New Jersey Office of Homeland Security Director Jared Maples, with accompanying exhibit; (3) Certification of Deputy Chief of Detective Christopher W. Donohue; (4) Certification of Investigator Aziza Salikhova; and (5) Memorandum of Law.

As reflected in the Order to Show Cause, Plaintiff seeks the Court's <u>ex parte</u> consideration and entry of temporary restraints. Such request is premised upon the need for this Court's immediate intervention to halt the publishing, exporting and/or distributing by defendants Defense Distributed and Cody R. Wilson of printable-gun computer files, which they plan to do



this Wednesday, August 1, 2018.

I request that one (1) copy of the above-referenced papers be file-stamped and provided to my office.

Respectfully submitted,

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY


By: _____
    Lara J. Fogel
    Deputy Attorney General


Enclosures

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorney for Plaintiff

By:  Lorraine K. Rak (035771985)
     Deputy Attorney General, Section Chief
     Lara J. Fogel (038292006)
     Melissa Medoway (028422011)
     Jesse J. Sierant (049342013)
     Deputy Attorneys General
     Affirmative Civil Enforcement
     (973) 877-1280

|  |  |
|---|---|
| GURBIR S. GREWAL, Attorney General of the State of New Jersey,<br><br>                           Plaintiff,<br><br>                    v.<br><br>DEFENSE   DISTRIBUTED,   CODY   R. WILSON, and JANE and JOHN DOES 1-20, individually and as owners, officers, directors, shareholders, founders,   members,   managers, agents,   servants,   employees, representatives and/or independent contractors   of   DEFENSE DISTRIBUTED,  and  XYZ  CORPORATIONS 1-20,<br><br>                           Defendants. | SUPERIOR COURT OF NEW JERSEY<br>CHANCERY DIVISION, ESSEX COUNTY<br>DOCKET NO._____<br><br><br>**Civil Action**<br><br><br><br>**ORDER TO SHOW CAUSE<br>WITH TEMPORARY RESTRAINTS<br>PURSUANT TO RULE 4:52** |

THIS MATTER being brought before the Court by Lara F.
Fogel, Deputy Attorney General, for plaintiff Gurbir S. Grewal,
Attorney General of New Jersey ("Plaintiff"), seeking relief by

way of temporary restraints pursuant to R. 4:52, based upon the facts set forth in the Verified Complaint and supporting Certifications and Brief filed herewith; and it appearing that immediate and irreparable harm will likely result before notice can be given and a hearing held, and for good cause shown.

It is on this ___ day of _____ **ORDERED** that defendants Defense Distributed and Cody Wilson (collectively, "Defendants"), appear and show cause before the Superior Court of New Jersey, Chancery Division – General Equity Part, Essex County, at the Wilentz Justice Complex in Newark, New Jersey, at _____am/pm or as soon thereafter as counsel can be heard, on the _____ day of _____, 2018, why an Order should not be issued preliminarily enjoining and restraining Defendants from:

A. Publishing, exporting, and distributing the printable-gun computer files as described in the Verified Complaint whether through the websites located at https://defdist.org, https://defcad.com, and https://ghostgunner.net, or otherwise;

B. Destroying, concealing, altering, transferring, disposing or removing in any manner, directly or indirectly, any books or records, information stored in computer-maintained form (such as electronic mail) and any other "document," as that term is defined in Rule 4:18-1(a), in their possession, subject to their control or available to them, that directly or indirectly relate to Defense Distributed, including memberships, donations, web content, advertisements and sales records;

C. Failing to make and/or keep any books or records, information stored in computer-maintained form (such as electronic mail) and any other "document," as that term is defined in Rule 4:18-1(a) that directly or

2

indirectly relate to Defense Distributed, including memberships, donations, web content, advertisements and sales records;

D.   Continuing the temporary injunctive and ancillary relief already ordered by the Court; and

E.   Granting such other relief as the Court deems equitable and just.

And it is further **ORDERED** that pending the return date herein, Defendants are temporarily enjoined and restrained from:

A.   Publishing, exporting, and distributing the printable-gun computer files as described in the Verified Complaint whether through the websites located at https://defdist.org, https://defcad.com, and https://ghostgunner.net, or otherwise;

B.   Destroying, concealing, altering, transferring, disposing or removing in any manner, directly or indirectly, any books or records, information stored in computer-maintained form (such as electronic mail) and any other "document," as that term is defined in Rule 4:18-1(a), in their possession, subject to their control or available to them, that directly or indirectly relate to Defense Distributed, including memberships, donations, web content, advertisements and sales records; and

C.   Failing to make and/or keep any books or records, information stored in computer-maintained form (such as electronic mail) and any other "document," as that term is defined in Rule 4:18-1(a) that directly or indirectly relate to Defense Distributed, including memberships, donations, web content, advertisements and sales records.

And it is further **ORDERED** that:

1.   Defendants may move to dissolve or modify the temporary restraints herein contained upon two (2) days' notice to the Plaintiff's attorney.

2.   A copy of this Order to Show Cause, Verified Complaint, Brief and Certifications submitted in support of this application shall be served upon the Defendants personally (or by other means) within _____ days of the date hereof, in accordance with R. 4:4-3 and R. 4:4-4, this being original process.

3.   Plaintiff must file with the Court its proof of service of the pleadings on the Defendants no later than three (3) days before the return date.

4.   Defendants shall file and serve a written response to this Order to Show Cause and the request for entry of injunctive relief and proof of service by _____, 2018. The original documents must be filed with the Clerk of the Superior Court in the county listed above. A directory of these offices is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.   You must send a copy of your opposition papers directly to Judge _____, whose address is Superior Court of New Jersey, Chancery Division, General Equity Part, Essex County, Wilentz Justice Complex, 212 Washington Street - 8th Floor, Newark, New Jersey 07102.   You must also send a copy of your opposition papers to the Plaintiff's attorney, whose name and address appears above. A telephone call will not protect your

4

rights; you must file your opposition and pay the required fee of $_____ and serve your opposition on your adversary, if you want the Court to hear your opposition to the injunctive relief the Plaintiff is seeking.

5.   Plaintiff must file and serve any written reply to the Defendants' Order to Show Cause opposition by _____, 2018.   The reply papers must be filed with the Clerk of the Superior Court in the county listed above and a copy of the reply papers must be sent directly to the Chambers of Judge

_____.

6.   If the Defendants do not file and serve opposition to this Order to Show Cause, Plaintiff's application will be decided on the papers on the return date and relief may be granted by default, provided that the Plaintiff files a proof of service and a proposed form of Order at least three (3) days prior to the return date.

7.   If the Plaintiff has not already done so, a proposed form of Order addressing the relief sought on the return date (along with a self-addressed return envelope with return address and postage) must be submitted to the Court no later than three (3) days before the return date.

8.   Defendants, take notice that the Plaintiff has filed a lawsuit against you in the Superior Court of New Jersey.   The Verified Complaint attached to this Order to Show Cause states

the basis of the lawsuit.  If you dispute this Verified Complaint, you, or your attorney, must file a written Answer to the Verified Complaint and proof of service within thirty-five (35) days from the date of service of this Order to Show Cause; not counting the day you received it.

These documents must be filed with the Clerk of the Superior Court in the county listed above.  A directory of these offices is available in the Civil Division Management Office in the county listed above and online at http://www.njcourts.gov/forms/10153_deptyclerklawref.pdf.

Include a $_____ filing fee payable to the "Treasurer, State of New Jersey."  You must also send a copy of your Answer to the Plaintiff's attorney whose name and address appear above.  A telephone call will not protect your rights; you must file and serve your Answer (with the fee) or judgment may be entered against you by default.  Please note:  Opposition to the Order to Show Cause is not an Answer and you must file both.  Please note further:  if you do not file and serve an Answer within thirty-five (35) days of this Order to Show Cause, the Court may enter a default against you for the relief Plaintiff demands.

9.  If you cannot afford an attorney, you may call the Legal Services office in the county in which you live or the Legal Services of New Jersey Statewide Hotline at 1-888-LSNJ-LAW (1-888-576-5529).  If you do not have an attorney and are not

eligible for free legal assistance you may obtain a referral to an attorney by calling one of the Lawyer Referral Services.  A directory with contact information for local Legal Services Offices and Lawyer Referral Services is available in the Civil Division Management Office in the county listed above and online at http://www.judiciary.state.nj.us/prose/10153_depty clerklawref.pdf.

10.  The Court will entertain argument, but not testimony, on the return date of the Order to Show Cause, unless the Court and parties are advised to the contrary no later than _____ days before the return date.

_____
Hon.

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorney for Plaintiff

By:  Lorraine K. Rak (035771985)
     Deputy Attorney General, Section Chief
     Lara J. Fogel (038292006)
     Melissa Medoway (028422011)
     Jesse J. Sierant (049342013)
     Deputy Attorneys General
     Affirmative Civil Enforcement
     (973) 877-1280

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION, ESSEX COUNTY
DOCKET NO. _____

| | |
|---|---|
| GURBIR S. GREWAL, Attorney General of the State of New Jersey,<br><br>                    Plaintiff,<br><br>              v.<br><br>DEFENSE DISTRIBUTED, CODY R. WILSON, and JANE and JOHN DOES 1-20, individually and as owners, officers, directors, shareholders, founders, members, managers, agents, servants, employees, representatives and/or independent contractors of DEFENSE DISTRIBUTED, and XYZ CORPORATIONS 1-20,<br><br>                    Defendants. | **Civil Action**<br><br><br>**VERIFIED COMPLAINT** |

Plaintiff Gurbir S. Grewal, Attorney General of the State of New Jersey ("Attorney General"), with an office located at 124 Halsey Street, Fifth Floor, Newark, New Jersey 07101, by way

of this Verified Complaint states:

## PRELIMINARY STATEMENT

1.   In just two days, Defense Distributed and its founder Cody R. Wilson (collectively, "Defendants") are planning to take an unprecedented and dangerous action – to publish computer files that enable anyone, including terrorists, domestic abusers, criminals, gang members, and juveniles, to print firearms using a three-dimensional ("3D") printer right from the comfort of their own homes.  Worse still, the codes they plan to post enable individuals to print assault weapons that are illegal under the laws of the State of New Jersey ("New Jersey" or "State").   Further, because the printed guns do not have serial numbers, they would not be traceable, which would undermine law enforcement's ongoing efforts to solve and reduce gun crime.  The implications for public safety and homeland security are clear and the risk is imminent; once Defendants open that Pandora's Box, it can never be closed.

2.   For years, the Federal Government and multiple federal courts recognized that Defense Distributed's plans posed a direct threat to public safety and national security across the United States, and so the Government barred the company from publishing the Computer Aided Design ("CAD") files.   In response, Defendants sued the Federal Government, seeking a

2

declaration that the CAD files were not subject to regulation. Despite the Federal Government's proper challenge to Defense Distributed's ability to publish these codes, the Federal Government just recently disclosed that it settled this litigation. Troublingly, the Federal Government abruptly flipped positions (even after multiple courts had agreed about the pending risk to public safety) and decided to allow Defense Distributed to move forward with its plans to share these computer codes on the Internet, available to all.

3.    New Jersey law provides a separate and independent basis for preventing Defense Distributed and Cody Wilson from moving forward.   New Jersey's public nuisance law provides a cause of action to hold firearm manufacturers accountable – and to enjoin imminent violations of the law – when their plans would facilitate the illegal sale of weapons to criminals and other prohibited users, and when the manufacturer has done too little to prevent that illegal market from developing. More than that, Defense Distributed and Wilson's codes will enable individuals to create firearms without serial numbers, again in direct contravention of State law.

4.    In light of the grave and imminent harm posed with the release of printable-gun computer files, which can and will be used to create illegal and untraceable firearms in New Jersey,

3

the Attorney General submits this Verified Complaint in connection with an Order to Show Cause with Temporary Restraints in order to immediately halt Defendants from publishing, exporting and/or distributing the printable-gun computer files, which they plan to do on August 1, 2018.

## PARTIES

5.   Plaintiff, as the Attorney General of New Jersey, brings this action on behalf of the residents of New Jersey. The Attorney General, as the sole legal advisor and attorney for the State, is authorized to bring this suit in the interest and protection of the public in New Jersey. N.J.S.A. 52:17A-4; Mayor & Council of Borough of Alpine v. Brewster, 7 N.J. 42, 52 (1951).

6.   Defendant Defense Distributed is incorporated in the State of Texas with a mailing address of 2320 Donley Drive, Suite C, Austin, Texas 78758.

7.   Defendant Cody R. Wilson ("Wilson") is the director and founder of Defense Distributed and at all times relevant to this action, has controlled, directed and/or participated in the operation of Defense Distributed.  Upon information and belief, Wilson maintains a mailing address of 2510 Tracy Trail, Austin, Texas 78728.

4

8.   John and Jane Does 1 through 20 are fictitious individuals meant to represent the owners, officers, directors, shareholders, founders, members, managers, agents, servants, employees, representatives, and/or independent contractors of Defense Distributed who have been involved in the conduct that gives rise to this Verified Complaint, but who are heretofore unknown to the Plaintiffs.  As these defendants are identified, Plaintiff shall amend the Verified Complaint to include them.

9.   XYZ Corporations 1 through 20 are fictitious corporations meant to represent any additional corporations that have been involved in the conduct that gives rise to this Verified Complaint, but that are heretofore unknown to the Plaintiff.  As these defendants are identified, Plaintiff shall amend the Verified Complaint to include them.

## GENERAL ALLEGATIONS COMMON TO ALL COUNTS

A.   **Background of Defendants and CAD Files**:

10.  At all relevant times, Defense Distributed has maintained a website at https://defdist.org ("DD Website").  The

"About" section of the DD Website provides as follows:



# ABOUT

Defense Distributed is a non-profit, private defense firm principally engaged in the research, design, development, and manufacture of products and services for the benefit of the American rifleman. Since 2012, DD has been headquartered in Austin, Texas.

Media inquiries: crw@defdist.org

11.   The stated objective of Defense Distributed is for everyone to have access to guns and to undermine the efficacy of firearm safety regulations.

12.   Defendant Cody Wilson, who is a self-proclaimed anarchist and believes that "governments should live in fear of their citizenry," founded Defense Distributed.

13.   In 2012, Defense Distributed began exporting technical data related to firearms through the publication of CAD files, without restriction, on the Internet.

14.   Defendants' CAD files are computer files for the creation of guns and gun components through the use of 3D printers.

15.   Through the CAD files, Defense Distributed has enabled anyone anywhere to automatically manufacture firearms on 3D printers.

16.   Defendants posted their CAD files on https://defcad.org ("DefCad Website"), a website they created to serve as an open-source repository for weapons designs.

17.   The DD Website currently states as follows:

Defense Distributed |



ABOUT  CONSULTING  LOGIN  JOIN

AUGUST 1
2018

Defense Distributed relaunches DEFCAD after reaching a settlement agreement with the US Department of State, concluding a multi-year federal lawsuit. The age of the downloadable gun begins.

18.   The DefCad Website includes data to automatically manufacture the "Liberator" pistol, which is a plastic firearm

7

that contains a six ounce piece of steel that can be easily removed enabling the firearm to be undetected in walk-through metal detectors. The DefCad Website depicts the Liberator pistol as follows:



19. Through the related website of https://ghostgunner.net ("GG Website"), Defense Distributed also manufactures and sells a "computer-controlled milling machine" called the "Ghost Gunner," which is designed to allow its owner to carve gun parts out of aluminum. The GGG Website depicts the Ghost Gunner as follows:







GHOST GUNNER 2
An open source hardware project

Ghost Gunner is a general purpose CNC mill, built upon a large body
of open source work, grbl g-code motion control, and popular
microcontrollers.

View specifications ▸
Learn more ▸

SHOP NOW

FOR 80 PERCENT RECEIVERS AND FRAMES
No prior CNC experience required

Ghost Gunner is specially designed to manufacture a growing library of mil-spec 80 percent lowers to
completion. With simple tools and point and click software, the machine automatically finds and aligns
to your 80% lower to get to work. No prior CNC knowledge or experience is required to manufacture
from design files. Legally manufacture unserialized rifles and pistols in the comfort and privacy of home.

B.  **Federal Court Litigation and Settlement**:

20.  In May 2013, the United States Department of State's
Directorate of Defense Trade Controls ("DDTC") advised Defense
Distributed that its publication of CAD files without
authorization from the DDTC potentially violated the
International Traffic in Arms Regulations ("ITAR") administered
by DDTC.

21.  The violation stemmed from the fact that the CAD files
were being made available outside of the United States via the
Internet.

9

22.   DDTC concluded that several of the published CAD files were subject to regulation under ITAR.

23.   To make the CAD files available outside of the United States, ITAR required Defendants to seek preapproval of publication from the DDTC.

24.   On May 6, 2015, Defense Distributed as well as the Second Amendment Foundation, Inc. ("SAF") and Conn Williamson (collectively, "DD/SAF/CW"), commenced an action in the United States District Court for the Western District of Texas, Case No. 1:15-cv-00372-RP ("Texas Litigation").

25.   DD/SAF/CW sought a declaration that the DDTC's preapproval requirement for privately generated unclassified information was unconstitutional and violated the First, Second, and Fifth Amendments.

26.   DD/SAF/CW also sought to enjoin the DDTC from enforcing the prepublication approval requirement against them.

27.   In opposing DD/SAF/CW's request, Lisa V. Aguirre, the Director of the Office of Defense Trade Controls Management testified that:

(a)   "[t]he 'Liberator' firearm included in Defense Distributed's CAD designs presented a specific and unique risk to the national security and foreign policy interests of the United States";

(b)   making the CAD files available online would provide terrorist organizations with firearms,

10

which could be used against the United States or
its allies; and

(c)    "[a]ccess to weapons technology coupled with the
uncontrolled ubiquitous means of productions...
could contribute to armed conflict, terrorist or
criminal acts, and seriously undermine global
export and non-proliferation regimes designed to
prevent the dangerous and destabilizing spread
and accumulation of weapons and related
technologies."

28.   After a hearing, the District Court denied DD/SAF/CW's
request for a preliminary injunction and found, among other
things, that the public interest in national defense and
national security outweighed any countervailing interests. The
United States Court of Appeals for the Fifth Circuit affirmed
the denial.  Defense Distributed v. United States Dept. of
State, 838 F.3d, 451, 461 (5th Cir. 2016), cert. denied, 138 S.
Ct. 638 (2018).

29.   The Texas Litigation continued until April 30, 2018,
when DD/SAF/CW advised the District Court that the parties
reached a tentative settlement.

30.   On June 28, 2018, the parties informed the District
Court that DD/SAF/CW and the Federal Government reached an
approved settlement.

31.   The settlement agreement was available on the Internet
on or around July 12, 2018, and provides:

11

(a)   The Federal Government will commit to draft and pursue a notice of proposed rulemaking and final rule that would exclude the data on the CAD files at issue from ITAR regulation;

(b)   The Federal Government will announce on or before July 27, 2018, a temporary modification to exclude the data on the CAD files from ITAR regulation;

(c)   The Federal Government will issue a letter to DD/SAF/CW on or before July 27, 2018, advising that certain files are approved for public release and are exempt from the ITAR licensing requirements;

(d)   The Federal Government will acknowledge that the temporary modification referenced above permits "any United States person" "to access, discuss, use, reproduce, or otherwise benefit from the technical data" that is the subject of the litigation;

(e)   The Federal Government's payment of $39,581 to DD/SAF/CW; and

(f)   Filing of the stipulation of dismissal no sooner than August 1, 2018, which it ultimately filed on July 27, 2018.

C.   **Imminent Publication of Printable-Gun CAD Files**:

32.   Because of the settlement with the Federal Government, Defendants announced that they will re-launch their CAD file repository on August 1, 2018.

33.   Thus, at present, the DefCad Website provides as follows:

12

7/26/2018                                                          DEFCAD



34.    The   DefCad   Website   will   contain   a   repository   of
firearm   computer   files   for   "more   exotic   DIY   semi-automatic
weapons."

35.    The   DefCad   Website   also   accepts   user   financial
contributions   and   has   a   user   comment   feature   where   information
can   be   posted   or   shared.

36. Defendant Wilson intends the DefCad Website to serve as "a searchable, user-generated database of practically any firearm imaginable."

37. The database "will be available to anyone anywhere in the world with an uncensored internet connection, to download, alter, remix, and fabricate into legal weapons with tools like 3D printers and computer-controlled milling machines."

38. Defendant Wilson publicly stated, "What's about to happen is a Cambrian explosion of the digital content related to firearms.... [a]ll this Parkland stuff, the students, all these firearms of 'common sense gun reforms'? No. The internet will serve guns, the gun is downloadable... No amount of petitions or die-ins or anything else can change that."

**D. Direct and Immediate Threat to the**
   **Public Health and Safety of New Jersey:**

39. During the pendency of the Texas Litigation, Defendants "developed a trove" of 3-D-printable weapon computer files, including AR-15s.

40. Assault weapons like the AR-15 and semiautomatic weapons were designed for military use.

41. In New Jersey, weapons like the AR-15 and semiautomatic weapons are banned as illegal assault weapons. N.J.S.A. 2C:39-1w(1); N.J.S.A. 2C:39-5(f).

14

42.  Printable-gun computer files will allow anyone with a 3D printer to download a code and create a fully operational gun.

43.  Because the 3D printed firearms will not have serial numbers or other identifiable marks, they will never be traceable by law enforcement.  The ability to trace a firearm is critical when law enforcement investigates gun-related crimes.

44.  Further, New Jersey law prohibits certain categories of persons from purchasing firearms, including individuals convicted of certain violent crimes and other offenses involving acts of domestic violence and individuals suffering from certain mental illnesses.

45.  If Defendants' actions are allowed, anyone with access to a 3D printer will be able to manufacture a firearm, regardless of the disqualifiers under New Jersey law.

46.  Any person in New Jersey can log onto the DefCad Website and register by merely inputting a username and email address.

47.  The DefCad Website does not require a certain age, a criminal background, or any other eligibility factor.

48.  Through the DD Website and DefCad Websites, Defendants declared that it will start publishing the printable-gun computer files on August 1, 2018.

15

E. <u>Post-Settlement Proceedings</u>:

49.   Defendants' actions subvert New Jersey's system of gun regulation and threaten the health, safety, and welfare of our citizens.

50.   Responding to this threat, on July 26, 2018, the Attorney General sent a cease-and-desist letter ("New Jersey Cease-And-Desist Letter"), instructing Defense Distributed not to publish the files online.

51.   Defense Distributed responded to the New Jersey Cease and Desist Letter the next day.   Although Defense Distributed said that it would "attempt to restrict files made available on the internet to prevent download within New Jersey" by blocking users with New Jersey-based IP Addresses from accessing the files, it made clear its intent to proceed with publication of the codes on August 1, 2018.

52.   On July 25, 2018, The Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc., and Giffords (collectively, "Proposed Intervenors") sought to intervene in the Texas Litigation and requested a temporary restraining order and a preliminary injunction to enjoin Defense Distributed from publishing the printable gun-computer files at issue here to prevent immediate and irreparable harm to United States national security.

53. On Friday, July 27, 2018, a hearing was held before the Honorable Robert Pitman wherein both of the Proposed Intervenors' motions were denied.

54. On July 29, 2018, Defense Distributed and SAF (collectively, "DD/SAF") filed a Complaint in the United States District Court for the Western District of Texas (Case No. 1:18-cv-00637), seeking declaratory and injunctive relief, damages, and attorney's fees against the Attorney General and Michael Feuer, the Los Angeles City Attorney.

55. DD/SAF initiated this lawsuit against the Attorney General in response to the New Jersey Cease-And-Desist Letter, alleging, among other things, that it constitutes an unconstitutional prior restraint.

56. Notably, DD/SAF state in their Complaint that "[b]ut for Defendant Grewal's letter, Defense Distributed would freely distribute the files in New Jersey."

57. In their Complaint, DD/SAF also allege that "[t]he Second Amendment Foundation's members and supporters are among Defense Distributed's audience" and that "SAF has over 650,000 members and supporters nationwide, including members in . . . New Jersey."

58. On July 30, 2018, the Commonwealth of Pennsylvania, Governor Tom Wolf, Attorney General Josh Shapiro and the

17

Pennsylvania State Police filed a Complaint against Defense Distributed, DEFCAD, Ghost Gunner and Wilson (collectively, "PA Defendants") for declaratory judgment and a preliminary injunction, as well as a motion for a temporary restraining order and preliminary injunction to enjoin the PA Defendants from publishing the printable-gun computer files at issue here.

## COUNT I
## PUBLIC NUISANCE

59. Plaintiff incorporates the allegations contained in Paragraphs 1 through 58 above, as if more fully set forth herein.

60. By publishing printable-gun computer files to New Jersey residents, Defendants will intentionally and recklessly flood the illegal firearms market in New Jersey and pose a direct threat to the public health and safety of New Jersey.

61. Defendants know or should know that the publication of the printable-gun computer files will bring illegal firearms into existence in New Jersey, which will result in increased crime, injury, and death to New Jersey residents.

62. Defendants' intentional and reckless conduct will create an unreasonable and significant interference with the public health, public safety, and public peace of the residents of New Jersey.

63.  Defendants' conduct, if left unabated, will have long-lasting effects on the health and safety of New Jersey residents.

64.  As demonstrated by their own statements, Defendants know or have reason to know that their actions will have a significant impact on the health and safety of New Jersey residents.

## COUNT II
### NEGLIGENCE

65.  Plaintiff incorporates the allegations contained in Paragraphs 1 through 64 above, as if more fully set forth herein.

66.  New Jersey law prohibits the types of weapons that Defendants seek to create in publishing their printable-gun computer files.

67.  By publishing printable-gun computer files to New Jersey residents so that individuals may create their own illegal firearms, Defendants' conduct is wholly proscribed by New Jersey law.  N.J.S.A. 2C:39-5(f).

68.  Defendants' conduct, if left unabated, will have a long-lasting, direct and proximate impact on the safety and health residents of New Jersey.

19

69.   Defendants' conduct, if left unabated, will result in increased crime, injury, and death to New Jersey residents.

## PRAYER FOR RELIEF

**WHEREFORE**, based upon the foregoing allegations, Plaintiff respectfully requests that the Court enter judgment:

(a)   Awarding judgment in its favor and against Defendants on each cause of action asserted in the Verified Complaint;

(b)   Permanently enjoining Defendants and their owners, officers, directors, founders, members, managers, agents, servants, employees, representatives, independent contractors, and all other persons or entities directly under their control, from engaging in an activity that is the subject of Plaintiff's request for temporary and preliminary injunctive relief, as set forth in the accompanying Order to Show Cause with Temporary Restraints Pursuant to Rule 4:52;

(c)   Requiring Defendants to abate any public nuisance that their conduct has created;

(d)   Ordering Defendants to pay costs and fees, including attorneys' fees, for the use of the State of New Jersey; and

(e)   Granting such other relief as the interests of justice may require.

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By: ___Lara J. Fogel___
Lara J. Fogel
Deputy Attorney General

Dated:   July 30, 2018
         Newark, New Jersey

20

## RULE 4:5-1 CERTIFICATION

I certify, to the best of my information and belief, that the matter in controversy in this action is not the subject of any other action pending in any other court of this State, but that an action titled Defense Distributed, et al. v. Gurbir S. Grewal, et al., Case No. 1:18-cv-00637 has been commenced in the United States District Court, Western District of Texas.   I further certify, to the best of my information and belief, that the matter in controversy in this action is not the subject of a pending arbitration proceeding in this State, nor is any other action or arbitration proceeding contemplated.   I certify that there is no other party who should be joined in this action at this time.

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Attorney for Plaintiff

By: _Lara J. Fogel_____
Lara J. Fogel
Deputy Attorney General

Dated:   July 30, 2018
Newark, New Jersey

21

## RULE 1:38-7(c) CERTIFICATION OF COMPLIANCE

I certify that confidential personal identifiers have been redacted from documents now submitted to the court, and will be redacted from all documents submitted in the future in accordance with R. 1:38-7(b).

                              GURBIR S. GREWAL
                              ATTORNEY GENERAL OF NEW JERSEY
                              Attorney for Plaintiff


                    By: _____
                              Lara J. Fogel
                              Deputy Attorney General

Dated:   July 30, 2018
         Newark, New Jersey


## DESIGNATION OF TRIAL COUNSEL

Pursuant to R. 4:25-4, Lara J. Fogel, Deputy Attorney General, is hereby designated as trial counsel on behalf of Plaintiffs.

                              GURBIR S. GREWAL
                              ATTORNEY GENERAL OF NEW JERSEY
                              Attorney for Plaintiff


                    By: _____
                              Lara J. Fogel
                              Deputy Attorney General

Dated:   July 30, 2018
         Newark, New Jersey

## VERIFICATION

I, Aziza Salikhova, of full age, hereby certify as follows:

1.    I am an Investigator with the New Jersey Division of Consumer Affairs ("Division"), Office of Consumer Protection.

2.    I have read the foregoing Verified Complaint and on my own personal knowledge and review of documents in possession of the Division, I know that the facts set forth herein are true and they are incorporated in this certification by reference, except for those alleged upon information and belief.

3.    I certify that the above statements made by me are true.    I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

_____
AZIZA SALIKHOVA

Dated:    July 30, 2018
          Newark, New Jersey

23

GURBIR S. GREWAL
ATTORNEY GENERAL OF NEW JERSEY
Division of Law
124 Halsey Street
P.O. Box 45029
Newark, New Jersey 07101
Attorney for Plaintiff

By:  Lorraine K. Rak (035771985)
     Deputy Attorney General, Section Chief
     Lara J. Fogel (038292006)
     Melissa Medoway (028422011)
     Jesse J. Sierant (049342013)
     Deputy Attorneys General
     Affirmative Civil Enforcement
     (973) 877-1280

SUPERIOR COURT OF NEW JERSEY
CHANCERY DIVISION, ESSEX COUNTY
DOCKET NO._____

---

GURBIR S. GREWAL, Attorney General
of the State of New Jersey,

                    Plaintiff,

          v.

DEFENSE   DISTRIBUTED,   CODY   R.
WILSON, and JANE and JOHN DOES 1-
20, individually and as owners,
officers, directors, shareholders,
founders,    members,    managers,
agents,    servants,    employees,
representatives and/or independent
contractors    of    DEFENSE
DISTRIBUTED, and XYZ CORPORATIONS
1-20,

                    Defendants.

---

Civil Action

**CERTIFICATION OF NEW JERSEY
OFFICE OF HOMELAND SECURITY
<u>DIRECTOR JARED MAPLES</u>**

---

     I, Jared Maples, of full age, certify as follows:

     1.   I have been the Director of the New Jersey Office of
Homeland Security and Preparedness (NJOHSP) since June 5, 2017.

1

2.    In this role, I serve as the Governor of New Jersey's designated Homeland Security Advisor (HSA) and am the Cabinet level executive responsible for coordinating and leading New Jersey's Counterterrorism, Cybersecurity and Emergency Preparedness efforts.

3.    I previously served in NJOHSP as the Director of the Division of Administration, from 2016 to 2017.  The Division encompasses information technology and security, human resources, and facilities management and financial activities for the Office, including oversight of millions of dollars in federal homeland security grant funding.

4.    Prior to joining NJOHSP, I spent over a decade at the Central Intelligence Agency (CIA) in a variety of leadership roles, and previously worked at the US Department of Defense in the Office of the Secretary of Defense.

5.    As a seasoned intelligence officer, my career has focused on executive strategy development and execution, organizational and operational change management, emergency operations response, internal security investigations and personnel protection in high threat environments.  I have traveled around the world on behalf of the US Government, including many deployments to areas of active hostilities.

6.    I have a Master's degree in Business Administration from Georgetown University, a Bachelor's degree from Villanova

University, and an Associate's degree from Valley Forge Military College.

7. Domestic terrorism and mass shootings are an unfortunate reality and a source of growing concern. Access to weapons has been an enabling component to these incidents.

8. NJOHSP provides Active Shooter Response Resources to bolster the preparedness and resilience of New Jersey and its residents in the event of an active shooter incident.

9. The computer-aided design (CAD) codes of Defense Distributed and Cody R. Wilson (collectively, "Defendants") will allow individuals across New Jersey to automatically manufacture on 3D printers lethal firearms that are untraceable and that can be modified to be virtually undetectable in metal detectors.

10. This is concerning to NJOHSP because terrorists and other networks directing violence at the United States and in New Jersey could use this technology to manufacture guns, including assault firearms. Those guns would be untraceable by law enforcement. That means if a gun were used to commit an act of violence, law enforcement would be unable to determine who manufactured, purchased, or transferred the gun.

11. Unregulated and untraceable guns would significantly curtail law enforcement's ability to apprehend the persons involved in the act of violence and stop them from committing future acts of violence. The proliferation of untraceable guns

3

would also give terrorist groups a significant advantage and deprive NJOHSP the ability to gather the necessary intelligence to combat them and reduce their threat they pose to our citizens.

12.   NJOHSP and other New Jersey law enforcement agencies have traced guns thousands of times, and such traces are a critical tool to help solve crimes.  We use the results of these traces to identify the methods by which firearms entered the illegal market and to devise strategies to disrupt these criminal networks.  But if there were to be a proliferation of untraceable 3D guns, crimes and criminal networks might go unsolved and the perpetrators might go on to commit additional acts of violence.

13.   Indeed, in 2013, journalists in Israel were able to print a Defense Distributed gun and get within arm's reach of the country's prime minister at the government capitol.  (Lazar Berman, Journalists Print Gun, Point It at Netanyahu, Times of Israel (July 13, 2013), available at https://bit.ly/2mD6AOJ.) We at NJOHSP are concerned that if 3D gun codes are generally available, similar incidents could occur on New Jersey soil.

14.   Upon review of Defendants' January 2, 2015 Commodity Jurisdiction Request to the United States Department of State Directorate of Defense Trade Controls, Defendants' CAD files can be used to "automatically find, align, and mill" a firearm, such

4

as an AR-15, on a 3D printer or other manufacturing device. (See Ex. A, pg. 2.)  Manufacture of a firearm in this manner requires considerably less technical knowledge than the manufacture of a weapon relying on conventional technical data that may be currently publicly available, but which only provides guidance on how to create a firearm and requires additional craftsmanship, know-how, tools, and materials from the manufacturer.

15.  Posting of Defendants' CAD files on the Internet without restriction would make those files available throughout New Jersey to any Internet user, thereby permitting the export of those files to any New Jersey resident or visitor with access to Defendants' website.  The likely effect of this publishing would be to cause significant harm to the health, safety, peace, and comfort of the citizens of New Jersey.

16.  For example, the "Liberator" firearm included in Defendants' CAD designs presents a specific and unique risk to State security since the Liberator is a plastic firearm that can be produced in a way as to be both fully operable and virtually undetectable by conventional security measures.  3D firearms can defeat normal detection such as metal detectors and wands, and present a problem to public safety in venues such as airports, arenas, schools, government buildings, and/or courthouses.

17.  Making Defendants' CAD files available through unrestricted access on the Internet would provide terrorists and crime organizations with firearms at their convenience, subject only to access to a 3D printer, an item that is widely commercially available.  (See e.g., https://www.staples.com/3D-Printers/cat_CL211598?fids=&sr=true&sby=2&min=&max=&myStoreId=&deptFid=.)  Terrorist groups and other bad actors could then manufacture and use such weapons against New Jersey citizens.

18.  Unrestricted access to Defendants' CAD files would likewise provide armed criminal or terrorist organizations with access to firearms components and replacement parts.

19.  Access to weapons technology coupled with the uncontrolled and increasingly ubiquitous means of production, such as 3D printers, could contribute to terrorist or criminal acts and undermine New Jersey's efforts to reduce gun violence within the State.

20.  For the foregoing reasons, Defendants' effort to post these CAD files through the Internet represents a direct threat to New Jersey's homeland security.

I certify that the foregoing statements made by me are true. I am aware that if any of the foregoing statements made by me are willfully false, I am subject to punishment.

JARED MAPLES

Dated:  July 30, 2018

# EXHIBIT A

**MATTHEW A. GOLDSTEIN, PLLC**
1012 14TH STREET NW, SUITE 620
WASHINGTON, DC 20005

**VIA ELECTRONIC FILING**

January 2, 2015

PM/DDTC, SA-1, 12th Floor
Office of Defense Trade Controls
Bureau of Political Military Affairs
U.S. Department of State
Washington, D.C. 20522-0012

**SUBJECT:   Commodity Jurisdiction Request for Ghost Gunner Machine, Plastic Mounting Jig, User Instructions, and Software** (Defense Distributed, Inc., PM/DDTC Code M-34702)

Dear Sir or Madam:

Pursuant to Section 120.4 of the International Traffic in Arms Regulations ("ITAR") (22 C.F.R. Sections 120-130), Defense Distributed requests a commodity jurisdiction determination from the Directorate of Defense Trade Controls ("DDTC") on the Ghost Gunner machine (the "Ghost Gunner"), its plastic mounting jig, user instructions, and software for production, operation, and use of the Ghost Gunner.

The Ghost Gunner is an approximately one-foot-cubed black box that uses a drill bit mounted on a head that moves in three dimensions to automatically carve digitally-modeled shapes into polymer, wood or aluminum. It functions as a 3-axis computer-numerically-controlled ("CNC") press that can be used to manufacture parts to firearms controlled under U.S. Munitions List ("USML") Category I. It can also be used to manufacture items that are not controlled under the USML. The machine was designed, developed, and manufactured by Defense Distributed to automatically manufacture publicly available designs with nearly zero user interaction.

As discussed below, the Department of Defense recommended that Defense Distributed submit this commodity jurisdiction request.

Export jurisdiction over the Ghost Gunner, Jig, software, and instructions is uncertain because, although the Department of Commerce Export Administration Regulations ("EAR") maintain a control listing for jigs, fixtures, and other metal-working items "exclusively designed for use in the manufacture of firearms" under Commerce Control List ("CCL") Export Control Number ("ECCN") 2B018.n, there is no corresponding carve-out for these items and related software and technical information otherwise controlled by USML Category I generally; and Category I(i) controls technical data and defense services directly related to firearms, with technical data directly related to the manufacture or production of firearms designated as Significant Military Equipment.

Please note that a letter from Defense Distributed authorizing my law firm to file this request was uploaded with this DS-4076 submission. Please direct any questions and all correspondence related to this request to my office. Communications to me at matthew@goldsteinpllc.com are preferred.

## I.   BACKGROUND

### A.   Defense Distributed

Defense Distributed is a Texas corporation, registered with the Department of State under PM/DDTC Code M-34702. The company has developed technical information that can be used to produce, manufacture, and assemble various parts components, accessories, and attachments to firearms controlled under USML Category I. This includes information for the design and production of the Ghost Gunner, software necessary to operate Ghost Gunner, and code that allows production of certain items by the Ghost Gunner.[1]

Following notification from DDTC in May 8, 2013, that the agency requires U.S. Government prior approval before publications of otherwise ITAR-controlled technical data into the public domain (Attachment 1), Defense Distributed has submitted requests for U.S. Government clearance of technical data to the Department of Defense Office of Prepublication and Security Review ("DOPSR").[2] On October 1, 2014, DOPSR returned a Defense Distributed request for clearance of technical information on the Ghost Gunner for public release, stating that commodity jurisdiction over the item was uncertain and recommending that Defense Distributed submit a commodity jurisdiction request. See Attachment 2.

### B.   The Ghost Gunner

Existing CNC machines are expensive or too inaccurate to manufacture firearms for the casual user. Defense Distributed developed the Ghost Gunner to address this problem by miniaturizing the build envelope to just large enough to mill common firearm receivers, which in turn improves rigidity, reduces material cost and simultaneously relaxes certain design limits, allowing Defense Distributed to sell an inexpensive machine with more than enough accuracy to manufacture firearms.

The first design tested on the Ghost Gunner was for an AR-15 lower receiver and the Ghost Gunner was able to automatically find, align, and mill a so-called "80%" lower receiver, which was not a firearm prior to milling. The Ghost Gunner has since undergone several design revisions to reduce machine chatter, backlash, and jitter, all with the goal of keeping total design cost low.

Photographs of Ghost Gunner are provided at Attachment 3 and rendered images of the machine with the plastic jig are provided at Attachment 4.

---

[1] This commodity jurisdiction request seeks a determination of the code necessary to operate Ghost Gunner. It does not seek a determination on the various project files specific to production of certain items by the Ghost Gunner.

[2] In complying with DDTC prepublication review requirements on publication of technical information into the public domain, Defense Distributed does not intent to, nor should it be considered to, waive any defense, claim or right under law.

Commodity Jurisdiction Request
January 2, 2015
Page 3 of 9

A schematic drawing for the Ghost Gunner is provided at Attachment 5.

Ghost Gunner form, fit, function, and performance characteristics include the following:

- It uses a compact, powder coated A36 steel frame and thick stainless T-slot rail, with preloaded ball bearings for maximum rigidity. Linear motion is achieved with low-backlash direct-drive ball screws mounted in-line with the cutting surface, thus preventing torsional gantry chatter while machining.

- It incorporates an electronic probe that automatically detects when the machine comes into contact with the work piece, allowing automatic part discovery and alignment. Ghost Gunner requires conductive parts if auto-discovery and alignment are used.

- It can manually machine nonconductive materials, but this requires manual calibration of a part to the machine - following a few simple instructions - as is required with existing CNC machines.

- Its moving parts are entirely sealed from chip debris. All bearings are sealed and contain wipers to prevent foreign contaminate entry. The rails are stainless steel and are factory lubricated, but do require periodic wiping to prolong life. End Mills dull over time and are considered a consumable.

- To contain aluminum chips, it includes a chip collection tray and all moving components are fully enclosed.

- It is capable of manufacturing deep pockets due to its horizontal gantry, which allows gravity to pull chips away from the cutting surface before they can build up and dull the end mill, as is the case on traditional CNC designs.

- It uses industry standard ER-11 collets, and ships with both 1/4" and 5/32" collets.

- It uses a standard IEC power cord and is compatible with any 110/220V circuit. No external power brick is used; the machine is entirely self-contained.

- It has two ports: Power (IEC standard) and USB (Type 'B').

- Its machinable dimensions are 140 x 75 x 60mm (~5.50 x 2.95 x 2.35")

- Its maximum part dimensions are 230 x 90 x 100mm (- 9.05 x 3.50 x 3.90")

- Its overall footprint is 330 x 280mm (~13 x 11")

- Its weight is 20kg (~45 pounds)

- Its Spindle Speed is 10,000+ RPM (Final Value TBD)

- Its software requirements are Windows 7 or higher. Mac version TBD

As noted above, Ghost Gunner is capable of manufacturing more than just firearm receivers. With Defense Distributed's open source Physibles Development SDK ("pDev"), designers can distribute files via the company's '.dd' file format, which contains all installation and assembly instructions, any required jig files to hold a part in place (that users can print with a 3D printer), and all machine definitions and code to physically manufacture a particular design. To a casual user, the .dd file is a one-stop solution to manufacturing any aluminum physible that the public can design to fit into the build envelope. Defense Distributed will be developing in and supporting this format.

The .dd file format is itself open source and not constrained to the Ghost Gunner or Defense Distributed; any user can define any existing machine's specific parameters via the machine parameters list. A single file can contain specific code and installation instructions for any number of machines. A user with both a Ghost Gunner and a Tormach P1100 could manufacture a particular .dd file on either machine and manufacture the same physible with zero additional user knowledge, as only the instructions required for a particular machine are revealed to the end user. The .dd file format is a CNC response to 3D printing's universal .stl file format. However, Ghost Gunner will also accept TinyG code from any CAM program.

In operation, users provide the parts for milling. They can then simply plug their computer into the Ghost Gunner, install the Ghost Gunner software, and download any compatible .dd design file. 3D printable jigs are used to hold each part in place as each milling step is performed. For example, milling an eighty percent AR-15 lower receiver requires two jig pieces to secure the lower in place while the trigger pocket is milled, and then two more jig pieces are installed to drill the trigger pinholes. As most eighty percent firearms require deep pocket milling, Ghost Gunner's mounting table is parallel to the end mill shaft. This orientation maximizes 3D printed jig strength, minimizes jig complexity, and mechanically aligns the part to the machine upon insertion into the Maker Slide-patterned, Open Source T Slot stainless rails.

Defense Distributed expects its typical order fulfillment will contain the fully assembled Ghost Gunner CNC, plastic mounting jig designed to secure 80% AR-15 receivers, operating software and instructions. Defense Distributed also intends to place instructions and computer code needed to build and use Ghost Gunner into the public domain as Open Source technology.

Block 13 ("Sales information) is not provided with this request because the Ghost Gunner is still in development as Defense Distributed awaits arrival of various production pieces and continues to make any required changes to the product. As such, the company has not yet delivered any machines (i.e., no completed sales). However, the company has accepted 469 pre-orders and 413 advance deposits from prospective purchasers. Each of these orders, except for one, are intended for domestic sale. In addition, consistent with U.S. law, final sales will carry conditions that limit purchases to private use (i.e., not for commercial or military use).

Commodity Jurisdiction Request
January 2, 2015
Page 5 of 9

C.    User Instructions and Operating Software for the Ghost Gunner

The current draft User Instructions for the Ghost Gunner accompanies this commodity jurisdiction request at Attachment 6.  It contains information on how to attach a "80%" lower receiver to Ghost Gunner, such that Ghost Gunner can mill and drill all required holes to transform the lower receiver into a firearm.  Ghost Gunner presents numerous User Instructions, User Graphics, and User Selections to the operator.  Ghost Gunner performs work via Calibration Code and Milling Code.  Ghost Gunner also assists the user in creating 3D printable Jigs, if needed.

The software necessary to produce and operate the Ghost Gunner includes AutoDesk Inventor and a simple executable application that can interpret CNC part files and TinyG code.  Additional information detailing the purpose, function, and capability of the software, as requested by DDTC's DS-4076 Commodity Jurisdiction (CJ) Guidance for Software, accompanies this commodity jurisdiction request at Attachment 7.

II.    COMMODITY JURISDICTION STANDARD

The standard applicable to Department of State and other agency considerations of commodity jurisdiction is set forth at ITAR Section 120.3.  ITAR Subsection 120.3(a) extends Department of State jurisdiction to any item that meets the criteria of a defense article described on the USML or that provides equivalent performance capabilities; and ITAR Section 120.3(b) provides that a specific article not presently described on the USML shall be determined in the future as a defense article if it provides a critical military or intelligence advantage.

A.    Relevant USML Control Listings

Subparagraph (h) to USML Category I controls components, parts, accessories, and attachments for firearms to .50 caliber inclusive.  The Ghost Gunner does not meet the Category I(h) criteria because it is not a component or part to a firearm.  Rather, it is a machine that can be used for the manufacture of such articles.

Subparagraph (i) to USML Category I controls technical data, to include "software" as defined at Section 120.45(f), and defense services directly related to the firearms and components, parts, accessories, and attachments for firearms to .50 caliber inclusive.  Technical data directly related to the manufacture or production of firearms controlled in Category I is designated as Significant Military Equipment.

The USML does not contain a control listing that describes items used for the manufacture of firearms.  Instead, that listing is contained on the EAR Commerce Control List ("CCL") entry for ECCN 2B018.n, which controls "Jigs and fixtures and other metal-working implements or "accessories" of the kinds exclusively designed for use in the manufacture of firearms.  ECCN 2D018 controls software" for the "development", "production" or "use" of equipment controlled by 2B018; and ECCN 2E018, in turn, controls "Technology" for the "use" of equipment controlled by 2B018.

Commodity Jurisdiction Request
January 2, 2015
Page 6 of 9

The scope of the CCL controls on firearms manufacturing equipment and technology is unclear because the EAR only controls items not described on the USML and Category I does not contain any carve-out from ITAR control for software or technology controlled under ECCNs 2D018 and 2E018. To the contrary, if literally applied, USML Category I(i) treats such technical information as Significant Military Equipment.

Because there is no specific carve-out in Category I or elsewhere in the USML for software or technology controlled by 2D018 and 2E018, it is very difficult to distinguish between technical data for the manufacture or production of firearms controlled in Category I and technology for the development, production, and use of equipment used to manufacture firearms controlled at 2D018 and 2E018. This is a primary concern of the present commodity jurisdiction request.

Nevertheless, EAR control is consistent with U.S. Implementation of Wassenaar Controls. Specifically, ECCNs 2B018, ECCN 2E018, and 2B018 are Wassenaar Arrangement-based controls, subject to the National Security reason for control and which correspond to Category 2 of the Wassenaar Arrangement List of Dual-Use Items. In fact, 2B018 is titled, "Equipment on the Wassenaar Arrangement Munitions List."

Although relevant text of the ITAR and EAR control listings lack clarity, it appears that the U.S. Government decided to implement export controls on firearms manufacturing equipment and associated technical information in the EAR when it first implemented the Wassenaar Arrangement controls for such items. Accordingly, Defense Distributed believes that the Ghost Gunner does not meet criteria of a defense article described on the USML and that it does not provide equivalent performance capabilities to an article described on the USML.

Defense Distributed further notes that the DDTC should consider amending USML Category I to provide an express carve-out for EAR items controlled under ECCNs 2B018.n, ECCN 2E018, and 2B018. Alternatively, if DDTC intends to control firearms manufacturing equipment under the USML, it should make this clear in the regulations. Towards this end, any determination on the instant request that imposes ITAR control should be widely disseminated and shared with the firearms manufacturing industry.

B.   Ghost Gunner Does Not Provide a Critical Military or Intelligence Advantage.

As noted above, ITAR Section 120.3(b) provides that a specific article not presently described on the USML shall be determined in the future as a defense article if it provides a critical military or intelligence advantage.

The function and performance of the Ghost Gunner does not provide a critical military or intelligence advantage. Rather, it is essentially a jig press based on a simple design that is easily replicated by any skilled machinist. In fact, the Ghost Gunner can be produced by persons with no formal engineering background.

Commodity Jurisdiction Request
January 2, 2015
Page 7 of 9

In addition, Ghost Gunner builds on technology readily available in the Open Source community, including the gshield 3 axis motion hardware (http://synthetos.myshopify.com/products/gshield-v5), the grbl g-code parser and motion controller (https://github.com/grbl/grbl), and the Arduino microcontroller (http://arduino.cc).

Further, instructions and/or electronic files for production of jig presses with similar form, fit, and function to the Ghost Gunner are publicly available for download at a variety of web addresses, to include the following:

http://aresarmor.com/store/Item/Polymer-80-Black
http://www.thingiverse.com/thing:160266
https://github.com/DefiantCad/defcad-repo/tree/master/Rifles/AR-15_80_percent_lower_v5-shadowfall/AR-15_80_percent_Lower_Drill_Jig_v1-Shadowfall
http://www.advancedrifles.com/3d-printed-jig-version-2-0/
http://www.80percentarms.com/products/80-ar-15-easy-jig
http://www.sierranevadaarms.com/jig.pdf
http://www.rockethub.com/projects/24384-80-lower-receiver-ar15-ar10-rudius-1911

## III.   CONCLUSION

Considering the apparent intent of the U.S. Government in implementing relevant Wassenaar Arrangement controls in the EAR, Defense Distributed believes that the Ghost Gunner does not meet the criteria of an article described on the USML. In addition, the Ghost Gunner does not provide a critical military or intelligence advantage. Accordingly, Defense Distributed respectfully requests that the Department of State issue a commodity jurisdiction determination stating that the Ghost Gunner, its plastic mounting jig, operating software, and production and operation instructions do not meet the criteria of ITAR 120.3 and are subject to Department of Commerce jurisdiction under the EAR.

Defense Distributed authorizes the release for general publication of the information contained in Block 5 of the DS-4076 Form. However, other information in this request and documents submitted with Defense Distributed's DS-4076 Submission contain sensitive business information that is proprietary, confidential, and exempt from disclosure under the Freedom of Information Act, 5 U.S.C. Section 552, and is also protected under the Trade Secrets Act, 18 U.S.C. Section 1905. Accordingly, pursuant to ITAR Section 130.15, Defense Distributed requests that information in this submission other than that contained in Block 5 be withheld in the event of a request for its disclosure.

Commodity Jurisdiction Request
January 2, 2015
Page 8 of 9

Thank you for your prompt attention to this matter and please contact me at 202-550-0040 or at matthew@goldsteinpllc.com if any additional information is needed

Yours truly,

Matthew A. Goldstein
Legal Counsel

COMPANY CERTIFICATION:

Cody Wilson, the Principal of Defense Distributed, certifies that he is the duly authorized representative of Defense Distributed; and that in such capacity, he certifies that he has carefully read the foregoing Commodity Jurisdiction request; and that the contents of the request are true and correct to the best of his knowledge, information and belief after reasonable inquiry into the matters discussed.

Signature                                                  1/2/2015
                                                            Date

ATTACHMENTS TO LETTER OF EXPLANATION:

Attachment 1          May 8, 2013 DDTC Letter to Defense Distributed

Attachment 2          October 1, 2014 DOPSR Letter to Defense Distributed

Attachment 3          Photographs of Ghost Gunner Machine

Attachment 4          Rendered Images of Ghost Gunner Machine

Attachment 5          Ghost Gunner Schematics

Attachment 6          Ghost Gunner User Instructions

Attachment 7          Answers to DS-4076 Commodity Jurisdiction (CJ) Guidance for Software

www.GoldsteinPLLC.com

Scanned by CamScanner

Commodity Jurisdiction Request
January 2, 2015
Page 9 of 9

**OTHER ATTACHMENTS INCLUDED WITH DS-4076 SUBMISSION:**

DD_DS4076.pdf

DD_Attorney_Authorization_Letter_Block_2-1.pdf

[Instant document] DD_Cover_Ltr_Block_6-1.pdf

DD_Certification_Block_19-1.pdf

United States Department of State

*Bureau of Political-Military Affairs*
*Directorate of Defense Trade Controls*

*Washington, D.C. 20522-0112*

APR 15 2015

In Reply refer to
DDTC Case CJ 1083-14 (RE-ISSUE)

YOUR SUBMISSION DATED: January 2, 2015

COMMODITY JURISDICTION DETERMINATION FOR:  Ghost Gunner
Machine, Plastic Mounting Jig, User Instructions, and Software

The product described in your submission is a one cubic foot box that functions as
a 3-axis, computer-numerically-controlled (CNC) press capable of automatically
milling parts out of various materials through software designs.

A technical review of your commodity jurisdiction (CJ) request has been
concluded by the requisite agencies of the United States Government.  A split
jurisdiction determination of this request has been determined, as follows:

The Department of State has determined that the **Ghost Gunner, its
plastic mounting jig, operating software, and production and
operation instructions are not subject to the jurisdiction of the
Department of State**.  However, export may require authorization from
the Department of Commerce (DOC).  Please consult the DOC Office of
Exporter Services at (202) 482-4811 to make a Classification Request
(CCATS) and satisfy other applicable requirements prior to export.

The Department of State has determined that the **project files,
data files, or any form of technical data for producing a
defense article, including an 80% AR-15 lower receiver, are
subject to the jurisdiction of the Department of State in
accordance with the International Traffic in Arms
Regulations (ITAR) (22 CFR 120 through 130)**.  They are

Continued on Page Two

Cody R. Wilson
Defense Distributed, Inc.
1101 W 34th Street, #340
Austin, TX 78705
crw@deldist.org