## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Defense Distributed,<br>Second Amendment Foundation, Inc.,<br>Firearms Policy Coalition, Inc.,<br>Firearms Policy Foundation,<br>The Calguns Foundation,<br>California Association of Federal<br>Firearms Licensees, Inc., and<br>Brandon Combs,<br>　　　　　　　　*Plaintiffs*,<br><br>　　　　v.<br><br>Gurbir Grewal, Attorney General of the<br>State of New Jersey,<br>　　　　　　　　*Defendant*. | No. 3:19-cv-04753-AET-TJB |

### Plaintiffs' First Amended Complaint

BECK REDDEN LLP
Chad Flores
cflores@beckredden.com
Daniel Hammond
dhammond@beckredden.com
Hannah Roblyer
hroblyer@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

HARTMAN & WINNICKI, P.C.
Daniel L. Schmutter
dschmutter@hartmanwinnicki.com
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040

Josh Blackman*
joshblackman@gmail.com
1303 San Jacinto Street
Houston, TX 77002
(202) 294-9003
*Pro hac vice* motion to be filed

Counsel for Plaintiffs

## INTRODUCTION

1.     Defense Distributed promotes the Second Amendment's individual right to keep and bear Arms by publishing digital firearms information.  The digital firearms information that Defense Distributed publishes constitutes an important expression of technical, scientific, artistic, and political matter.  It lies at the heart of both the First Amendment and Second Amendment.  It belongs in the public domain.

2.     For several years, Defense Distributed freely authored and published a wide variety of digital firearms information.  At first, it did so via the internet by making its computer files available for download on a website.  Later, it did so via the mail by making its computer files available for shipment on physical storage devices.  To this day, Defense Distributed continues to author digital firearms information of great public value; and to this day, Defense Distributed remains committed to publishing its computer files to the public domain.

3.     Attorney General Gurbir Grewal denies any right to share computer files containing digital firearms information.  He denies any right to do so via the internet,  the mail, or any other publication method.  But Grewal does not just deny these rights abstractly.  He blatantly abridges them in violation of the Constitution.

4.     With a torrent of civil and criminal enforcement actions, Grewal is conducting a censorship campaign that expressly targets Defense Distributed's publication of digital firearms information and expressly targets its audience.  If

anyone dares to share the information deemed illicit, Grewal swears that he "will come after you."  This state official wants so desperately to abridge the Second Amendment's right to bear Arms that he will do so by blatantly abridging the First Amendment's freedom of speech.

5.    Grewal's censorship campaign has repeatedly inflicted irreparable harms of the highest order upon Defense Distributed.  At the same time, the censorship's irreparable harm has been visited upon the Second Amendment Foundation, whose members have a vital interest in receiving, utilizing, and republishing Defense Distributed's digital firearms information.

6.    Firearms Policy Coalition, Inc., Firearms Policy Foundation, The Calguns Foundation, California Association of Federal Firearms Licensees, Inc., and Brandon Combs suffer from this same course of unconstitutional conduct.  The website they maintain, CodeIsFreeSpeech.com, republished some of Defense Distributed's most important files both before *and after* the New Jersey's new speech crime took effect.  But instead of respecting their right to engage in this speech, Grewal maintains that he can—and will—punish them for doing so.

7.    Unless this Court intervenes, Grewal's campaign of unconstitutional civil and criminal enforcement actions will continue indefinitely.  In his own words, Grewal remains completely "committed to stopping each of you."

8.     "The right to think is the beginning of freedom, and speech must be protected from the government because speech is the beginning of thought." *Ashcroft v. Free Speech Coal.*, 535 U.S. 234, 253 (2002).  By the authority of the Constitution and the Civil Rights Act of 1871, 42 U.S.C. § 1983, the Court should enjoin Attorney General Gurbir Grewal's abridgement of the freedom of speech.

## PARTIES

9.     Plaintiff Defense Distributed is a non-profit business corporation organized under Texas law.  Its headquarters and principal place of business are in Austin, Texas; all of its employees live in or near Austin; and the vast majority of its activities occur in or near Austin.  Cody Wilson founded Defense Distributed and was its Director.  Paloma Heindorff is now Defense Distributed's Director.

10.     Defense Distributed exists to promote the Second Amendment's individual right to keep and bear Arms.  To that end, Defense Distributed authors and publishes digital firearms information—that is, information about firearms and firearm components in the form of computer files.  Defense Distributed also collects, edits, and republishes digital firearms information authored by others.

11.     Plaintiff Second Amendment Foundation, Inc. ("SAF") is a non-profit membership organization incorporated under Washington law. SAF's principal place of business is in Bellevue, Washington.  SAF sues on behalf of its members who would otherwise have standing to sue in their own right.

12.     SAF promotes the right to keep and bear arms by supporting education, research, publications, and legal efforts about the Constitution's right to privately own and possess firearms and the consequences of gun control.  Some SAF members reside in New Jersey and seek to receive digital firearms information published by Defense Distributed.  These SAF members seek these files because of their technical, scientific, artistic, and political value.  Some SAF members seek to publish their own digital firearms information by utilizing Defense Distributed's facilities.  Some also seek to republish Defense Distributed's files.

13.     Plaintiff Firearms Policy Coalition, Inc. ("FPC") is a 501(c)(4) non-profit membership organization incorporated under the laws of Delaware, with its principal place of business in Sacramento, California, and with members and supporters throughout the country.  FPC's primary mission is to protect and defend the Constitution of the United States and the People's rights, privileges, and immunities deeply rooted in this Nation's history and tradition through all lawful activities and programs, with a focus on the fundamental, individual right to keep and bear arms and freedom of speech.  FPC has participated in and funded First Amendment direct advocacy, grassroots advocacy, education, litigation, and other activities to defend and advance the freedom of speech.  FPC is a partner (with Plaintiff Firearms Policy Foundation) in K12speech.com, a website and initiative to

help students and parents understand and lawfully exercise their rights, among other things.  FPC is involved in the CodeIsFreeSpeech project.

14.    Plaintiff Firearms Policy Foundation ("FPF") is a 501(c)(3) non-profit membership organization incorporated under the laws of Delaware with its principal place of business in Sacramento, California, with members and supporters throughout the country. FPF's primary mission is to protect and defend the Constitution of the United States and the People's rights, privileges, and immunities deeply rooted in this Nation's history and tradition through all lawful charitable activities and programs, with a focus on the fundamental, individual right to keep and bear arms and freedom of speech.  FPF has participated in and funded First Amendment advocacy, education, litigation, and other charitable activities to defend and advance the freedom of speech.  FPF is a partner (with FPC) in K12speech.com, a website and initiative to help students and parents understand and lawfully exercise their rights, among other things.  FPF is involved in the CodeIsFreeSpeech project.

15.    Plaintiff The Calguns Foundation ("CGF") is a 501(c)(3) non-profit membership organization incorporated under the laws of California with its principal place of business in Sacramento, California.  CGF is dedicated to promoting education about California and federal firearm laws and protecting the civil rights of California gun owners.  CGF has participated in and funded First Amendment

education, litigation, and other charitable activities to defend and advance the freedom of speech.  CGF is involved in the CodeIsFreeSpeech project.

16.    Plaintiff California Association of Federal Firearms Licensees, Inc. ("CAL-FFL") is a 501(c)(6) non-profit membership organization incorporated under the laws of California with its principal place of business in Sacramento, California. CAL-FFL members include firearm dealers, training professionals, shooting ranges, collectors, gun owners, and others who participate in the firearms ecosystem. CAL-FFL's mission is to defend and advance the interests of its members and the firearms ecosystem without compromising individual or economic rights.  CAL-FFL has supported Second Amendment and First Amendment direct advocacy, grassroots, education, litigation, and other activities to defend and advance constitutional rights and a free market.    CAL-FFL is involved in the CodeIsFreeSpeech project.

17.    Plaintiff Brandon Combs resides outside of New Jersey.  He is a member of SAF.  He is also a member of "LEGIO," Defense Distributed's "political and technical fraternity."   He is the founder and president of Firearms Policy Coalition, Inc.; the founder and president of Firearms Policy Foundation; the secretary and executive director of The Calguns Foundation; and the founder and executive vice president of California Association of Federal Firearms Licensees, Inc.  He is the creator and developer of the CodeIsFreeSpeech.com website.

18.     Defendant Gurbir Grewal is the New Jersey Attorney General.  He is the state official responsible for all of the civil and criminal enforcement efforts at issue.  He is sued for declaratory and injunctive relief in his official capacity.

## JURISDICTION

19.     The Court has subject-matter jurisdiction over this action because it arises under the Constitution and laws of the United States, including the Civil Rights Act of 1871, 42 U.S.C. § 1983.  *See* 28 U.S.C. § 1331.  The Court also has subject-matter jurisdiction over this action because it is an action to redress the deprivation, under color of state law, of rights, privileges, and immunities secured by the Constitution and statutes providing for equal rights of citizens or of all persons within the jurisdiction of the United States.  *See* 28 U.S.C. § 1343.

20.     This Court has personal jurisdiction over Defendant Grewal.  General personal jurisdiction exists because Grewal resides and is domiciled in New Jersey.  Specific personal jurisdiction exists because this action arises out of and relates to conduct by which Grewal purposefully availed himself of the privilege of conducting activities within New Jersey.

21.     This action seeks declaratory, injunctive, and other relief pursuant to 28 U.S.C. § 1343, 28 U.S.C. § 1651(a), 28 U.S.C. § 2201, 28 U.S.C. § 2202, 42 U.S.C. § 1983, and 42 U.S.C. § 1988.

22.     There exists an active, justiciable controversy amongst the parties about whether Grewal's civil and criminal enforcement actions regarding the publication of digital firearms information violate the Plaintiffs' rights under the Constitution and other federal laws.

23.     Declaratory relief will resolve this controversy and eliminate the burden imposed on Plaintiffs' constitutional rights.

24.     A preliminary injunction preventing Grewal from carrying on the challenged activities will shield the Plaintiffs' constitutional rights from ongoing harm while this litigation is pending.

25.     A permanent injunction against Grewal will protect Plaintiffs' rights prospectively after final resolution of this matter.

## VENUE

26.     This Court constitutes a proper venue for this action because a substantial part of the events or omissions giving rise to the claim occurred here, *see* 28 U.S.C. § 1391(b)(2), because a substantial part of the property that is subject of the action is situated here, *see* 28 U.S.C. § 1391(b)(2), and because there is no district in which this action may otherwise be brought and the defendant is subject to personal jurisdiction here, *see* 28 U.S.C. § 1391(b)(3).

## FACTUAL ALLEGATIONS

### Digital Firearms Information

27.    This case concerns digital firearms information—*i.e.*, information about firearms and firearm components stored in computer files of various formats, including stereolithography (.stl) files, Initial Graphics Exchange Specification (.igs) files, SoLiDworks PaRT (.sldprt) files, SketchUp (.skp) files, Standard for the Exchange of Product Data ("STEP") (.stp) files, portable document format (.pdf) files, and DWG (.dwg) files.  These are sometimes referred to as computer-aided design ("CAD") files.

28.    Digital firearms information can be used to create digital two- and three-dimensional models of physical objects that describe their geometry.  These digital models serve many purposes other than fabrication.  They can be used to study an object's properties (such as structural strength and heat flow);  they can be used to render realistic object images for product visualization, and they can be used to conduct parametric modeling of a family of objects.

29.    Digital two- and three-dimensional models of physical objects can also be used as part of an object's fabrication process. But digital models do not fabricate objects.  People do.  For any given digital object design, object fabrication does not occur unless and until a person performs required prerequisites, such as interpreting the design, choosing suitable component materials, selecting an effective

manufacturing process, and executing the fabrication. Just as a .PDF file cannot print itself, edit itself, or display itself on screen, STEP files (and other varieties of CAD file) require object code to display or edit and a 3D printer to print.

### 2012-2013: Publication Begins

30.    For years, Defense Distributed has distributed CAD files and other digital information regarding firearms and firearm components. With respect to a given item, the digital firearms information that Defense Distributed distributes typically takes the form of stereolithography files about the item, Initial Graphics Exchange Specification files about the item, SoLiDworks PaRT files about the item, SketchUp files about the item, Standard for the Exchange of Product Data files about the item, diagrams of the item, renderings of the item, "read me" plain text files about the item's assembly methods, "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act, and software licenses. The digital firearms information that Defense Distributed published in these files may, in addition to other purposes, be used in the process of manufacturing firearms and firearm components.

31.    One way that Defense Distributed published its digital firearms information was via the internet. Specifically, Defense Distributed hosted files on a website—www.defcad.org and www.defcad.com (collectively referred to as "DEFCAD")—that made them freely available for visitors to download.

32.     From approximately December 2012 to May 2013, Defense Distributed published the following digital firearms information on DEFCAD for free download by the public: files concerning a single-shot firearm known as the "Liberator," files concerning a firearm receiver for AR-15 rifles, and files concerning a magazine for AR-15 rifles.  During this publication period, millions of downloads of Defense Distributed's digital firearms information occurred.

33.     Defense Distributed has also published its digital firearms information by hosting the files at a brick-and-mortar public library in digital formats that patrons can access via computer workstations at the library.  The public library that displayed Defense Distributed's publications is in Austin, Texas.

### *Defense Distributed I*: Publication Pauses

34.     "*Defense Distributed I*" refers to *Defense Distributed, et al. v. United States Department of State, et al.*, case number 1:15-CV-372-RP in the United States District Court for the Western District of Texas, Austin Division; case number 15-50759 in the United States Court of Appeals for the Fifth Circuit; and case number 18-50811 in the United States Court of Appeals for the Fifth Circuit.

35.      The plaintiffs in *Defense Distributed I* are Defense Distributed, SAF, and an individual SAF member, Conn Williamson.

36.     The defendants in *Defense Distributed I* are the United States Department of State, the Secretary of State, the State Department's Directorate of

Defense Trade Controls, the Acting Deputy Assistant Secretary of State for Defense Trade Controls in the Bureau of Political-Military Affairs, and the Acting Director of the Office of Defense Trade Controls Policy Division.

37.     The State Department administers and enforces the Arms Export Control Act of 1976, 22 U.S.C. ch. 39 ("the AECA"), and its primary implementing regulations, the International Traffic in Arms Regulations, 22 C.F.R. Parts 120-130 ("the ITAR").

38.     *Defense Distributed I* concerned the State Department's use of the AECA and ITAR regime to impose a prior restraint on public speech concerning certain technical firearms data.  For a time, the State Department took the position that Defense Distributed was required to obtain prior United States government approval before publishing certain technical data on the internet.  Specifically, the dispute in *Defense Distributed I* concerned four defined categories of Defense Distributed's digital firearms information: the "Published Files," the "Ghost Gunner Files," "CAD Files," and the "Other Files":

(a)     The "Published Files" category of *Defense Distributed I* Files consists of ten separate sets of computer files containing digital firearms information: stereolithography files about firearm components, Initial Graphics Exchange Specification files about firearm components, SoLiDworks PaRT files about

firearm components, SketchUp files about firearm components, Standard for the Exchange of Product Data files about firearm components, diagrams of firearm components, renderings, "read me" plain text files about firearm assembly methods, "read me" plain text files about the National Firearms Act and the Undetectable Firearms Act, and software licenses.

(b)    The "Ghost Gunner Files" category of *Defense Distributed I* Files consists of software, data files, project files, coding, and models containing technical information for a machine, named the "Ghost Gunner," that can be used to manufacture a variety of items, including gun parts.

(c)    The "CAD Files" category of *Defense Distributed I* Files consists of STEP (.stp) and stereolithography (.stl) files about a lower receiver to the AR-15 rifle.

(d)    The "Other Files" category of *Defense Distributed I* Files consists of files that contain technical information, to include design drawings, rendered images, written manufacturing instructions, and other technical information that Defense Distributed intends to post to public forums on the Internet; provided, however, that this category only extends insofar as

those files regard items that, as of June 29, 2018, were exclusively: (i) in Category I(a) of the United States Munitions List, as well as barrels and receivers covered by Category I(g) of the United States Munitions List that are components of such items; or (ii) items covered by Category I(h) of the United States Munitions List solely by reference to Category I(a), excluding Military Equipment.

Together, these four categories are referred to as the "*Defense Distributed I* Files."

39.   The *Defense Distributed I* plaintiffs challenged the State Department's enforcement of the AECA/ITAR regime vis-à-vis the *Defense Distributed I* Files. In particular, they challenged the State Department's actions as *ultra vires* conduct not authorized by the statutes and regulations at issue, and as violations of the First, Second, and Fifth Amendments of the Constitution.

40.   At a preliminary stage of the litigation, the district court denied plaintiffs' motion for a preliminary injunction. *Def. Distributed v. Dep't of State*, 121 F. Supp.3d 680 (W.D. Tex. 2015).  Interlocutory appellate proceedings left that preliminary decision undisturbed.  A divided Fifth Circuit panel affirmed the Court's preliminary decision.  *Def. Distributed v. Dep't of State*, 838 F.3d 451 (5th Cir. 2016).  Five judges dissented from the Fifth Circuit's denial of rehearing en banc.

*Def. Distributed v. Dep't of State*, 865 F.3d 211 (5th Cir. 2017).  The Supreme Court denied certiorari. *Def. Distributed v. Dep't of State*, 138 S. Ct. 638 (2018).

41.     After the interlocutory appeal concluded, the court in Defense *Distributed I* ordered the parties to negotiate.  The parties did so successfully and settled their dispute by contract.

42.     The *Defense Distributed I* settlement agreement is a contract memorialized by the "Settlement Agreement": a written document that all sides executed on June 29, 2018.  A copy of that instrument is attached to this complaint as Exhibit A.

43.     The Settlement Agreement obligates the parties to perform all of their obligations in good faith.  In particular, the Settlement Agreement obligates the State Department to do four key things with regard to the *Defense Distributed I* Files:

> (a)     Settlement Agreement Paragraph 1(a) requires the State Department to draft and fully pursue, to the extent authorized by law (including the Administrative Procedure Act), the publication in the Federal Register of a notice of proposed rulemaking and final rule, revising United States Munitions List ("USML") Category I to exclude the *Defense Distributed I* Files.
>
> (b)     Settlement Agreement Paragraph 1(b) requires the State Department to announce, while the above-referenced final rule is

in development, a temporary modification, consistent with ITAR, 22 C.F.R. § 126.2, of USML Category I to exclude the *Defense Distributed I* Files; and to publish the announcement on the Directorate of Defense Trade Controls website on or before July, 27, 2018.

(c)     Settlement Agreement Paragraph 1(c) requires the State Department to issue a license to the *Defense Distributed I* plaintiffs on or before July 27, 2018, signed by the Deputy Assistant Secretary for Defense Trade Controls, advising that the Published Files, Ghost Gunner Files, and CAD Files are approved for public release (i.e., unlimited distribution) in any form and are exempt from the export licensing requirements of the ITAR because they satisfy the criteria of 22 C.F.R. § 125.4(b)(13).

(d)     Settlement Agreement Paragraph 1(d) requires the State Department to acknowledge and agree that the temporary modification of USML Category I permits any United States person, to include Defense Distributed's customers and SAF's members, to access, discuss, use, reproduce, or otherwise benefit from the *Defense Distributed I* Files, and that the license issued

to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.

44.    Efforts to defeat the Settlement Agreement began on July 25, 2018—two days before the Settlement Agreement's compliance deadline for certain obligations.   Three gun control groups—the Brady Campaign to Prevent Gun Violence, Everytown for Gun Safety Action Fund, Inc., and Giffords—tried to intervene in *Defense Distributed I* and obtain an order temporarily restraining the Settlement Agreement's effectuation.

45.    The district court in *Defense Distributed I* rejected the gun control groups' effort to block the Settlement Agreement.   It denied the requests for intervention and injunctive relief.

46.    After the Settlement Agreement was executed, the State Department carried out its Settlement Agreement obligations in several key respects:

(a)    By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(a).  It published in the Federal Register a notice of proposed rulemaking revising USML Category I to exclude the *Defense Distributed I* Files.  *See* 83 Fed. Reg. 24,198 (May 24, 2018).

(b)    By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(b).  It made a temporary modification to USML Category I, pursuant to 22 C.F.R. § 126.2, to "exclude" the *Defense Distributed I* Files from Category I.    A copy of that instrument is attached to this complaint as Exhibit B.  By way of the Temporary Modification, the State Department authorized the distribution of the *Defense Distributed I* Files without any prior restraint.

(c)    By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(c).  It issued Defense Distributed a license—a letter issued by the State Department's Acting Deputy Assistant Secretary for the Directorate of Defense Trade Controls— authorizing the Defendants to publish the Published Files, Ghost Gunner Files, and CAD Files for "unlimited distribution."    A copy of that instrument is attached to this complaint as Exhibit C.

(d)    By July 27, 2018, the State Department had taken steps to comply with the obligation imposed by Settlement Agreement Paragraph 1(d).  It acknowledged and agreed that the temporary

modification permits any United States person to access, discuss, use, reproduce, or otherwise benefit from the Defense Distributed I Files; and that the license issued to the *Defense Distributed I* plaintiffs permits any such person to access, discuss, use, reproduce or otherwise benefit from the Published Files, Ghost Gunner Files, and CAD Files.  *See* Ex. A at 2.

47.    Grewal endeavors to make the United States Department of State and United States Department of Justice withdraw from the Settlement Agreement and not perform the federal government's obligations thereunder.  On July 30, 2018, he and other state officials issued a letter to United States Secretary of State Mike Pompeo and United States Attorney General Jeff Sessions urging the United States Department of State and United States Department of Justice to withdraw from the Settlement Agreement and rescind steps that had been taken to comply with it.

48.    In light of how the State Department agreed to resolve *Defense Distributed I*, Defense Distributed planned to resume publication of digital firearms information to DEFCAD on July 27, 2018.  Then Grewal began the censorship campaign that gives rise to this action.

### July 26, 2018: Grewal Issues a Cease-and-Desist Letter

49.    On July 26, 2018, Grewal issued Defense Distributed a formal cease-and-desist letter.  A copy is attached to this complaint as Exhibit D.

50.    Grewal's July 26, 2018, cease-and-desist letter commanded Defense Distributed to cease publishing its digital firearms information: "You are directed to cease and desist from publishing printable-gun computer files for use by New Jersey residents."   It repeatedly declared Defense Distributed's publication of digital firearms information to be a violation of New Jersey law.  It said that publication "violates New Jersey's public nuisance and negligence laws."   It said that publication "violates our public nuisance law."  It said that publication "constitute[s] a public nuisance."  It said that publication "is negligent."  It threatened to punish Defense Distributed for publishing any more digital firearms information: "If you do not halt your efforts to proceed with publication, I will bring legal action against your company before August 1, 2018."  It ended by delivering another command backed by a threat of punishment: "As the chief law enforcement officer for New Jersey, I demand that you halt publication of the printable-gun computer files. Should you fail to comply with this letter, my Office will initiate legal action barring you from publishing these files before August 1, 2018."

51.    On July 26, 2018, after sending the cease-and-desist letter, Grewal issued a press release reiterating the threat: "Attorney General Grewal threatened Defense Distributed with 'legal action' if it fails to comply with his demand."  The press release also took the position that "[p]osting this material online is no different than driving to New Jersey and handing out hard-copy files on any street corner."

52.     On July 27, 2018, Defense Distributed responded to Grewal's July 26, 2018, cease-and-desist letter with a letter of its own.  The response letter explained that "all actions contemplated by Defense Distributed are fully protected by the First Amendment," and that the Attorney General's "attempts to prevent such action constitute an unconstitutional prior restraint and otherwise violate the United States Constitution."  It also explained that Defense Distributed would attempt to restrict files made available on the internet to prevent download within New Jersey.  Finally, it demanded that General withdraw his cease-and-desist command.  He did not.

### July 27, 2018: Publication Resumes

53.     On July 27, 2018, Defense Distributed resumed publication of digital firearms information via the internet by making its computer files available for download via DEFCAD.

54.     The files published at this time consisted of ten distinct subsets of CAD files, including the Liberator files.  With the exception of the Liberator CAD files, the other files posted at this time were created by persons other than Defense Distributed and had been posted on the internet by persons other than Defense Distributed before Defense Distributed republished them on DEFCAD.

55.     In addition to its actual publications via the internet, Defense Distributed offered and advertised its distribution of digital firearms information to potential recipients.  These efforts include advertisements and offers on DEFCAD

itself, participation in trade shows, e-mail advertisements, and other media advertising efforts.

56.     During this publication period, Defense Distributed's files were downloaded thousands of times.

### July 30, 2018: *Defense Distributed II*

57.     By July 30, 2018, Grewal still had not withdrawn the cease-and-desist letter's censorship command.  So on that same date, Defense Distributed and the Second Amendment Foundation sued Grewal and others in an action styled *Defense Distributed et al. v. Grewal et al.*, No. 1:18-cv-637-RP (W.D. Tex.) (hereinafter "*Defense Distributed II*").

58.     In *Defense Distributed II*, Defense Distributed and SAF claimed that Grewal's cease-and-desist letter was an unconstitutional speech restraint.  They sought an injunction against Grewal preventing further constitutional violations.

59.     Grewal never submitted to the jurisdiction of the court in *Defense Distributed II*.  Instead, he took action on three other fronts.

### July 30, 2018: Grewal Targets Defense Distributed's Service Providers

60.     On July 30, 2018, Grewal took coercive action against Defense Distributed by targeting its internet service providers.

61.    DreamHost is a company that contracted to provide internet security services for Defense Distributed.  DreamHost's Acceptable Use Policy formed part of the contract between Defense Distributed and DreamHost.

62.    On July 30, 2018, Grewal sent a letter to DreamHost.  A copy is attached to this complaint as Exhibit E.

63.    Grewal's July 30, 2018, letter to DreamHost attempted to make DreamHost terminate its provision of services to Defense Distributed.  It declared that, by planning to publish digital firearms files on a website, "Defense Distributed is plainly planning to use the Defcad Website in a way that violates DreamHost's Acceptable Use Policy."  The letter declared that Defense Distributed's publication of digital firearms files violated New Jersey law.  It said that "posting them violates New Jersey's public nuisance and negligence laws."  It said that "posting them would . . . be illegal."

64.    On July 30, 2018, Grewal sent a copy of the July 26, 2018, cease-and-desist letter to Cloudflare, Inc.'s legal department.  Cloudflare, Inc., provides internet security services for Defense Distributed.

## July 30, 2018: Grewal Sues Defense Distributed

65.    On July 30, 2018, Grewal initiated a civil lawsuit against Defense Distributed in New Jersey state court.  That action sought an injunction against Defense Distributed stopping its publication of digital firearms information.  The

case was later removed to federal court, docketed as *Grewal v. Defense Distributed, et al.*, No. 12-cv-13248-SDW-LDW (D.N.J.), and has since been administratively terminated.

66.     On July 30, 2018, Grewal and several other state officials sued the State Department, Defense Distributed, SAF, and Conn Williamson in a lawsuit that is currently docketed in the United States District Court for the Western District of Washington as *State of Washington et al., v. United States Department of State et al.*, No. 2:18-cv-1115-RSL (hereinafter "the APA Action").  The APA Action asserts Administrative Procedure Act claims for injunctive relief against the State Department's "temporary modification" and its approval of the *Defense Distributed I* Files for public release.  It does not assert any claims whatsoever against Defense Distributed or SAF (or Conn Williamson).

67.     On July 31, 2018, the APA Action's plaintiffs obtained a temporary restraining order against the State Department: "The federal government defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued."

68.     On August 27, 2018, the APA Action's plaintiffs obtained a preliminary injunction that mirrored the TRO: "The federal defendants and all of their respective officers, agents, and employees are hereby enjoined from implementing or enforcing the 'Temporary Modification of Category I of the United States Munitions List' and the letter to Cody R. Wilson, Defense Distributed, and the Second Amendment Foundation issued by the U.S. Department of State on July 27, 2018, and shall preserve the status quo ex ante as if the modification had not occurred and the letter had not been issued until further order of the Court."

**August 27, 2018: Defense Distributed Publishes via Mail**

69.     For Defense Distributed, the online publication period that began on July 27 lasted until July 31, 2018.  After Grewal refused to withdraw the cease and-desist letter, after Grewal used the letter to attack Defense Distributed's service providers, and after Grewal sued Defense Distributed in two separate courts, Defense Distributed stopped making its files available to download from DEFCAD. But even so, Defense Distributed did not stop publishing its files altogether.

70.     During the APA Action's preliminary injunction hearing in August, counsel for the State Department stated that "even if the Court were to grant [New Jersey and the other plaintiff states] every ounce of relief that they seek in this case, Defense Distributed could still mail every American citizen in the country the files that are at issue here."  At that same hearing, counsel for New Jersey agreed that,

apart from internet publication, Defense Distributed had a right to distribute digital firearms information via the mail or otherwise "hand them around domestically" without violating any law.  Accordingly, Defense Distributed did so.

71.    From approximately August 27, 2018, to November 2, 2018, Defense Distributed published its digital firearms information via the mail by making its computer files available for shipment on physical storage devices.  To do so, Defense Distributed sold digital firearms information by using an ecommerce platform on DEFCAD to facilitate the transaction and using the U.S. Postal Service as its means of delivering the information.  After customers entered an order using DEFCAD's online ecommerce platform, Defense Distributed put the information on a USB drive or SD card and mailed the drive or card to customers via the U.S. Postal Service.

72.    In addition to its publications via the mail, Defense Distributed offered and advertised its distribution of digital firearms information to potential recipients. These efforts include advertisements and offers on DEFCAD itself, participation in trade shows, e-mail advertisements, and other media advertising efforts.

73.    For anyone dealing with digital firearms information, the postal mail alternative to internet publication is not an adequate substitute.  Internet communication of and about these kinds of files is essential for many reasons.  Most importantly, internet communication of and about these files is essential because it enables the collaborative development of digital firearms information in the public

forum now known as the "Open Source Community"—a loosely organized, ad-hoc community of contributors from all over the world who share an interest in meeting a common need, ranging from minor projects to huge developments, which they carry out using a high-performance collaborative development environment, allowing the organizational scheme and processes to emerge over time.

74.    Although Defense Distributed ceased making its files available to download from DEFCAD on July 31, 2018, others did not.  During and after the Defense Distributed publication period of July 27, 2018 to July 31, 2018, independent publishers unaffiliated with Defense Distributed republished what Defense Distributed had been supplying for download on DEFCAD, including the *Defense Distributed I* Shared Files and files like them.

75.    Many independent republishers of Defense Distributed's information have not ceased publication.  To this day, they continue to publish *Defense Distributed I* Files and files like them to generally accessible internet websites.  Such files can be located by a simple Google search.  One such republisher is CodeIsFreeSpeech.com, a website which launched and became publicly accessible on the internet on July 31, 2018.

76.    CodeIsFreeSpeech.com ceased publication of Defense Distributed's CAD files and files like them because Grewal threatens to punish any publisher of this information with both civil and criminal enforcement actions.

**Senate Bill 2645 § 3(*l*)(2)**

77.    On November 8, 2018, New Jersey Governor Phil Murphy signed

Senate Bill 2465 into law.  S. 2465, 218th Leg., Reg. Sess. (N.J. 2018) (as signed by

Gov. Philip Murphy, Nov. 8, 2018) (codified as N.J. Stat 2C:39-9) (hereinafter "SB

2465").  Section 3(*l*)(2) of the bill creates the following speech crime:

> *l*. Manufacturing or facilitating the manufacture of a firearm using a three
> dimensional printer. In addition to any other criminal penalties provided under
> law it is a third degree crime for:
>
>     . . .
>
>     (2) a person to distribute by any means, including the Internet, to a
>     person in New Jersey who is not registered or licensed as a
>     manufacturer as provided in chapter 58 of Title 2C of the New Jersey
>     Statutes, digital instructions in the form of computer-aided design files
>     or other code or instructions stored and displayed in electronic format
>     as a digital model that may be used to program a three-dimensional
>     printer to manufacture or produce a firearm, firearm receiver,
>     magazine, or firearm component.
>
> As used in this subsection: "three-dimensional printer" means a computer or
> computer-driven machine or device capable of producing a three-dimensional
> object from a digital model; and "distribute" means to sell, or to manufacture,
> give, provide, lend, trade, mail, deliver, publish, circulate, disseminate,
> present, exhibit, display, share, advertise, offer, or make available via the
> Internet or by any other means, whether for pecuniary gain or not, and
> includes an agreement or attempt to distribute.

SB  2465  §  3(*l*)(2)  (codified  as  N.J.  Stat  2C:39-9(*l*)(2)).   A  conviction  entails

imprisonment for three to ten years, *see* N.J. Stat. 2C:43 6(a)(3); N.J. Stat. 2C:43-

7(a)(4), and a fine of up to $15,000, *see* N.J. Stat. 2C:43-3(b)(1).

78.     Senate Bill 2465 was enacted for the purpose of discriminating against and censoring Defense Distributed and SAF's members, in particular.

79.     At the Senate Bill 2465 signing ceremony, New Jersey Governor Phil Murphy linked the bill to the cease-and-desist letter that Grewal issued to Defense Distributed:

> The Attorney General has been a national leader in this fight. Last June he issued *a cease and desist letter to the companies that deal in ghost guns, saying explicitly that New Jersey is off limits to them*. He joined likeminded attorneys general in successfully stopping in federal court the release of blueprints that would have allowed anyone with a computer and access to a 3D printer the ability to build their own, untraceable firearm. This law that we're going to sign today further backs up his efforts, and I thank him for all that he has done. Thank you, Gurbir.

80.     At the Senate Bill 2465 signing ceremony, Grewal said that the bill was a "stronger tool[]" that he could use to "stop" Defense Distributed founder "Cody Wilson" and "his supporters" from "release[ing] these codes online":

> [T]oday, we're . . . closing dangerous loopholes in our existing laws - loopholes that some companies and individuals have tried to exploit. This summer, for example, *a Texan named Cody Wilson* promised to publicly release computer files that would let anyone, even terrorists, felons, and domestic abusers, create firearms using a 3D printer. . . . And so back in July, *we successfully challenged Cody Wilson* in court. We obtained legal orders that temporarily halted the release of these codes. But *his supporters are not relenting, they're still trying to release these codes online*. And so it's clear that we need stronger tools to stop them . . . tools like the legislation crafted by Senator Cryan and that Governor Murphy is signing today.

81.     At the Senate Bill 2465 signing ceremony, Grewal said that Senate Bill 2465 was "right on point" to "address[] printable guns or ghost guns" and that it was enacted "to stop the next Cody Wilson, to fight the ghost gun industry":

> [E]arlier this year, we went after some of the biggest players in this industry.  We told them that they were wrong on the law.  We told them that they were, in fact, breaking the law here in New Jersey by selling those weapons here.  And we told them to stop.  And some of them complied.  But others did not, and so those investigations are ongoing at this time.

> But in both of those cases, ***bad actors were trying to take advantage of loopholes because no law squarely addressed printable guns or ghost guns***.  So we had to rely on other laws, like our public nuisance law or our assault weapons law, to fight back. Now don't get me wrong:  Those laws are important and they're great tools, and they helped us stop the spread of these dangerous, untraceable weapons.  ***But a law right on point strengthens law enforcement's hand even more.***

> And so today, there is no question that printable guns and ghost guns are deadly, and selling them in New Jersey is illegal.  And that's why I'm so proud to support Governor Murphy's efforts and the legislature's efforts to close those loopholes, ***to stop the next Cody Wilson, to fight the ghost gun industry***, and to regulate the next dangerous gun models before they spread into our communities.

82.     At the Senate Bill 2465 signing ceremony, Grewal threatened to "come after" "anyone who is contemplating making a printable gun" and "the next ghost gun company":

> And here's my message today ***to anyone who is contemplating making a printable gun or to the next ghost gun company*** trying to sell their dangerous weapons into New Jersey: Your products are unlawful and if your break our laws ***we will come after you***.  And to anyone else who thinks of trying to find other loopholes

in our laws, especially to sell dangerous firearms, we're just as committed to ***stopping each of you***.

83.     A press release further touted Grewal's enforcement threats.

84.     Defense Distributed knew of  Senate Bill 2465's passage on the day that it became law and witnessed the signing ceremony.  At that time, Defense Distributed reasonably feared that Grewal would commence enforcement of the new law against Defense Distributed, its officers, its employees, and/or its agents at any moment.

85.     Because of Grewal's threatened enforcement of the Section 3(*l*)(2) speech crime, Defense Distributed ceased offering, advertising, selling, or otherwise distributing digital firearms information on DEFCAD and all distributions of digital firearms information via DEFCAD ceased.  This involved blocking all public access to DEFCAD and halting all shipments of digital firearms information via the U.S. Postal Service.

86.     Because of Grewal's effort to criminalize and otherwise censor the distribution of digital firearms information that "may be used" to program a 3D printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component, Defense Distributed has incurred and continues to incur the burden of altering its business practices to avoid the risk that Grewal will prosecute Defense Distributed and/or Defense Distributed's officers, employees, and/or agents for

information received or information that is merely viewed by a person in New Jersey.

87.     Because of Grewal's efforts to criminalize and otherwise censor the distribution of digital firearms information, Defense Distributed refrains from engaging in the following constitutionally protected activities that it would otherwise conduct lawfully:

a.     Posting digital firearms information on the DEFCAD website for free download by the public;

b.     Selling digital firearms information to persons in New Jersey on the DEFCAD website for shipment on USB drive or SD cards mailed via the U.S. Postal Service;

c.     Advertising its digital firearms information offerings on the DEFCAD website;

d.     Participating in trade shows where Defense Distributed is unable to determine the state of residence of attendees that may view its displays and other advertisements;

e.     Sending advertisements via email lists where Defense Distributed is unable to determine the states of residence of the recipients and has no way of knowing in which states recipients will be when the receive emails; and

f.     Participating in any national advertising network, radio
       communication, televised media, and other media that may
       advertise and promote Plaintiffs' respective missions.

### CodeIsFreeSpeech.com

88.    The CodeIsFreeSpeech ("CIFS") project, located online at
CodeIsFreeSpeech.com, is a project of Firearms Policy Coalition, Inc., Firearms
Policy Foundation, The Calguns Foundation, California Association of Federal
Firearms Licensees, Inc., and individuals—including Brandon Combs—who are
passionate about the Constitution and individual liberties.

89.    CodeIsFreeSpeech.com is a publicly available website for the
publication and republication of truthful, non-misleading, non-commercial political
speech and information that is protected under the United States Constitution.  Its
purpose is to allow people to share knowledge and empower them to exercise their
fundamental, individual rights.  It was created and developed during the week of
July 22, 2018—long before the State enacted Senate Bill 2465.  On or about August
2, 2018, CodeIsFreeSpeech.com began to utilize Cloudflare services.

90.    CodeIsFreeSpeech.com launched and became publicly accessible on
the internet on July 31, 2018.  From its launch until February 2, 2019,
CodeIsFreeSpeech.com published (made available for direct download) digital
instructions in the form of computer-aided design files or other code or instructions

stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component.  Until February 2, 2019, no substantive changes were made to CodeIsFreeSpeech.com since it was launched.

91.     In particular, during that period of time (July 31, 2018, to February 2, 2019), CodeIsFreeSpeech.com republished sets of digital firearms information that had originally been published by Defense Distributed.  The republished digital firearms information included, among other things, Defense Distributed's files concerning the "Liberator" firearm.

92.     Because CodeIsFreeSpeech.com did not have or require any login or other account creation that would personally identify visitors, after November 8, 2018, persons in New Jersey who are not registered or licensed as a manufacturer as provided in chapter 58 of Title 2C of the New Jersey Statutes may have acquired digital instructions in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component from CodeIsFreeSpeech.com.

93.     CodeIsFreeSpeech has always contained a notice to visitors that states:

CodeIsFreeSpeech.com and its contents are for education and information purposes only. Self-manufacturing or assembling a firearm may require a permit or license. Some people may be prohibited under federal, state, and/or local laws. Consult a licensed attorney for legal advice.

94. At approximately 12:50 p.m. Pacific Time on February 2, 2019, a takedown demand that was purportedly sent by the New Jersey Office of the Attorney General to Cloudflare was reported to Brandon Combs through an email originating from "Cloudflare Abuse". As reported to Combs by Cloudflare, the takedown demand stated:

> This is a notice to Cloudflare that you are serving files consisting of 3D printable firearms in violation of NJ Stat. Ann. § 2C:39-9 3(*l*)(2). These files are accessible via Cloudflare's New Jersey datacenter. You shall delete all files described within 24 hours or we will be forced to press charges in order to preserve the safety of the citizens of New Jersey.

As reported to Combs by Cloudflare, the takedown demand stated, the "Reported URLs" in the takedown demand were as follows:

https://codeisfreespeech.com/code_files/liberator_complete.zip

https://codeisfreespeech.com/code_files/ar15_lower_machining/instructions.

pdf

https://codeisfreespeech.com/code_files/ar15_80_percent_lower.zip

https://codeisfreespeech.com/code_files/ar15_complete.zip

https://codeisfreespeech.com/code_files/ar10_complete.zip

https://codeisfreespeech.com/code_files/ruger_10-22_complete.zip

https://codeisfreespeech.com/code_files/1911_complete.zip

https://codeisfreespeech.com/code_files/vz58_complete.zip

https://codeisfreespeech.com/code_files/beretta_92fs_complete.zip

https://codeisfreespeech.com/checksum.txt

https://codeisfreespeech.com/gun.png

https://codeisfreespeech.com/

95.     Because of the takedown demand that Cloudflare reported, at approximately 1:12 p.m. Pacific Time on February 2, 2019, CodeIsFreeSpeech.com made the digitial firearms information that it had previously published inaccessible to anyone who browsed to or otherwise attempted to access those files.

96.     On February 12, 2012, Grewal (through counsel) filed a letter with this Court.  The letter took the position that the February 2, 2019 takedown notice Cloudflare had reported as having been issued by Grewal was not, in fact, issued by Grewal.  The letter did not mention any of Grewal's prior civil or criminal threats.

97.     On February 14, 2019, Plaintiffs' counsel sent Grewal's counsel a responsive letter.  The letter noted that Grewal had *never* disclaimed any of his civil enforcement threats and *never* disclaimed the criminal enforcement threats posed at the SB 2465 signing ceremony.  So it posed a direct inquiry: "If Defense Distributed, the Second Amendment Foundation, or CodeIsFreeSpeech.com publish the computer files at issue, will Attorney General Gurbir Grewal bring civil or criminal enforcement actions against them for it?":

> The letter you filed with the Court on Tuesday disclaimed *one* of the threats that had apparently been made by Attorney General Grewal against the Plaintiffs. But the letter did *not* disclaim any of the other threats that have been made against the Plaintiffs by the Attorney General.  So, we pose the case's

most immediate question in no uncertain terms: If Defense Distributed, the Second Amendment Foundation, or CodeIsFreeSpeech.com publish the computer files at issue, will Attorney General Gurbir Grewal bring civil or criminal enforcement actions against them for it?

Currently, every account of the Attorney General's actions since July 2018 establishes that he will, indeed, punish the Plaintiffs for sharing these computer files by deploying the civil and criminal legal tools at his disposal. In the event that the files are published again, he threatens to sue the Plaintiffs in civil actions to enjoin the speech. No letter disclaims that. In the event that the files are published again, he threatens to coerce the Plaintiffs' service providers to shut down the speech. No letter disclaims that. Worst of all, in the event that the files are published again, he threatens to use prosecution under the speech crime to jail the Plaintiffs. No letter disclaims that. Hence, the threats warranting a preliminary injunction against the Attorney General are as real and imminent as ever.

At the *Defense Distributed II* preliminary injunction hearing before the United States District Court for the Western District of Texas, we asked the Attorney General whether he still intends to stop publication of the files at issue via the mail. No disclaimer occurred. He equivocated, which does nothing but continue the infliction of censorship's irreparable harms upon the Plaintiffs.

To avoid a preliminary injunction here, the Attorney General would need to unequivocally disclaim all of his current threats. In particular, he would need to take the position that New Jersey Statute 2C:39-9(*l*)(2) will not be enforced against the Plaintiffs as punishment for publishing the files at issue via the internet or via the mail. Will he do so? Likewise for the civil punishments he threatens (e.g., civil lawsuits and cease-and-desist orders). Will he now unequivocally disclaim these threats?

98.    On Feburary 19, 2019, Grewal's counsel responded by e-mailing Plaintiffs' counsel.  As to the civil enforcement threats, the Feburary 19 response said nothing at all.  As to the criminal enforcement threats, the Feburary 19 response said this: "We cannot, of course, provide any generalized assurances one way or the

other regarding the enforcement of Section 3(*l*)(2) if your clients intend to violate the plain terms of the statute."

99.     Thus, to this day, the threat posed to the Plaintiffs by Grewal's civil and criminal enforcement efforts remains in full force.  The cease and desist letter he sent to issued to Defense Distributed on July 26, 2018 has never been disclaimed. The coercive actions he took against Defense Distributed's service providers have never been disclaimed.  The civil lawsuits he filed against Defense Distributed, Cody Wilson, SAF, and others engaged in the speech at issue have never been disclaimed. And the unequivocal threat he issued at the SB 2465 signing ceremony—to "stop" Defense Distributed founder "Cody Wilson" and "his supporters" from "release[ing] these codes online" and to "come after you"—have never been disclaimed.

100.   But for Grewal's decision to continue threatening both civil and criminal enforcement actions against anyone that publishes the files at issue, CodeIsFreeSpeech.com would resume online publication of the files that it had published from July 31, 2018, to February 2, 2019 to persons in the State of New Jersey.

**Attorney General Gurbir Grewal's Actions are Illegal**

101.   Grewal's conduct subjects the Plaintiffs to an unconstitutional abridgement of First Amendment freedoms; an unconstitutional infringement of Second Amendment rights; an unconstitutional violation of the right to equal

protection of the laws; an unconstitutional deprivation of liberty and property without due process of law; an unconstitutional violation of the Commerce Clause; and regulation by way of state laws that are preempted by federal law.

102. Grewal denies Defense Distributed's right to publish digital firearms information in the form of computer files. He denies Defense Distributed's right to do so via the internet; he denies Defense Distributed's right to do so via the mail; he denies Defense Distributed's right to do so via brick-and-mortar public libraries; and he denies Defense Distributed's right to do so via any other means of publication. He also denies Defense Distributed's right to conduct secondary activities that accompany all of these publication methods, such as advertising.

103. Grewal denies SAF's right to receive, utilize, and republish digital firearms information in the form of computer files. He denies SAF's right to receive and republish files so via the internet; he denies SAF's right to do so via the mail; he denies SAF's right to do so via brick-and-mortar public libraries; and he denies SAF's right to so via any other means of publication. He also denies SAF's right to conduct secondary activities that accompany all of these publication methods, such as advertising.

104. Grewal denies FPC, FPF, CGF, CAL-FFL, and Brandon Combs' right to receive, utilize, and republish digital firearms information in the form of computer files. He denies their right to receive and republish files so via the internet; he denies

their right to do so via the mail; he denies their right to do so via brick-and-mortar public libraries; and he denies their right to so via any other means of publication. He also denies their right to conduct secondary activities that accompany all of these publication methods, such as advertising. And he denies their members' rights to access and republish digital firearms information in the form of computer files.

105.   In each of these respects, Grewal acts knowingly, intentionally, and selectively.  Many similarly situated people engage in the activities for which the Plaintiffs are being persecuted.  But Grewal does not target them as he targets the Plaintiffs.

### Plaintiffs Have Suffered—and Continue to Suffer—Irreparable Harm

106.   In the past, Grewal's illegal conduct irreparably harmed the Plaintiffs by abridging rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and other federal law.

107.   In the past, Grewal's illegal conduct irreparably harmed the Plaintiffs by causing them to refrain from publishing digital firearms information they have a right to publish, by causing them to refrain from receiving digital firearms information they have a right to receive, by causing them to refrain from republish firearms information they have a right to republish, and by chilling their exercise of First Amendment rights.

108.    At present, Grewal's illegal conduct irreparably harms the Plaintiffs by abridging rights guaranteed by the First Amendment, Second Amendment, Fourteenth Amendment, and other federal law.

109.    At present, Grewal's illegal conduct irreparably harms the Plaintiffs by causing them to refrain from publishing digital firearms information they have a right to publish, by causing them to refrain from receiving digital firearms information they have a right to receive, by causing them to refrain from republishing firearms information they have a right to republish, and by chilling their exercise of First Amendment rights.

110.    Absent relief from this Court, Grewal will continue to engage in the illegal conduct that has caused the Plaintiffs irreparable harm in the past and is causing the Plaintiffs irreparable harm at present.

111.    The Plaintiffs refrain from publishing digital firearms information via the internet for fear of being punished by Grewal. Once that threat ceases, Defense Distributed will resume engaging in this speech; SAF's members will resume receiving it, benefitting from it, and republishing it; and FPC, FPF, CGF, CAL-FFL, and Brandon Combs will resume receiving, benefitting from, and republishing it.

112.  Defense Distributed refrains from distributing digital firearms information via the mail for fear of being punished by Grewal. Once that threat ceases, Defense Distributed will resume engaging in this speech; SAF's members

will resume receiving it, benefitting from it, and republishing it; and FPC, FPF, CGF, CAL-FFL, and Brandon Combs will resume receiving, benefitting from, and republishing it.

113.   Defense Distributed refrains from offering and advertising its digital firearms information to persons in New Jersey for fear of being punished by Grewal. Once that threat ceases, Defense Distributed will resume making offers and advertisements to persons in New Jersey about the speech at issue.

114.   SAF members have received and republished Defense Distributed's digital firearms information in the past.  But now they refrain from receiving and republishing Defense Distributed's files for fear of being prosecuted by states like New Jersey.  Once those threats cease, SAF's members will continue to receive and republish information from Defense Distributed.

115.   FPC, FPF, CGF, CAL-FFL, and Brandon Combs have received and republished Defense Distributed's digital firearms information in the past.  But now they refrain from receiving and republishing Defense Distributed's files for fear of being prosecuted by New Jersey and states like it.  Once those threats cease, FPC, FPF, CGF, CAL-FFL, and Brandon Combs will resume receiving, benefitting from, and republishing the digitial firearms information Defense Distributed published.

116.   Because of Grewal's evident intention of enforcing Section 3(*l*)(2) against the Plaintiffs, the Plaintiffs have refrained from engaging in speech that Constitution and other federal law guarantees their right to engage in.

117.   If Defense Distributed publishes its digital firearms information via the internet by making its computer files available for download on a website, Grewal will enforce Section 3(*l*)(2) against Defense Distributed.  If SAF members publish or republish Defense Distributed's computer files via the internet by making them available for download on a website, Grewal will enforce Section 3(*l*)(2) against them.  If FPC, FPF, CGF, CAL-FFL, and Brandon Combs publish or republish Defense Distributed's computer files via the internet by making them available for download on a website, Grewal will enforce Section 3(*l*)(2) against them.

118.   If Defense Distributed publishes its digital firearms information via the mail by making its computer files available for shipment on physical storage devices to persons in New Jersey, Grewal will enforce Section 3(*l*)(2) against Defense Distributed.  Likewise, if SAF members make Defense Distributed's computer files available for shipment on physical storage devices to persons in New Jersey, Grewal will enforce Section 3(*l*)(2) against them.  Finally, if FPC, FPF, CGF, CAL-FFL, and Brandon Combs make Defense Distributed's computer files available for shipment on physical storage devices to persons in New Jersey, Grewal will enforce Section 3(*l*)(2) against them.

119.    If Defense Distributed engages in advertising and offering activities regarding its files to persons in New Jersey, Grewal will enforce Section 3(*l*)(2) against Defense Distributed.  Likewise, if SAF members engage in advertising and offering activities regarding Defense Distributed's files to persons in New Jersey, Grewal will enforce Section 3(*l*)(2) against them.  Finally, if FPC, FPF, CGF, CAL-FFL, and Brandon Combs engage in advertising and offering activities regarding Defense Distributed files to persons in New Jersey, Grewal will enforce Section 3(*l*)(2) against them.

120.    The Liberator files that Defense Distributed published to DEFCAD in both 2012-2013 and 2018 exemplify the kind of digital firearms information that Defense Distributed deals with and intends to develop and distribute in the future.

## CLAIMS FOR RELIEF

### Count One

### 42 U.S.C. § 1983—Freedom of Speech and of the Press

121.    The Plaintiffs incorporate the preceding paragraphs.

122.    The First Amendment of the Constitution of the United States forbids government actions abridging the freedom of speech or of the press.  It applies to Attorney General Gurbir Grewal by virtue of the Fourteenth Amendment of the Constitution of the United States.

123.   Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to an unconstitutional abridgement of First Amendment freedoms.

124.   Grewal violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to an unconstitutional abridgement of First Amendment freedoms.

125.   Grewal's conduct violates the First Amendment doctrine regarding prior restraints.  *See, e.g.*, *Bantam Books, Inc. v. Sullivan*, 372 U.S. 58 (1963). Grewal's conduct constitutes a prior restraint of expression; as such, it is an unconstitutional abridgement of First Amendment's freedoms because Grewal cannot carry the heavy burden of justifying a prior restraint and because the prior restraint does not operate under sufficient judicial superintendence.

126.   Grewal's conduct violates the First Amendment doctrine regarding content based speech restrictions.  *See, e.g.*, *Reed v. Town of Gilbert, Ariz.*, 135 S. Ct. 2218 (2015).  Grewal's conduct imposes content-based speech restrictions; as such, the restrictions are an unconstitutional abridgement of First Amendment's freedoms because they do not serve a compelling governmental interest and are not narrowly drawn to serve any such interest.

127.   Grewal's conduct violates the First Amendment doctrine regarding content neutral speech restrictions.  *See, e.g.*, *McCullen v. Coakley*, 134 S. Ct. 2518

(2014).  Even if Grewal's conduct is deemed to impose content-neutral speech restrictions, it is an unconstitutional abridgement of First Amendment's freedoms because it does not serve a significant governmental interest and is not narrowly drawn to serve any such interest.

128.   Grewal's conduct violates the First Amendment doctrine regarding overbreadth. *See, e.g.*, *City of Houston, Tex. v. Hill*, 482 U.S. 451 (1987).  Grewal's conduct forbids a substantial amount of constitutionally protected speech and is not narrowly tailored to prohibit only constitutionally unprotected speech; as such, it is an unconstitutional abridgement of First Amendment's freedoms.

129.   In each of these respects, Grewal's conduct results in an unconstitutional abridgement of First Amendment freedoms both facially and as applied to these circumstances.

130.   Grewal's conduct proximately caused damages to the Plaintiffs, to the persons with whom the Plaintiffs have communicated, to the persons who desire to communicate with the Plaintiffs, and to other persons wishing to engage in similar communications.  The damages include, but are not limited to, the loss of First Amendment rights, the chilling effect on conduct protected by the First Amendment, and the substantial time and resources expended in defense of these rights.

131.   The Plaintiffs are therefore entitled to a judgment against Grewal awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

## Count Two

## 42 U.S.C. § 1983—Right to Keep and Bear Arms

132.   The Plaintiffs incorporate the preceding paragraphs.

133.   The Second Amendment of the Constitution of the United States forbids laws abridging the individual right to keep and bear Arms.  It applies to Grewal in his official capacity by virtue of the Fourteenth Amendment of the Constitution of the United States.

134.   Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to an unconstitutional abridgement of Second Amendment rights.

135.   Grewal additionally violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to an unconstitutional abridgement of Second Amendment rights.

136.   Grewal's conduct violates the individual Second Amendment right to keep and bear Arms.  *See District of Columbia v. Heller*, 554 U.S. 570, 627 (2008). Grewal's conduct infringes the individual right to make and acquire Arms, which is

part and parcel of the right to keep and bear Arms; as such, it is an unconstitutional abridgement of Second Amendment rights.

137. In each of these respects, Grewal's conduct constitutes an unconstitutional abridgement of Second Amendment rights both facially and as applied to these circumstances.

138. Grewal's conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others. The damages include, but are not limited to, the loss of Second Amendment rights, the chilling effect on conduct protected by the Second Amendment, and the substantial time and resources expended in defense of these rights.

139. The Plaintiffs are therefore entitled to a judgment against Grewal awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

## Count Three

## 42 U.S.C. § 1983—Equal Protection

140. The Plaintiffs incorporate the preceding paragraphs.

141. The Equal Protection Clause of the Fourteenth Amendment of the Constitution of the United States forbids the several States from denying to any person within their jurisdictions the equal protection of the laws. It applies to Grewal in his official capacity.

142.   Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to an unconstitutional violation of the Equal Protection Clause.

143.   Grewal additionally violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to an unconstitutional violation of the Equal Protection Clause.

144.   Grewal's conduct violates the Equal Protection Clause's doctrine regarding selective enforcement.  *See, e.g.*, *Whren v. United States*, 517 U.S. 806 (1996).  Grewal took action against Defense Distributed—but not similarly situated persons engaged in publication of the Defense Distributed I Files—because Grewal disagrees with the content of Defense Distributed's constitutionally protected speech and because Grewal dislikes the persons involved in the speech; as such, Grewal's conduct violates the Plaintiffs' right to the equal protection of the laws.

145.   In each of these respects, Grewal's conduct constitutes an unconstitutional violation of the Equal Protection Clause both facially and as applied to these circumstances.

146.   Grewal's conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not limited to, the Plaintiffs' loss of Equal Protection Clause rights and the substantial time and resources expended in defense these rights.

147.  The Plaintiffs are therefore entitled to a judgment against Grewal awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

## Count Four

### 42 U.S.C. § 1983—Due Process

148.  The Plaintiffs incorporate the preceding paragraphs.

149.  The Due Process Clause of the Fourteenth Amendment of the Constitution of the United States forbids the several States from depriving any person of life, liberty, or property without due process of law.  It applies to Grewal in his official capacity.

150.  Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to a deprivation of liberty and property without due process of law.

151.  Grewal additionally violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to a deprivation of liberty and property without due process of law.

152.  Grewal's conduct violates the Due Process Clause doctrine regarding vagueness. *See, e.g.*, *F.C.C. v. Fox Television Stations, Inc.*, 567 U.S. 239 (2012). Grewal's conduct forbids expression without giving fair notice of what is forbidden;

as such, it is an unconstitutional deprivation of liberty and property without due process of law.

153.   Grewal's conduct violates the Due Process Clause doctrine regarding overbreadth.  *See, e.g.*, *Coates v. City of Cincinnati*, 402 U.S. 611 (1971).  Grewal's conduct forbids a substantial amount of constitutionally protected speech; as such, it is an unconstitutional deprivation of liberty and property without due process of law.

154.   Grewal's conduct violates the Due Process Clause doctrine regarding deprivations of property.  *See, e.g.*, *Matthews v. Eldridge*, 424 U.S. 319 (1976). Grewal's conduct deprives the Plaintiffs of a license issued by the Secretary of State pursuant to federal law, and does so without supplying adequate pre-deprivation notice and an opportunity to be heard; as such, it is an unconstitutional deprivation of property without due process of law.

155.  In each of these respects, Grewal's conduct constitutes an unconstitutional abridgement of Due Process Clause rights both facially and as applied to these circumstances.

156.   Grewal's conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of the Plaintiffs' Due Process Clause rights and the substantial time and resources expended in defense these rights.

157.   The Plaintiffs are therefore entitled to a judgment against Grewal awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

## Count Five

### 42 U.S.C. § 1983—Commerce Clause

158.   The Plaintiffs incorporate the preceding paragraphs.

159.   The Commerce Clause of Article I, Section 8 of the Constitution of the United States imposes a negative command, known as the dormant Commerce Clause, that limits the authority of the several States to enact laws burdening interstate commerce.  It applies to Grewal in his official capacity.

160.   Grewal violated 42 U.S.C. § 1983 by acting, under color of state law, to subject the Plaintiffs to a deprivation of the right to be free of commercial restraints that violate the dormant Commerce Clause.

161.   Grewal additionally violated 42 U.S.C. § 1983 by threatening, under color of state law, to subject the Plaintiffs to a deprivation of the right to be free of commercial restraints that violate the dormant Commerce Clause.

162.   Grewal's conduct violates the dormant Commerce Clause doctrine regarding laws that directly regulate interstate commerce. *See, e.g.*, *Granholm v. Heald*, 125 S. Ct. 1885 (2005).  Grewal's conduct directly regulates interstate commerce by projecting New Jersey law into other states.  Grewal's conduct does

not serve a compelling governmental interest.  And Grewal's conduct is not the least restrictive means of accomplishing any such interest.  As such, it violates the Commerce Clause.

163.   Grewal's conduct violates the dormant Commerce Clause doctrine regarding laws that discriminate against interstate commerce. *See, e.g.*, *Granholm*, 125 S. Ct. 1885.  Grewal's conduct discriminates against interstate commerce on purpose, on its face, and in effect.  Grewal's conduct does not serve a compelling governmental interest.  And Grewal's conduct is not the least restrictive means of accomplishing any such interest.  As such, it violates the Commerce Clause.

164.   Grewal's conduct violates the dormant Commerce Clause doctrine regarding all laws that implicate interstate commerce.  *See, e.g.*, *Pike v. Bruce Church, Inc.*, 397 U.S. 137 (1970).  Grewal's conduct imposes burdens on interstate commerce that are clearly excessive in relation to putative local benefits; as such, it violates the Commerce Clause.

165.   In each of these respects, Grewal's conduct constitutes an unconstitutional abridgement of Due Process Clause rights both facially and as applied to these circumstances.

166.   Grewal's conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not

limited to, the loss of Dormant Commerce Clause rights in the past and the substantial time and resources expended in defense these rights.

167.   The Plaintiffs are therefore entitled to a judgment against Grewal awarding the Plaintiffs declaratory relief, injunctive relief, and attorney fees and costs.

## Count Six

## 42 U.S.C. § 1983—Arms Export Control Act

168.   The Plaintiffs incorporate the preceding paragraphs.

169.   The Supremacy Clause of the Constitution of the United States provides that the Constitution of the United States and the Laws of the United States which shall be made in Pursuance thereof shall be the supreme Law of the Land.  It applies to Grewal by virtue of Article VI of the Constitution of the United States.

170.   The federal government has exclusive authority to administer and enforce the provisions of the AECA and ITAR.  Pursuant to that authority, the federal government entered into the Settlement Agreement with Plaintiffs and granted Plaintiffs a license to publish the *Defense Distributed I* Files.

171.   Grewal violated the AECA and ITAR by acting, under color of state law, to regulate conduct that the federal government has expressly authorized pursuant to its authority under the AECA and ITAR.  Grewal therefore violated 42 U.S.C. § 1983 by acting, under color of state law, to regulate the Plaintiffs pursuant

to state laws that are preempted by federal law. "[I]f an individual claims federal law immunizes [the plaintiff] from state regulation, the court may issue an injunction upon finding the state regulatory actions preempted." *Armstrong v. Exceptional Child Ctr., Inc.*, 135 S. Ct. 1378, 1384 (2015).

172.   In this respect, Grewal's conduct is preempted both facially and as applied to these circumstances.

173.   Grewal's conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of immunity from preempted state regulation in the past and the substantial time and resources expended in defense these rights.

174.   The Plaintiffs are therefore entitled to a judgment against the Defendants awarding the Plaintiffs declaratory relief and injunctive relief, and attorney fees and costs.

## Count Seven

## 42 U.S.C. § 1983—Communications Decency Act

175.   The Plaintiffs incorporate the preceding paragraphs.

176.   The Communications Decency Act, 47 U.S.C. § 230, immunizes service providers for information originating with a third-party user of the service. Defense Distributed is a provider and user of an "interactive computer service" within the meaning of 47 U.S.C. § 230 because it operates an interactive online

service at DEFCAD.com.  FPC, FPF, CGF, CAL-FFL, and Brandon Combs are providers and users of an "interactive computer service" within the meaning of 47 U.S.C. § 230 because they operate an interactive online service at CodeIsFreeSpeech.com.

177.   Senate Bill 2465 violates Defense Distributed's rights and FPC, FPF, CGF, CAL-FFL, and Brandon Combs' rights under 47 U.S.C. § 230(c)(1) because it treats them, providers of interactive computer services, as publishers or speakers of information provided by another information content provider. Specifically, Senate Bill 2465 treats Defense Distributed, FPC, FPF, CGF, CAL-FFL, and Brandon Combs as publishers or speakers because it makes it a crime to "distribute" the "information" at issue regardless of whether the information was "provided by another information content provider."

178.   Senate Bill 2465 is a "State . . . law that is inconsistent with"  § 230, in direct violation of 47 U.S.C. § 230(e)(3).

179.   In this respect, Defendant Grewal's conduct is preempted both facially and as applied to these circumstances.

180.   Grewal's conduct proximately caused damages to the Plaintiffs, the persons they communicate with, and others.  The damages include, but are not limited to, the loss of immunity from preempted state regulation in the past and the substantial time and resources expended in defense these rights.

181.   The Plaintiffs are therefore entitled to a judgment against the Defendants awarding the Plaintiffs declaratory relief and injunctive relief, and attorney fees and costs.

## PRAYER FOR RELIEF

182.   The Plaintiffs request that the Court enter a judgment in their favor.

183.   The Plaintiffs request a declaration that Grewal unconstitutionally abridged the Plaintiffs' First Amendment freedoms and an injunction protecting the Plaintiffs from such abridgement in the future—both on a preliminary basis while this action is pending and permanently.

184.   The Plaintiffs request a declaration that Grewal unconstitutionally infringed the Plaintiffs' Second Amendment rights and an injunction protecting the Plaintiffs from such infringement in the future—both on a preliminary basis while this action is pending and permanently.

185.   The Plaintiffs request a declaration that Grewal unconstitutionally denied the Plaintiffs the equal protection of the laws and an injunction protecting the Plaintiffs from such violations in the future—both on a preliminary basis while this action is pending and permanently.

186.  The Plaintiffs request a declaration that the Defendants unconstitutionally subjected the Plaintiffs to a deprivation of liberty and property without due process of law and an injunction protecting the Plaintiffs from such

violations in the future—both on a preliminary basis while this action is pending and permanently.

187.   The Plaintiffs request a declaration that Grewal unconstitutionally violated the Plaintiffs' dormant Commerce Clause rights and an injunction protecting the Plaintiffs from such violations in the future—both on a preliminary basis while this action is pending and permanently.

188.   The Plaintiffs request a declaration that federal law preempts and immunizes the Plaintiffs' from Grewal's regulatory conduct and an injunction protecting the Plaintiffs from such preempted action in the future—both on a preliminary basis while this action is pending and permanently.

189.   The Plaintiffs request an award of costs, including reasonable attorney fees and costs, pursuant to 42 U.S.C. § 1988.

190.   The Plaintiffs request any other relief to which they are entitled.

Date: February 20, 2019               Respectfully submitted,

BECK REDDEN LLP                       HARTMAN & WINNICKI, P.C.
Chad Flores                          s/ Daniel L. Schmutter
cflores@beckredden.com               Daniel L. Schmutter
Daniel Hammond                       dschmutter@hartmanwinnicki.com
dhammond@beckredden.com              74 Passaic Street
Hannah Roblyer                       Ridgewood, New Jersey 07450
hroblyer@beckredden.com              (201) 967-8040
1221 McKinney Street, Suite 4500
Houston, Texas 77010                 Josh Blackman*
(713) 951-3700                       joshblackman@gmail.com
                                     1303 San Jacinto Street
                                     Houston, TX 77002
                                     (202) 294-9003
                                     *Pro hac vice motion to be filed

                    Counsel for Plaintiffs

**VERIFICATION**

On behalf of Defense Distributed, I, Paloma Heindorff, having authority to make this declaration as Defense Distributed's Director, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 20, 2019

Paloma Heindorff

**VERIFICATION**

On behalf of the Second Amendment Foundation, Inc., I, Alan M. Gottlieb, having authority to make this declaration as the Second Amendment Foundation Inc.'s Founder, declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 20, 2019

Alan M. Gottlieb

**VERIFICATION**

On behalf of myself and the Firearms Policy Coalition, Inc., the Firearms Policy Foundation, the Calguns Foundation, and the California Association of Federal Firearms Licensees, I, Brandon Combs, having authority to make this declaration as founder and president of Firearms Policy Coalition, Inc., founder and president of Firearms Policy Foundation, the secretary and executive director of The Calguns Foundation, and the founder and executive vice president of California Association of Federal Firearms Licensees, Inc., declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge, information and belief.

Dated: February 20, 2019

Brandon Combs