# EXHIBIT 1

P.L. 2018, CHAPTER 138, *approved November 8, 2018*
Senate, No. 2465 *(Third Reprint)*

1  AN ACT concerning **[**untraceable**]**[1] firearms and amending
2  **[**N.J.S.2C:39-9**]** various parts of the statutory law[2].
3
4  **BE IT ENACTED** *by the Senate and General Assembly of the State*
5  *of New Jersey:*
6
7  [2]1. N.J.S.2C:39-1 is amended to read as follows:
8  2C:39-1. Definitions. The following definitions apply to this
9  chapter and to chapter 58:
10  a. "Antique firearm" means any rifle or shotgun and "antique
11  cannon" means a destructive device defined in paragraph (3) of
12  subsection c. of this section, if the rifle, shotgun or destructive device,
13  as the case may be, is incapable of being fired or discharged, or which
14  does not fire fixed ammunition, regardless of date of manufacture, or
15  was manufactured before 1898 for which cartridge ammunition is not
16  commercially available, and is possessed as a curiosity or ornament or
17  for its historical significance or value.
18  b. "Deface" means to remove, deface, cover, alter or destroy the
19  name of the maker, model designation, manufacturer's serial number
20  or any other distinguishing identification mark or number on any
21  firearm.
22  c. "Destructive device" means any device, instrument or object
23  designed to explode or produce uncontrolled combustion, including (1)
24  any explosive or incendiary bomb, mine or grenade; (2) any rocket
25  having a propellant charge of more than four ounces or any missile
26  having an explosive or incendiary charge of more than one-quarter of
27  an ounce; (3) any weapon capable of firing a projectile of a caliber
28  greater than 60 caliber, except a shotgun or shotgun ammunition
29  generally recognized as suitable for sporting purposes; (4) any
30  Molotov cocktail or other device consisting of a breakable container
31  containing flammable liquid and having a wick or similar device
32  capable of being ignited. The term does not include any device
33  manufactured for the purpose of illumination, distress signaling, line-
34  throwing, safety or similar purposes.
35  d. "Dispose of" means to give, give away, lease, loan, keep for
36  sale, offer, offer for sale, sell, transfer, or otherwise transfer
37  possession.
38  e. "Explosive" means any chemical compound or mixture that is
39  commonly used or is possessed for the purpose of producing an
40  explosion and which contains any oxidizing and combustible materials

EXPLANATION – Matter enclosed in bold-faced brackets **[**thus**]** in the above bill is not enacted and is intended to be omitted in the law.

Matter underlined thus is new matter.
Matter enclosed in superscript numerals has been adopted as follows:
[1]Senate SLP committee amendments adopted April 16, 2018.
[2]Assembly AJU committee amendments adopted September 17, 2018.
[3]Assembly floor amendments adopted September 27, 2018.

1 or other ingredients in such proportions, quantities or packing that an
2 ignition by fire, by friction, by concussion or by detonation of any part
3 of the compound or mixture may cause such a sudden generation of
4 highly heated gases that the resultant gaseous pressures are capable of
5 producing destructive effects on contiguous objects. The term shall not
6 include small arms ammunition, or explosives in the form prescribed
7 by the official United States Pharmacopoeia.
8     f. "Firearm" means any handgun, rifle, shotgun, machine gun,
9 automatic or semi-automatic rifle, or any gun, device or instrument in
10 the nature of a weapon from which may be fired or ejected any solid
11 projectable ball, slug, pellet, missile or bullet, or any gas, vapor or
12 other noxious thing, by means of a cartridge or shell or by the action of
13 an explosive or the igniting of flammable or explosive substances.  It
14 shall also include, without limitation, any firearm which is in the
15 nature of an air gun, spring gun or pistol or other weapon of a similar
16 nature in which the propelling force is a spring, elastic band, carbon
17 dioxide, compressed or other gas or vapor, air or compressed air, or is
18 ignited by compressed air, and ejecting a bullet or missile smaller than
19 three-eighths of an inch in diameter, with sufficient force to injure a
20 person.
21     g. "Firearm silencer" means any instrument, attachment, weapon
22 or appliance for causing the firing of any gun, revolver, pistol or other
23 firearm to be silent, or intended to lessen or muffle the noise of the
24 firing of any gun, revolver, pistol or other firearm.
25     h. "Gravity knife" means any knife which has a blade which is
26 released from the handle or sheath thereof by the force of gravity or
27 the application of centrifugal force.
28     i. "Machine gun" means any firearm, mechanism or instrument
29 not requiring that the trigger be pressed for each shot and having a
30 reservoir, belt or other means of storing and carrying ammunition
31 which can be loaded into the firearm, mechanism or instrument and
32 fired therefrom.  A machine gun also shall include, without limitation,
33 any firearm with a trigger crank attached.
34     j. "Manufacturer" means any person who receives or obtains raw
35 materials or parts and processes them into firearms or finished parts of
36 firearms, except a person who exclusively processes grips, stocks and
37 other nonmetal parts of firearms.  The term does not include a person
38 who repairs existing firearms or receives new and used raw materials
39 or parts solely for the repair of existing firearms.
40     k. "Handgun" means any pistol, revolver or other firearm
41 originally designed or manufactured to be fired by the use of a single
42 hand.
43     l. "Retail dealer" means any person including a gunsmith, except
44 a manufacturer or a wholesale dealer, who sells, transfers or assigns
45 for a fee or profit any firearm or parts of firearms or ammunition
46 which he has purchased or obtained with the intention, or for the
47 purpose, of reselling or reassigning to persons who are reasonably
48 understood to be the ultimate consumers, and includes any person who

is engaged in the business of repairing firearms or who sells any firearm to satisfy a debt secured by the pledge of a firearm.

m. "Rifle" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a fixed metallic cartridge to fire a single projectile through a rifled bore for each single pull of the trigger.

n. "Shotgun" means any firearm designed to be fired from the shoulder and using the energy of the explosive in a fixed shotgun shell to fire through a smooth bore either a number of ball shots or a single projectile for each pull of the trigger, or any firearm designed to be fired from the shoulder which does not fire fixed ammunition.

o. "Sawed-off shotgun" means any shotgun having a barrel or barrels of less than 18 inches in length measured from the breech to the muzzle, or a rifle having a barrel or barrels of less than 16 inches in length measured from the breech to the muzzle, or any firearm made from a rifle or a shotgun, whether by alteration, or otherwise, if such firearm as modified has an overall length of less than 26 inches.

p. "Switchblade knife" means any knife or similar device which has a blade which opens automatically by hand pressure applied to a button, spring or other device in the handle of the knife.

q. "Superintendent" means the Superintendent of the State Police.

r. "Weapon" means anything readily capable of lethal use or of inflicting serious bodily injury. The term includes, but is not limited to, all (1) firearms, even though not loaded or lacking a clip or other component to render them immediately operable; (2) components which can be readily assembled into a weapon; (3) gravity knives, switchblade knives, daggers, dirks, stilettos, or other dangerous knives, billies, blackjacks, bludgeons, metal knuckles, sandclubs, slingshots, cesti or similar leather bands studded with metal filings or razor blades imbedded in wood; and (4) stun guns; and any weapon or other device which projects, releases, or emits tear gas or any other substance intended to produce temporary physical discomfort or permanent injury through being vaporized or otherwise dispensed in the air.

s. "Wholesale dealer" means any person, except a manufacturer, who sells, transfers, or assigns firearms, or parts of firearms, to persons who are reasonably understood not to be the ultimate consumers, and includes persons who receive finished parts of firearms and assemble them into completed or partially completed firearms, in furtherance of such purpose, except that it shall not include those persons dealing exclusively in grips, stocks and other nonmetal parts of firearms.

t. "Stun gun" means any weapon or other device which emits an electrical charge or current intended to temporarily or permanently disable a person.

u. "Ballistic knife" means any weapon or other device capable of lethal use and which can propel a knife blade.

v. "Imitation firearm" means an object or device reasonably capable of being mistaken for a firearm.

w. "Assault firearm" means:

1. (1) The following firearms:
2. Algimec AGM1 type
3. Any shotgun with a revolving cylinder such as the "Street Sweeper" or "Striker 12"
5. Armalite AR-180 type
6. Australian Automatic Arms SAR
7. Avtomat Kalashnikov type semi-automatic firearms
8. Beretta AR-70 and BM59 semi-automatic firearms
9. Bushmaster Assault Rifle
10. Calico M-900 Assault carbine and M-900
11. CETME G3
12. Chartered Industries of Singapore SR-88 type
13. Colt AR-15 and CAR-15 series
14. Daewoo K-1, K-2, Max 1 and Max 2, AR 100 types
15. Demro TAC-1 carbine type
16. Encom MP-9 and MP-45 carbine types
17. FAMAS MAS223 types
18. FN-FAL, FN-LAR, or FN-FNC type semi-automatic firearms
19. Franchi SPAS 12 and LAW 12 shotguns
20. G3SA type
21. Galil type Heckler and Koch HK91, HK93, HK94, MP5, PSG-1
22. Intratec TEC 9 and 22 semi-automatic firearms
23. M1 carbine type
24. M14S type
25. MAC 10, MAC 11, MAC 11-9mm carbine type firearms
26. PJK M-68 carbine type
27. Plainfield Machine Company Carbine
28. Ruger K-Mini-14/5F and Mini-14/5RF
29. SIG AMT, SIG 550SP, SIG 551SP, SIG PE-57 types
30. SKS with detachable magazine type
31. Spectre Auto carbine type
32. Springfield Armory BM59 and SAR-48 type
33. Sterling MK-6, MK-7 and SAR types
34. Steyr A.U.G. semi-automatic firearms
35. USAS 12 semi-automatic type shotgun
36. Uzi type semi-automatic firearms
37. Valmet M62, M71S, M76, or M78 type semi-automatic firearms
38. Weaver Arm Nighthawk.
39. (2) Any firearm manufactured under any designation which is substantially identical to any of the firearms listed above.
41. (3) A semi-automatic shotgun with either a magazine capacity exceeding six rounds, a pistol grip, or a folding stock.
43. (4) A semi-automatic rifle with a fixed magazine capacity exceeding 10 rounds.  "Assault firearm" shall not include a semi-automatic rifle which has an attached tubular device and which is capable of operating only with .22 caliber rimfire ammunition.
47. (5) A part or combination of parts designed or intended to convert a firearm into an assault firearm, or any combination of parts from

1  which an assault firearm may be readily assembled if those parts are in
2  the possession or under the control of the same person.
3     (6) A firearm with a bump stock attached.
4     x. "Semi-automatic" means a firearm which fires a single
5  projectile for each single pull of the trigger and is self-reloading or
6  automatically chambers a round, cartridge, or bullet.
7     y. "Large capacity ammunition magazine" means a box, drum,
8  tube or other container which is capable of holding more than 10
9  rounds of ammunition to be fed continuously and directly therefrom
10 into a semi-automatic firearm. The term shall not include an attached
11 tubular device which is capable of holding only .22 caliber rimfire
12 ammunition.
13    z. "Pistol grip" means a well-defined handle, similar to that found
14 on a handgun, that protrudes conspicuously beneath the action of the
15 weapon, and which permits the shotgun to be held and fired with one
16 hand.
17    aa. "Antique handgun" means a handgun manufactured before
18 1898, or a replica thereof, which is recognized as being historical in
19 nature or of historical significance and either (1) utilizes a match,
20 friction, flint, or percussion ignition, or which utilizes a pin-fire
21 cartridge in which the pin is part of the cartridge or (2) does not fire
22 fixed ammunition or for which cartridge ammunition is not
23 commercially available.
24    bb. "Trigger lock" means a commercially available device
25 approved by the Superintendent of State Police which is operated with
26 a key or combination lock that prevents a firearm from being
27 discharged while the device is attached to the firearm.  It may include,
28 but need not be limited to, devices that obstruct the barrel or cylinder
29 of the firearm, as well as devices that immobilize the trigger.
30    cc. "Trigger locking device" means a device that, if installed on a
31 firearm and secured by means of a key or mechanically, electronically
32 or electromechanically operated combination lock, prevents the
33 firearm from being discharged without first deactivating or removing
34 the device by means of a key or mechanically, electronically or
35 electromechanically operated combination lock.
36    dd. "Personalized handgun" means a handgun which incorporates
37 within its design, and as part of its original manufacture, technology
38 which automatically limits its operational use and which cannot be
39 readily deactivated, so that it may only be fired by an authorized or
40 recognized user.  The technology limiting the handgun's operational
41 use may include, but not be limited to:  radio frequency tagging, touch
42 memory, remote control, fingerprint, magnetic encoding and other
43 automatic user identification systems utilizing biometric, mechanical
44 or electronic systems.  No make or model of a handgun shall be
45 deemed to be a "personalized handgun" unless the Attorney General
46 has determined, through testing or other reasonable means, that the
47 handgun meets any reliability standards that the manufacturer may
48 require for its commercially available handguns that are not
49 personalized or, if the manufacturer has no such reliability standards,

1   the handgun meets the reliability standards generally used in the
2   industry for commercially available handguns.
3     ee. "Bump stock" means any device or instrument for a firearm
4   that increases the rate of fire achievable with the firearm by using
5   energy from the recoil of the firearm to generate a reciprocating action
6   that facilitates repeated activation of the trigger.
7     ff. "Trigger crank" means any device or instrument to be attached
8   to a firearm that repeatedly activates the trigger of the firearm through
9   the use of a lever or other part that is turned in a circular motion;
10  provided, however, the term shall not include any weapon initially
11  designed and manufactured to fire through the use of a crank or lever.
12    gg. "Armor piercing ammunition" means: (1) a projectile or
13  projectile core which may be used in a handgun and is constructed
14  entirely, excluding the presence of traces of other substances, from one
15  or a combination of tungsten alloys, steel, iron, brass, bronze,
16  beryllium copper, or depleted uranium; or (2) a full jacketed projectile
17  larger than .22 caliber designed and intended for use in a handgun and
18  whose jacket has a weight of more than 25 percent of the total weight
19  of the projectile. "Armor piercing ammunition" shall not include
20  shotgun shot required by federal or State environmental or game
21  regulations for hunting purposes, a frangible projectile designed for
22  target shooting, a projectile which the United States Attorney General
23  finds is primarily intended to be used for sporting purposes, or any
24  other projectile or projectile core which the United States Attorney
25  General finds is intended to be used for industrial purposes, including
26  a charge used in an oil gas well perforating device.
27    hh. "Covert firearm" means any firearm that is constructed in a
28  shape or configuration such that it does not resemble a handgun, rifle,
29  shotgun, or machine gun including, but not limited to, a firearm that
30  resembles a key-chain, pen, cigarette lighter, cigarette package,
31  cellphone, smart phone, wallet, or cane.
32    ii. "Undetectable firearm" means a firearm [3][constructed entirely
33  of non-metal substances, or a firearm that does not include at least one
34  major component, such as the barrel, slide, cylinder, frame or receiver
35  of the firearm, that is made entirely of metal such that,] that: (1) after
36  removal of all parts other than major components, is not as detectable
37  as the Security Exemplar, by walk-through metal detectors calibrated
38  and operated to detect the Security Exemplar; or (2) includes a major
39  component which,[3] if the firearm were subjected to inspection by the
40  types of detection devices commonly used at airports for security
41  screening, [3][it][3] would not generate an image that accurately depicts
42  the shape of the component.[2] [3]"Undetectable firearm" shall not be
43  construed to include a firearm subject to the provisions of paragraphs
44  (3) through (6) of subsection (p) of 18 U.S.C. s.922.
45    jj. "Major component" means the slide or cylinder or the frame or
46  receiver of a firearm and, in the case of a rifle or shotgun, also includes
47  the barrel.

kk.  "Security Exemplar" means the Security Exemplar fabricated in accordance with subparagraph (C) of paragraph (2) of subsection (p) of 18 U.S.C. s.922.**³**
(cf: P.L.2018, c.39, s.1)

**²**2.  N.J.S.2C:39-3 is amended to read as follows:
2C:39-3.  Prohibited Weapons and Devices.
a.  Destructive devices.  Any person who knowingly has in his possession any destructive device is guilty of a crime of the third degree.
b.  Sawed-off shotguns.  Any person who knowingly has in his possession any sawed-off shotgun is guilty of a crime of the third degree.
c.  Silencers.  Any person who knowingly has in his possession any firearm silencer is guilty of a crime of the fourth degree.
d.  Defaced firearms.  Any person who knowingly has in his possession any firearm which has been defaced, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.
e.  Certain weapons.  Any person who knowingly has in his possession any gravity knife, switchblade knife, dagger, dirk, stiletto, billy, blackjack, metal knuckle, sandclub, slingshot, cestus or similar leather band studded with metal filings or razor blades imbedded in wood, ballistic knife, without any explainable lawful purpose, is guilty of a crime of the fourth degree.
f.  Dum-dum or armor piercing ammunition.  (1) Any person, other than a law enforcement officer or persons engaged in activities pursuant to subsection f. of N.J.S.2C:39-6, who knowingly has in his possession any hollow nose or dum-dum bullet, or (2) any person, other than a collector of firearms or ammunition as curios or relics as defined in Title 18, United States Code, section 921 (a) (13) and has in his possession a valid Collector of Curios and Relics License issued by the Bureau of Alcohol, Tobacco, Firearms, and Explosives, who knowingly has in his possession any armor piercing ammunition as defined in subsection gg. of N.J.S.2C:39-1 is guilty of a crime of the fourth degree.  For purposes of this section, a collector may possess not more than three examples of each distinctive variation of the ammunition described above. A distinctive variation includes a different head stamp, composition, design, or color.
g.  Exceptions. (1) Nothing in subsection a., b., c., d., e., f., j. or k. of this section shall apply to any member of the Armed Forces of the United States or the National Guard, or except as otherwise provided, to any law enforcement officer while actually on duty or traveling to or from an authorized place of duty, provided that his possession of the prohibited weapon or device has been duly authorized under the applicable laws, regulations or military or law enforcement orders.

Nothing in subsection h. of this section shall apply to any law enforcement officer who is exempted from the provisions of that subsection by the Attorney General. Nothing in this section shall apply to the possession of any weapon or device by a law enforcement officer who has confiscated, seized or otherwise taken possession of said weapon or device as evidence of the commission of a crime or because he believed it to be possessed illegally by the person from whom it was taken, provided that said law enforcement officer promptly notifies his superiors of his possession of such prohibited weapon or device.

(2) a. Nothing in subsection f. (1) shall be construed to prevent a pers from keeping such ammunition at his dwelling, premises or other land owned or possessed by him, or from carrying such ammunition from the place of purchase to said dwelling or land, nor shall subsection f. (1) be construed to prevent any licensed retail or wholesale firearms dealer from possessing such ammunition at its licensed premises, provided that the seller of any such ammunition shall maintain a record of the name, age and place of residence of any purchaser who is not a licensed dealer, together with the date of sale and quantity of ammunition sold.

b. Nothing in subsection f.(1) shall be construed to prevent a designated employee or designated licensed agent for a nuclear power plant under the license of the Nuclear Regulatory Commission from possessing hollow nose ammunition while in the actual performance of his official duties, if the federal licensee certifies that the designated employee or designated licensed agent is assigned to perform site protection, guard, armed response or armed escort duties and is appropriately trained and qualified, as prescribed by federal regulation, to perform those duties.

(3) Nothing in paragraph (2) of subsection f. or in subsection j. shall be construed to prevent any licensed retail or wholesale firearms dealer from possessing that ammunition or large capacity ammunition magazine at its licensed premises for sale or disposition to another licensed dealer, the Armed Forces of the United States or the National Guard, or to a law enforcement agency, provided that the seller maintains a record of any sale or disposition to a law enforcement agency. The record shall include the name of the purchasing agency, together with written authorization of the chief of police or highest ranking official of the agency, the name and rank of the purchasing law enforcement officer, if applicable, and the date, time and amount of ammunition sold or otherwise disposed. A copy of this record shall be forwarded by the seller to the Superintendent of the Division of State Police within 48 hours of the sale or disposition.

(4) Nothing in subsection a. of this section shall be construed to apply to antique cannons as exempted in subsection d. of N.J.S.2C:39-6.

(5) Nothing in subsection c. of this section shall be construed to apply to any person who is specifically identified in a special deer

1 management permit issued by the Division of Fish and Wildlife to
2 utilize a firearm silencer as part of an alternative deer control
3 method implemented in accordance with a special deer management
4 permit issued pursuant to section 4 of P.L.2000, c.46 (C.23:4-42.6),
5 while the person is in the actual performance of the permitted
6 alternative deer control method and while going to and from the
7 place where the permitted alternative deer control method is being
8 utilized.  This exception shall not, however, otherwise apply to any
9 person to authorize the purchase or possession of a firearm silencer.
10     h.  Stun guns.  Any person who knowingly has in his possession
11 any stun gun is guilty of a crime of the fourth degree.
12     i.  Nothing in subsection e. of this section shall be construed to
13 prevent any guard in the employ of a private security company, who
14 is licensed to carry a firearm, from the possession of a nightstick
15 when in the actual performance of his official duties, provided that
16 he has satisfactorily completed a training course approved by the
17 Police Training Commission in the use of a nightstick.
18     j.  Any person who knowingly has in his possession a large
19 capacity ammunition magazine is guilty of a crime of the fourth
20 degree unless the person has registered:    (1)  an  assault  firearm
21 pursuant to section 11 of P.L.1990, c.32 (C.2C:58-12) and the
22 magazine is maintained and used in connection with participation in
23 competitive shooting matches sanctioned by the Director of Civilian
24 Marksmanship of the United States Department of the Army ; or
25     (2) a firearm with a fixed magazine capacity or detachable
26 magazine capable of holding up to 15 rounds pursuant to section 7
27 of P.L.2018, c.39 (C.2C:39-20).
28     k.  Handcuffs.  Any person  who  knowingly  has  in  his
29 possession handcuffs as defined in P.L.1991, c.437 (C.2C:39-9.2),
30 under circumstances not manifestly appropriate for such lawful uses
31 as handcuffs may have, is guilty of a disorderly persons offense.  A
32 law enforcement officer shall confiscate handcuffs possessed in
33 violation of the law.
34     l.  Bump stock or trigger crank.  Any person who knowingly
35 possesses a bump stock as defined in subsection ee. of N.J.S.2C:39-
36 1 or a trigger crank as defined in subsection ff. of N.J.S.2C:39-1,
37 regardless of whether the person is in possession of a firearm, is
38 guilty of a crime of the third degree.
39     Notwithstanding the provisions of N.J.S.2C:1-8 or any other
40 provision of law, a conviction arising out of this subsection shall
41 not merge with a conviction for possessing an assault firearm in
42 violation of subsection f. of N.J.S.2C:39-5 or a machine gun in
43 violation of subsection a. of N.J.S.2C:39-5 and a separate sentence
44 shall be imposed upon each conviction. Notwithstanding the
45 provisions of N.J.S.2C:44-5 or any other provisions of law, the
46 sentence imposed pursuant to this subsection shall be served
47 consecutively to that imposed for unlawfully possessing an assault
48 firearm in violation of subsection f. of N.J.S.2C:39-5.

1  m. Covert or undetectable firearms.  Any person who
2  knowingly possesses any covert firearm as defined in subsection hh.
3  of N.J.S.2C:39-1, an undetectable firearm as defined in subsection
4  ii. of N.J.S.2C:39-1, or a firearm enclosed in a container or covering
5  that is designed or modified to allow the firearm to be fired while so
6  enclosed and that disguises or obscures the shape of the firearm
7  such that it does not resemble a handgun, rifle, shotgun, or machine
8  gun is guilty a crime of the third degree.[2]
9  (cf: P.L.2018, c.39, s.2).
10
11  [2][1.] 3.[2]  N.J.S.2C:39-9 is amended to read as follows:
12  2C:39-9.  Manufacture, Transport, Disposition and Defacement
13  of Weapons and Dangerous Instruments and Appliances.  a.
14  Machine guns.  Any person who manufactures, causes to be
15  manufactured, transports, ships, sells or disposes of any machine
16  gun without being registered or licensed to do so as provided in
17  chapter 58 [2]of Title 2C of the New Jersey Statutes[2]  is guilty of a
18  crime of the third degree.
19   b.  Sawed-off shotguns.  Any person who manufactures, causes
20  to be manufactured, transports, ships, sells or disposes of any
21  sawed-off shotgun is guilty of a crime of the third degree.
22   c.  Firearm silencers.  Any person who manufactures, causes to
23  be manufactured, transports, ships, sells or disposes of any firearm
24  silencer is guilty of a crime of the fourth degree.
25   d.  Weapons.  Any person who manufactures, causes to be
26  manufactured, transports, ships, sells or disposes of any weapon,
27  including gravity knives, switchblade knives, ballistic knives,
28  daggers, dirks, stilettos, billies, blackjacks, metal knuckles,
29  sandclubs, slingshots, cesti or similar leather bands studded with
30  metal filings, or, except as otherwise provided in subsection i. of
31  this section, in the case of firearms if he is not licensed or registered
32  to do so as provided in chapter 58 [2]of Title 2C of the New Jersey
33  Statutes[2], is guilty of a crime of the fourth degree.  Any person who
34  manufactures, causes to be manufactured, transports, ships, sells or
35  disposes of any weapon or other device which projects, releases or
36  emits tear gas or other substances intended to produce temporary
37  physical discomfort or permanent injury through being vaporized or
38  otherwise dispensed in the air, which is intended to be used for any
39  purpose other than for authorized military or law enforcement
40  purposes by duly authorized military or law enforcement personnel
41  or the device is for the purpose of personal self-defense, is pocket-
42  sized and contains not more than three-quarters of an ounce of
43  chemical substance not ordinarily capable of lethal use or of
44  inflicting serious bodily injury, or other than to be used by any
45  person permitted to possess such weapon or device under the
46  provisions of subsection d. of N.J.S.2C:39-5, which is intended for
47  use by financial and other business institutions as part of an
48  integrated security system, placed at fixed locations, for the

protection of money and property, by the duly authorized personnel of those institutions, is guilty of a crime of the fourth degree.

e. Defaced firearms. Any person who defaces any firearm is guilty of a crime of the third degree. Any person who knowingly buys, receives, disposes of or conceals a defaced firearm, except an antique firearm or an antique handgun, is guilty of a crime of the fourth degree.

f. (1) Any person who manufactures, causes to be manufactured, transports, ships, sell, or disposes of any **²[**bullet, which is primarily designed for use in a handgun, and which is comprised of a bullet whose core or jacket, if the jacket is thicker than .025 of an inch, is made of tungsten carbide, or hard bronze, or other material which is harder than a rating of 72 or greater on the Rockwell B. Hardness Scale, and is therefore capable of breaching or penetrating body armor and**]** <u>armor piercing ammunition as defined in subsection gg. of N.J.S.2C:39-1</u>² which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel, is guilty of a crime of the fourth degree.

(2) Nothing in this subsection shall be construed to prevent a licensed collector of ammunition as defined in paragraph (2) of subsection f. of N.J.S.2C:39-3 from transporting the bullets defined in paragraph (1) of this subsection from (a) any licensed retail or wholesale firearms dealer's place of business to the collector's dwelling, premises, or other land owned or possessed by him, or (b) to or from the collector's dwelling, premises or other land owned or possessed by him to any gun show for the purposes of display, sale, trade, or transfer between collectors, or (c) to or from the collector's dwelling, premises or other land owned or possessed by him to any rifle or pistol club organized in accordance with the rules prescribed by the National Board for the Promotion of Rifle Practice; provided that the club has filed a copy of its charter with the superintendent of the State Police and annually submits a list of its members to the superintendent, and provided further that the ammunition being transported shall be carried not loaded in any firearm and contained in a closed and fastened case, gun box, or locked in the trunk of the automobile in which it is being transported, and the course of travel shall include only such deviations as are reasonably necessary under the circumstances.

g. Assault firearms. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of an assault firearm without being registered or licensed to do so pursuant to N.J.S.2C:58-1 et seq. is guilty of a crime of the third degree.

h. Large capacity ammunition magazines. Any person who manufactures, causes to be manufactured, transports, ships, sells or disposes of a large capacity ammunition magazine which is intended to be used for any purpose other than for authorized military or law enforcement purposes by duly authorized military or law enforcement personnel is guilty of a crime of the fourth degree.

1   i.  Transporting firearms into this State for an unlawful sale or
2   transfer.  Any person who knowingly transports, ships or otherwise
3   brings into this State any firearm for the purpose of unlawfully
4   selling, transferring, giving, assigning or otherwise disposing of that
5   firearm to another individual is guilty of a crime of the second
6   degree.  Any motor vehicle used by a person to transport, ship, or
7   otherwise bring a firearm into this State for unlawful sale or transfer
8   shall be subject to forfeiture in accordance with the provisions of
9   N.J.S.2C:64-1 et seq.; provided however, this forfeiture provision
10  shall not apply to innocent owners, nor shall it affect the rights of a
11  holder of a valid lien.
12     The temporary transfer of a firearm shall not constitute a
13  violation of this subsection if that firearm is transferred:
14     (1) while hunting or target shooting in accordance with the
15  provisions of section 1 of P.L.1992, c.74 (C.2C:58-3.1);
16     (2) for shooting competitions sponsored by a licensed dealer,
17  law enforcement agency, legally recognized military organization,
18  or a rifle or pistol club which has filed a copy of its charter with the
19  superintendent in accordance with the provisions of section 1 of
20  P.L.1992, c.74 (C.2C:58-3.1); or
21     (3)  for participation in a training course conducted by a certified
22  instructor in accordance with the provisions of section 1 of
23  P.L.1997, c.375 (C.2C:58-3.2).
24     The transfer of any firearm that uses air or carbon dioxide to
25  expel a projectile; or the transfer of an antique firearm shall not
26  constitute a violation of this subsection.
27     j.  Any person who manufactures, causes to be manufactured,
28  transports, ships, sells, or disposes of a bump stock as defined in
29  subsection ee. of N.J.S.2C:39-1 or a trigger crank as defined in
30  subsection ff. of N.J.S.2C:39-1 is guilty of a crime of the third
31  degree.
32     k.  Purchasing firearm parts to manufacture [1][untraceable] a[1]
33  firearm [1]without a serial number[1].  In addition to any other
34  [1][penalty imposed] criminal penalties provided[1] under [1][current][1]
35  law, a person who [1], with the purpose to manufacture [2]or otherwise
36  assemble[2] a firearm and without being registered or licensed do so
37  as provided in chapter 58 of Title 2C of the New Jersey Statutes,[1]
38  purchases [1]or otherwise obtains[1] separately or as [1]part of[1] a kit [1]a
39  firearm frame or firearm receiver which is not imprinted with a
40  serial number registered with a federally licensed manufacturer or[1]
41  any combination of parts from which a firearm [1]without a serial
42  number[1] may be readily [1][assembled with the purpose to
43  manufacture an untraceable firearm] manufactured [2]or otherwise
44  assembled[2] , but which does not have the capacity to function as a
45  firearm unless manufactured[1] [2]or otherwise assembled[2] is guilty of
46  a crime of the third degree. Notwithstanding the provisions of
47  N.J.S.2C:1-8 or any other law, a conviction under this subsection
48  shall not merge with a conviction for any other criminal offense and

S2465 [3R]
13

1    the court shall impose separate sentences upon a violation of this
2    subsection and any other criminal offense.
3      As used in this subsection, [1]["untraceable firearm" means an
4    unlawfully manufactured firearm for which the sale or distribution
5    chain from a licensed retailer to the point of its first retail sale
6    cannot be traced by law enforcement officials] "firearm frame or
7    firearm receiver" means the part of a firearm that provides housing
8    for the firearm's internal components, such as the hammer, bolt or
9    breechblock, action, and firing mechanism[1] [2], and includes without
10   limitation any object or part which is not a firearm frame or receiver
11   in finished form but is designed or intended to be used for that
12   purpose and which may readily be made into a firearm frame or
13   receiver through milling or other means[2].
14     [2]l. Manufacturing or facilitating the manufacture of a firearm
15   using a three-dimensional printer.  In addition to any other criminal
16   penalties provided under law it is a third degree crime for:
17     (1) a person who is not registered or licensed to do so as a
18   manufacturer as provided in chapter 58 of Title 2C of the New
19   Jersey Statutes, to use a three-dimensional printer or similar device
20   to manufacture or produce a firearm, firearm receiver, magazine, or
21   firearm component; or
22     (2) a person to distribute by any means, including the Internet,
23   to a person in New Jersey who is not registered or licensed as a
24   manufacturer as provided in chapter 58 of Title 2C of the New
25   Jersey Statutes, digital instructions in the form of computer-aided
26   design files or other code or instructions stored and displayed in
27   electronic format as a digital model that may be used to program a
28   three-dimensional printer to manufacture or produce a firearm,
29   firearm receiver, magazine, or firearm component.
30     As used in this subsection: "three-dimensional printer" means a
31   computer or computer-driven machine or device capable of
32   producing a three-dimensional object from a digital model; and
33   "distribute" means to sell, or to manufacture, give, provide, lend,
34   trade, mail, deliver, publish, circulate, disseminate, present, exhibit,
35   display, share, advertise, offer, or make available via the Internet or
36   by any other means, whether for pecuniary gain or not, and includes
37   an agreement or attempt to distribute.
38     m. Covert or undetectable firearms.  Any person who
39   manufactures, causes to be manufactured, transports, ships, sells or
40   disposes of any covert firearm as defined in subsection hh. of
41   N.J.S.2C:39-1 or any undetectable firearm as defined in subsection
42   ii. of N.J.S.2C:39-1 is guilty of a crime of the third degree.[2]
43   (cf: P.L.2018, c.38, s.3)
44
45     [2][2.] 4.[2]   This act shall take effect immediately.

**S2465** [3R]
14

Establishes crimes of purchasing firearm parts to unlawfully manufacture firearms without a serial number, manufacturing or possessing covert or undetectable firearms, and manufacturing or facilitating the manufacture of firearms using a three-dimensional printer.