UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DEFENSE DISTRIBUTED,      .      Case No. 3:19-cv-04753-AET-TJB
ET AL.,                   .
                          .
         Plaintiffs,      .
                          .      402 East State Street
         v.               .      Trenton, NJ 08608
                          .
GURBIR S. GREWAL,         .
ATTORNEY GENERAL OF THE   .
NEW JERSEY,               .
                          .
         Defendant.       .
                          .      March 7, 2019
. . . . . . . . . . . . ..       1:59 p.m.


TRANSCRIPT OF STATUS CONFERENCE
BEFORE HONORABLE ANNE E. THOMPSON
UNITED STATES DISTRICT COURT JUDGE


APPEARANCES:

For the Plaintiff:          Hartman & Winnicki, P.C.
                            By:  DANIEL L. SCHMUTTER, ESQ.
                            74 Passaic Street
                            Ridgewood, NJ 07450

For the Defendant:          Office of Attorney General
                            By:  MELISSA LEE MEDOWAY, DAG
                            124 Halsey Street, 5th Floor
                            P.O. Box 45029
                            Newark, NJ 07101

                            Office of Attorney General
                            By:  GLENN J. MORAMARCO, DAG
                            25 Market Street, First Floor
                            Trenton, NJ 08625

Audio Operator:             Kimberly Stillman

Proceedings recorded by electronic sound recording, transcript
              produced by transcription service.

---

**J&J COURT TRANSCRIBERS, INC.**
**268 Evergreen Avenue**
**Hamilton, New Jersey 08619**
**E-mail:  jjcourt@jjcourt.com**

**(609) 586-2311      Fax No. (609) 587-3599**

APPEARANCES CONTINUED:

TELEPHONIC APPEARANCES:

For the Plaintiff:          Beck Redden
                            By:  CHAD FLORES, ESQ.
                            1221 McKinney Street, Suite 4500
                            Houston, TX 77010


                             _ _ _ _

1          COURTROOM DEPUTY:  Please remain seated.

2          THE COURT:  Good afternoon.  Who do we have?

3          MR. SCHMUTTER:  Good afternoon, Your Honor.  Daniel

4    Schmutter for the -- from the firm of Hartman and Winnicki for

5    plaintiffs, and I believe my pro hac vice co-counsel,

6    Mr. Flores, is either on the phone or will be dialing in, I

7    believe.

8          THE COURT:  Very -- Mr. Flores?  Or do we have -- we

9    have to push something.

10         Mr. Flores?  Mr. Flores?

11         MR. FLORES:  Your Honor.

12         Yes, this is Chad Flores.

13         THE COURT:  Mr. Flores, we are here in the courtroom

14   in Trenton, New Jersey, and can you -- can you just picture

15   yourself here as well?

16         MR. FLORES:  I can.  I'm told that it's snowing and

17   it is not snowing in Texas.  Quite the opposite --

18         THE COURT:  Don't rub it in.

19         MR. FLORES:  -- but I'll try to do my best.

20         THE COURT:  Okay.  So you are here.  New Jersey

21   counsel is here.  Mr. Schmutter is here from Ridgewood, New

22   Jersey.

23         Okay.  Now, let's go to the other side of the aisle.

24   Who do we got?

25         MS. MEDOWAY:  Good afternoon, Your Honor.  Melissa

4

1    Medoway appearing on behalf of the defendant, New Jersey -- the

2    State of New Jersey.

3              THE COURT:  Medoway.  All right.  And with you?

4              MR. MORAMARCO:  Glenn Moramarco, Your Honor.

5              THE COURT:  Mr. Moramarco.  Very well.

6              All right.  We had set this date for a conference.

7    I'm not sure now exactly how it was scheduled because we do

8    have the future dates also set up.  But, at any rate, today is

9    the conference.  I think it was the State of New Jersey that

10   requested the conference, so I'll hear from you.  Who would

11   like to speak?

12             MS. MEDOWAY:  I would, Your Honor.  Would you prefer

13   that I remain here, or --

14             THE COURT:  I would prefer if you came to the

15   podium --

16             MS. MEDOWAY:  Certainly.

17             THE COURT:  -- because I can hear you better.

18             MS. MEDOWAY:  Certainly.

19             THE COURT:  And shout when you get there.

20             MS. MEDOWAY:  Okay.

21             Good afternoon, Your Honor.  The reason why we're

22   here today is because New Jersey is being sued by plaintiffs,

23   Defense Distributed and the Second Amendment Foundation, over

24   the same law in two different lawsuits in plain violation of

25   black letter law.

1          There are two lawsuits.  There's the first that was

2   filed in the Western District of Texas this past summer, and

3   the second that was filed and is being heard by Your Honor.

4   The lawsuits are challenging the exact same law be enforced --

5   Section 3(l)(2), a recently enacted firearm statute in New

6   Jersey.  Not only that, the cases are based on essentially the

7   same facts and they are grounded in exactly the same legal

8   arguments.

9          To give the Court a bit of background, in July 2018,

10  Defense Distributed and the Second Amendment Foundation,

11  plaintiffs in this lawsuit, filed a case in the Western

12  District of Texas against the New Jersey Attorney General as

13  well as other state and local officials.  In November of 2018,

14  the plaintiffs, Defense Distributed and the Second Amendment

15  Foundation, filed for a temporary restraining order enjoining

16  Section 3(l)(2), again, the same statute they are trying to

17  enjoin in their litigation before Your Honor.  That temporary

18  restraining order was denied.

19         Then, in December of 2018, plaintiffs, Defense

20  Distributed and the Second Amendment Foundation, filed a second

21  motion for a temporary restraining order and a preliminary

22  injunction.  That second motion was also denied for a temporary

23  restraining order.  And in January of 2019, the entire case in

24  the Western District of Texas was dismissed for lack of

25  jurisdiction, and the motion for a preliminary injunction was

1  also denied at that time.

2           Now, after the case was dismissed, plaintiffs,

3  Defense Distributed and the Second Amendment Foundation, along

4  with other plaintiffs, filed this suit in New Jersey.  We

5  thought -- our office thought that was completely reasonable

6  and was prepared to defend this lawsuit in New Jersey, and --

7  because we, in good faith, believed that the Texas litigation

8  was over.  The case had been dismissed and there was no

9  jurisdiction, and a second lawsuit had been filed in New Jersey

10 where, presumably, there was jurisdiction.

11          Then, last week, plaintiffs, Defense Distributed and

12 the Second Amendment Foundation, filed a motion in the Western

13 District of Texas, and they were -- they are seeking to amend

14 or alter the January 2019 judgment that had dismissed the

15 litigation as to the New Jersey Attorney General.  Now, it's

16 important to note what relief they are seeking in that case.

17          First, they are seeking that the court should amend

18 the judgment by withdrawing the decision to dismiss the

19 plaintiffs' action as to all defendants or, in the alternative,

20 plaintiffs, Defense Distributed and the Second Amendment

21 Foundation, are seeking only to amend the judgment by

22 withdrawing the decision to dismiss as to the New Jersey

23 Attorney General.  So, either way, they're seeking to reopen

24 this litigation, relitigate the case in Texas, and bring New

25 Jersey back into that case.

1          Plaintiffs' efforts to litigate the same claims

2   against the New Jersey Attorney General in multiple

3   jurisdictions, it's plainly improper.  And under the well-

4   settled first-filed rule, the --

5          THE COURT:  In the motion that has -- recent

6   motion --

7          MS. MEDOWAY:  Yes.

8          THE COURT:  What are they seeking to do with regard

9   to New Jersey?

10          MS. MEDOWAY:  They're seeking to amend the

11   January 30, 2019, judgment that had dismissed the litigation as

12   to the New Jersey Attorney General, and they're asking that

13   that decision be withdrawn and the plaintiffs be able to

14   proceed as to all defendants, or if they're not able to proceed

15   as to all defendants, that they are able to proceed as to the

16   New Jersey Attorney General.

17          THE COURT:  Okay.

18          MS. MEDOWAY:  And this is fundamentally unfair.  The

19   case Chavez vs. Dole Food Company is instructive.  That case is

20   found at 836 F.3d 205 (3d Cir. 2016).  And that case held that

21   the first-filed rule is a comity-based doctrine stating that

22   where duplicative lawsuits, such as the one in the Western

23   District of Texas and this case, are filed in -- successively

24   in two different federal courts, the court where the action was

25   first filed has priority.  In this case, that would be the

1    court in the Western District of Texas.

2            <u>Chavez</u> also instructs that when there are duplicative

3    actions that are filed one after the other, the subsequent

4    litigation should be stayed until the first litigation is

5    resolved.  It is fundamentally unfair and inequitable to make

6    New Jersey defend itself in multiple -- in two lawsuits.  And

7    moreover, litigating this case in both the Western District of

8    Texas and here in New Jersey could lead to problems.

9            It's going to cause a waste of judicial resources.

10   It could lead to inconsistent judgments.  And it causes

11   unnecessary friction between the courts.  Consequently, the New

12   Jersey Attorney General is respectfully requesting that the --

13   this Court stay all proceedings in this case until there is a

14   final resolution of the Texas case.  That is, 31 days after any

15   denial of their motion to amend or following the resolution of

16   any appeal of that decision.

17           Thank you, Your Honor.

18           THE COURT:  Thank you.

19           All right.  Let me hear from the plaintiffs.

20           MR. FLORES:  Your Honor, this is Chad Flores in

21   Houston.  Can you still hear me okay?

22           THE COURT:  I can, just fine.

23           MR. FLORES:  Okay.  Great.

24           Our position is two-fold.  There is a procedural part

25   of our position and there is a substantive part of our

1  position.  And I'll start with the procedure and then go to the

2  substance if we need to.

3       Procedurally, first we submit that this is a status

4  conference.  This event now is not an occasion to decide

5  whether or not to grant the stay.  In the filing that we have

6  given the Court, this is Document 21, we explain that the way

7  that the Attorney General has presented this request does not

8  comply with the rules.  We have not been afforded an

9  opportunity to respond like we usually would, and so the Court

10  shouldn't address this argument.

11       Now, it's not that they shouldn't address it all,

12  it's just not yet.  If the State of New Jersey wants to submit

13  this argument as part of their response to the motion for a

14  preliminary injunction, they are perfectly free to do so.  And

15  if they want to actually present this argument as a motion,

16  like they would under Rule 12, they're perfectly free to do so

17  and we should be afforded an opportunity to respond.  But to do

18  so by letter violates the Court's procedural rules.

19       So that's our first argument is that we shouldn't

20  address this now.  And we have lodged that objection.  The

21  Court has two options to deal with that.  Number one is to

22  grant the plaintiffs' objection to the form in which this is

23  brought and refuse to consider this letter that you've

24  gotten -- that's the Document 20 letter -- as a motion.  And in

25  that case, the defendant can present this as an actual motion

1  or they can do it later and we can address this in due course.

2         The second option if the Court wants to overrule our

3  objection is to consider this letter that was filed,

4  Document 20, as a motion, and then identify an actual motion

5  day so that we can work backwards to determine a response

6  deadline and give a reply deadline and so forth.

7         This argument doesn't need to be handled unlike any

8  other typical Rule 12 argument.  We can brief it normally and

9  consider it with a good amount of contemplation.  There's no

10  emergency.  The State of New Jersey is not the one that's going

11  to suffer any irreparable harm here.  Of course, the

12  irreparable harm is being suffered by the plaintiffs.  That's

13  why we have a fast-track preliminary injunction proceeding.

14         So I have a lot to say about the merits of the stay

15  argument you just heard, and you know, we'll be glad to go

16  brief that in full.  If the Court wants it today, I can give

17  you a preview of what I think our seven reasons that you're not

18  going to rule in their favor and grant that stay.  But,

19  procedurally, it's critically important that we receive due

20  process here and not be thrown into the fray unfairly.

21         So I think we should start with the procedure and

22  then, only if necessary, I can submit the substantive

23  arguments.

24         THE COURT:  Well, you know, I have a lot of respect

25  for the rules and following procedures, and some people call

1  that due process, but we function very much as seems practical
2  and fair and prompt and efficient.  And so, I don't feel in any
3  way constrained to require motion practice rules when a party
4  seeks a stay.  And I'm confident that you could respond, and
5  I'd really like you to do so, as to why a stay in this case
6  would be unfair.
7       MR. FLORES:  Sure, Your Honor.  I'd be --
8       THE COURT:  Because it seems to me that without
9  question this lawsuit should not be active in two different
10 district courts at the same time.  And if you're seeking
11 reconsideration by Judge Pitman in the Western District of
12 Texas, and maybe an appeal to the Fifth Circuit, then clearly,
13 we should not be using resources to launch preliminary
14 injunction hearings here in New Jersey.  So I -- you -- I want
15 you to tell me why you think I'm looking at this from the wrong
16 way.
17      MR. FLORES:  Sure, Your Honor, I'd be happy to.
18      If I can, let me start with a doctrinal piece and
19 then give you two critical points about the procedural posture
20 that I think are key.
21      The doctrinal piece is that the State of New Jersey
22 has cited you the Chavez decision and if the Court will review
23 it, what you'll see is that there is no hard and fast per se
24 rule about stopping one case or letting another case go.  It is
25 indeed, as the Court has suggested, a practical doctrine routed

1  in fairness.  And on one side of the coin, we certainly don't

2  want litigants to be pursuing exactly the same issues in two

3  different courts.  But on the other side of the coin, and

4  you'll see this in both the <u>Chavez</u> decision and the others that

5  the defendant has cited, you also don't want to leave litigants

6  with no remedy whatsoever.  And that, in fact, is what New

7  Jersey is seeking here.  They want us to have no place to

8  litigate the case, and I'll explain.

9         THE COURT:  Why do you say that?  You chose Houston.

10        MR. FLORES:  I have two reasons, Your Honor.

11        Number one, is that recall, first of all, the number

12  of plaintiffs in this case.  Defense Distributed and the Second

13  Amendment Foundation are plaintiffs both here and in the Texas

14  case, but the case before you has five other plaintiffs who are

15  not involved at all in the Texas case.  And so, no matter what,

16  those plaintiffs are equally entitled to adjudication.  They

17  have claims that are equally as strong.

18        And so, at the absolute worst, you would be talking

19  about dividing up this case and saying that some of the

20  plaintiffs go forward and others may not.  But I think I can

21  explain to you why, even as to Defense Distributed and the

22  Second Amendment Foundation, the stay argument doesn't work.

23  But recall that we definitely have five plaintiffs as to which

24  there is absolutely no argument about a stay here.  The

25  analysis goes issue by issue and party by party, and so those

13

1 five defendants can't be stayed at all.

2          Now as to the two defendants -- excuse me, the two

3 plaintiffs, Defense Distributed and the Second Amendment

4 Foundation, their case is over in Texas.  There is a final

5 judgment that's been issued with *res judicata* effect that says

6 the following, "Plaintiffs may pursue their claims in a court

7 of proper jurisdiction."

8          The only issue being possibly litigated -- it's not

9 even being litigated, but might be litigated if there is

10 hypothetically an appeal, is the question of personal

11 jurisdiction.

12          THE COURT:  A big issue.

13          MR. FLORES:  I'm sorry?

14          THE COURT:  Big issue.

15          MR. FLORES:  It is a big issue, but that's not being

16 litigated here, Your Honor.  The plaintiffs need some court

17 somewhere to litigate the merits.  That's not happening in

18 Texas now.  There's a final judgment.  That won't happen if

19 there's an appeal.  The only issue on appeal will be personal

20 jurisdiction.

21          Now, let me be clear, Your Honor --

22          THE COURT:  Wait a second.  What happens -- what is

23 this motion for reconsideration that you filed in Texas?

24          MR. FLORES:  Your Honor, that motion responds to the

25 judgment.  The judgment is a --

14

1          THE COURT:  Yes, and what is it for?  What is it for?

2          MR. FLORES:  It's a Rule 59 motion that asks the

3   court to exercise jurisdiction which it hasn't done.  And

4   currently --

5          THE COURT:  And what about New Jersey are you seeking

6   to happen in that filing?

7          MR. FLORES:  As to New Jersey, the filing in Texas

8   asks the district court to exercise jurisdiction and decide the

9   merits.  If it did that, we think that we would have an

10  important stay argument to make here, but that's a

11  hypothetical.  The Texas court is not exercising jurisdiction

12  over the merits, and so this is just a future hypothesis, Your

13  Honor.

14          If the Fifth Circuit appeal were to succeed and tell

15  the district court in Texas -- district court in Texas, you

16  should now address the merits -- then we would have duplication

17  of merits litigation.  But we don't have that now.  And -- so

18  that's essentially the situation is that there's no litigation

19  of the merits going on in Texas.  Recall --

20          THE COURT:  Well, isn't that just because the judge

21  there, in his January 30th order, dismissed without prejudice

22  the plaintiffs, and then you filed for reconsideration.  So

23  something is going on.

24          MR. FLORES:  That's correct, Your Honor.  But the

25  stay doctrine would only come into play if that effort succeeds

1  and the district court there actually starts exercising

2  jurisdiction again.

3           THE COURT:  Wait a minute.  Wait a minute.

4           The stay would require us to exercise patience until

5  Judge Pitman has ruled on your motion.  That's all.

6           Isn't that all?

7           MR. FLORES:  I would want to have the defendants ask

8  how long their stay would last.  If the question is stay until

9  Judge Pitman rules on the motion, I think that we would be back

10 here quite immediately for two reasons.

11          Number one is that I suspect the motion -- the motion

12 to reconsider is going to be ruled on quite quickly.  And

13 number two --

14          THE COURT:  Really?

15          MR. FLORES:  Yes, Your Honor.  I think some of the

16 pace of the proceedings there has been quite prompt.  All --

17 the responses to that motion have already been filed and things

18 will go quickly there.  The State of New Jersey filed their

19 response.

20          THE COURT:  All right.  Let me ask -- let me ask the

21 State of New Jersey.

22          You're seeking a stay are you not?

23          MS. MEDOWAY:  Yes, Your Honor.

24          THE COURT:  What was your contemplation of how long

25 that stay would take?

1            MS. MEDOWAY:  Your Honor, the State is requesting

2   that there be a stay until 31 days after the decision on the

3   motion to reconsider, so that would be essentially the time for

4   the -- a notice of appeal to be filed, or in the alternative,

5   the resolution of any appeal of that decision.

6            Essentially, we want the Texas litigation to be

7   complete.  So if there's a -- going to be an appeal, the stay

8   should last until that appeal is resolved.  Your Honor, if

9   counsel indicates that they will not appeal, then after the

10  decision on the motion to reconsider, then the stay in this

11  case could be lifted.  But, again, what we're seeking is a stay

12  until there's complete resolution of that case in Texas.

13           THE COURT:  Did you hear Counsel for the State of New

14  Jersey?  Can you hear her?

15           MR. FLORES:  Yes, Your Honor.  Yes, Your Honor.

16           THE COURT:  What's your reaction to what she just

17  said?

18           MR. FLORES:  I have two reactions, Your Honor.

19  Number -- I -- let's call it three.  I will be prompt.

20           Reaction number one is that nothing that has been

21  said answers the five plaintiffs that have nothing to do with

22  the Texas case.  So their track doesn't change at all.  This is

23  only about two of the plaintiffs.  You know, all of our other

24  proceedings still have to go forward.

25           As to the two plaintiffs we're talking about, Defense

1  Distributed and the Second Amendment Foundation, the law that

2  they have invoked does not require a stay in these

3  circumstances because the issue is different, right.  The issue

4  here is the merits.

5          If the Court stays this litigation, there will be no

6  court where we can ask for a preliminary injunction and an

7  adjudication of the merits.  None.

8          THE COURT:  No.

9          MR. FLORES:  So, as a practical matter, it leaves us

10  without a remedy.  Until Texas decides to exercise

11  jurisdiction, we can't do that there.

12          And the third thing I'll say, Your Honor, is that I

13  don't think we should be -- that we being Defense Distributed

14  and the Second Amendment Foundation should be put to that

15  choice, but if they are, my understanding, and I don't want to

16  create a binding representation here, is that we would

17  essentially let the case go and disclaim any appeal immediately

18  so as to proceed here in New Jersey.  So we will be back almost

19  immediately.

20          Now, we shouldn't be put to that choice and I think

21  it would be error to require that, and so we are not

22  volunteering that as our action, but to tell the Court in

23  candor how that would go, I think that's how it would happen.

24          THE COURT:  Very interesting.

25          All right.  Has anyone else got something to say with

1  regard to this matter this afternoon?

2          MR. FLORES:  Your Honor, may I say two minor points?

3          THE COURT:  Sure.

4          MR. FLORES:  One is on the merits and so forth and

5  one is about procedure.

6          On the merits, it's important to note that the rule

7  that the Attorney General is invoking here, this first-filed

8  rule, was a rule that they violated.  After we started the suit

9  in Texas, they sued us in a New Jersey state court action that

10 was removed.  That case is over and done now.  But remember,

11 this is a practical doctrine.  It involves equitable

12 considerations, and having violated that rule once already, I

13 don't think they can come into the court now and claim it to

14 their benefit.  That's the last minor substantive point I have.

15         And the procedural point I would have is that since

16 we haven't had an opportunity to respond, if the Court is

17 inclined to entertain the motion, then we would ask to have

18 leave until the end of business tomorrow to file a response to

19 their stay.  I know the Court would want to rule quickly, but

20 we'd like the opportunity to get at least something on file as

21 to the matter.

22         THE COURT:  What would you have to say by tomorrow?

23 I -- you have lots of materials you've submitted here.  It

24 seems to me it's pretty clear what's being sought.  I've got

25 Judge Pitman's opinion right here.  I see what has taken place.

1   I've got -- I don't know, let's see.

2           I mean, I just can't imagine what would be added by

3   tomorrow.  Can you?

4           MR. FLORES:  If the Court has a full understanding of

5   everything that's been argued, then that's a good thing.  Let

6   me check one second.  I don't think that I have any additional

7   arguments to make, and so --

8           THE COURT:  Sure.  If you want a few minutes, go

9   right ahead.

10          MR. FLORES:  No, Your Honor.  If the question is what

11  would the filing say, then I would essentially spell out in

12  writing what I've given you today.  So that's what we're asking

13  to do.  And if the Court has a full understanding and doesn't

14  need that, then we understand the ruling.

15          THE COURT:  Yeah.  I -- do you have something to say?

16          MS. MEDOWAY:  Yes, Your Honor.  If I may address

17  three issues that were raised by Mr. Flores?

18          THE COURT:  You know, I think you have to come to the

19  podium --

20          MS. MEDOWAY:  Yes.

21          THE COURT:  -- for me to hear it.

22          MS. MEDOWAY:  Your Honor, if I could address three of

23  the arguments that were raised by Mr. Flores.

24          THE COURT:  I'd be happy to hear it.

25          MS. MEDOWAY:  Thank you, Your Honor.  He raised three

1    arguments that I would like to address.

2           One, regarding the fact that New Jersey has allegedly

3    violated this first-filed rule.  That is incorrect.  So let me

4    address that first.

5           What Mr. Flores is referring to, I believe, is this

6    summer, the New Jersey Attorney General had sent a letter to

7    Defense Distributed indicating that if they were to disseminate

8    the 3D printable gun files on the internet, then New Jersey

9    would file suit.  After receiving that letter, Defense

10   Distributed filed in Texas.

11          Now, the first-filed rule is a -- is an equitable

12   one.  And here, it would not be employed in a case where

13   knowing that they were about to be sued, Defense Distributed

14   sought out a forum that they thought was more advantageous --

15   Texas.

16          THE COURT:  You know what, this is more complicated

17   than I really want to deal with.

18          MS. MEDOWAY:  Okay.

19          THE COURT:  I'm satisfied.  I'm not really talking

20   about -- I'm just talking about the practicality --

21          MS. MEDOWAY:  Yes, Your Honor.

22          THE COURT:  -- of the fact that the plaintiffs, two

23   of them have filed in the Western District of Texas a lawsuit,

24   and clearly very thoughtful attorneys, not a fly-by-night

25   lawsuit.  And the judge there dismissed, lawsuit was filed

1  against this Attorney General; Michael Feuer, Los Angeles City

2  Attorney; Andrew Cuomo, New York Governor; Matthew Denn,

3  Attorney General of the State of Delaware; Josh Shapiro,

4  Attorney General of Pennsylvania; and Thomas Wolf, Governor of

5  Pennsylvania.

6          Now, Judge Pitman, United States District Court,

7  signed on January 30, 2019, dismissal.  In 15 pages, he laid

8  out why he believed that dismissal was appropriate for this

9  lawsuit -- no personal jurisdiction for Defendant, Grewal, and

10 so on.  Dismissed without prejudice.

11         So plaintiffs have sought reconsideration.  That's --

12 lawyers do that and that's pending.  I don't think it makes any

13 sense for this Court to direct its resources to a lawsuit about

14 the same subject here in Trenton, New Jersey, state capitol,

15 while that matter in Texas is still being reconsidered.  That's

16 just a practical matter.

17         If and when that's resolved with regard to the

18 Governor -- with regard to the Attorney General of the State of

19 New Jersey, then we can turn our attention to this.  But it's

20 just a rule of the courts that you don't proceed in two courts

21 at the same time, same parties, same issue.

22         Now, yes, I realize that there are more plaintiffs

23 here.  Here we've got Firearms Policy Coalition, Inc., Firearms

24 Policy Foundation, Calguns Foundation, California Association

25 of Federal Firearms Licenses, Inc., and Brandon Combs.  But

1  that's the way, you know, our courts try to function

2  efficiently, so they will have to be patient.

3          I think this case should be stayed.  That's how I see

4  it.  I don't see it as complicated.  I don't know what more can

5  be said, and so I would enter an order to that effect.

6          Now, how long does the stay last?  Well, you look

7  what makes sense.  When -- and I think that that's -- the

8  suggestion made by counsel was not a bad one.  When the appeal

9  to the Fifth Circuit time is up.  It's not that far in the

10 distant future.  Or some other resolution that the parties come

11 up with.  But that's the way my order will be worded.

12         And I thank you very much for your time, your

13 patience, and your afternoon.  And no snowing here in New

14 Jersey.  Just want you to know.  But I'd still trade Houston

15 weather for Trenton.

16         All right.  Thank you.

17         MS. MEDOWAY:  Thank you, Your Honor.

18         THE COURT:   Nice to see you.

19         MR. SCHMUTTER:  Thank you, Your Honor.

20         MR. MORAMARCO:  Thank you, Your Honor.

21                     *  *  *  *  *

22

23

24

25

## C E R T I F I C A T I O N

I, KAREN K. WATSON, court approved transcriber, certify that the foregoing is a correct transcript from the official electronic sound recording of the proceedings in the above-entitled matter, and to the best of my ability.


/s/ Karen K. Watson
KAREN K. WATSON

J&J COURT TRANSCRIBERS, INC.        DATE: March 13, 2019