# UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF NEW JERSEY

| | |
|---|---|
| Defense Distributed, Second Amendment Foundation, Inc., *Plaintiffs*, v. Matthew J. Platkin, Acting New Jersey Attorney General, *Defendant*. | No. 3:19-cv-04753 |

**Plaintiffs' Supplemental Brief in Support of
Transfer to the Western District of Texas**

BECK REDDEN LLP
Chad Flores
cflores@beckredden.com
Hannah Roblyer
hroblyer@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

HARTMAN & WINNICKI, P.C.
Daniel L. Schmutter
dschmutter@hartmanwinnicki.com
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040

Counsel for Plaintiffs

## Table of Contents

Argument……………………………………………………………………….. 1

I.      Case number 3:21-cv-9867 belongs in Texas no matter what……………….1

II.     Case number 3:19-cv-4753 either belongs in Texas or should be stayed……2

III.    Overlap concerns ignore the case against the State Department…………….4

Conclusion……………………………………………………………………….7

## Table of Authorities

*Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022)………………. *passim*

*New Hampshire v. Maine*, 532 U.S. 742 (2001)………………………………….3

# ARGUMENT

This Court should grant the retransfer request and return this controversy to the Western District of Texas immediately. The reasons to grant the request are given by Plaintiffs' letter, Doc. 54, and none of the contrary arguments are valid.

**I.     Case number 3:21-cv-9867 belongs in Texas no matter what.**

Every material aspect of the venue dispute has been resolved in Plaintiffs' favor by *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022) (Doc. 54, Ex. B). There the New Jersey AG was able to make every argument he now makes, and there the New Jersey AG suffered a complete loss. In an opinion that rejects the prior version of every argument being made now, the Fifth Circuit held that this controversy belongs in the Western District of Texas alongside Defense Distributed and SAF's existing case against the State Department. The Fifth Circuit's decision is correct; and regardless of correctness, it is decisive by virtue of comity and law-of-the-case principles. *See* Doc. 54 at 1-5.

Thus, Plaintiffs' combined case against both the State Department and the New Jersy AG is proceeding in Texas. Plaintiffs' claims against the State Department are being fully prosecuted with standard pretrial motions awaiting decision. Furthermore, Plaintiffs' revived claims against the New Jersey AG are proceeding in accordance with the Fifth Circuit's order that the Western District of Texas "should entertain a motion for preliminary injunction expeditiously." *Def.*

1

*Distributed v. Bruck*, 30 F.4th 414, 421 n.2 (5th Cir. 2022). *See* Ex. A (W.D. Tex. Doc. No. 117, Plaintiffs' Second Amended Complaint); Ex. B (W.D. Tex. Doc. No. 172, Order); Ex. C. (W.D. Tex. Doc. No. 173, Plaintiffs Notice of Vacatur and Related Cases); Ex. D (W.D. Tex. Doc. No. 174, Plaintiffs' Motion for a Preliminary Injunction Against the New Jersey Attorney General). All of the harms that comity and law-of-the-case docrines are designed to protect against would occur if, as the New Jersey AG has argued, this Court opts not to respect the Fifth Circuit's decision and ongoing Texas proceedings.

**II.     Case number 3:19-cv-4753 either belongs in Texas or should be stayed.**

The foregoing analysis shows that, viewed in isolation, the case for transferring cause number 3:21-cv-9867 back to the Western District of Texas where it was first filed is overwhelming. The New Jersey AG knows this and therefore argues that the presence of case number 3:19-cv-4753—the later-filed case that originated in this Court—should prevent retransfer of case number 3:21-cv-9867 because of concerns about case overlap. But that is wrong for a litany of reasons.

The case overlap concerns are wrong on their own terms. Transferring cause number 3:21-cv-9867 back to the Western District of Texas does *not* cause any significant overlap concerns. But more importantly, assuming for the sake of argument that the New Jersey AG's supposed overlap concerns exist, the transfer of case number 3:21-cv-9867 to Texas should still not be halted or delayed. The Court

2

should instead proceed with the immediate transfer of case number 3:21-cv-9867 and use orthodox procedural tools to resolve all overlap concerns.

First, all overlap concerns can be fully resolved by transferring *both* cases to the Western District of Texas and letting that Court confront any subsequent issues that may or may not arise. This resolves all of the New Jersey AG's supposed overlap concerns without creating any significant disadvantage.

Second and alternatively, all overlap concerns can be fully resolved by transferring case number 3:21-cv-9867 to the Western District of Texas and staying case number 3:19-cv-4753. Such a stay accords with the "first filed" rule that the New Jersey AG successfully advanced in both this Court and the Third Circuit. Over Plaintiffs' objection, the New Jersey AG invoked the "first filed" rule to convince both this Court and the Third Circuit to do nothing at all with actions in New Jersey so long as Texas courts could adjudicate any part of the original case. Having used the "first filed" rule to successfully obtain those benefits, estoppel dictates that the New Jersey AG must now be held to the same standard and feel its detriments. *See, e.g.*, *New Hampshire v. Maine*, 532 U.S. 742, 742–43 (2001) ("a party should not be allowed to gain an advantage by litigation on one theory, and then seek an inconsistent advantage by pursuing an incompatible theory."). The New Jersey AG's own prior briefs show how a stay in the instant situation will resolve all overlap concerns: "Because a stay confines litigants to the first forum until proceedings there

3

have concluded, a stay will generally avoid wasted judicial efforts, conflicting judgments, and unnecessary friction between courts." Ex. E at 16-17 (New Jersey AG's Third Circuit Brief). Here, the "first forum" that gets primacy is the United States District Court for the Western District of Texas. By the New Jersey AG's own logic, Texas is where the case against him should be "confined" until a final judgment is reached. *Id.* To do otherwise would permit the kind of "[b]latant forum shopping" that the New Jersey AG used to bemoan. *Id.* But party and claim differences do not matter to the New Jersey AG. *Id.* His "first filed" position is that Texas courts should be adjudicating the original case by Defense Distributed and SAF notwitstanding the presence of additional parties with distinct claims in case number 3:19-cv-4753.

Thus, to the extent that this Court has any concerns about case overlap, the same stay that the New Jersey AG has supported for years should again be employed.

### III. Overlap concerns ignore the case against the State Department.

If the Court adopts Plaintiffs' position and transfers cause number 3:21-cv-9867 back to the Western District of Texas, all overlap concerns can be fully resolved by either transferring the other case to Texas or staying it. But if the Court adopts the New Jersey AG's position, the result will be a massive amount of overlap that cannot be avoided.

No matter where the case number 3:21-cv-9867 against the New Jersey AG proceeds, Defense Distributed and SAF's claims against the State Department will be proceeding in the Western District of Texas. And as the Fifth Circuit correctly held in great detail, the claims against the State Department are deeply related both in law and fact to the claims against the New Jersey AG. *Defense Distributed v. Bruck*, 30 F.4th 414, 429-33 (5th Cir. 2022). If this Court accepts the New Jersey AG's proposal and forces multi-venue litigation of the cases against the State Department and New Jersey AG, the very same error that the Fifth Circuit just corrected would occur again here:

> [T]he principal claims against both defendants are temporally and factually intertwined to the extent that litigation in separate courts would largely overlap. A paraphrase of the facts alleged in the Second Amended Complaint is demonstrative. Just when the Plaintiffs, after several years of litigation, thought they had obtained relief from a signed settlement agreement with the State Department, the NJAG loudly led a bevy of states in opposition. Within a span of about six months, he filed suit in Washington state, even more remote from New Jersey than Texas, and forced the joinder of Defense Distributed as a defendant there. He evidently thought the parties' fates were legally and factually connected when he sought and obtained an injunction expressly to prevent the State Department from completing the settlement with Plaintiffs. The NJAG kept up public pressure against the settlement with threats of civil and criminal punishment against Plaintiffs' president Cody Wilson personally. At this time, the State Department opted not to complete the settlement. Accordingly, the State Department did not modify relevant federal regulations, disavowed the license and exemption from regulations it had promised Defense Distributed, and refused to appeal adverse decisions by the Washington federal court. The extent to which the NJAG's campaign influenced the State Department's alleged breaches is relevant to the claims against both defendants. At the same time, the NJAG's seminal

5

> place in the litigation is a major, though far from the only facet of his conduct that was designed to derail the settlement and independently to restrain Plaintiffs' exercise of free speech. Plaintiffs' essential claims for First Amendment violations, breach of the settlement agreement, and the NJAG's interferences cannot be understood by a factfinder without investigating and telling the whole story. Similarly, having to tell the same story in two courts would abuse Plaintiffs and the judicial process.
>
> . . . [T]he public interest in achieving a single court's ruling on Plaintiffs' First Amendment claims cannot be overstated. Government instigated censorship of constitutionally protected speech is abhorrent to self-government; courts have a duty to prevent illegal censorship. But severance and transfer enhances the risk of conflicting rulings, which would seriously injure the Plaintiffs and throw the law in this important constitutional area into national disarray for several years.
>
> Second, because of the complex factual interactions among Plaintiffs and these Defendants, discovery and trial for the principal claims will require many of the same witnesses. No efficiency exists from conducting two fact-based litigations half a continent apart. On the other hand, no efficiency is gained by having two courts decide the separate subsidiary claims against each Defendant. Such claims are largely legal in nature, overlapping in several instances, and best resolved on briefing to a single court that has gained familiarity with the intricacies of Plaintiffs' dozens of digital firearms files and background materials that could be published to the internet and in New Jersey. There is no obvious efficiency advantage, much less materially enhanced judicial economy from forcing Defense Distributed's case into two separate cases.

*Id.* (footnotes and citations omitted).

## CONCLUSION

The Court should grant the Western District of Texas' transfer request and transfer cause number 3:21-cv-9867 to the Western District of Texas immediately. The Court should also either transfer case number 3:19-cv-4753 to the Western District of Texas or, alteratively, stay case number 3:19-cv-4753.

Date: June 6, 2022

BECK REDDEN LLP
Chad Flores
cflores@beckredden.com
Daniel Hammond
dhammond@beckredden.com
Hannah Roblyer
hroblyer@beckredden.com
1221 McKinney Street, Suite 4500
Houston, Texas 77010
(713) 951-3700

Respectfully submitted,

HARTMAN & WINNICKI, P.C.
s/ Daniel L. Schmutter
Daniel L. Schmutter
dschmutter@hartmanwinnicki.com
74 Passaic Street
Ridgewood, New Jersey 07450
(201) 967-8040

Counsel for Plaintiffs