Nos. 19-1729 & 19-3182

In the United States Court of Appeals
for the Third Circuit

Defense Distributed, Second Amendment Foundation, Inc., Firearms
Policy Coalition, Inc., Firearms Policy Foundation, Calguns Foundation,
California Association of Federal Firearms Licensees, Inc.,
and Brandon Combs,

Plaintiffs - Appellants

v.

Gurbir S. Grewal, Attorney General of the State of New Jersey,

Defendant- Appellee

Appeal from the United States District Court for the
District of New Jersey; No. 3:19-CV-4753

**Appellee's Brief**

<u>On the brief</u>
Glenn J. Moramarco
Assistant Attorney General
Tim Sheehan
Deputy Attorney General

GURBIR GREWAL
Attorney General
Office of the Attorney General
R.J. Hughes Justice Complex
25 Market Street
P.O. Box 112
Trenton, New Jersey  08625

# TABLE OF CONTENTS

JURISDICTIONAL STATEMENT ........................................................................1

STATEMENT OF ISSUES ...................................................................................1

STATEMENT OF RELATED CASES ..................................................................1

STATEMENT OF FACTS AND OF THE CASE ...................................................2

SUMMARY OF ARGUMENT ..............................................................................6

ARGUMENT ........................................................................................................8

  I.   THIS COURT LACKS JURISDICTION TO REVIEW THE DISTRICT COURT'S ORDERS STAYING THE CASE WHILE THE LITIGATION IN TEXAS CONTINUES .......................................................8

  II.  EVEN IF THERE WERE JURISDICTION, THIS COURT SHOULD AFFIRM BECAUSE THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING A STAY. ..................................................16

    A. Judge Thompson Did Not Abuse Her Discretion In Granting A Stay Based On The First-Filed Rule. ...............................................16

    B. Abstention Principles Have No Bearing Here. ........................................22

    C. Appellants' Remaining Arguments Likewise Are Without Merit. ..........25

CONCLUSION ...................................................................................................34

# TABLE OF AUTHORITIES

**Cases**

*Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361 (D.N.J. 2010) .................... 18

*Aluminum Co. of America v. Beazer East, Inc.*, 124 F.3d 551
    (3d Cir. 1997)........................................................................................ 8

*Baatz v. Columbia Gas Transmission, LLC,* 814 F.3d 785
    (6th Cir. 2016) ............................................................... 17, 19, 21

*Chavez v. Dole Food Co.*, 836 F.3d 205 (3d Cir. 2016) ...................................... 16

*Commodity Futures Trading Comm'n v. Vartuli*, 228 F.3d 94
    (2d Cir. 2000)...................................................................................... 31

*Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37
    (3d Cir. 1980).................................................................................... 21

*D & L Distrib., LLC v. Agxplore Int'l, LLC,* 959 F. Supp. 2d 757, 767
    (E.D. Pa. 2013) .................................................................................. 18

*Defense Distributed et al. v. Gurbir S. Grewal et al*., No. 1:18-cv-637-
    RP (W.D. Tex.) .............................................................................. 1, 2

*Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451
    (5th Cir. 2016) ...................................................................................... 2

*EEOC v. Univ. of Pa.*, 850 F.2d 969 (3d Cir. 1988).............................................. 34

*Fosamax Litigation*, 751 F.3d 150 (3d Cir. 2014) .................................................. 8

*Giboney v. Empire Storage & Ice Co.,* 336 U.S. 490 (1949) ............................... 32

*Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271
(1988)......................................................................................... 9

*Hershey Foods Corp. v. Hershey Creamery Co.*, 945 F.2d 1272
(3d Cir. 1991)............................................................................. 9

*Hertz Corp. v. The Gator Corp.*, 250 F. Supp. 2d 421
(D.N.J. 2003) .......................................................................... 12

*Kohn Law Group, Inc. v. Auto Parts Mfg. Miss., Inc.,* 787 F.3d 1237,
1240 (9th Cir. 2015) ........................................................... 17, 18

*Michelson v. Citicorp Nat'l Servs.*, 138 F.3d 508 (3d Cir. 1998).......................... 8

*Presinzano v. Hoffman-La Roche, Inc.*, 726 F.2d 105
(3d Cir. 1984)..................................................................... 10, 14

*Rolo v. General Development Corp.,* 949 F.2d 695 (3d Cir. 1991) .................... 13

*Save Power Ltd. v. Syntek Fin. Corp.*, 121 F.3d 947
(5th Cir. 1997) ........................................................................ 18

*Shirey v. Bensalem Twp.*, 663 F.2d 472 (3d Cir. 1981)....................................... 10

*Sinclair Cattle Co., Inc. v. Ward*, 80 F. Supp. 3d 553 (M.D. Pa. 2015).............. 19

*United States v. Alvarez*, 567 U.S. 709 (2012) ...................................... 32

*United States v. Irving*, 509 F.2d 1325 (5th Cir. 1975) ........................... 32

*United States v. Wade*, 713 F.2d 49 (3d Cir. 1983)....................................... 11, 33

*University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265
(3d Cir. 1991).......................................................................... 30

*Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2007) .......................................... 13

*Wakaya Perfection, LLC v. Youngevity Int'l, Inc.,* 910 F.3d 1118,
    (10th Cir. 2018) ........................................................................................ 18

## Statutes

28 U.S.C. § 1291 ................................................................................... 8, 9
28 U.S.C. § 1292 ................................................................... 1, 6, 10, 14, 15
28 U.S.C. § 1331 .......................................................................................... 1
N.J. Stat. Ann. 2C:39-9 ............................................................................. 3

## JURISDICTIONAL STATEMENT

These are consolidated appeals from two interlocutory orders of the District of New Jersey that stayed the case during the pendency of the related action filed in the Western District of Texas, *Defense Distributed et al. v. Gurbir S. Grewal et al.*, No. 1:18-cv-637-RP (W.D. Tex.), and dismissed Appellants' motion for a preliminary injunction without prejudice to their ability to refile the motion once the stay is lifted. The District Court had subject matter jurisdiction pursuant to 28 U.S.C. § 1331. For the reasons set forth below, this Court lacks appellate jurisdiction.

## STATEMENT OF ISSUES

1.      Whether this Court has jurisdiction under 28 U.S.C. § 1292(a)(1) over the District Court's orders which simply delayed adjudication of Appellants' motion for a preliminary injunction until Appellants abandon their duplicative lawsuit filed in the Western District of Texas.

2.      Whether the District Court abused its discretion in granting a stay based on the first-filed rule.

## STATEMENT OF RELATED CASES

This action is related to *Defense Distributed et al. v. Gurbir S. Grewal et al.*, No. 1:18-cv-637-RP (W.D. Tex.), which the Western District of Texas dismissed for lack of personal jurisdiction and is currently on appeal in the United States Court of

Appeals for the Fifth Circuit. *Defense Distributed et al. v. Gurbir S. Grewal*, No. 19-50723 (5th Cir.).

## STATEMENT OF FACTS AND OF THE CASE

This appeal stems from the Appellants' campaign to publish downloadable computer files that allow any recipient with access to 3D printers – including terrorists, felons, and domestic abusers – to produce untraceable and undetectable firearms. *See Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451, 455 (5th Cir. 2016). Appellant Defense Distributed's printable-gun files "allow people to easily produce their own weapons and weapon parts using relatively affordable and readily available equipment." *Id.* at 454. These printable-gun files, in conjunction with other equipment sold by Defense Distributed, enable users "to produce fully functional, unserialized, and untraceable metal AR-15 lower receivers in a largely automated fashion." *Id.* at 455.

Before bringing this action, in July 2018, Appellants Defense Distributed and Second Amendment Foundation, Inc. ("SAF") filed a complaint against the New Jersey Attorney General ("NJAG") and other public officials in the Western District of Texas, seeking declaratory and injunctive relief that would permit them to disseminate computer files that direct the manufacture of firearms using 3D printers ("the Texas Action"). *See* No. 1:18-cv-637-RP (W.D. Tex.), Dkt. 1.

While that case was active, on November 8, 2018, New Jersey enacted N.J.S.A. § 2C:39-9(*l*)(2) ("Section 3(*l*)(2)"), which makes it a crime to distribute computer code capable of producing firearms on a 3D printer to anyone in New Jersey who is not a licensed firearms manufacturer.[1] The next day, Appellants Defense Distributed and SAF filed a motion in the Texas Action seeking a temporary restraining order ("TRO") and preliminary injunction against the NJAG's enforcement of Section 3(*l*)(2). No. 1:18-cv-637-RP, Dkt. 52

The Texas District Court denied that motion, finding that the plaintiffs "failed to demonstrate that they will likely suffer irreparable harm in the TRO's absence." *Id.*, Dkt. 53 at 7. On December 4, 2018, Defense Distributed and SAF filed a second motion for TRO and preliminary injunction in the Texas Action, Dkt. 66 & 67, which the District Court also denied. Dkt. 69 at 8 ("Plaintiffs have again failed to demonstrate that they are likely to suffer imminent irreparable harm"). Thereafter, on January 30, 2019, the District Court dismissed the Texas Action, finding that it lacked personal jurisdiction over the NJAG. Dkt. 101.

---

[1] Section 2C:39-9(*l*)(2) makes it a crime in New Jersey for a person "to distribute by any means, including the Internet, to a person in New Jersey who is not registered or licensed as a manufacturer [of firearms under New Jersey law], digital instructions in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component."

On February 5, 2019, Defense Distributed, SAF, and five additional plaintiffs (collectively, "Appellants") filed this action against the NJAG in the District of New Jersey, seeking injunctive relief and a declaration that Section 3(*l*)(2) is unconstitutional. App. 7. On February 20, 2019, Appellants filed a motion for a preliminary injunction enjoining enforcement of Section 3(*l*)(2). App. 94.

On February 27, 2019, before the hearing on the motion for a preliminary injunction in New Jersey, Defense Distributed and SAF filed a motion to reconsider the dismissal of their complaint in the Texas Action. No. 1:18-cv-637-RP, Dkt. 102. In light of Appellants' decision to continue litigating the Texas Action, on March 3, 2019, the NJAG requested a stay of all proceedings in the District of New Jersey, based on the first-filed rule. App. 968. In response to the NJAG's request, Appellants filed two separate responses, one on March 4, 2019, and another on March 5, 2019, in which Appellants objected to granting the requested stay. App. 970-73, 976-81.

On March 7, 2019, following oral argument, the Honorable Anne E. Thompson, U.S.D.J., entered an order staying all proceedings in this action until the Texas Action is concluded and no appeals are viable. App. 4. At oral argument, Appellants' counsel had suggested that if a stay were granted, Defense Distributed and SAF would likely "let the [Texas] case go and disclaim any appeal immediately so as to proceed here in New Jersey. So we will be back almost immediately." App. 1001. But Appellants did not "let the Texas Action go." Defense Distributed and

SAF did not withdraw their motion for reconsideration, which the District Court denied on July 1, 2019. *See* No. 1:18-cv-637-RP, Dkt. 110. On July 31, 2019, Defense Distributed and SAF appealed the Texas District Court's final order dismissing the case to the Fifth Circuit. *See* CA5 No. 19-50723. That appeal has now been fully briefed by the parties and remains pending.

While still before the District Court in the Western District of Texas, Appellants sought an immediate appeal of Judge Thompson's orders in this Court. On April 1, 2019, Appellants filed a notice of appeal from the March 7, 2019 stay order. App. 1-2. On August 28, 2019, Judge Thompson *sua sponte* entered essentially a docket-cleaning order, dismissing Appellants' motion for a preliminary injunction *without prejudice* to their ability to "refile this Motion once the stay has been lifted in this action." App. 1018. Appellants also filed an appeal from the August 28 order. App. 1019-21. This Court consolidated Appellants' appeals from the March 7 and August 28 orders.

On November 21, 2019, after briefing by the parties, this Court dismissed the consolidated appeals for lack of appellate jurisdiction. Appellants filed a motion for panel rehearing, which this Court granted on January 15, 2020. This Court vacated the order dismissing the appeals and referred the issue of appellate jurisdiction to a merits panel. *See* Order of Jan. 15, 2020 ("By vacating the prior order, the Court

does not determine that it does have jurisdiction. Rather, the issue of jurisdiction is a matter to be determined by a merits panel.").

## SUMMARY OF ARGUMENT

This Court should dismiss these appeals for lack of jurisdiction under 28 U.S.C. § 1292(a)(1). Interlocutory orders are appealable under section 1292(a)(1) only if they have the "practical effect" of denying an injunction and cause serious harm such that an immediate appeal is *the only effective means of challenge the alleged ongoing harm*. Here, the District Court's orders did not effectively deny Appellants an injunction, but merely stayed the case during the pendency of the first-filed lawsuit against the NJAG in the Western District of Texas. Moreover, Appellants have a readily available and effective means of challenging their harm allegedly resulting from Section 3(*l*)(2); they simply have to abandon their lawsuit in Texas.  That will lift the stay and allow Appellants to seek effective relief in the District Court for the District of New Jersey. Because it is entirely within Appellants' control to lift the stay, the interlocutory orders entered by the District Court are not appealable under 28 U.S.C. § 1292(a)(1).

If this Court finds that jurisdiction exists, it should affirm the District Court's orders granting a stay. This appeal does not present any issue regarding the constitutionality of Section 3(*l*)(2), New Jersey's 3D-gun statute; the only issue properly before this Court is whether Judge Thompson abused her discretion in

granting a stay of the proceedings. This was a routine application of the first-filed rule, as this case involves the same claims challenging the validity of the same statute brought by the same lead plaintiffs against the same defendant as the earlier-filed Texas Action. Judge Thompson did not abuse her discretion in invoking the first-filed rule to block the Plaintiffs' attempt simultaneously to use two different federal courts to get "two bites at the apple" in their challenge to the New Jersey law.

# ARGUMENT

## I. THIS COURT LACKS JURISDICTION TO REVIEW THE DISTRICT COURT'S ORDERS STAYING THE CASE WHILE THE LITIGATION IN TEXAS CONTINUES.

Standard of Review: The scope of review concerning questions of appellate jurisdiction is plenary. *In re Fosamax Litigation*, 751 F.3d 150, 155 (3d Cir. 2014).

At the outset, Judge Thompson's orders are not appealable final orders under 28 U.S.C. § 1291. For an order to be final, it must have two effects – (1) it must "fully resolve all claims presented to the district court" and (2) after it has been issued, it must require nothing further of the district court. *Aluminum Co. of America v. Beazer East, Inc.*, 124 F.3d 551, 557 (3d Cir. 1997). "[T]here is no final order if claims remain unresolved and their resolution is to occur in the district court." *Id.* "[B]y definition an order that stays the proceedings for a finite period of time, would, without more, merely postpone a final disposition in the district court, and therefore would lack the essential elements of finality." *Michelson v. Citicorp Nat'l Servs.*, 138 F.3d 508, 513 (3d Cir. 1998). A stay is not a final order unless it is effectively a dismissal and forces the plaintiff out of court. *Id.* at 513-14. Here, Judge Thompson's orders are clearly not final under section 1291, as they merely delay a decision on Appellants' preliminary injunction motion until the Texas Action is concluded or abandoned by Appellants.

Effectively conceding that Judge Thompson's orders are not final orders under 28 U.S.C. § 1291, Appellants instead contend that these interlocutory orders are immediately appealable under section 1292(a)(1), which permits appeals from orders "granting, continuing, modifying, refusing or dissolving injunctions." Section 1292(a)(1) is a limited carve-out to the finality rule which authorizes jurisdiction only over orders that "have the practical effect of granting or denying injunctions and have serious, perhaps irreparable, consequence." *Gulfstream Aerospace Corp. v. Mayacamas Corp.*, 485 U.S. 271, 287-88 (1988). This reflects that section 1292(a)(1) "was intended to carve out only a limited exception to the final-judgment rule," consistent with "the long-established federal policy against piecemeal appeals." *Hershey Foods Corp. v. Hershey Creamery Co.*, 945 F.2d 1272, 1276 (3d Cir. 1991). "[S]ection 1292(a)(1) should be construed narrowly so as not to swallow the final-judgment rule." *Id.*

Here, the District Court's orders did not have the "practical effect" of denying Appellants an injunction. Judge Thompson merely stayed the case during the pendency of the Texas Action, and in a subsequent docket-cleaning order dismissed Appellants' motion for a preliminary injunction *without* prejudice to their ability to refile the motion once the stay is lifted. App. 1018. As the stay order was based on the first-filed rule, Judge Thompson necessarily did not reach the merits of

Appellants' motion for an injunction but simply directed them to choose a single forum in which to litigate their claims – either Texas or New Jersey, but not both.

Since Judge Thompson stayed the case "for reasons completely unrelated to [Appellants'] entitlement to injunctive relief" – *i.e.*, the first-filed rule – her orders did not have the practical effect of denying an injunction. *See Shirey v. Bensalem Twp.*, 663 F.2d 472, 477 (3d Cir. 1981) (order dismissing "various counts of plaintiff's complaint for reasons completely unrelated to plaintiff's entitlement to injunctive relief was not . . . appealable under § 1292(a)(1)."). These purely procedural orders did not rule on the legal sufficiency of Appellants' claim for injunctive relief, and thus have no impact on Appellants' ability to seek this relief once the stay is lifted. *Cf. Presinzano v. Hoffman-La Roche, Inc.*, 726 F.2d 105, 109 (3d Cir. 1984) (partial summary judgment grant had "practical effect" of refusing injunction where the court "necessarily decided that upon the facts alleged [the plaintiff was] not entitled to injunction.").

Appellants' claim that the dismissal of their preliminary injunction motion "without prejudice" makes no difference would transform the limited carve-out created by § 1292(a)(1) into a limitless exception. *See* Appellants' Jan. 27, 2020 Supp. Brief ("App. Supp. Br.") at 2. In effect, Appellants argue that any order on a motion for injunction that does not immediately grant all of the relief requested, no matter what the reasoning, is immediately appealable. This exception would swallow

the rule in violation of the intent of section 1292(a)(1), as clearly the reasons underlying an interlocutory order are relevant to whether it has the "practical effect" of denying an injunction. *See Hershey Foods*, 945 F.2d at 1276 ("[S]ection 1292(a)(1) should be construed narrowly so as not to swallow the final-judgment rule.").

But even if these orders are construed as having the practical effect of denying an injunction, that still is not enough to satisfy the requirements of section 1292(a)(1).

> [F]or an interlocutory order to be immediately appealable, a litigant must show more than that the district court's order has the practical effect of refusing an injunction. In addition a party seeking an appeal of right under section 1292(a)(1) must establish that the district court's order might have a "serious, perhaps irreparable consequence," and that the order can be "effectively challenged" only by immediate appeal.

*United States v. Wade*, 713 F.2d 49, 52 (3d Cir. 1983).

The District Court's order granting a stay can be "effectively challenged" quickly and easily – all the Appellants have to do is dismiss the parallel federal court action in Texas. This will lift the stay and allow them to seek relief from the District Court in New Jersey for their claimed "serious and irreparable harms." The Appellants' failure to take this simple step, which is readily available to them, makes their claim of ongoing serious and irreparable harm ring hollow. The fact that the delay is attributable to Appellants' own voluntary actions is powerful evidence that they are not harmed by the status quo, and it defeats their claim of irreparable injury.

11

*See id.* at 53 (dismissal order was not appealable under section 1292(a)(1) where the government's own delay in seeking injunctive relief "is a strong indication that the status quo can continue until the ultimate conclusion of the litigation."). The fact that the challenged order can be quickly and effectively remedied by actions that Appellants themselves can take means they cannot satisfy an essential prong of the test under section 1292(a)(1), and this Court therefore should dismiss the appeal for lack of appellate jurisdiction.

    In addition, Appellants have manifestly failed to bear their burden of demonstrating that the stay granted here has resulted in serious or irreparable harm. The district court in Texas twice found that Defense Distributed and SAF had failed to bear their burden of demonstrating irreparable harm sufficient to justify either a TRO or a preliminary injunction. *See* No. 1:18-cv-637-RP, Dkt. 53 at 7; Dkt. 69 at 8.  Appellants contend here that they are suffering from irreparable injury because of the delay in adjudicating their claim for injunctive relief. App. Supp. Br. at 4. But the mere delay of an adjudication of the merits of a preliminary injunction motion is not irreparable harm. *See Hertz Corp. v. The Gator Corp.*, 250 F. Supp. 2d 421, 426 (D.N.J. 2003) (stay order that delayed a decision on a preliminary injunction motion did not cause irreparable injury since there was no evidence "that the Court will be unable to remedy whatever harm is done" during the stay). As already noted, the delay here is entirely self-inflicted, as the only reason Judge Thompson granted the

stay is because Appellants continue to insist on simultaneously litigating the Texas action while seeking the same relief in the New Jersey action.

Appellants mistakenly rely on *Rolo v. General Development Corp.*, 949 F.2d 695 (3d Cir. 1991), and *Victaulic Co. v. Tieman*, 499 F.3d 227 (3d Cir. 2007), but both cases are readily distinguishable. In *Rolo*, this Court held that an order staying plaintiffs' motion for a preliminary injunction barring defendants from liquidating their assets was appealable under section 1292(a)(1) because the defendants were "currently liquidating and distributing their assets in an effort to render [themselves] judgment proof." 949 F.2d at 703. Thus a deferred ruling on plaintiffs' motion would be "an effective denial," such that the stay order could be "effectively challenged only by an immediate appeal." *Id.* Under the narrow exception created by section 1292(a)(1), all of those factors must be present, and none are present here. *Id.*

First, in *Rolo*, the plaintiffs were seeking relief against defendants only in New Jersey, such that the stay effectively precluded plaintiffs from obtaining injunctive relief anywhere. By contrast, Appellants here are litigating the same case against the NJAG in two jurisdictions, and all they have to do to lift the stay is abandon the Texas Action. Second, in *Rolo*, the stay caused plaintiffs irreparable harm because it deprived them of *any* opportunity to preserve defendants' assets. That is not the case here. Appellants already sought and were denied relief in Texas, and they can seek immediate relief in the District of New Jersey if they voluntarily abandon their

Fifth Circuit appeal, which would promptly dissolve the stay. The asserted harm is thus reparable through an action Appellants themselves can take.

*Victaulic* likewise does not support Appellants' argument. In *Victaulic*, the District Court granted defendants' motion to dismiss for failure to state a claim, and in doing so ruled that the subject covenant not to compete was invalid. 499 F.3d at 231. The District Court did not expressly rule on plaintiff's pending preliminary injunction motion, which was premised on the validity of the non-compete. *Id.* This Court held that the dismissal was appealable under § 1292(a)(1), particularly because it implicitly denied plaintiff's motion for injunction and because an immediate appeal was "the only means of effective challenge." *Id.* at 232.

*Victaulic* is inapposite because the dismissal order there, unlike Judge Thompson's orders, necessarily passed on the merits of plaintiff's claim for injunctive relief by finding the non-compete was invalid. *See Presinzano*, 726 F.2d at 109 (order has practical effect of denying injunction if it "necessarily decided" the facts on which the claim for injunctive relief is based). And unlike in *Victaulic*, an immediate appeal is not the only means of effective challenge, since Appellants can lift the stay through their own voluntary actions. Appellants erroneously claim that "*Victaulic* held an injunction denial appealable even where 'similar relief is hypothetically possible' elsewhere." App. Br. at 7. It did not. *Victaulic* rejected the argument that the plaintiff there could obtain its requested injunctive relief through

14

its unresolved trade secrets claim, since that claim was not central to the requested
relief. 499 F.3d at 233-34. In any event, Appellants have sought (and been denied)
their requested injunction in the Texas Action, which is ongoing, not a hypothetical.[2]

In sum, Judge Thompson's orders do not fit the narrow exception created by
§ 1292(a)(1). The Court should dismiss these appeals for lack of jurisdiction.

---

[2] Appellants claim that the addition of new plaintiffs who were not parties to the
Texas Action establishes jurisdiction under section 1292(a)(1). App. Supp. Br. at 8-
9. They are mistaken. The additional plaintiffs voluntarily joined the lead plaintiffs
from the prior litigation, and there is nothing in the record that suggests any
divergence of interests among the plaintiffs, who are all represented by the same
counsel. As a result, the additional plaintiffs are bound by the decisions of the lead
plaintiffs to continue the Texas Action. The grant of a stay of proceedings is not a
final order for any of the plaintiffs, and if Defense Distributed and SAF change their
litigating strategy, and abandon the Texas Action, all plaintiffs will be able to pursue
their claims for relief in the District of New Jersey.

## II.   EVEN IF THERE WERE JURISDICTION, THIS COURT SHOULD AFFIRM BECAUSE THE DISTRICT COURT DID NOT ABUSE ITS DISCRETION IN GRANTING A STAY.

Standard of Review: A District Court's order granting a stay under the first-filed rule is reviewed for abuse of discretion. *Chavez v. Dole Food Co.*, 836 F.3d 205, 210 n.1 (3d Cir. 2016).

On the merits, Judge Thompson did not abuse her discretion in staying the case during the pendency of the earlier-filed Texas Action because the stay was a straight-forward application of the first-filed rule. Appellants' attempt to recast the stay as an act of abstention is a red herring; the stay was based only on the first-filed rule and federal abstention doctrine has no bearing here.

### A.   Judge Thompson Did Not Abuse Her Discretion In Granting A Stay Based On The First-Filed Rule.

The first-filed rule "is a comity-based doctrine stating that, when duplicative lawsuits are filed successively in two different federal courts, the court where the action was filed first has priority." *Chavez v. Dole Food Co.*, 836 F.3d 205, 210 (3d Cir. 2016). This rule gives second-filed courts the authority to "stay, transfer, or dismiss the case before it." *Id.* Indeed, this Court has held, "in the vast majority of cases, a court exercising its discretion under the first-filed rule *should* stay or transfer a second-filed suit." *Id.* at 220 (emphasis added). That makes sense: "Because a stay confines litigants to the first forum until proceedings there have concluded, a stay will generally avoid wasted judicial efforts, conflicting judgments, and unnecessary friction between courts." *Id.*

Here, Judge Thompson properly invoked the first-filed rule because both actions were brought by plaintiffs asserting the same constitutional challenge to Section 3(*l*)(2) and both lawsuits seek the same relief. As Judge Thompson made clear, the stay will be lifted as soon as Appellants choose New Jersey instead of Texas as the forum for their claims. But as long as Appellants insist on continuing the duplicative Texas Action – which is solely their choice – the stay will remain in effect. To allow Appellants to simultaneously litigate both actions would result in precisely the "wasted judicial efforts, conflicting judgments, and unnecessary friction between courts" that the first-filed rule exists to prevent. *Chavez*, 836 F.3d at 220. It would also reward Appellants' "[b]latant forum shopping." *See id.* at 221. Simply put, Judge Thompson did exactly what *Chavez* urges courts to do.

Appellants attempt to make much of the fact that their lawsuit in New Jersey involves some additional plaintiffs who were not present in the earlier Texas lawsuit. But Judge Thompson did not abuse her discretion in concluding that this fact did not require her to change her calculus. Contrary to Appellants' contention, application of the first-filed rule "does not require exact identity of the parties." *Kohn Law Group, Inc. v. Auto Parts Mfg. Miss., Inc.*, 787 F.3d 1237, 1240 (9th Cir. 2015); *accord Baatz v. Columbia Gas Transmission, LLC*, 814 F.3d 785, 789 (6th Cir. 2016) ("The first-to-file rule applies when the parties in the two actions 'substantially overlap,' even if they are not perfectly identical."); *Save Power Ltd.*

*v. Syntek Fin. Corp.*, 121 F.3d 947, 951 (5th Cir. 1997) ("Complete identity of parties is not required for dismissal or transfer of a case filed subsequently to a substantially related action"). Rather, the first-filed rule "requires only substantial similarity of parties." *Kohn Law Group*, 787 F.3d at 1240; *see also Wakaya Perfection, LLC v. Youngevity Int'l, Inc.*, 910 F.3d 1118, 1126 (10th Cir. 2018); *D & L Distrib., LLC v. Agxplore Int'l, LLC*, 959 F. Supp. 2d 757, 767 (E.D. Pa. 2013) ("the applicability of the first-filed rule is not limited to mirror image cases where the parties and the issues perfectly align."); *Abushalieh v. Am. Eagle Exp.*, 716 F. Supp. 2d 361, 366 (D.N.J. 2010).

Here, the parties in both actions are substantially the same because the defendant is the NJAG in both cases, and the plaintiffs in both cases have substantial overlap and are functionally identical. The lead plaintiffs in both cases are Defense Distributed and SAF, the additional plaintiffs in New Jersey voluntarily joined this action, both sets of plaintiffs are represented by the same attorneys, and both actions seek the same injunctive relief with respect to the same statute. Additionally, all Appellants seek relief with respect to the same set of printable-gun files – the files published by Defense Distributed and evidently republished by CodeIsFreeSpeech.com – which are the same files at issue in the Texas Action. *See* App. 41 ¶¶ 91-99, 111-19 (noting that all Appellants seek to receive and republish "Defense Distributed's files").

This case is analogous to *Kohn Law Group*, where the Ninth Circuit held that the plaintiff's decision to omit a defendant in the first-filed action from the second action did not defeat the first-filed rule where the parties otherwise overlapped. 787 F.3d at 1240. The Court reasoned, "[a] contrary holding could allow [the plaintiff] to skirt the first-to-file rule merely by omitting one party from a second lawsuit." *Id.* The same principle applies here: the addition of new co-plaintiffs to this action was Appellants' voluntary choice, and declining to apply the first-filed rule on that basis would allow Appellants to create their own end-run around the rule. *See Sinclair Cattle Co., Inc. v. Ward*, 80 F. Supp. 3d 553, 559 (M.D. Pa. 2015) ("If application of the first-filed rule required complete identity of issues and parties, then defendants in the first-filed action may be incentivized to forum shop and commence similar but nonidentical actions in other venues."). Likewise, in *Baatz*, the Sixth Circuit found substantial similarity of parties where the plaintiffs were putative class members in a parallel class action, even though that class included other members who were not parties to the later-filed action. 814 F.3d at 791. As in *Baatz*, the addition of new plaintiffs to this action is immaterial, since those additional plaintiffs have essentially identical interests to Appellants Defense Distributed and SAF.

District courts within this Circuit similarly require that the parties are only substantially the same. In *D & L Distribution*, 959 F. Supp. 2d at 769, the court applied the first-filed rule in a trademark infringement dispute that involved the

19

plaintiffs' use of the same trademarks at issue in an earlier-filed action. The court
reasoned that those plaintiffs, and the defendants in the earlier-filed action, "have a
symbiotic relationship as it relates to the products at issue in both" actions, and that
a disposition of the infringement claim in the prior action "would leave nothing to
be determined in the" later-filed action. *Id.* Thus, "plaintiffs cannot escape the
application of the first-filed rule by claiming they are not the 'same parties' as" the
prior case. *Id.* As in *D & L*, all plaintiffs here "have a symbiotic relationship" with
respect to the computer files at issue, since they all seek injunctive relief against the
same New Jersey statute with respect to the same set of printable-gun files. *See also
Abushalieh*, 716 F. Supp. 2d at 366 (first-filed rule applied to two collective actions
filed against the same defendant on behalf of the same set of proposed plaintiffs,
since the parties were "essentially the same").

Although Appellants claim that the plaintiffs here "are total strangers to" the
plaintiffs in the Texas Action, it is not at all clear what they mean by that claim. *See*
App. Br. at 35-36. The lead plaintiffs in both cases are Defense Distributed and SAF,
and both sets of plaintiffs are represented by the same attorneys. As noted, the
additional co-plaintiffs in this action are here only because they seek to receive and
republish "Defense Distributed's files." *See* App. 41 ¶¶ 91-99, 111-19. Appellants
do not cite any case suggesting that, under similar circumstances, plaintiffs are not
substantially similar. Instead, Appellants cite a number of cases generally holding

that federal abstention doctrine is inappropriate if the two cases are not duplicative, in an effort to conflate abstention doctrine with the first-filed rule. *See* App. Br. at 33-35. Aside from the fact that these are two distinct doctrines, none of Appellants' cases holds that the first-filed rule applies only where there is perfect, one-to-one identity of all parties.[3]

Indeed, under Appellants' theory that complete identity of the parties is required before the first-filed rule may be invoked, Defense Distributed and SAF are entitled to bring this lawsuit simultaneously in all 94 federal district courts, as long as they can find one new plaintiff who wants to receive their computer files in each judicial district. That is flatly inconsistent with the policy against duplicative litigation that underlies the first-filed rule. *See Baatz*, 814 F.3d at 791 ("Perhaps the most important purpose of the first-to-file rule is to conserve these resources by limiting duplicative cases."); *Sinclair Cattle Co.*, 80 F. Supp. 3d at 559 ("If application of the first-filed rule required complete identity of issues and parties, then defendants in the first-filed action may be incentivized to forum shop and commence similar but nonidentical actions in other venues."). On these facts, Judge

---

[3] Contrary to Appellants' contention, *Complaint of Bankers Trust Co. v. Chatterjee*, 636 F.2d 37 (3d Cir. 1980) does not support their argument. *See* App. Br. at 34. *Chatterjee* held that the first-filed rule did not apply because the underlying tort action and admiralty action were not duplicative since they involved different defendants and sought distinct forms of relief. 636 F.2d at 40-41. *Chatterjee* is inapposite, since the defendant in both cases here is the same and the plaintiffs substantially overlap.

Thompson clearly did not abuse her discretion in invoking the first-filed rule to stay the litigation.[4]

## B.      Abstention Principles Have No Bearing Here.

Appellants assume that the stay granted in this case should be analyzed under principles established in federal abstention jurisprudence. App. Br. at 29-30. Appellants' idea is simple—because a significant body of federal law that makes clear whether and when federal courts may abstain from deciding cases out of respect for *state courts*, the same doctrine must apply when a federal court has decided to *stay* its resolution of a case while another case remains pending in *federal court*. But nothing could be further from the truth.

The Wright & Miller treatise, on which Appellants rely, is instructive. *See* 17A Charles A. Wright & Arthur R. Miller et al., Federal Practice & Procedure § 4247 (3d ed. West 2019). Section 4247 of Wright & Miller, "Avoiding Duplicative

---

[4] Appellants do not provide any authority for their argument that if the additional co-plaintiffs are allowed to proceed immediately, then so should Defense Distributed and SAF. *See* App. Br. at 36-37. Appellants' reasoning is that there is no harm in litigating all Appellants' claims at the same time. *Id.* Appellants thus seek to have it both ways: on the one hand, the co-plaintiffs and Defense Distributed and SAF are "total strangers" asserting such "distinct claims" that the two parallel actions are not duplicative; on the other hand, these plaintiff groups are so similarly situated that their claims must all be adjudicated together. *Id.* at 35-37. This bootstrapping attempt underscores why courts do not require exact identity of parties to apply the first-filed rule; otherwise, parties "in the first-filed action may be incentivized to forum shop and commence similar but nonidentical actions in other venues." *Sinclair Cattle Co.*, 80 F. Supp. 3d at 559. That is precisely what Appellants have done here.

Litigation," first discusses the three most common types of abstention—*Pullman* abstention, *Burford* abstention, and *Thibodaux* abstention—all of which involve a federal court's decision to stay its proceedings in light of federalism concerns. The treatise then describes when courts should consider staying or dismissing actions in light of other proceedings in state court as compared to other proceedings in federal court.  While there are limits on the former—known as *Colorado River* abstention— Wright & Miller explain that "it is well settled that if the same issues are presented in an action pending *in another federal court*, one of these courts may stay the action before it or even in some circumstance enjoin going forward in the other federal court." 17A Fed. Prac. & Proc. Juris. § 4247 (3d ed.) (emphasis added). And that is precisely the rule that governs here. This is not an abstention case involving issues of state-federal comity, as arise in *Pullman*, *Burford*, *Thibodaux*, and *Colorado River* abstention. Rather, both cases here are proceeding in federal court, and so this is a straight-forward application of the well-established "first-filed" rule.

The Supreme Court made precisely the same point that Wright & Miller did in their treatise. In *Colorado River Water Cons. Dist. v. United States*, 424 U.S. 800 (1976) (the case from which *Colorado River* abstention gets its name), the Court described this distinction as follows:

> Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction. *As between federal district courts*, however, though no precise rule has

evolved, *the general principle is to avoid duplicative litigation*. This difference in general approach between state-federal concurrent jurisdiction and wholly federal concurrent jurisdiction stems from the virtually unflagging obligation of the federal courts to exercise the jurisdiction given them.

*Colorado River*, 424 U.S. at 817-18 (emphasis added) (internal citations and quotation marks omitted). The test the Court laid out is thus simple: if a first-filed case is proceeding in state court it "is no bar to proceedings concerning the same matter in the Federal court having jurisdiction," but if a first-filed case is proceeding in federal court "the general principle is to avoid duplicative litigation." This case, as noted above, falls squarely in the latter camp.

Appellants do not cite any case to the contrary. While Appellants cite *Doran v. Salem Inn, Inc.*, 422 U.S. 922 (1975), in the mistaken belief that it is helpful to their case, *Doran* similarly distinguishes between applying abstention doctrine when federalism issues are implicated and applying a distinct set of rules if the question of avoiding duplicative litigation arises within the unitary federal system:

> We think that the interest of avoiding conflicting outcomes in the litigation of similar issues, *while entitled to substantial deference in a unitary system*, must of necessity be subordinated to the claims of federalism in this particular area of the law. . . . The same may be said of the interest in conservation of judicial manpower. *As worthy a value as this is in a unitary system*, the very existence of one system of federal courts and 50 systems of state courts, all charged with the responsibility for interpreting the United States Constitution, suggests that on occasion there will be duplicating and overlapping adjudication of cases which are sufficiently similar in content, time, and location to

24

> *justify being heard before a single judge had they arisen within a unitary system.*

*Doran*, 422 U.S. at 927–28 (emphasis added).

As a result, no complicated analysis under abstention doctrines need be conducted here. The stay issued here raises no federalism concerns, which is what animates abstention jurisprudence. Rather, this is a simple question of whether a federal court may avoid duplicative and vexatious litigation when plaintiffs attempt to simultaneously litigate duplicative lawsuits against a defendant in multiple jurisdictions within the unitary federal judicial system. The only rule this Court thus needs to apply is the one already described above, *i.e.,* that "in the vast majority of cases, a court exercising its discretion under the first-filed rule *should* stay or transfer a second-filed suit." *Chavez*, 836 F.3d at 220 (emphasis added).

### C.    Appellants' Remaining Arguments Likewise Are Without Merit.

After incorrectly framing the legal issue in the case as one involving abstention, Appellants continue by presenting a laundry-list of reasons for their claim that the District Court erred in granting a stay. None of these arguments remotely demonstrates an abuse of discretion on the part of the District Court.

Appellants argue that Judge Thompson failed to accord them adequate notice and due process before issuing the stay. Not so. While resolution of the stay issue proceeded on an expedited timeframe, there was a perfectly good reason for that: the NJAG learned that Appellants were continuing to litigate the Texas Action even

when they sought relief in New Jersey only shortly before the scheduled preliminary injunction hearing in the New Jersey case. App. 990. The NJAG's letter to the District Court made it plain that it was seeking a stay of proceedings, App. 968-69, and Appellants filed *two* responses to the NJAG's letter before the March 7 hearing, App. 970-73, 976-81. Although Appellants chose not to substantively discuss the first-filed rule in those two filings, at the hearing they argued both their procedural and substantive objections to granting a stay based on the first-filed rule. App. 992-1003.

Indeed, Appellants' blithe assertion that Judge Thompson "scoffed at the request for due process" is belied by the record. *See* App. Br. at 51. Appellants' position, which Judge Thompson rejected, was that the Court should consider the NJAG's request for a stay of proceedings under the Court's normal briefing schedule for motions, which generally requires 24 days of prior notice. App. 971-72. Following that suggestion would have postponed a decision on the NJAG's stay request until after its responsive briefing was due and after the preliminary injunction hearing itself, defeating the entire purpose of the request. It was Appellants' plainly unreasonable position on timing that led Judge Thompson to comment that due process principles did not require formal motion practice before ruling on the NJAG's stay request:

> [THE COURT:]    Well, you know, I have a lot of respect for the rules and following procedures, and some people call that due process, but

> we function very much as seems practical and fair and prompt and efficient. And so, I don't feel in any way constrained to require motion practice rules when a party seeks a stay. And I'm confident that you could respond, and I'd really like you to do so, as to why a stay in this case would be unfair.

App. 994-95.

Judge Thompson was correct that due process concerns did not require her to adhere to formal "motion practice rules" here. Judge Thompson ruled on the stay request based on the parties' multiple written submissions, which were supplemented by oral argument. The question of whether to grant a stay was not a conceptually difficult one, and Judge Thompson gave Appellants' counsel multiple opportunities during the hearing to explain why the first-filed rule would not warrant a stay here. S*ee, e.g.*, App. 995, 996, 999. Due process is satisfied when a party has a fair opportunity to present its views to the Court. *See, e.g., Acumed LLC v. Advanced Surgical Servs., Inc.*, 561 F.3d 199, 223 (3d Cir. 2009) (a party against whom the district court enters summary judgment *sua sponte* receives sufficient notice "if it had reason to believe that the court might reach the matter at issue on the pending summary judgment application and the party had an opportunity to support its position fully"); *IPSCO Steel (Alabama), Inc. v. Blaine Constr. Corp.*, 371 F.3d 141, 150 (3d Cir. 2004) (district court's failure to afford party more time to file a brief in response to motion to approve settlement was not reversible error where that party responded to the motion at a separate hearing on another motion

27

that "raised essentially all the same issues"); *Khan v. Dell Inc.*, 2013 WL 1792525, at *4 (D.N.J. Apr. 26, 2013) (formal briefing was not required where court denied plaintiff's discovery request based on a letter request and oral argument). The District Court did not abuse its discretion in considering the NJAG's stay request in this expedited manner.

Appellants also assert that the District Court's decision should be reversed because the first-filed Texas Action was not then and is not now "ongoing." App. Br. at 38-40. They are wrong. When Judge Thompson entered the March 7, 2019 stay order, Defense Distributed and SAF's motion to reconsider the dismissal in the Texas Action was pending, as that motion (which was filed February 27, 2019) was not decided until July 1, 2019. And Defense Distributed and SAF's appeal of the Texas Action remains pending in the Fifth Circuit today. Appellants' discussion of res judicata principles, App. Br. at 38-39, is beside the point. Since the Texas dismissal was for lack of jurisdiction over the NJAG, it did not have res judicata effect with respect to the merits issues. *See Ruiz v. Snohomish Cnty. Public Util. Dist. No. 1*, 824 F.3d 1161, 1164 (9th Cir. 2016) ("[A] dismissal for want of personal jurisdiction is *not* a judgment 'on the merits' for the purpose of res judicata."). The first-filed rule applies "when a similar matter is pending in a federal district court and a federal court of appeals in a different circuit." *Burger v. Am. Maritime Officers*

*Union*, 1999 WL 46962, at *1 (5th Cir. Jan. 27, 1999). Given Appellants' refusal to abandon their appeal of the Texas Action, that action is "pending."

Along similar lines, Appellants erroneously claim that the two actions are not duplicative "currently." *See* App. Br. at 39-40. In both cases, Appellants seek the same injunctive relief with respect to the same New Jersey statute. Appellants' claim that the Fifth Circuit appeal "is about personal jurisdiction" ignores that their merits claims in the Texas Action are the same – indeed, Appellants filed essentially the same preliminary injunction motion in this action that they filed in the Texas Action. *See* App. 94-146; No. 1:18-cv-637-RP, Dkt. 66 & 67. There is not just a "potential" that this action will duplicate the Texas Action; the cases were duplicative when Judge Thompson entered the stay order, and they remain so.

Nor does *Kerotest Manufacturing Co. v. C-O-Two Fire Equipment Co.*, 189 F.2d 31 (3d Cir. 1951), support Appellants' argument. *See* App. Br. at 44-45. *Kerotest* merely states the unremarkable proposition that the first-filed rule and other similar rules of thumb "should not be applied in a mechanical way regardless of other considerations." 189 F.2d at 34. In *Kerotest*, the Third Circuit ordered a stay of a declaratory judgment action filed by Kerotest against C-O-Two in favor of *an earlier-filed* Illinois action filed by C-O-Two against Acme, to which Kerotest was later joined. 189 F.2d at 32. This Court focused on the fact that the Illinois court had jurisdiction over all parties, whereas Acme could not be made a party to the later-

filed case. *Id.* at 34. The dispositive fact favoring an adjudication in Illinois, therefore, was that it was the only forum that would bind all the relevant parties. *Id.* *Kerotest* does not support allowing two actions to proceed simultaneously; indeed, this Court explained, "Why, under the circumstances, should there be two litigations where one will suffice? We can find no adequate reason." *Id.* Contrary to Appellants' suggestion, *Kerotest* does not support allowing them to proceed in the New Jersey while simultaneously litigating in the Fifth Circuit.[5]

Appellants fare no better when they rely on the unremarkable fact that the opinion in the Western District of Texas stated that they "may pursue their claims in a court of proper jurisdiction." (Dkt. 100 at 15). Through this language, the order simply made plain that the Court was dismissing the case "without prejudice"; it did not purport to give Appellants license to pursue their claims in multiple federal judicial districts at the same time. *Id.*

Lastly, Appellants claim that the District Court should not have stayed the case because the existence of "massive irreparable harm" can constitute an exception to the first-filed rule. App. Br. at 40-43. To be sure, there are cases where "for equitable reasons, the presumption against duplicative litigation might not apply."

---

[5] *University of Maryland v. Peat Marwick Main & Co.*, 923 F.2d 265 (3d Cir. 1991), is also inapposite. Since that case involved *Colorado River* abstention based on parallel state court proceedings, concerns about the state court's jurisdiction meant that abstention would likely cause the federal plaintiffs to lose access to a federal forum. That concern is absent here, since both actions were brought in federal court.

*Chavez*, 836 F.3d at 216. The first-filed rule is grounded in equitable principles and a district court should take care not to reflexively follow the rule when it will cause "unanticipated prejudice to the litigants before it." *Id*. at 219. But Appellants have failed to bear their burden of demonstrating that this is a case involving any such unanticipated prejudice. Nothing about the resulting delay in the District of New Jersey is an unanticipated outcome here. The only thing unanticipated here is Appellants' own surprising decision to continue to litigate their duplicative case in Texas, with its accompanying lengthy delay, when they could have instead chosen to litigate quickly in New Jersey, as they initially suggested they would do when confronted with Judge Thompson's ruling.

Moreover, Appellants' related claim that they "are suffering massive irreparable harm of the highest constitutional order," App. Br. at 41, is wrong on at least two levels. First, although Appellants wrap themselves in lofty language about the denial of First Amendment rights, they have not borne their burden of demonstrating the existence of any such right. Contrary to Appellants' contention, 3D printable firearms files do not qualify as speech that warrants First Amendment protection. The reasoning in *Commodity Futures Trading Comm'n v. Vartuli*, 228 F.3d 94 (2d Cir. 2000), makes clear that the printable gun code at issue in this case is not constitutionally protected speech. *Vartuli* involved a computer trading program which, depending on market indicators, instructed customers to buy or sell

futures. *Id*. at 98-99. Significantly, the program was "'automatic,' with 'NO complicated rules to follow . . . And NOTHING to interpret.'" *Id*. at 111. Humans were instructed to mechanically follow the instructions conveyed to them by the program, with no second-guessing. *Id*. As a result, the Second Circuit determined that the program's communications were not First Amendment protected speech because they required mechanical adherence and did not advance any particular values or truths. *Id*.

Appellants' 3D printable firearms files are even less likely than the program in *Vartuli* to implicate free speech concerns. As in *Vartuli*, the 3D printable firearms files at issue here require the mechanical following of instructions. They do not convey instructions to a human, but instead are files that instruct another inanimate object – the 3D printer – to manufacture a gun. And even assuming that the 3D printable firearms file could qualify as speech under the First Amendment, the courts have long recognized an exception to the First Amendment for speech integral to criminal conduct. *See, e.g., United States v. Alvarez*, 567 U.S. 709, 717 (2012); *Giboney v. Empire Storage & Ice Co*., 336 U.S. 490 (1949); *United States v. Irving*, 509 F.2d 1325, 1329 (5th Cir. 1975).

Second, Appellants' claim of massive irreparable harm rings hollow since all they need to do to lift the stay and potentially get immediate relief in New Jersey is abandon the duplicative Texas action. The fact that the delay caused by the stay in

New Jersey is self-inflicted and entirely remediable by them completely undermines any claim that they need immediate relief. *See United States v. Wade*, 713 F.2d 49, 52 (3d Cir. 1983) (rejecting claim of irreparable harm where government's own delay in seeking injunctive relief indicated it was not harmed by the status quo). Appellants' actions here speak louder than their words. Appellants apparently concluded that a decision from the Fifth Circuit with an accompanying long wait is more valuable to them than a quick decision from the District of New Jersey.

\*     \*     \*

At the end of the day, the most important fact is that the Appellants can get the stay in New Jersey lifted *any time they desire*. Judge Thompson has made plain that she is ready, willing, and able to address the merits of this case. But as long as Appellants continue to insist on litigating against the NJAG in two forums at once, the stay will continue. As a result, Appellants' claim of "massive irreparable harm" is belied by their own actions. After initially suggesting they would likely drop the Texas litigation, App. 1001, Appellants declined to do so. Appellants are gaming the system, trying to get "two bites at the apple" and see which federal court may be more favorable. Judge Thompson was not required to indulge this behavior. There are no federalism concerns implicated here, and a federal judge can always exercise her discretion to avoid duplicative litigation within the federal court system.

As this Court has made clear, "Courts must be presented with exceptional circumstances before exercising their discretion to depart from the first-filed rule." *EEOC v. Univ. of Pa.*, 850 F.2d 969, 979 (3d Cir. 1988). The District Court did not abuse its discretion in following the first-filed rule here.

## CONCLUSION

The Court should dismiss these appeals for lack of jurisdiction, or, alternatively, affirm the District Court's interlocutory orders.

Dated:    February 14, 2020                    Respectfully submitted,

                                                /s/ Glenn J. Moramarco
                                               GLENN J. MORAMARCO
                                               Assistant Attorney General
                                               TIM SHEEHAN
                                               Deputy Attorney General
                                               Office of the Attorney General
                                               Richard J. Hughes Justice Complex
                                               25 Market Street, P.O. Box 112
                                               Trenton, NJ 08625-0080
                                               (609) 376-2690
                                               Glenn.Moramarco@law.njoag.gov
                                               Tim.Sheehan@law.njoag.gov
                                               *Attorneys for Appellee*

## CERTIFICATE OF SERVICE

I hereby certify that on February 14, 2020, I caused the foregoing brief to be filed with the Clerk of the United States Court of Appeals for the Third Circuit via electronic filing and by causing an original and six paper copies of the brief to be mailed via the United States Postal Service.  Opposing counsel was served through this Court's ECF notification system.

/s/ Glenn J. Moramarco
Glenn J. Moramarco

## CERTIFICATE OF COMPLIANCE

1. This brief complies with the typeface and type-style requirements of Fed. R. App. P. 32 because it was prepared in a proportionally spaced typeface using Microsoft Word in 14 point regular font.

2. This filing complies with the type-volume limit of Fed. R. App. P. 32 because, excluding the parts exempted by Fed. R. App. P. 32(f), this filing contains 8,276 words.

3. Pursuant to L.A.R. 31.1(c), I certify that the text of the electronic brief is identical to the text of the paper copies.

4. The electronic brief has been scanned for viruses with a virus protection program, McAfee VirusScan Enterprise, version 8.8, and no virus was detected.

/s/ Glenn J. Moramarco
Glenn J. Moramarco