# UNITED STATES DISTRICT COURT
# DISTRICT OF NEW JERSEY
# TRENTON VICINAGE

| | |
|---|---|
| DEFENSE DISTRIBUTED, et al., <br><br> Plaintiffs, <br><br> v. <br><br> GURBIR GREWAL, Attorney General of the State of New Jersey, <br><br> Defendant. | Hon. Freda L. Wolfson, U.S.D.J. <br><br> Docket No. 3:19-cv-4753 <br> Docket No. 3:21-cv-09867 <br> (Consolidated) |

### DEFENDANT'S SUPPLEMENTAL BRIEF IN OPPOSITION TO TRANSFER TO THE WESTERN DISTRICT OF TEXAS

                MATTHEW J. PLATKIN
                ACTING ATTORNEY GENERAL OF NEW JERSEY
                124 Halsey Street, 5th Floor
                P.O. Box 45029
                Newark, New Jersey 07101
                Attorneys for Defendant

Mayur P. Saxena
*Assistant Attorney General*
Melissa Medoway
Chandini Jha
Tim Sheehan
*Deputy Attorneys General*
  Of Counsel and On the Brief

# **TABLE OF CONTENTS**

**PAGE**

PRELIMINARY STATEMENT ..............................................................................1

ARGUMENT .............................................................................................................3

    I.    Plaintiffs' Arguments Will Require Deconsolidation Of Near-Identical Actions By Overlapping Parties, Producing Inefficiency And Conflict. .........3

    II.   Comity Does Not Compel Transferring No. 21-cv-9867 To Texas................8

    III.  None Of The Traditional Section 1404(a) Factors Support Transfer............11

CONCLUSION ........................................................................................................15

i

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Bentz v. Recile*,
   778 F.2d 1026 (5th Cir. 1985) ..................................................................................4

*Canaday v. Anthem Co.*,
   9 F.4th 392 (6th Cir. 2021) ...................................................................................4, 5

*Chernus v. Logitech, Inc.*,
   No. 17-673, 2018 WL 1981481 (D.N.J. Apr. 27, 2018) ....................................4, 5

*Common Cause v. Judicial Ethics Comm.*,
   473 F. Supp. 1251 (D.D.C. 1979) ..........................................................................10

*Defense Distributed v. Att'y Gen.*,
   972 F.3d 193 (3d Cir. 2020) ..................................................................................13

*Defense Distributed v. Bruck*,
   30 F.4th 414 (5th Cir. 2022) ................................................................ 8, 9, 10, 15

*Exxon Corp. v. U.S. Dep't of Energy*,
   594 F. Supp. 84 (D. Del. 1984)...............................................................................10

*Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*,
   141 S. Ct. 1017 (2021)..............................................................................................4

*In re Amendt*,
   169 F. App'x 93 (3d Cir. Feb. 16, 2006) ............................................................13

*In re Estate of Dawson*,
   641 A.2d 1026 (N.J. 1994) .....................................................................................7

*In re Red Barn*,
   794 F.3d 481 (5th Cir. 2015) .................................................................................9

*Interlink Prods. Int'l v. Crowfoot*,
   No. 20-cv-7654, 2020 WL 6707946 (D.N.J. Nov. 16, 2020)...................... 13, 14

*Jumara v. State Farm Ins. Co.*,
   55 F.3d 873 (3d Cir. 1995) ................................................................................11

*Leroy v. Great W. United Corp.*,
   443 U.S. 173 (1979)...........................................................................................14

*Seiferth v. Helicopteros Atuneros, Inc.*,
   472 F.3d 266 (5th Cir. 2006) ...............................................................................5

*Shutte v. Armco Steel Corp.*,
   431 F.2d 22 (3d Cir. 1970) ..................................................................................4

*Travers v. FedEx Corp.*,
   __ F. Supp. 3d __, 2022 WL 407398 (E.D. Pa. 2022)..........................................5

*Vallone v. CJS Solutions Grp.*,
   9 F.4th 861 (8th Cir. 2021) ..................................................................................5

**Statutes**

28 U.S.C. § 1404(a) ..............................................................................................4, 11

N.J. Stat. Ann. § 2C:39-9(*l*)(2) ............................................................... 2, 12, 13, 14

## PRELIMINARY STATEMENT

Pending before this Court are two cases challenging the constitutionality of a New Jersey state law involving overlapping plaintiffs. As New Jersey has explained, deconsolidating Nos. 21-cv-9867 and 19-cv-4753 and sending only the former to the Western District of Texas requires this Court to pull apart near-identical challenges to the same New Jersey statute—undermining efficiencies and increasing the risk of conflict across circuits. Still more, both cases are *Ex Parte Young* challenges to a New Jersey criminal law, and keeping these actions in this forum eliminates various jurisdictional issues in Texas. Plaintiffs' letter brief to this Court has little answer.

When Plaintiffs try to address the critical problems that deconsolidating and transferring one of two challenges will engender, their answers fall short. Plaintiffs suggest transferring *both* No. 21-cv-9867 and the 2019 Action to Texas, but the 2019 Action includes certain plaintiffs with no Texas connection, and *each* plaintiff must prove specific jurisdiction for their claims. Because these additional, non-Texas plaintiffs' claims arise out of distinct events that have no connection to the NJAG's limited alleged contact with Texas, the Texas court would lack jurisdiction as to their claims, and their case could not proceed. Nor would staying the 2019 Action work better. As Plaintiffs have admitted, they will require resolution of their claims in this Court whatever happens in Texas. A stay may *defer* conflict, but it does not lessen the risk. The unavoidable consequence of Plaintiffs' proposal is inefficiency.

1

Because Plaintiffs cannot eliminate the risk of conflict, they mostly focus on why this Court's hands are tied—that is, why it *must* effectuate transfer in the name of comity. But that ignores the Fifth Circuit's unusual order. The Fifth Circuit stressed—in language key to its analysis of jurisdiction—that the request to transfer No. 21-cv-9867 to Texas was *nonbinding* on the District of New Jersey. And the panel recognized that this Court would still have to conduct its own analysis on the question. To now argue that comity or law-of-the-case rules govern would turn that approach on its head—transforming a request into a mandate, and forcing this Court to follow the Fifth Circuit despite sitting within the Third Circuit's geographic domain. It thus comes as no surprise that Plaintiffs fail to identify a single case that treats a nonbinding request from an out-of-circuit court as a command.

Plaintiffs' final claims that "orthodox transfer of venue rules" require transfer to Texas are more puzzling still. Even beyond the profound risk of inefficiency and conflict from transferring one of two near-identical challenges to N.J. Stat. Ann. § 2C:39-9(*l*)(2), there is no benefit to hearing either case together with challenges to various U.S. State Department regulations, especially since this Court still has to independently assess Section 2C:39-9(*l*)(2) in the 2019 Action. Moreover, there is considerable benefit to having local courts interpret and adjudicate local laws—a point to which Plaintiffs have no answer. And finally, these cases can proceed to the

merits more easily in New Jersey than in Texas, where jurisdictional obstacles will remain. This Court should retain jurisdiction over these consolidated cases.

## ARGUMENT

**I.     Plaintiffs' Arguments Will Require Deconsolidation Of Near-Identical Actions By Overlapping Parties, Producing Inefficiency And Conflict.**

As New Jersey explained in detail in its opening letter, *see* NJAG Ltr. Br. 7-10, even if this Court transfers Case No. 21-cv-9867 to the Western District of Texas, this Court would still have to adjudicate these same constitutional challenges to the same New Jersey law in Case No. 19-cv-4753 ("2019 Action"). Plaintiffs do not deny that transferring just *one* of these two near-identical challenges risks producing conflicts across circuits and undermines judicial economy. But briefly at the end of their letter, Plaintiffs purport to identify two solutions: transfer the 2019 Action to Texas too, or stay it pending resolution of No. 21-cv-9867. Neither holds up.

1. Plaintiffs' cursory proposal to address the problems of deconsolidation—that this Court transfer both No. 21-cv-9867 *and* the 2019 Action to the Western District of Texas, *see* Dkt. 54 at 5—cannot withstand scrutiny. The issue is simple: the 2019 Action *cannot* be transferred to the Texas court because it involves five plaintiffs whose claims do not arise out of the NJAG's sole alleged contact with Texas, namely the Firearms Policy Coalition, Inc., Firearms Policy Foundation, The Calguns Foundation, California Association of Federal Firearms Licensees, Inc., and

3

Brandon Combs ("Non-Texas Plaintiffs"). Because the 2019 Action cannot proceed for those plaintiffs in Texas, Plaintiffs' suggestion is not a tenable solution.

Begin with the relevant jurisdictional rules. First, a case cannot be transferred under Section 1404(a) where the transferee district court lacks personal jurisdiction over some parties. *See* 28 U.S.C. § 1404(a) (requiring that a transfer be to a district in which the action "might have been brought"); *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970) (holding plaintiff must have an "unqualified right" to bring action in the transferee court, which is lacking where there is a "very real question" whether transferee has jurisdiction over a nonresident defendant); *Bentz v. Recile*, 778 F.2d 1026, 1027 (5th Cir. 1985) (noting precedent supports transferring a case "from a federal Court lacking personal jurisdiction to one possessing it").

Second, the Texas court lacks specific personal jurisdiction over the NJAG, a nonresident defendant, as to any claims brought by nonresident plaintiffs that do not arise out of the NJAG's alleged contact with Texas. *See Ford Motor Co. v. Mont. Eighth Jud. Dist. Ct.*, 141 S. Ct. 1017, 1025 (2021) (noting that the plaintiff's claims "'must arise out of or relate to the defendant's contacts' with the forum"); *Canaday v. Anthem Co.*, 9 F.4th 392, 397, 401 (6th Cir. 2021) (confirming *each* nonresident plaintiff must show that its claims arose out of defendant's contacts with the forum); *Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481, at *6 (D.N.J. Apr. 27,

2018) (same); *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 274-75 (5th Cir. 2006) (specific jurisdiction must be established on a claim-by-claim basis).

Nor does establishing that one plaintiff satisfies specific jurisdiction over the defendant in any way help remaining plaintiffs, as courts have resoundingly rejected a theory of "pendent party personal jurisdiction" as inconsistent with current case law. *See, e.g.*, *Canaday*, 9 F.4th at 401 (explaining recent Supreme Court cases require dismissal for lack of jurisdiction of "nonresident plaintiffs' claims that could not show a 'connection between the forum and the[ir] specific claims at issue'"); *Vallone v. CJS Solutions Grp.*, 9 F.4th 861, 866 (8th Cir. 2021) (rejecting argument "that jurisdiction to entertain a claim with connections to Minnesota establishes jurisdiction to hear another claim with no such connection"); *Travers v. FedEx Corp.*, __ F. Supp. 3d __, __, 2022 WL 407398, at *4-5 (E.D. Pa. 2022) ("We decline to exercise pendent party personal jurisdiction when neither Congress nor a court in our Circuit has recognized this theory."); *Chernus*, 2018 WL 1981481, at *6. So whatever is ultimately true of Defense Distributed's claim to jurisdiction in Texas, the Non-Texas Plaintiffs' jurisdictional theory rises or falls on its own.

Together, these principles are fatal to the Texas court's power to hear the 2019 Action because the Non-Texas Plaintiffs' claims do not arise out of the NJAG's sole alleged contact with Texas. The Amended Complaint is explicit that the Non-Texas Plaintiffs' claims stem from their *independent* dissemination of computer files via

CodeIsFreeSpeech.com, a website operated by California-based entities, and alleges injuries based on an independent purported "takedown demand" sent to non-Texas entities. *See* Am. Compl., No. 19-cv-4753, Dkt. 17 ¶¶ 88, 90-92 (alleging that Non-Texas Plaintiffs made files available on CodeIsFreeSpeech.com between July 31, 2018 and February 2, 2019), 94-95 (alleging these plaintiffs ceased dissemination in response to a February 2, 2019 letter from the NJAG to a California-based company, Cloudflare).[1] The Non-Texas Plaintiffs do not allege that they were injured or even impacted by the July 26, 2018 cease-and-desist letter the NJAG sent to Texas-based Defense Distributed. Nor could they, as the Non-Texas Plaintiffs allege that they did not even begin disseminating the files until five days *after* the NJAG issued the July 26 letter. *See id.* ¶ 90-92; *see also id.* ¶ 69 (noting Defense Distributed ceased online dissemination on July 31, 2018—the same day the Non-Texas Plaintiffs *started* dissemination via an independent website).[2] Plainly, any claims brought by the Non-

---

[1] As the NJAG previously established, the February 2, 2019 communication was not in fact issued by the NJAG, and was instead sent by an entity impersonating the NJAG. *See* No. 19-cv-4753, Dkt. 9 (D.N.J. Feb. 12, 2019). In either event, the incident confirms that the Non-Texas Plaintiffs' claims lack a nexus to Texas.

[2] Were there any doubt, Plaintiffs' prior Third Circuit briefing confirms that the Non-Texas Plaintiffs' claims are distinct from the Texas-based allegations. As they explained, the Non-Texas Plaintiffs are "total strangers" to the other plaintiffs in this action because they "have a different publication history, different threat history, and different course of future conduct" than Defense Distributed. Appellants' Reply Br., Nos. 19-1729 & 19-3182, 2020 WL 1067470, at *10-11 (3d Cir. Feb. 28, 2020); *see id.* at 11 n.2 (maintaining the Non-Texas Plaintiffs "are interested in more than just the right to receive and republish Defense Distributed's files").

6

Texas Plaintiffs who intend to engage in independent dissemination do not arise out of the July 26 letter—the NJAG's sole alleged contact with Texas.

Because the Non-Texas Plaintiffs' claims do not arise out of conduct in Texas and cannot proceed there, the 2019 Action cannot be transferred. That means only No. 21-cv-9867 would proceed in Texas, producing inefficiencies and conflicts.

2. Plaintiffs' other alternative—to stay the 2019 Action while No. 21-cv-9867 proceeds to final judgment in Texas, *see* Dkt. 54 at 5—is no solution at all. The Non-Texas Plaintiffs have made clear that they have every intention of pursuing their claims in this Court even if No. 21-cv-9867 is resolved in Texas, because they are not participating in that case. *See* Appellants' Br., Nos. 19-1729 & 19-3182, 2020 WL 469953, at *8-9 (3d Cir. Jan. 27, 2020). After all, while Defense Distributed and the Second Amendment Foundation ("SAF") should be barred from relitigating their same claims in this Court after No. 21-cv-9867 reaches a final judgment, it is not clear that preclusion rules would prevent the *Non-Texas Plaintiffs* from later pursuing their claims in the 2019 Action in this Court.[3] Because the Non-Texas Plaintiffs would thus eventually proceed on identical but legally-independent claims,

---

[3] To the contrary, any judgment in Texas may only have preclusive effect against parties "in privity" with Defense Distributed and SAF. *See, e.g., In re Estate of Dawson*, 641 A.2d 1026, 1035 (N.J. 1994) ("That the parties may have similar interest in the outcome of the litigation … does not of itself establish privity of interest for purpose of issue preclusion.") (internal citation omitted).

a stay only temporarily *delays* the risk of conflicting rulings that invariably arises if the State is forced to defend these near-identical claims in two fora.

At bottom, deconsolidation increases the risk of conflict, even if one case were stayed. That risk is only resolved by adjudicating both cases in this Court.

## II.   Comity Does Not Compel Transferring No. 21-cv-9867 To Texas.

Notwithstanding the myriad problems that a transfer of Case No. 21-cv-9867 entails, Plaintiffs insist comity and law-of-the-case principles dictate that result. *See* Dkt. 54 at 1. According to Plaintiffs, the Fifth Circuit's opinion effectively binds this Court, forcing it to "accept the Western District of Texas's retransfer request *without* second-guessing or relitigating the venue decision at issue." *Id.*; *see also id.* at 2 (arguing that this Court's decision to exercise its own independent judgment would be an impermissible "collateral attack" on the Fifth Circuit's opinion).

But Plaintiffs misread the posture of this unusual lawsuit. They overlook that, by its very terms, the Fifth Circuit's request has no binding effect on this Court, and was simply a "*request* [that] the District of New Jersey [] return the transferred case to the Western District of Texas." *Defense Distributed v. Bruck*, 30 F.4th 414, 437 (5th Cir. 2022) (emphasis added); *see also id.* at 440 (Higginson, J., dissenting) (confirming the District of New Jersey would have to conduct "its own assessment of whether litigation resolving New Jersey law should be decided in Texas"). Nor was this an accident. In the Fifth Circuit, Plaintiffs urged the panel to issue a binding

8

order requiring this Court to transfer No. 21-cv-9867 to Texas. But the Fifth Circuit declined to do so, reasoning that it "lack[ed] power to order a return of the case to our circuit." *Id.* at 423; *see id.* at 424 (explaining this District lies beyond the proper geographic reach of the Fifth Circuit's jurisdiction). Bluntly, to issue a binding order, rather than a request, would have "risk[ed] 'provok[ing] a possible conflict between the Circuits.'" *In re Red Barn*, 794 F.3d 481, 484 (5th Cir. 2015). Plaintiffs thus convinced the Fifth Circuit panel majority to *ask* for a transfer, but could not convince the panel to issue any order binding on this Court.

In other words, Plaintiffs' arguments that this Court must transfer No. 21-cv-9867 without conducting its own analysis are contrary to the very opinion to which they demand deference. Under the guise of comity and/or law-of-the-case doctrine, Plaintiffs urge this Court to treat the Fifth Circuit's request like a binding mandate—even though a binding mandate is precisely what that panel refused to give them. To the contrary, comity and law-of-the-case rules are satisfied here by acknowledging and considering the Fifth Circuit's *request*—precisely how one normally thinks of a "request." Put another way, it cannot be offensive to the Fifth Circuit and violative of comity for this Court to exercise the very independent judgment the Fifth Circuit recognized this Court would still have, particularly after the Fifth Circuit refused to take any steps that would deprive this Court of that authority. Plaintiffs may wish to

9

portray this litigation history as "totally orthodox," Dkt. 54 at 1, but the unique nature of the Fifth Circuit's request as nonbinding changes the calculus.

It thus comes as no surprise that Plaintiffs failed to identify a single case that treats a nonbinding request from an out-of-circuit court as a mandatory command. All that Plaintiffs have marshaled are general statements in cases involving binding court orders that warrant "comity" or "law-of-the-case" treatment," *see* Dkt. 54 at 2, but in those cases, deference on comity grounds was necessary to avoid interfering with a prior court's binding injunction. *See Exxon Corp. v. U.S. Dep't of Energy*, 594 F. Supp. 84, 89 (D. Del. 1984) (refusing to exercise jurisdiction where doing so "would be involving itself in a serious interference with the jurisdiction and outstanding injunction of" a Wyoming district court); *Common Cause v. Judicial Ethics Comm.*, 473 F. Supp. 1251, 1253 (D.D.C. 1979) (declining to undo prior stay by a Louisiana court prohibiting release of financial documents while that decision was on appeal, relying on "the proper role for one district court in matters which are already the subject of an injunction by a sister court"). Obviously, no such concern can exist here, where the parties are under no binding orders from the Fifth Circuit.

Plaintiffs' other concerns are equally misguided. Plaintiffs say that rejecting this request would "interfere[]" with "a court of coordinate standing." Dkt. 54 at 2. But the Fifth Circuit itself recognized that it had lost traditional appellate authority to bind the proceedings in this case and could only make a request. *See Bruck*, 30

10

F.4th at 424 ("Because of the transfer, the Texas transferor court can no longer enter an appealable order in the case."). Plaintiffs also argue that it is critical in the transfer context to adhere to comity and law-of-the-case doctrine to avoid "a vicious circle of litigation." Dkt. 54 at 3. In the normal case of *binding* orders, that is true; it cannot be that Texas sends a case to New Jersey, only to have New Jersey send it back to Texas, only to have Texas return it to New Jersey, and so on. Here, however, because the Fifth Circuit opinion is simply a request, a decision by this Court is the end of the matter, and the consolidated cases can remain in New Jersey, where they can be resolved most efficiently and with the least ultimate inter-court conflict.

Plaintiffs identify no authority for the novel proposition that law-of-the-case rules apply with full force to nonbinding requests. As a result, no case law or logical principle precludes this Court from exercising its own discretion to decline transfer. *See Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995).

**III.   None Of The Traditional Section 1404(a) Factors Support Transfer.**

Because comity does not compel transfer, Plaintiffs are left with an argument that Section 1404(a) requires a transfer of No. 21-cv-9867. *See* Dkt. 54 at 3. But Plaintiffs cannot establish that any Section 1404(a) factor supports transfer.

First, the public-factor analysis turns on "the interest in judicial economy" (as Plaintiffs admit, *see* Dkt. 54 at 4), which cuts squarely against transfer. Plaintiffs' primary argument is that it is critical to hear the challenge to N.J. Stat. Ann. § 2C:39-

11

9(*l*)(2) in the same venue as Defense Distributed's separate claims against U.S. State Department ("USDOS") regulations. That proposition is hardly self-evident. Plaintiffs argue it is important for a single court to be able to consider "the President's view of foreign affairs" and "the meaning of federal statutes and regulations." Dkt. 54 at 4. But Plaintiffs cannot explain why the President's view of foreign affairs matters to the validity of a New Jersey criminal law, and New Jersey is not aware of a single case in which there was such overlap.[4] Moreover, even if this Court were concerned about inefficiencies or conflicts produced by adjudicating a challenge to USDOS regulations in Texas and to Section 2C:39-9(*l*)(2) in New Jersey, transferring No. 21-cv-9867 in no way solves that issue, because this Court will still have to evaluate Section 2C:39-9(*l*)(2) in the 2019 Action. *See supra* at 7-8. A Texas court will have to evaluate the USDOS regulations[5] and this Court will have to adjudicate Section 2C:39-9(*l*)(2) no matter what happens to No. 21-cv-9867.

---

[4] Plaintiffs also suggest the fact the cases may involve similar computer code means a single judge should consider all of their claims related to printable guns. Dkt. 54 at 4. But Plaintiffs identify no case requiring consolidation just because the technology regulated by distinct federal regulations and state laws overlaps, nor is New Jersey aware of one. In any event, any such benefits are far outweighed by the inefficiencies produced by transferring No. 21-cv-9867 to Texas outlined below.

[5] That is, unless the Texas district court grants the USDOS's pending motion to dismiss Defense Distributed's claims for prospective relief as moot and to transfer their claims for money damages to the Court of Federal Claims or dismiss them. *See* No. 18-cv-637, Dkt. 162 (W.D. Tex. June 21, 2021).

And Plaintiffs ignore the glaring *in*efficiencies a transfer would generate. As a threshold matter, whatever efficiencies are gained by hearing federal constitutional claims against Section 2C:39-9(*l*)(2) with a hodgepodge of claims against USDOS are outweighed by the efficiencies captured by hearing near-identical challenges to New Jersey law in a single court. *See In re Amendt*, 169 F. App'x 93, 96 (3d Cir. Feb. 16, 2006) ("Adjudicating almost identical issues in separate fora would waste judicial resources."). But more than that, litigating in Texas would mire No. 21-cv-9867 in vexing personal jurisdiction issues requiring discovery, whereas hearing the case in this Court "obviates the need for the parties and the Court to expend limited resources on jurisdictional preliminaries." *Interlink Prods. Int'l v. Crowfoot*, No. 20-cv-7654, 2020 WL 6707946, at *9 (D.N.J. Nov. 16, 2020). Plaintiffs themselves say that this Court should not allow the parties to "delay or altogether avoid meaningful merits consideration of" their claims. Dkt. 54 at 2. While significant jurisdictional litigation remains in Texas, hearing the two cases in *this* District allows Plaintiffs to immediately proceed to the merits of their claims against Section 2C:39-9(*l*)(2). *See, e.g.*, *Defense Distributed v. Att'y Gen.*, 972 F.3d 193, 201 (3d Cir. 2020) (agreeing that Plaintiffs have a path to pursue "immediate relief" on the merits in this Court but chose not to take it). This case is more efficiently handled in New Jersey.

Plaintiffs also misunderstand the State's weighty interest in litigating this *Ex Parte Young* challenge in New Jersey. While Plaintiffs focus primarily on relative

13

access to litigation resources, *see* Dkt. 54 at 5, the interest that has driven previous decisions of this Court is the State's compelling interest in having challenges to its laws heard by local courts. *See Interlink*, 2020 WL 6707946, at *7-9 (finding "public interest factors—the local interest in deciding local controversies at home, the public policies of the forums, and the familiarity of the trial judge with the applicable state law—all favor transfer" of suit against California official to California federal court). Plaintiffs do not deny that this Court has expertise in interpreting New Jersey law, *see Leroy v. Great W. United Corp.*, 443 U.S. 173, 186 (1979); that only the Third Circuit can certify questions when necessary to the New Jersey Supreme Court; or that *every* challenge of which New Jersey is aware that seeks to enjoin enforcement of a state law under *Ex Parte Young* has been reviewed in the official's state. *See, e.g.*, *Interlink*, 2020 WL 6707946, at *7-9. These benefits are compelling.

Finally, none of the private interest factors support transfer. The convenience of parties and witnesses and ease of access to sources of proof factors weigh against transfer, as the relevant officials involved in drafting the NJAG's July 2018 cease-and-desist letter and in enforcing Section 2C:39-9(*l*)(2) are based in New Jersey, as are any relevant documents generated by those individuals. By contrast, Plaintiffs themselves admit that "the chances are low" that any technical evidence they claim is located in Texas will be necessary. Dkt. 54 at 4. Nor does Plaintiffs' preference for Texas warrant transfer because Plaintiffs have consistently fought to have their

14

claims adjudicated in New Jersey too as part of the 2019 Action. *See Bruck*, 30 F.4th at 439 (Higginson, J., dissenting) (noting that this lawsuit was "transferred to a [New Jersey] court whose intercession these same plaintiffs had already sought, had argued on appeal in the Third Circuit to maintain, and thereafter had kept pending for over two years").[6] Like the public-interest analysis, the private factors demand hearing these twin challenges to New Jersey law in New Jersey.

## CONCLUSION

For the reasons set forth above and in New Jersey's May 13, 2022 letter, this Court should not transfer Case No. 21-cv-9867 to the Western District of Texas, and should instead retain jurisdiction over these consolidated cases.

Respectfully submitted,

MATTHEW J. PLATKIN
ACTING ATTORNEY GENERAL OF NEW JERSEY

By:   /s/ Tim Sheehan
      Tim Sheehan
      Deputy Attorney General

Dated: June 6, 2022

---

[6] The NJAG's participation in multistate litigation in the Western District of Washington likewise has no bearing on the proper venue for these cases, *see* Dkt. 54 at 4, as that case sought to enjoin a proposed change to USDOS regulations, which says nothing about where a challenge to a New Jersey criminal statute belongs.

15

## CERTIFICATE OF SERVICE

I certify that on June 6, 2022, I electronically filed the foregoing Supplemental Brief In Opposition To Transfer To The Western District Of Texas with the Clerk of the United States District Court for the District of New Jersey. Counsel for all parties are registered CM/ECF users and will be served via CM/ECF.


Dated:  June 6, 2022                    /s/ Tim Sheehan
                                        Tim Sheehan
                                        Deputy Attorney General