**\*FOR PUBLICATION\***

## UNITED STATES DISTRICT COURT
## DISTRICT OF NEW JERSEY

| | |
|---|---|
| DEFENSE DISTRIBUTED *et al.*, <br><br>            Plaintiffs, <br><br>    v. <br><br> MATTHEW J. PLATKIN, Acting Attorney General of the State of New Jersey,[1] <br><br>            Defendant. | Civ. Action No. 19-04753 (FLW) <br><br> **OPINION** |

**<u>WOLFSON, Chief Judge</u>:**

This matter comes before the Court on the plaintiffs' motion to transfer this consolidated action, comprised of two cases, Civ. No. 21-09867 ("Texas action") and Civ. No. 19-4753 ("NJ action"), to the United States District Court for the Western District of Texas, where the Texas action originated. In the alternative, the motion requests that the Court transfer claims originally asserted in the Texas action back to Texas, while staying the remaining claims that were brought in this District. This Consolidated Action has a complicated history, but it generally involves constitutional challenges to enforcement actions that the Attorney General of New Jersey (the "NJAG" or "Defendant") took, under New Jersey law, against entities that seek to disseminate and consume information used to manufacture 3D-printed firearms. Defendant opposes the motion. For the reasons

---

[1]      Pursuant to Fed. R. Civ. P. 25(d), the Court substitutes Matthew J. Platkin, the Acting Attorney General of New Jersey, who has taken office during the pendency of this litigation. Fed. R. Civ. P. 25(d) ("An action does not abate when a public officer who is a party in an official capacity dies, resigns, or otherwise ceases to hold office while the action is pending. The officer's successor is automatically substituted as a party.").

set forth herein, the motion to transfer is **DENIED**.

I.    **BACKGROUND AND PROCEDURAL HISTORY**

    A.    *Plaintiffs*

Plaintiff Defense Distributed ("DD") is a private corporation that has its principal place of business and headquarters in Austin, Texas. *See* Civ. No. 19-04753, ECF No. 17, Plaintiffs' First Amended Complaint ("N.J. Am. Compl.") ¶ 9. DD produces and disseminates digital firearms information ("DFI") related to manufacturing firearms using a three-dimensional ("3D") printer.[2] *Id.* ¶¶ 10, 29. The DFI that DD seeks to disseminate includes different types of coded computer files. One type, "Computer Aided Design files" ("CAD files"), can assist users in creating 3D models of physical objects, but CAD files "are not ready for insertion into" 3D printers. *See* Civ. No. 21-09867, ECF No. 117, Plaintiffs' Second Amended Complaint ("Texas SAC") ¶ 38. Another type, "Computer Aided Manufacturing files" ("CAM files"), serves the same purpose as CAD files and is "ready for insertion into" 3D printers. *Id.* ¶ 39.

Plaintiff Second Amendment Foundation ("SAF") is a non-profit membership organization incorporated under the laws of Washington State with its principal place of business in Bellevue, Washington. N.J. Am. Compl. ¶ 11.  SAF "promotes the right to keep and bear arms by supporting education, research, publications, and legal efforts about the Constitution's right to privately own and possess firearms and the consequences of gun control." *Id.* ¶ 12. Some SAF members reside in New Jersey and seek to receive the DFI that DD produces, share information using DD's publication facilities, and republish DD's files. *Id.*

---

[2] Typically, 3D printed firearms are made from plastic parts that may bypass security systems, and they are printed without serial numbers or other types of identification.  As such, they are usually referred to as "ghost guns."  *See Gun Owners of Am., Inc. v. City of Phila.*, No. 21-2630, 2021 U.S. Dist. LEXIS 193662, at *2-3 (E.D. Pa. Oct. 7, 2021).

The five other plaintiffs in this Consolidated Action are: 1) The Firearms Policy Coalition, Inc. and the Firearms Policy Foundation, which are both incorporated under the laws of Delaware and maintain their principal places of business in Sacramento, California; 2) The Calguns Foundation and the California Association of Federal Firearms Licensees, Inc., which are both incorporated under the laws of California and maintain their principal places of business in Sacramento, California; and 3) Brandon Combs, who "resides outside of New Jersey" in an unspecified location and is the founder and president of Firearms Policy Coalition, Inc., the founder and president of Firearms Policy Foundation, the secretary and executive director of The Calguns Foundation, and the founder and executive vice president of California Association of Federal Firearms Licensees, Inc. *See* N.J. Am. Compl. ¶¶ 13–17. The Court hereinafter refers to these five plaintiffs as the "Non-Texas Plaintiffs," (and, together with DD and SAF, "Plaintiffs"), as they were plaintiffs only in the NJ action, and not in the action originally filed in Texas. The Non-Texas Plaintiffs generally engage in advocacy related to the First and Second Amendments. *See id.*

B.    *DD's Settlement with the State Department*

DD began distributing DFI in December 2012, by posting files on its websites, Defcad.com and Defcad.org (collectively, "Defcad"). *See* N.J. Am. Compl. ¶¶ 30–32. DD also hosted its DFI files at a brick-and-mortar public library in Austin, Texas, where patrons could access the files via workstations at the library. *See id.* ¶ 33. In May 2013, the United States Department of State and other related entities (the "State Department") sent notice to DD that its publications may have violated federal firearms export regulations and required DD to obtain approval before publishing certain types of DFI. *See Def. Distributed v. U.S. Dep't of State*, 121 F. Supp. 3d 680, 687 (W.D. Tex. 2015). DD and SAF sued the State Department in Texas, challenging its enforcement actions. *See id.* at 686. Following a period of litigation, the parties reached a settlement agreement in June 2018 (the "Settlement Agreement"), under which the State Department agreed to issue new

regulations and a license authorizing DD to publish certain DFI. N.J. Am. Compl. ¶¶ 42–43; Texas SAC ¶ 89.

However, the State Department allegedly ceased complying with the Settlement Agreement following a series of actions that began in late-July 2018. On July 26, 2018, the NJAG—at that time, Gurbir Grewal—sent a cease-and-desist letter to DD threatening to bring an enforcement action for violations of New Jersey law if DD did not discontinue publication of its DFI in New Jersey through DD's websites and other means. N.J. Am. Compl. ¶ 49. As of July 27, 2018, the State Department had partially complied with the Settlement Agreement by issuing a notice of proposed rulemaking concerning DFI and a license to DD, and on July 27, 2018, DD resumed publication of its DFI. N.J. Am. Compl. ¶¶ 46, 53. On July 30, 2018, the NJAG filed suit against DD in New Jersey state court seeking to enjoin its publication of DFI in New Jersey. *See id.* ¶ 65.[3] That same day, the NJAG and other state attorneys general filed suit against the State Department, DD, and SAF in the United States District Court for the Western District of Washington, challenging the Settlement Agreement under the Administrative Procedure Act (APA). *See State of Washington et al., v. United States Department of State et al.*, Civ. No. 18-1115 (W.D. Wash. 2018).[4] The district court granted summary judgment on the APA claims and vacated the actions that violated the APA. *Washington v. United States Dep't of State*, 420 F. Supp. 3d 1130, 1148 (W.D. Wash. 2019), *appeal dismissed sub nom*, *State v. Def. Distributed*, No. 20-35030, 2020 WL 4332902 (9th Cir. July 21, 2020). The

---

[3] This case was later removed to federal court and has since been administratively terminated. *See* N.J. Am. Compl. ¶ 65.

[4] On the same day, the NJAG sent letters to DreamHost and Cloudflare, Inc., which provided internet security services to DD, suggesting that DD may have violated New Jersey law by publishing its DFI on Defcad. *See* N.J. Am. Compl. ¶¶ 60–64. The NJAG's letter to Cloudflare attached a copy of the July 26, 2018 cease-and-desist letter he sent to DD. *See id.* ¶ 64.

Ninth Circuit dismissed DD's appeal. *State v. Def. Distributed*, No. 20-35030, ECF No. 32 (9th Cir. Jan. 5, 2021).

C.     *The Texas and New Jersey Actions*

On the same day that the Washington suit was brought, DD and SAF initiated the Texas action against the NJAG in the United States District Court for the Western District of Texas (the "Texas District Court"). *See* N.J. Am. Compl. ¶ 57; Civ. No. 21-09867, ECF No. 1.[5] DD and SAF generally allege that the cease-and-desist letter violates the First Amendment as a restraint on speech. *See* N.J. Am. Compl. ¶ 58. On January 30, 2019, the Texas District Court dismissed the action against the NJAG for lack of personal jurisdiction. Texas ECF No. 100; *Def. Distibuted v. Grewal*, 364 F. Supp. 3d 681, 691, 693 (W.D. Tex. 2019). DD and SAF moved to amend the judgment on February 27, 2019, which the court denied on July 1, 2019. *See* Texas ECF Nos. 102, 109. DD and SAF appealed on July 31, 2019. *See* Texas ECF No. 110.

On February 5, 2019, before moving to amend or appealing the judgment to the Fifth Circuit, DD and SAF, along with the Non-Texas Plaintiffs, filed a complaint and a motion for a preliminary injunction against the NJAG in the NJ action. *See* Civ. No. 19-04753, ECF No. 1, Complaint ("N.J. Compl.").[6] The case was assigned to the Hon. Anne Thompson, U.S.D.J. Several days later, Plaintiffs filed an Amended Complaint. *See* N.J. Am. Compl. Plaintiffs assert that the NJAG's actions violate their rights under the First and Second Amendments, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and the dormant Commerce Clause, and that the NJAG's actions are preempted by the federal Arms Export Control Act ("AECA") and the

---

[5] The Texas District Court ultimately transferred the Texas action to the District of New Jersey, where the case was docketed as Civ. No. 21-09867. The Court will hereinafter preface items filed on the docket in Civ. No. 21-09867 using "Texas ECF No."

[6] The Court will preface documents filed in Civ. No. 19-04753 using "N.J. ECF No."

Communications Decency Act ("CDA"). *See id.* As distinguished from the Texas action, the NJ action adds allegations pertaining to New Jersey's new law regulating firearms manufactured using a 3D printer, which New Jersey enacted on November 8, 2018. *See id.* ¶¶ 77–87. Under Senate Bill 2465, now codified at N.J.S.A. 2C:39-9, it is a third-degree felony to

> distribute by any means, including the Internet, to a person in New Jersey who is not registered or licensed as a manufacturer as provided in chapter 58 of Title 2C of the New Jersey Statutes, digital instructions in the form of computer-aided design files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a three-dimensional printer to manufacture or produce a firearm, firearm receiver, magazine, or firearm component.

N.J.S.A. 2C:39-9(*l*)(2). Plaintiffs allege that N.J.S.A. 2C:39-9(*l*)(2) constitutes criminal censorship, that New Jersey enacted the law for the purpose of censoring DD and SAF members, and that the NJAG threatened to deploy the new law against DD and other ghost-gun companies. *See* N.J. Am. Compl. ¶¶ 77–87. After the law was enacted, Plaintiffs allege that DD "ceased offering, advertising, selling, or otherwise distributing [DFI] on [Defcad]." N.J. Am. Compl. ¶ 85.[7]

Additionally, unlike the Texas action, the NJ action asserts claims on behalf of the Non-Texas Plaintiffs. These plaintiffs operate the CodeIsFreeSpeech ("CIFS") project via CodeIsFreeSpeech.com, which became publicly accessible on July 31, 2018. N.J. Am. Compl. ¶¶ 88, 90. From that date through February 2, 2019, CodeIsFreeSpeech.com made available for download "digital instructions in the form of [CAD] files or other code or instructions stored and displayed in electronic format as a digital model that may be used to program a [3D] printer to

---

[7] On March 3, 2019, the NJAG filed a motion requesting a stay of the NJ action pending resolution of DD's and SAF's motion to amend the judgment in the Western District of Texas. *See* N.J. ECF No. 20. Judge Thompson granted a stay "until the action in the Western District of Texas (Civil Docket No. 18-637) is resolved and no other motions for relief and/or appeals are viable." N.J. ECF No. 26. Judge Thompson also dismissed DD's and SAF's motion for a preliminary injunction without prejudice. N.J. ECF No. 33. DD and SAF appealed both orders, and on August 25, 2020, the Third Circuit dismissed both appeals for lack of appellate jurisdiction. *See Def. Distributed v. Attorney Gen. of N.J.*, 972 F.3d 193 (3d Cir. 2020).

manufacture or produce a firearm, firearm receiver, magazine, or firearm component." *Id.* ¶ 90. CIFS's publications during this period included, among content from other providers, files that DD had published previously. *See id.* ¶ 91. On February 2, 2019, plaintiff Brandon Combs allegedly received an email from Cloudflare regarding "Cloudflare Abuse," which reported that Cloudflare had received a notification from the Office of the Attorney General of New Jersey ("OAGNJ"). *Id.* ¶ 94. The notification stated that Cloudflare had made files accessible via its datacenter that violate N.J.S.A. 2C:39-9(*l*)(2), and ordered Cloudflare to remove the files within 24 hours. *Id.*[8] Due to the takedown demand, "on February 2, 2019, CodeIsFreeSpeech.com made the [DFI] that it had previously published inaccessible to anyone who browsed to or otherwise attempted to access those files." *Id.* ¶ 95. Plaintiffs allege that but-for the NJAG's actions, CodeIsFreeSpeech.com "would resume online publication of the files that it had published from July 31, 2018 to February 2, 2019, to persons in the State of New Jersey." *Id.* ¶ 100.

On August 19, 2020, the Fifth Circuit reversed the Texas District Court's decision finding that Texas lacked personal jurisdiction over the NJAG, holding that the NJAG's enforcement actions against DD provided sufficient litigation-related contacts in Texas. *Def. Distributed v. Grewal*, 971 F.3d 485, 495–97 (5th Cir. 2020). DD and SAF thereafter filed a Second Amended Complaint ("Texas SAC") in the Texas action. *See* Texas ECF No. 117, Texas SAC. That Texas SAC adds allegations pertaining to N.J.S.A. 2C:39-9(*l*)(2) that are nearly identical to those asserted

---

[8] The NJAG submitted a letter to Judge Thompson on February 12, 2019, taking the position that the NJAG did not in fact issue the takedown order. N.J. Am. Compl. ¶ 96. Plaintiffs sought clarification as to whether the NJAG would bring enforcement actions if DD, SAF, or CodeIsFreeSpeech.com were to publish additional DFI. *Id.* ¶ 97. In subsequent correspondence, the NJAG responded that he could not "provide any generalized assurances one way or the other regarding the enforcement of Section 3(l)(2) if [Plaintiffs] intend to violate the plain terms of the statute." *Id.* ¶ 98. On the instant motion, Defendant takes the position that "the February 2, 2019 communication was not in fact issued by the NJAG, and was instead sent by an entity impersonating the NJAG." N.J. ECF No. 57 at 10 n.1 (citing N.J. ECF No. 9).

in the NJ action. *Id.* ¶¶ 141–61. In addition, the Texas SAC adds claims against the State Department for violations of the APA and the First, Second, and Fourteenth Amendments, and for breach of contract, all in connection with the Department's apparent disavowal of the Settlement Agreement. *Id.* ¶¶ 184–254. As to the NJAG, the Texas SAC asserts the following claims: violations of the First and Second Amendments, the Equal Protection and Due Process Clauses of the Fourteenth Amendment, and the dormant Commerce Clause; that the NJAG's actions are preempted by the AECA and the CDA; and tortious interference with the Settlement Agreement and with DD's contracts with Cloudflare and DreamHost.

Before the Texas District Court, the NJAG moved to sever and transfer the claims against him to the District of New Jersey, which that court granted on April 20, 2021.[9] *See* Texas ECF No. 145; *Def. Distributed v. Grewal*, Civ. No. 18-637, 2021 WL 1614328 (W.D. Tex. Apr. 19, 2021). That day, DD and SAF appealed the transfer order to the Fifth Circuit. Texas ECF Nos. 146, 147. Once the Texas action was transferred to this District, on April 28, 2021, the NJAG filed a motion to consolidate the transferred Texas action (Civ. No. 21-09867) with the NJ action (Civ. No. 19-04753) (hereinafter the "Consolidated Action"). *See* N.J. ECF No. 41. Plaintiffs did not oppose the motion before the May 24, 2021 deadline, and Judge Thompson granted the motion on June 11, 2021.[10] *See* N.J. ECF No. 43. However, on June 23, 2021, the Fifth Circuit issued an order staying the Texas District Court's transfer order "pending further order" of the Fifth Circuit. *See Def. Distributed v. Grewal*, No. 21-50327, Doc. No. 00515911277 (5th Cir. June 23, 2021). In light of the Fifth Circuit's Order, Judge Thompson denied a request from the NJAG to set a status

---

[9]  After severance, DD's and SAF's claims against the State Department remain in Texas.

[10]  Indeed, the consolidation was appropriate, since the Complaints in both actions assert nearly identically claims as they relate to DD and SAF.

conference in the Consolidated Action pending "further guidance from the Fifth Circuit." *See* N.J. ECF No. 46.  Importantly, this matter remains a consolidated case, with the NJ member case terminated.

On April 1, 2022, the Fifth Circuit issued an Opinion concerning the Texas District Court's transfer order. *See Def. Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022). *Bruck* held that the Texas District Court erred in severing and transferring the claims against the NJAG to the District of New Jersey. *Id.* at 427. Without precedent,[11] a divided Fifth Circuit panel issued a writ of mandamus, vacating the Texas District Court's transfer order and ordering the Texas District Court to "[r]equest the District of New Jersey to return the transferred case to the Western District of Texas."[12] *Id.* at 436–37. As instructed, the Texas District Court issued an order on April 13, 2022, vacating its severance and transfer order, and "requesting" that the District of New Jersey return the matter to the Western District of Texas. *See* N.J. ECF No. 48.

Upon the Consolidated Action being assigned to me from Judge Thompson on April 19, 2022, N.J. ECF No. 50, I ordered the parties to file letters stating their positions regarding the Texas District Court's request. N.J. ECF No. 51. After reviewing the parties' submissions, I construed Plaintiffs' letter as a motion to transfer the Consolidated Action to the Western District of Texas, and subsequently ordered both parties to file opposition briefs, which were timely filed on June 6, 2022. *See* N.J. ECF Nos. 55–57.

## II.    LEGAL STANDARD

"For the convenience of parties and witnesses, in the interest of justice, a district court may transfer any civil action to any other district . . . where it might have been brought." 28 U.S.C. §

---

[11] *See infra*, n. 25.

[12] The Court will discuss, *infra*, the impact of the Fifth Circuit's Mandamus Order as to the Consolidated Action.

1404(a). The movant bears the burden of establishing that transfer is appropriate. *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3d Cir. 1995). Section 1404(a) "is [intended] 'to prevent the waste of time, energy, and money and to protect litigants, witnesses and the public against unnecessary inconvenience and expense.'" *Kremer v. Lysich*, Civ. No. 18-03676, 2019 WL 3423434, at *3 (D.N.J. July 30, 2019) (quoting *Van Dusen v. Barrack*, 376 U.S. 612, 616 (1964)). Thus, the statute vests district courts "with a large discretion," *Solomon v. Cont'l Am. Life Ins. Co.*, 472 F.2d 1043, 1045 (3d Cir. 1973), "to adjudicate motions for transfer according to an 'individualized, case-by-case consideration of convenience and fairness.'" *Stewart Org., Inc. v. Ricoh Corp.*, 487 U.S. 22, 29 (1988) (quoting *Van Dusen*, 376 U.S. at 622).

A two-step analysis governs motions to transfer an action to another district court. First, courts must determine whether the proposed transferee district is one where the original action "might have been brought," which turns on "whether (1) venue is proper in the transferee district, and (2) the transferee district can exercise personal jurisdiction over all parties." *See Interlink Prods. Int'l, Inc. v. Crowfoot*, Civ. No. 20-7654, 2020 WL 6707946, at *6 (D.N.J. Nov. 16, 2020) (citing *Shutte v. Armco Steel Corp.*, 431 F.2d 22, 24 (3d Cir. 1970)). Second, if venue is proper and the transferee court would have personal jurisdiction, courts must assess a set of "private" and "public" interests "'to determine whether on balance the litigation would more conveniently proceed and the interests of justice be better served by transfer to a different forum.'" *Jumara*, 55 F.3d at 879 (quoting 15 Charles A. Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure: Jurisdiction and Related Matters* § 3847 (2d ed. 1986)).

## III.   DISCUSSION

To analyze whether transfer is appropriate, the Court must first properly frame the specific relief that Plaintiffs request. The Texas District Court issued an order requesting that this Court return the Texas action to the Western District of Texas. But the Texas action is no longer pending as a

standalone case. Indeed, having received no objection from Plaintiffs, Judge Thompson consolidated that case with the NJ action—nearly a year before the Texas District Court issued its request. *See* N.J. ECF No. 43. Thus, this Court is faced with simply one Consolidated Action.

Based on this procedural posture, the Court construes Plaintiffs' motion to transfer as making three separate requests: first, Plaintiffs request that the Court retransfer the original Texas action, which has been consolidated, to the Western District of Texas, while allowing the NJ action to proceed in parallel in this Court. *See* N.J. ECF No. 56 at 4 (arguing that "Case number 3:21-cv-9867 belongs in Texas no matter what"). But, because this is one Consolidated Action, the Court construes Plaintiffs' request as a motion to sever and transfer the claims originally asserted in the Texas action. And, while Plaintiffs have not filed a formal motion to sever, the Court may decide whether severance is appropriate *sua sponte*. *See* Fed. R. Civ. P. 21. Second, Plaintiffs request that the Court transfer the entire Consolidated Action to the Western District of Texas. *See* N.J. ECF No. 54 at 1 (arguing that the Court should "return the entire controversy to the Western District of Texas"); N.J. ECF No. 56 at 6 (arguing that the Court should transfer "both cases to the Western District of Texas"). Third, Plaintiffs propose severing and transferring the claims originally asserted in the Texas action, while staying the remaining claims, *i.e.*, those filed in the NJ action, in this Court. *See* N.J. ECF No. 56 at 6.

Plaintiffs' first request is not tenable. "Before effecting . . . a severance, a judge should weigh the convenience to the parties requesting transfer against the potential inefficiency of litigating the same facts in two separate forums." *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 144 (3d Cir. 1999). "'[The court] should not sever if the defendant over whom jurisdiction is retained is so involved in the controversy to be transferred that partial transfer would require the same issues to be litigated in two places.'" *Sunbelt Corp. v. Noble, Denton & Assocs., Inc.*, 5 F.3d 28, 33–34 (3d Cir. 1993) (quoting *Liaw Su Teng v. Skaarup Shipping Corp.*, 743 F.2d 1140, 1148 (5th Cir.1984), *overruled*

*on other grounds*, *In re Air Crash Disaster Near New Orleans, La., on July 9, 1982*, 821 F.2d 1147

(5th Cir. 1987)). Here, except for two tortious interference counts that were asserted only in the Texas

action, the remaining seven causes of action asserted against the NJAG in both the NJ action and

Texas action are identical and concern the same type of conduct. *Compare* Texas SAC (asserting

causes of action under the First and Second Amendments, the Equal Protection, Due Process, and

Commerce Clauses, the AECA and CDA, and for tortious interference with the settlement agreement

and with existing contracts), *with* N.J. Am. Compl. (asserting all the same claims except those for

tortious interference). Severing and transferring the claims in the Texas action to Texas while

allowing the remaining claims to proceed in parallel here, would therefore require Defendant to

litigate "the same issues . . . in two places." *Sunbelt*, 5 F.3d at 33–34.[13]

Thus, the Court's transfer analysis will focus on Plaintiffs' requests to transfer the entire

Consolidated Action to Texas or, in the alternative, sever and transfer the claims asserted in the Texas

action, while staying the remaining claims in this Court. Under many of the relevant factors, the

---

[13] The Fifth Circuit concluded that litigating DD's and SAF's claims against the NJAG together with their claims against the State Department in Texas would produce efficiencies. *See Def. Distributed*, 30 F.4th at 431–32. I am not persuaded. To the contrary, any such efficiencies fall far short of those derived from litigating DD's, SAF's, *and* the Non-Texas Plaintiffs' seven identical causes of action against the NJAG in one forum. *See In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) ("Adjudicating almost identical issues in separate fora would waste judicial resources."). That is particularly true where only three of the eight causes of action DD and SAF assert against the State Department overlap with causes of action they assert against the NJAG. *Compare* Texas SAC, *with* N.J. Am. Compl. The Fifth Circuit discounted the efficiency of litigating the Texas action and NJ action together in this Court because the circuit court concluded that DD and SAF were compelled to file suit in New Jersey due to the Texas District Court's allegedly erroneous decision on personal jurisdiction. *See Def. Distributed*, 30 F.4th at 432. But such reasoning does not address the issues concerning judicial efficiency and jurisdiction that the motion to transfer now presents to this Court. *See infra*. Indeed, as discussed *infra*, the equities do not cut in favor of DD or SAF, given that when they appealed the Texas District Court's personal jurisdiction order they could have simply awaited the Fifth Circuit's decision; however, that did not occur. Instead, DD and SAF filed a new case, bringing nearly-identical claims against Defendant in the NJ action, which resulted in the Consolidated Action.

Court's analysis as to each request is identical. And because one Consolidated Action is before the Court, the Court will analyze the transfer factors based primarily on Plaintiffs' request to transfer the entire Consolidated Action. However, where relevant, the Court will conduct a separate analysis as to Plaintiffs' third request regarding severance, transfer and a stay of the NJ action. Ultimately, the Court finds that transferring either the entire Consolidated Action, or only the claims asserted in Civ. No. 21-0986, is not warranted.

### A.     Whether Plaintiffs Could Have Brought the Action in Texas

#### 1.     Venue

The Court must first determine "whether . . . venue is proper in the transferee district." *See Interlink Prods. Int'l, Inc.*, 2020 WL 6707946, at *6 (citing *Shutte*, 431 F.2d at 24). Here, Plaintiffs maintain that venue for the Consolidated Action is proper in the Western District of Texas pursuant to 28 U.S.C. § 1391(b)(2), which provides for venue in "a judicial district in which a substantial part of the events or omissions giving rise to the claim occurred." *See* N.J. ECF No. 54 at 3. Defendant does not dispute that venue in the Western District of Texas is proper under Section 1391(b)(2). Because I find that transfer is not appropriate, even assuming proper venue, I will assume, without deciding, that the Western District of Texas is a proper venue for the Consolidated Action.

#### 2.     Personal Jurisdiction

The Court must next analyze personal jurisdiction in the transferee forum. A court may "exercise personal jurisdiction over a nonresident defendant" if (1) the state's long-arm statute confers jurisdiction, and (2) asserting jurisdiction is consistent with the Due Process Clause of the Fourteenth Amendment. *Mink v. AAAA Dev. LLC*, 190 F.3d 333, 335 (5th Cir. 1999). "Because Texas' long-arm statute has been interpreted to extend to the limits of due process," the Court need only determine whether asserting jurisdiction in Texas over Defendant would violate the Due Process Clause. *Electrosource, Inc. v. Horizon Battery Techs., Ltd.*, 176 F.3d 867, 871 (5th Cir. 1999) (citing

*Schlobohm v. Schapiro*, 784 S.W.2d 355, 357 (Tex.1990)).

Under the Due Process Clause, a court has jurisdiction over a nonresident defendant "when (1) that defendant has purposefully availed himself of the benefits and protections of the forum state by establishing 'minimum contacts' with the forum state; and (2) the exercise of jurisdiction over that defendant does not offend 'traditional notions of fair play and substantial justice.'" *Latshaw v. Johnston*, 167 F.3d 208, 211 (5th Cir.1999) (quoting *Int'l Shoe Co. v. State of Washington*, 326 U.S. 310, 316 (1945)). Two different forms of personal jurisdiction can satisfy the requisite contacts: general and specific. *Ford Motor Co. v. Mont. Eighth Judicial Dist.*, 141 S. Ct. 1017, 1024 (2021). Here, Texas may not exercise general jurisdiction over the NJAG, as he is not "'essentially at home' in th[at] State." *Id.* (quoting *Goodyear Dunlop Tires Operations, S. A. v. Brown*, 564 U.S. 915, 919 (2011)). Only specific jurisdiction is at issue.

A court has specific jurisdiction when three conditions are met. "First, the defendant must 'purposefully avail[ ] itself of the privilege of conducting activities in the forum State.'" *Johnson v. TheHuffingtonPost.com, Inc.*, 21 F.4th 314, 317 (5th Cir. 2021) (quoting *Ford Motor Co.*, 141 S. Ct. at 1024). "Second, the plaintiff's claim 'must arise out of or relate to' those purposeful contacts." *Johnson*, 21 F.4th at 317 (quoting *Ford Motor Co.*, 141 S. Ct. at 1025). Although "[a] defendant may have many meaningful ties to the forum," the court may not exercise jurisdiction unless those ties "connect to the plaintiff's claim." *Johnson*, 21 F.4th at 318. Third, exercising jurisdiction "must be 'fair and reasonable' to the defendant." *Johnson*, 21 F.4th at 318 (quoting *Seiferth v. Helicopteros Atuneros, Inc.*, 472 F.3d 266, 271 (5th Cir. 2006)).

Transfer to a different district court is proper only where the plaintiff has an "unqualified right" to bring its claim "in the transferee forum." *Shutte*, 431 F.2d at 24. Transfer is not appropriate where "there is a very real question whether [the] plaintiff could have obtained jurisdiction" in the transferee court. *Id.* Here, because the personal jurisdiction analysis differs based on whether this

Court were to transfer the entire Consolidated Action or only the claims asserted in the Texas action, I conduct separate analyses for each request.

a)      Transfer of the Entire Consolidated Action

As discussed *supra*, the Consolidated Action includes claims asserted by the Non-Texas Plaintiffs. Those claims likely do not provide a basis for the transferee court to exercise specific jurisdiction over the NJAG, because they do not "'arise out of or relate to' [the NJAG's] purposeful contacts" in Texas. *See Johnson*, 21 F.4th at 317 (quoting *Ford Motor Co.*, 141 S. Ct. at 1025).  To begin, the Non-Texas Plaintiffs are neither organized under the laws of Texas nor are they Texas residents. *See* N.J. Am. Compl. ¶¶ 13–17.[14] Moreover, the NJAG's alleged conduct underpinning these particular claims is not connected to Texas.  Indeed, Plaintiffs allege that CodeIsFreeSpeech.com—a website the Non-Texas Plaintiffs operate that has no alleged connection to Texas—published DFI from July 31, 2018, through February 2, 2019. N.J. Am. Compl. ¶¶ 88, 90, 94. On February 2, 2019, the OAGNJ purportedly sent a notification to Cloudflare, a company based in California,[15] concerning potential violations of New Jersey law by CodeIsFreeSpeech.com. *See* N.J. Am. Compl. ¶ 94; N.J. ECF No. 18-3, Declaration of Brandon Combs ("Combs Decl.") Ex. B. The notification pertained to files that were accessible via Cloudflare's New Jersey datacenter. *See* N.J. Am. Compl. ¶ 94. And Cloudflare allegedly forwarded the notification to Combs, *see* N.J. Am. Compl. ¶ 94, who also does not have any connection to Texas. The OAGNJ's notification did list a

---

[14] Plaintiffs allege that "Brandon Combs resides outside of New Jersey," without specifying his state of residence. N.J. Am. Compl. ¶ 17. The Court therefore has no basis to infer, let alone find, that Combs is a Texas resident.

[15] Cloudflare has its principal place of business in California and is organized under the laws of Delaware.  *See  Cloudflare, Inc.  Form  10-K*  (Dec.  31,  2021) https://www.sec.gov/ix?doc=/Archives/edgar/data/1477333/000147733322000008/cloud-20211231.htm.

set of files concerning the "Liberator" firearm that DD, a Texas entity, had published previously. But, the mere fact that the OAGNJ's notification listed a set of files a Texas entity had published does not mean that the notification, sent to non-Texas entities, constituted outreach to Texas. Moreover, the republished set of DD files was only one among many from other DFI providers, with no alleged connection to Texas, that the notification covered. *See* N.J. Am. Compl. ¶¶ 91, 94. Thus, the Non-Texas Plaintiffs' claims based on the OAGNJ's notification do not "arise out of or relate to," *Johnson*, 21 F.4th at 317, actions the NJAG directed at Texas vis-a vis the cease-and-desist letter sent to DD.

Nor is it evident that the Non-Texas Plaintiffs' claims arise out of other actions that the NJAG allegedly directed at the transferee forum. The Non-Texas Plaintiffs allege that "they refrain from receiving and republishing [DD's] files for fear of being prosecuted by New Jersey." *See id.* ¶ 115. Based on that lone allegation, there is no basis to conclude that the Non-Texas Plaintiffs' claims arise out of threats the NJAG issued to DD. The NJAG sent his cease-and-desist letter to DD in Texas on July 26, 2018, which is *before* CodeIsFreeSpeech.com began publishing DFI, including DD's files, on July 31, 2018. *See* N.J. Am. Compl. ¶¶ 49, 90. Thus, the Non-Texas Plaintiffs' claims more accurately arise out of perceived threats the NJAG directed at *them*, including the notification sent to Combs via Cloudflare and the NJAG's refusal to provide assurances that he would not bring an enforcement action, under New Jersey law, against any plaintiff in the Consolidated Action. *See id.* ¶¶ 97–98. Because none of the Non-Texas Plaintiffs are based in Texas and, as far as the allegations indicate, none were targeted in Texas, the NJAG did not target the threats underlying their claims at Texas. These claims, therefore, do not arise out of, or relate to, the NJAG's contacts with Texas, casting considerable doubt over the Non-Texas Plaintiffs' "right" to bring their claims "in the transferee forum." *Shutte*, 431 F.2d at 24.

Next, I address whether the transferee court could exercise pendent personal jurisdiction over

the Non-Texas Plaintiffs' claims. Such jurisdiction "comes in two forms—pendent claim and pendent party personal jurisdiction." *Canaday v. Anthem Companies, Inc.*, 9 F.4th 392, 401 (6th Cir. 2021). Under "[p]endent *claim* jurisdiction, . . . a court's exercise of personal jurisdiction over one defendant as to one claim allows it to exercise personal jurisdiction with respect to related claims that it could not adjudicate in the anchor claim's absence." *Id.* (emphasis in original). On the other hand, "[p]endent *party* personal jurisdiction recognizes that a court's exercise of personal jurisdiction over one defendant as to a particular claim by one plaintiff allows it to exercise personal jurisdiction with respect to similar claims brought by other plaintiffs." *Id.* (emphasis in original). The latter doctrine is relevant here. DD, SAF, and the Non-Texas Plaintiffs all assert claims under the same causes of action, *see generally* N.J. Am. Compl., but as explained *supra*, only DD's and SAF's claims have a sufficient connection to Texas for purposes of specific jurisdiction.

There is at least a "very real question," *Shutte*, 431 F.2d at 24, whether the district court in the Western District of Texas could exercise pendent party personal jurisdiction over the Non-Texas Plaintiffs' claims against the NJAG. The parties have not identified any cases in the Fifth Circuit or the Western District of Texas that address pendent *party* jurisdiction, nor could the Court locate any.[16] However, the weight of authority outside the Fifth Circuit holds that the doctrine is inapplicable beyond a limited set of circumstances that are not relevant here. In *Canaday*, the Sixth

---

[16] In the Fifth Circuit, "specific personal jurisdiction [is] a claim-specific inquiry." *Seiferth*, 472 F.3d at 274. "A plaintiff bringing multiple claims that arise out of different forum contacts of the defendant must establish specific jurisdiction for each claim." *Id.* Thus, on multiple occasions, the Fifth Circuit has held that a district court lacked personal jurisdiction over a plaintiff's claims that were not connected to the forum, even though the court had jurisdiction over other claims asserted by the same plaintiff that arose out of the defendant's forum-related contacts. *See, e.g.*, *Carmona v. Leo Ship Mgmt., Inc.*, 924 F.3d 190, 197–98 (5th Cir. 2019); *Seiferth*, 472 F.3d at 274–76. Though closely related, these cases do not address the specific posture at issue here, where multiple plaintiffs each bring identical claims, but only certain plaintiffs' claims are sufficiently connected to the defendant's contacts with the forum to support personal jurisdiction.

Circuit refused to apply pendent party jurisdiction over claims by certain nonresident plaintiffs where the defendant's conduct underlying those claims did not relate to the forum, even though the court had personal jurisdiction over other plaintiffs' claims asserted under the same cause of action. *See* 9 F.4th at 395, 401–02. *Canaday* reached this conclusion based in part on the Supreme Court's decision in *Bristol Myers Squibb Co. v. Superior Court of California, San Francisco County*, 137 S. Ct. 1773 (2017). There, the Court held that a court in California did not have specific jurisdiction over claims by non-resident plaintiffs that were not connected to the defendant's conduct in California, even though the court had jurisdiction over claims by other resident plaintiffs in the same suit. *See* 137 S. Ct. at 1782–84. As *Canaday* explains, "[i]f pendent party personal jurisdiction exists, *Bristol-Myers* should have come out the other way." 9 F.4th at 401. *Canaday* recognized that some courts assert pendent personal jurisdiction over claims lacking a relationship with the forum where a federal statute under which the plaintiff asserts another claim authorizes nationwide service of process. *See id.* at 401 (citing cases, none of which is from the Fifth Circuit). However, the plaintiffs in *Canaday* brought claims under the Fair Labor Standards Act (FLSA), which does not authorize nationwide service, and as such, the doctrine did not apply. *See id.*

In *Vallone v. CJS Solutions Group*, 9 F.4th 861 (8th Cir. 2021), the Eighth Circuit held that a district court did not have personal jurisdiction over similar claims to those at issue in *Canaday*. Like in *Canaday*, the plaintiffs in *Vallone* asserted FLSA claims, but some of the plaintiffs' claims did not arise out of, or relate to, the defendant's conduct in the forum state. *Id.* at 863–66. *Vallone* held that the district court had "properly excluded claims with no connection to [the forum state]" because "jurisdiction to entertain a claim with connections to [the forum]" does not "establish[] jurisdiction to hear another claim with no such connection." *Id.* at 866.

A sister district court in this Circuit also recently declined to apply pendent party personal jurisdiction. *See Travers v. FedEx Corp.*, __ F. Supp. 3d __, 2022 WL 407398, at *4–5 (E.D. Pa.

2022). In *Travers*, a nonresident plaintiff urged the court to apply pendent party personal jurisdiction over claims that were not connected to the forum given that the court had specific jurisdiction over similar claims another plaintiff asserted in the same action. *Id.* at *1, *4–5. *Travers* noted that the Third Circuit has only applied pendent personal jurisdiction over claims with no connection to the forum when the plaintiff asserts another claim in the same action under a federal statute that authorizes nationwide service. *See id.* at *4 and n.42 (citing *Laurel Gardens, LLC v. Mckenna*, 948 F.3d 105, 123 (3d Cir. 2020); *Robinson v. Penn Cent. Co.*, 484 F.2d 553, 555–56 (3d Cir. 1973)). But no such federal statute was at issue in *Travers*, and the court noted that "the majority position" among district courts rejects pendent party personal jurisdiction. *Id.* at *5 and n.45 (collecting cases). Accordingly, *Travers* refused to apply pendent party personal jurisdiction to the nonresident plaintiff's claims. *Id.* at *5; *see also Chernus v. Logitech, Inc.*, No. 17-673, 2018 WL 1981481, at *1, *6 (D.N.J. Apr. 27, 2018) (declining to exercise personal jurisdiction over claims by a nonresident plaintiff that lacked any connection to the forum even though there was no dispute that the court had personal jurisdiction over similar claims by a resident plaintiff that arose out of the defendant's contacts with the forum).

Based on the foregoing case law, it is unlikely that a district court in Texas would assert pendent party personal jurisdiction over the Non-Texas Plaintiffs' claims.[17] Certain plaintiffs here— DD and SAF—assert claims that arise out of the NJAG's contacts with the forum, over which a court in Texas has personal jurisdiction. *See Def. Distributed*, 971 F.3d at 497. However, other plaintiffs— the Non-Texas Plaintiffs—are not residents of the forum, and their claims do not arise out of, or relate to, the NJAG's contacts with Texas, and no plaintiff asserts a claim under a federal statute authorizing

---

[17] In *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022), the Fifth Circuit did not address whether a district court would have personal jurisdiction over the Non-Texas Plaintiff's claims asserted in the NJ action.

nationwide service.  Accordingly, like in *Canaday*, *Vallone*, and *Travers*, a district court in Texas likely would not assert personal jurisdiction over the latter claims. Based on all the foregoing reasons, I find that Plaintiffs do not have an "unqualified right" to bring these consolidated actions "in the transferee forum." *Shutte*, 431 F.2d at 24.

b)   Transfer of the Claims Asserted in The Texas Action

By contrast, Plaintiffs present a stronger case for personal jurisdiction over DD's and SAF's claims against the NJAG asserted in the Texas action. On that issue, in the Fifth Circuit held, on an appeal from a motion to dismiss, that Texas has personal jurisdiction over the NJAG with respect to these claims. *See Def. Distributed*, 971 F.3d at 497. The circuit reasoned that the NJAG sent his cease-and-desist letter to DD in Texas, and it construed the letter as ordering DD to cease its publications nationwide, not just in New Jersey. *Id.* at 492 & n.6. It also concluded that beyond the cease-and-desist letter, the NJAG's enforcement actions selectively targeted DD. *Id.* at 493. And, the court further emphasized that the cease-and-desist letter had a chilling effect on DD that in turn reduced Texans' access to DD's materials. *Id.* at 495–96. Based on these factors, the court concluded that DD's claims arose out of the NJAG's contacts with the forum. *Id.* at 497.[18]

Nevertheless, it is important to point out that even the Fifth Circuit recognized that certain factual disputes regarding personal jurisdiction remain. For example, the court's conclusion that the NJAG purposefully directed enforcement action at Texas was predicated on it construing the cease-and-desist letter as applying to publications outside New Jersey. *See id.* at 492 n.6. But the court recognized that the letter ordered DD to "'to cease and desist from publishing printable-gun computer files *for use by New Jersey residents*,'" which, the court acknowledged, "could be interpreted as a

---

[18] The Fifth Circuit's reasoning as to personal jurisdiction focuses entirely on DD and does not refer specifically to SAF. *See id.* at 491–97.

limited instruction." *Id.* (emphasis in original). Although the court ultimately construed the letter as applying nationwide, it did so by resolving the factual dispute in the plaintiffs' favor, as it must on a motion to dismiss. *Id.* In fact, the concurrence explained that the panel did "not resolve the factual dispute of whether" the cease-and-desist letter applied to publications outside New Jersey. *Id.* at 497 n.1 (Higginson, J., concurring). Rather, if the NJAG did not "in fact" order DD to cease publications other than in New Jersey, the concurrence recognized that Fifth Circuit precedent would foreclose personal jurisdiction over the NJAG. *Id.* (citing *Stroman Realty, Inc. v. Wercinski*, 513 F.3d 476 (5th Cir. 2008)). Thus, even with respect to DD's and SAF's claims against the NJAG, based on the Fifth Circuit's decision, the issue of personal jurisdiction in the transferee forum is not settled.  In any event, as discussed *infra*, even if the transferee court has personal jurisdiction over the claims asserted by DD and SAF against Defendant, the *Jumara* factors nevertheless weigh against transfer.

### B.    Private and Public Interest Factors

#### 1.    *Private Interest Factors*

The private interest factors include (1) "the plaintiff's forum preference," (2) "the defendant's [forum] preference," (3) the forum where the claims arose, (4) "the convenience of the parties as indicated by their relative physical and financial condition," (5) "the convenience of the witnesses," and (6) "the location of books and records." *Jumara*, 55 F.3d at 879; *Interlink Prods. Int'l*, 2020 WL 6707946, at *7. Here, the analysis regarding transfer of the Consolidated Action and transfer of the claims in the Texas action is largely the same, such that the Court analyzes these alternatives together.

The first two factors largely counterbalance one another. Plaintiffs prefer Texas, as evidenced by DD's and SAF's choice to initially file suit in Texas and Plaintiffs' request to transfer the Consolidated Action to Texas. *See* N.J. ECF No. 54 at 4. Defendant prefers New Jersey, where the NJAG is located and from where he initiated many of the actions underlying Plaintiffs' claims. A plaintiff's choice of "forum is a paramount consideration in any determination of a transfer request,"

*Shutte*, 431 F.2d at 25, which "should not be lightly disturbed." *Jumara*, 55 F.3d at 879 (quotations and citations omitted). However, the plaintiff's choice "is not necessarily decisive," particularly where "the central facts of the lawsuit did not occur" in the plaintiff's chosen forum. *Interlink Prods. Int'l*, 2020 WL 6707946, at *7 (citing *Nat'l Prop. Inv'rs VIII v. Shell Oil Co.*, 917 F. Supp. 324, 327 (D.N.J. 1995)). While the Fifth Circuit concluded that the NJAG directed certain actions underlying DD's and SAF's claims at Texas, those actions nevertheless took place in New Jersey, which is also where N.J.S.A. 2C:39-9(*l*)(2) was enacted. The NJAG's actions underlying the Non-Texas Plaintiffs' claims also occurred in, and were directed toward, other districts. As such, Plaintiffs' chosen forum is not decisive; rather, the factors related to Plaintiffs' and Defendant's preferred fora are largely neutral.

The forum where the claims arose is also neutral. The NJAG sent his cease-and-desist letter to DD in Texas, and he referred to DD specifically in his speech at the signing ceremony for SB 2465. *See* N.J. Am. Compl. ¶¶ 49–50, 80–81. But many of the other allegedly unlawful actions occurred elsewhere. The NJAG forwarded his cease-and-desist letter to DD's internet security providers, both of which are located in California. *See* N.J. Am. Compl. ¶¶ 60–64. He sued the State Department in Washington State seeking to enjoin its Settlement Agreement with DD, and he sued DD in New Jersey state court seeking to enjoin its publication of DFI. *See* N.J. Am. Compl. ¶¶ 65–66. With respect to the Non-Texas Plaintiffs, the OAGNJ sent notice to Cloudflare, a California company, that CodeIsFreeSpeech.com may have violated New Jersey law. *See* N.J. Am. Compl. ¶¶ 88–100. Combs received the notice from Cloudflare, *See* N.J. Am. Compl. ¶ 94, and there is no indication that he or any of the other Non-Texas Plaintiffs is located in Texas. In fact, where a plaintiff's claims turn on a state's cross-border enforcement actions in the plaintiff's state of residency, courts typically find that the "events giving rise to the claims" occurred where the relevant state officials are located. *See Interlink Prods. Int'l*, 2020 WL 6707946, at *7. Thus, contrary to

Plaintiffs' position, there is no basis to conclude that Texas is the "center of gravity" for either the Consolidated Action or the claims in the Texas action.

Nor do convenience considerations or the location of books and records weigh decidedly in favor of either party. The NJAG's litigation resources likely outweigh Plaintiffs', which slightly favors Plaintiffs' preferred forum. *See Maliki v. Holy Redeemer Hosp.*, Civ. No. 15-1591, 2016 WL 4161094, at *2 (D.N.J. Aug. 5, 2016) (citing *Jumara*, 55 F.3d at 879). But the officials behind the enforcement actions that underpin Plaintiffs' claims are all located in New Jersey, as are the documents associated with those actions. And Plaintiffs concede that the likelihood they will need to adduce technical evidence located in Texas is "low." ECF No. 54 at 4. In any event, neither party contends that any of its witnesses or other evidence would be unavailable in either proposed forum. Convenience factors therefore do not favor either party. *See Interlink Prods. Int'l*, 2020 WL 6707946, at *7 (citing *Jumara*, 55 F.3d at 879) (noting that convenience factors "would sway the court only if there were witnesses who were unavailable in one of the forums, or if documents could be produced in one district but not the other").

Accordingly, the private interest factors are in equipoise and do not compel the outcome of Plaintiffs' motion.

> 2.     *Public Interest Factors*

The relevant public interest factors include (1) "the enforceability of the judgment," (2) "practical considerations that could make the trial easy, expeditious, or inexpensive," (3) "the relative administrative difficulty in the two fora resulting from court congestion," (4) "the local interest in deciding local controversies at home," (5) "the public policies of the fora," and (6) "the familiarity of the trial judge with the applicable state law in diversity cases." *Jumara*, 55 F.3d at 879–80; *Interlink Prods. Int'l*, 2020 WL 6707946, at *7.

a)      Enforceability

Concerns regarding the enforceability of a judgment in this case, *Jumara*, 55 F.3d at 879, do

not favor either proposed forum. "[W]hen both forums are federal district courts, this factor has little

relevance because it is unlikely that there would be any significant difference in the difficulty of

enforcing a judgment rendered by one federal forum or the other." *See Interlink Prods. Int'l*, 2020

WL 6707946, at *8 (citing 17 Moore's Federal Practice – Civil § 111.13 (2020)).

b)      Practical Considerations

The relevant "practical considerations," *Jumara*, 55 F.3d at 879, include judicial economy

and an interest in avoiding duplicative litigation in different courts. *CIB C World Mkts. v. Deutsche

Bank Sec., Inc.*, 309 F. Supp. 2d 637, 651 (D.N.J. 2004) (citing *Cont'l Grain Co. v. Barge FBL–585*,

364 U.S. 19, 26 (1960)). The implications for judicial economy differ based on whether the Court

transfers the Consolidated Action or only the claims asserted in the Texas action, and the Court

therefore analyzes each approach separately. Nevertheless, under either approach, judicial economy

weighs against transfer.

(1)      Transfer of the Entire Consolidated Action

Transferring the entire Consolidated Action to Texas would not promote judicial economy

because, as set forth *supra*, the Western District of Texas likely does not have personal jurisdiction

over the Non-Texas Plaintiffs' claims against the NJAG. Transferring the Non-Texas Plaintiffs'

claims to Texas would therefore require the Texas District Court to conduct discovery and resolve

issues concerning personal jurisdiction, which weighs heavily against transfer. *See Interlink Prods.

Int'l*, 2020 WL 6707946, at *9 (finding that the "practical considerations" favored venue in a district

that "undoubtedly ha[d] personal jurisdiction over [the defendants]"); *see also Multistate Legal

Studies, Inc. v. Marino*, Civ. No. 96-5118, 1996 WL 786124, at *11 (C.D. Cal. Nov. 4, 1996) ("Courts

have repeatedly held that a change of venue from a forum where there is a difficult question of

personal jurisdiction or venue to a district where there are not such uncertainties serves the interest of justice.") (collecting cases). Litigating those claims in this Court would "obviate[] the need for the parties and the Court to expend limited resources on jurisdictional preliminaries." *Interlink Prods. Int'l*, 2020 WL 6707946, at *9.

If the Texas District Court finds that it does not have personal jurisdiction over the Non-Texas Plaintiffs' claims, there is a reasonable probability that they would ultimately end up litigating their claims in this Court. Although the Non-Texas Plaintiffs assert the same causes of action against the NJAG as DD and SAF, *see generally* N.J. Am. Compl.,[19] the Non-Texas Plaintiffs have emphasized, during another phase of this litigation, that their claims are distinct from the claims asserted by DD and SAF, because "they have a different publication history, different threat history, and different course of future conduct." *See* Appellants' Reply Br., Nos. 19-1729 & 19-3182, 2020 WL 1067470, at *10–11 & n.2 (3d Cir. Feb. 28, 2020). The Non-Texas Plaintiffs also maintain that "the injunction . . . they seek will necessarily be individualized and unique to their circumstances." *Id.* at *11. As such, it is likely that the Non-Texas Plaintiffs will litigate their claims in this Court should I transfer the Consolidated Action to Texas. And as explained previously, the efficiencies derived from litigating Plaintiffs' seven identical causes of action against the NJAG in one forum far outweigh any advantages of separately litigating DD's and SAF's claims against the NJAG in Texas. *See In re Amendt*, 169 F. App'x 93, 96 (3d Cir. 2006) ("Adjudicating almost identical issues in separate fora would waste judicial resources.").[20]

---

[19] The Non-Texas Plaintiffs do not assert claims for tortious interference with the Settlement Agreement or existing contracts, which DD and SAF have asserted.

[20] Plaintiffs also argue that litigating claims against the State Department in the same forum as those against the NJAG would allow for the Executive Branch to express its views concerning the meaning of federal statutes and regulations. *See* ECF No. 54 at 4. They do not, however, identify any particular issues that may require deference in this case, where most claims center on the constitutionality of New Jersey statutes. In any event, even if such issues arise, a federal court may permit a federal

Additional efficiencies flow from the Third Circuit's authority to certify questions of New Jersey state law to the Supreme Court of New Jersey, *see* N.J. Court Rules 2:12A-1, which "could interpret [N.J.S.A. 2C:39-9(*l*)(2)] to avoid, not force, a novel and difficult constitutional showdown." *Def. Distributed*, 30 F.4th at 439 (Higginson, J., dissenting). For example, Plaintiffs' claim under the Due Process Clause asserts a void-for-vagueness challenge based on alleged ambiguity as to the DFI files N.J.S.A. 2C:39-9(*l*)(2) covers. *See* Mot. for Inj. Pending Appeal at 17, No. 21-50327 (5th Cir. May 28, 2021). The Supreme Court of New Jersey could interpret N.J.S.A. 2C:39-9(*l*)(2) not to govern the files for which the statute allegedly creates ambiguity. By contrast, Plaintiffs do not contend that any complex issues of Texas state law may require certification to the Supreme Court of Texas.

(2)      Transfer of the Claims Asserted in The Texas Action

Plaintiffs' proposal that the Court transfer DD's and SAF's claims against the NJAG in the Texas action back to Texas, while staying the Non-Texas Plaintiffs' claims in the NJ action, would not prevent duplicative litigation. For the reasons stated *supra*, the Non-Texas Plaintiffs have expressed an intention to litigate their claims, which are distinct from those that DD and SAF assert, regardless of how DD and SAF proceed. Thus, there is no reason to expect that the Non-Texas Plaintiffs would abandon their claims in this Court following a decision in Texas.

Moreover, preclusion would not necessarily expedite review in this Court. If the final judgment in Texas dismisses DD's and SAF's claims against the NJAG, its decision would not likely

---

"agency to intervene if a party's claim or defense is based on . . . a statute or executive order administered by the . . . agency" or "any regulation, order, requirement, or agreement issued or made under the statute or executive order." Fed. R. Civ. P. 24(b)(2). Any efficiencies gained from avoiding the slim chance of intervention by the State Department in the Consolidated Action before this Court, or any potential deference to the State Department, do not outweigh the efficiencies gained from litigating Plaintiffs' claims in one forum, without the need to address jurisdictional predicates.

preclude the Non-Texas Plaintiffs' claims against the NJAG, here. Collateral estoppel only applies when "the party against whom the plea is asserted was a party or in privity with a party to the prior adjudication." *See Hitchens v. Cty. of Montgomery*, 98 F. App'x 106, 111 (3d Cir. 2004) (citing *Greenleaf v. Garlock, Inc.*, 174 F.3d 352, 357–58 (3d Cir.1999)). The Non-Texas Plaintiffs would not be parties to the action in Texas, and they likely would not be in "privity" with a party either. Privity generally exists "'only when the party is a virtual representative of the non-party, or when the non-party actually controls the litigation,'" and "[v]irtual representation . . . 'requires a relationship by which the party in the suit is the legally designated representative of the non-party.'" *Hitchens*, 98 F. App'x at 112–13 (quoting *Collins v. E.I. DuPont de Nemours & Co.*, 34 F.3d 172, 176–77 (3d Cir.1994)). Here, where the Non-Texas Plaintiffs' claims arise from distinct facts and they seek individualized injunctive relief, there is no reasonable inference that they would "invest[] [DD and SAF] 'with the authority to represent [them] in [the Texas] action.'" *Hitchens*, 98 F. App'x at 114 (quoting Restatement (Second) of Judgments § 41).[21]

Relatedly, Plaintiffs contend that the NJAG's earlier request for a stay of the NJ action pending resolution of DD's and SAF's motion to amend the judgment in the Western District of Texas, *see* N.J. ECF No. 20, judicially estops the NJAG from opposing Plaintiffs' request for a stay on this motion. *See* N.J. ECF No. 56 at 6. Judicial estoppel is an "equitable doctrine" that a court may invoke "at its discretion." *New Hampshire v. Maine*, 532 U.S. 742, 750 (2001) (quotations and citations omitted). The doctrine generally "prevents a party from prevailing . . . on an argument" in one case or phase of a case, "and then relying on a contradictory argument to prevail in another" case

---

[21] Even if the Texas District Court grants a final judgment in favor of DD and SAF, this Court would still need to resolve potentially difficult estoppel issues, as collateral estoppel only applies if "the identical issue was previously adjudicated," *see Jean Alexander Cosmetics, Inc. v. L'Oreal USA, Inc.*, 458 F.3d 244, 249 (3d Cir. 2006).

or phase thereof. *Carlyle Inv. Mgmt. LLC v. Moonmouth Co. SA*, 779 F.3d 214, 221 (3d Cir. 2015). "It does not prevent the assertion of all inconsistent positions but 'is designed to prevent litigants from playing fast and loose with the courts.'" *Thompson v. Real Estate Mortg. Network, Inc.*, 822 F. App'x 136, 137 (3d Cir. 2020) (quoting *Ryan Operations G.P. v. Santiam-Midwest Lumber Co.*, 81 F.3d 355, 358 (3d Cir. 1996)).

Plaintiffs' position is unpersuasive. In determining whether judicial estoppel applies, courts analyze whether a party adopted a position that is "clearly inconsistent with an earlier position." *New Hampshire*, 532 U.S. at 750–51; *Carlyle*, 779 F.3d at 221–22. No such inconsistency is apparent here. When the NJAG previously sought a stay in the NJ action, a separate case in which DD and SAF asserted nearly identical causes of action against the NJAG was then proceeding in the Texas action. *See* N.J. ECF No. 20. By contrast, in the current posture, all claims against the NJAG are now consolidated before this Court. *See* N.J. ECF No. 43. Opposing a stay that would *create* parallel litigation against the NJAG in two separate courts is consistent with requesting a stay on one action when parallel litigation in separate courts already exists. Thus, there is no basis to find that judicial estoppel is applicable here.

c)      Court Congestion

The relative level of court congestion, *Jumara*, 55 F.3d at 879, does not favor either forum. Neither party raises this issue nor submits any relevant data concerning congestion in either court. As other courts have recognized, ordinarily "'relative congestion of the respective courts' dockets is not a factor of great importance' on a motion to transfer." *Eastman v. First Data Corp.*, Civ. No. 10-4860, 2011 WL 1327707, at *5 (D.N.J. Apr. 5, 2011) (quoting *Kisko v. Penn. Cent. Transp. Co.*, 408 F. Supp. 984 (M.D. Pa. 1976)); *Interlink Prods. Int'l*, 2020 WL 6707946, at *9 (same).

d)      Local Interests

"[T]he local interest in deciding local controversies at home," *Jumara*, 55 F.3d at 879, weighs

decidedly against transferring this case to Texas, be it the Consolidated Action or only the claims asserted in the Texas action. Although the analysis largely overlaps with respect to these alternatives, I will also independently analyze each proposal.

Where plaintiffs seek "a ruling that would potentially impair" a "state regulatory scheme," particularly one that advances substantial interests such as firearms safety, the "local interest[s]" factor typically favors the state whose laws are being challenged. *See Interlink Prods. Int'l*, 2020 WL 6707946, at *10 (finding that the local interests factor favored transfer to California where the plaintiff challenged California regulations governing the efficiency of in-state appliances, which implicated the state's "substantial" interest in water conservation). Here, the claims against the NJAG all turn on actions taken to enforce New Jersey law or in connection with New Jersey's firearms regulations. Indeed, it is difficult to overstate New Jersey's interests in the constitutionality of a law enacted to prevent its citizens from manufacturing deadly weapons entirely outside of the state's regulatory regime. And the Third Circuit has recognized, albeit in a different context, that states have an "interest in deterring the manufacture of unsafe products within [their] borders." *Lacey v. Cessna Aircraft Co.*, 862 F.2d 38, 48 (3d Cir. 1988).[22]

This Court respectfully declines to follow the Fifth Circuit's conclusion that the local interest factor favors Texas as a forum. *See Def. Distributed*, 30 F.4th at 435–36. The Fifth Circuit reasoned that Texas's interests predominate because "[t]he [NJ]AG has 'projected himself across state lines and asserted a pseudo-national executive authority' in Texas by seeking 'to bar Defense Distributed from publishing its materials anywhere,' chilling its speech, and reducing 'Texans' access to [its] materials.'" *See id.* at 435 (quoting *Def. Distributed*, 971 F.3d at 492–95). Considerations including

---

[22] Although *Lacey* concerned a state's interests in regulating the products manufactured by a corporation domiciled within its borders, *see id.*, its logic applies with equal force to the circumstances at issue here, where a state law addresses unregulated manufacturing of firearms.

"the location of the injury, witnesses, . . . the [plaintiffs'] residence," and the "place of the alleged wrong" therefore ostensibly favored Texas. *See Def. Distributed*, 30 F.4th at 435 (citing *In re Volkswagen of America*, 545 F.3d 304, 317–18 (5th Cir. 2008); *Watson v. Fieldwood Energy Offshore, LLC*, 181 F. Supp. 3d 402, 412 (S.D. Tex. 2016)).

But in connection with Plaintiffs' request to transfer the entire Consolidated Action, the posture at issue here differs from that which the Fifth Circuit faced. Only DD's and SAF's claims were before the Fifth Circuit, and those claims turned primarily on the NJAG's actions directed at DD. By contrast, the Consolidated Action before this Court also includes the Non-Texas Plaintiffs, none of which is located in Texas, and whose claims against the NJAG derive primarily from actions his office directed at other states. The Non-Texas Plaintiffs also premise their claims on an inability to publish DFI acquired from providers other than DD, which have no alleged connection to Texas. *See* N.J. Am. Compl. ¶ 76 (noting that CodeIsFreeSpeech.com stopped publishing DD's files "and files like them" in response to the NJAG's actions); *id.* ¶¶ 91, 94 (indicating that the purported takedown demand directed at CodeIsFreeSpeech.com covered DFI that did not derive from DD). Thus, Texas's interest in the Consolidated Action falls well below any interest it had when DD and SAF were the only plaintiffs.

Even focusing only on DD's and SAF's claims, the Fifth Circuit both overstates Texas's interests and downplays New Jersey's. According to the Fifth Circuit, Texas's interests predominate in large part because the NJAG's actions against DD "reduc[ed] 'Texans' access to [its] materials.'" *See Def. Distributed*, 30 F.4th at 435 (citing *Def. Distributed*, 971 F.3d at 492–95). Yet, the Fifth Circuit does not account for the fact that DD seeks to publish DFI nationwide. *See, e.g.*, N.J. Am. Compl. ¶ 87 (alleging that the NJAG's actions prevented DD from making its DFI available for "download by the public" and from participating in "national" media campaigns); *Washington*, 420 F. Supp. 3d at 1138 & n.1 (noting that 20 state attorneys general filed suit to enjoin DD's settlement

agreement with the State Department). Accepting the Fifth Circuit's assumption that the NJAG sought to prosecute publications outside New Jersey, which is hardly a settled interpretation,[23] nothing alleged in the various complaints suggests that the NJAG's actions uniquely restricted Texans' access to DD's materials as compared to citizens in other states, including New Jersey. In fact, the only plaintiff that brought suit in Texas based on its inability to access DD's materials— SAF—is based in Washington State, and SAF alleges that some of its members who seek to access DFI actually reside in New Jersey. *Compare* Texas SAC ¶¶ 10–12, *with* N.J. Am. Compl. ¶¶ 11–12. In any event, there is no basis to conclude that Texas citizens represent a disproportionate percentage of SAF's members—let alone the broader set of individuals whose access to DD's materials was allegedly restricted by the NJAG —which would somehow tip the scale in favor of transferring this case to Texas.

The Fifth Circuit also significantly understates New Jersey's interest in this litigation, which undoubtedly challenges New Jersey law. According to the Fifth Circuit, New Jersey's "interest is considerably diminished because the Texas court's ruling will have no direct effect on New Jersey's citizens." *Def. Distributed*, 30 F.4th at 435. That is true, says the Fifth Circuit, because a declaration from the Texas District Court that N.J.S.A. 2C:39-9(*l*)(2) is unconstitutional would only preclude the NJAG from enforcing the statute against DD and SAF, and it would not prevent the NJAG "from enforcing the law in New Jersey." *Id.* But that is not true, since Plaintiffs challenge N.J.S.A. 2C:39-9(*l*)(2) both as-applied and facially. *See* N.J. Am. Compl. ¶¶ 129, 137, 145, 155, 165, 172, 179; Texas SAC ¶¶ 265, 273, 281, 291, 301, 308, 315. A decision that N.J.S.A. 2C:39-9(*l*)(2) is facially unconstitutional would prevent the NJAG from enforcing the statute writ large. *See Bruni v. City of*

---

[23] As the dissent emphasizes, the NJAG "express[ly] and emphatic[ally]" denied, "twice to [the Fifth Circuit] panel, that it seeks to enforce New Jersey law in Texas." *Def. Distributed*, 30 F.4th at 440 (Higginson, J., dissenting).

*Pittsburgh*, 824 F.3d 353, 362 (3d Cir. 2016) ("A successful as-applied challenge bars a law's enforcement against a particular plaintiff, whereas a successful facial challenge results in complete invalidation of a law.") (quotations and citations omitted). Moreover, the Fifth Circuit's conclusion that as-applied relief would not directly affect New Jersey citizens does not necessarily follow. Plaintiffs do not limit their requested declaratory or injunctive relief to the NJAG's enforcement actions outside New Jersey. *See* N.J. Am. Compl. ¶¶ 183–88. Hence, under the Fifth Circuit's reasoning, the Texas District Court could conclude that enforcing N.J.S.A. 2C:39-9(*l*)(2) against DD's publications in Texas violates certain constitutional rights, but somehow enforcing the same statute against DD's publications in New Jersey could simultaneously pass constitutional muster. It does not cite to any authority for that remarkable proposition, and I do not find it persuasive. Rather, plainly, the as-applied relief requested by Plaintiffs would prevent the NJAG from enforcing the statute against DD and SAF in New Jersey, which would surely affect New Jersey citizens.

For these reasons, I find that the local interests factor substantially favors New Jersey as a forum.

e)      Familiarity with Applicable Law

The "familiarity of the trial judge with the applicable state law," *Jumara*, 55 F.3d at 879–80, does not heavily favor either forum, and, if anything, it favors New Jersey. These cases primarily involve causes of action arising under federal law, with which "all federal courts are presumed to be equally 'familiar.'" *Kalawa v. United States*, Civ. No. 19-16089, 2020 WL 3603205, at *6 (D.N.J. July 2, 2020) (quoting *Liggett Grp. Inc. v. R.J. Reynolds Tobacco Co.*, 102 F. Supp. 2d 518, 537 (D.N.J. 2000)). Plaintiffs assert two tortious interference claims against the NJAG that could require application of Texas law. *See* Texas SAC. But as explained *supra*, Plaintiffs do not identify any complex issues concerning tortious interference that may arise, and in any event, sovereign immunity would likely bar the tortious interference claims. *See King v. Christie*, 981 F. Supp. 2d 296, 310 n.12

(D.N.J. 2013) (citing *Pennhurst State Sch. & Hosp. v. Halderman*, 465 U.S. 89, 104–06 (1984)) (recognizing that a plaintiff suing in federal court "may not bring state law claims . . . against the State," including state officials, "regardless [of] the type of relief it seeks"). On the other hand, authoritative interpretation of N.J.S.A. 2C:39-9(*l*)(2) is most likely to be relevant to the constitutional claims. Because this Court has familiarity and experience with interpreting New Jersey law, this factor weighs slightly in favor of denying transfer.[24]

Given the considerations analyzed herein, I find that the public interest factors weigh against transferring the Consolidated Action to Texas or transferring the claims asserted in the Texas action.

### C.    Comity and Law-of-the-Case Doctrine

Finally, Plaintiffs maintain that comity or law-of-the-case doctrine "dictate that this Court should defer to the Fifth Circuit's decision and accept the Western District of Texas's retransfer request *without* second-guessing or relitigating the venue decision at issue." ECF No. 54 at 1. Neither doctrine dictates transfer in this case.

The Fifth Circuit's decision does not require this Court to transfer the Consolidated Action or DD's and SAF's claims against the NJAG. The Fifth Circuit ordered the Texas District Court to "*[r]equest* the District of New Jersey to return the transferred case to the Western District of Texas." *See Def. Distributed*, 30 F.4th at 437 (emphasis added). In doing so, the Fifth Circuit acknowledged that it "lacks power to order" this Court to "return . . . the case," *see id.* at 423, implicitly recognizing that this Court would "seriously consider" the Fifth Circuit's request while also conducting "its own assessment of whether litigation resolving New Jersey law should be decided in Texas." *See id.* at 440 (Higginson, J., dissenting).[25] This Court has duly considered the Fifth Circuit's Opinion. After

---

[24] The parties do not raise any issues concerning "the public policies of the fora," *Jumara*, 55 F.3d at 879, that would favor either forum.

[25] Notably, Plaintiffs do not cite a single case in which a district court requested another district court

exercising my independent judgment, I conclude that transferring the Consolidated Action, or DD's and SAF's claims in the Texas action, is neither appropriate nor warranted.

The cases applying the comity doctrine cited by Plaintiffs do not "dictate that this Court should defer to the Fifth Circuit[] . . . *without* second-guessing or relitigating" its decision. In the cases cited by Plaintiffs, courts invoked comity to prevent one district court from granting relief that would have conflicted with another district court's prior binding order. *See, e.g.*, *Feller v. Brock*, 802 F.2d 722, 724, 727–28 (4th Cir. 1986) (invoking principles underlying comity to reverse a preliminary injunction order issued by one district court that directly conflicted with a prior permanent injunction order issued by another district court); *U.S. for Use & Benefit of Mosher Steel Co. v. Fluor Corp.*, 436 F.2d 383, 385 (2d Cir. 1970) (invoking comity to affirm a district court's order transferring proceedings to another district court that had previously issued a binding order on "virtually the same" issue raised in the later-filed litigation); *AXA Belgium, S.A. v. Century Indem. Co.*, Civ. No. 09-9703, 2010 WL 199709, at *3 (S.D.N.Y. Jan. 11, 2010) (invoking comity to transfer to one district court a motion to compel arbitration on issues that could have undermined that court's ability to enforce a binding arbitral award involving the same parties that it had entered previously); *Exxon Corp. v. U.S. Dep't of Energy*, 594 F. Supp. 84, 89–90 (D. Del. 1984) (invoking comity to deny relief that another district court's outstanding injunction foreclosed); *Common Cause v. Judicial Ethics Comm.*, 473 F. Supp. 1251, 1253–54 (D.D.C. 1979) (invoking comity to decline a request for disclosure of certain financial documents, an action which another district court's prior outstanding order prohibited under a stay pending appeal of a related jurisdictional issue).

---

to retransfer an action, let alone a case where such a request was granted. This Court is not aware of any such case, either.  Tellingly, in the Fifth Circuit, neither DD and SAF "nor the majority opinion cite[d] any mandamus case, *ever*, reversing a grant of a joint severance and transfer motion." *See Def. Distributed*, 30 F.4th at 438 (Higginson, J., dissenting)(emphasis added).

Here, there is no prior binding order with which this Court's decision to deny transfer would conflict. A district court issued a non-binding request that this Court transfer the Texas action back to Texas. *See Def. Distributed*, 30 F.4th at 423. Contrary to Plaintiffs' position, denying retransfer would not constitute "a serious interference with the jurisdiction [or] outstanding injunction of . . . a court of coordinate standing," nor would it constitute a "'usurpation'" of a court's "continuing power to supervise and modify its injunctions." *Exxon Corp.*, 594 F. Supp. at 89 (quoting *Mann Manufacturing Inc. v. Hortex, Inc.*, 439 F.2d 403, 408 (5th Cir. 1971)); N.J. ECF No. 54 at 2. Plaintiffs do not cite to any authority supporting a different outcome under law-of-the-case doctrine.

Furthermore, as Plaintiffs emphasize, "[l]aw-of-the-case policies apply with even greater force to transfer decisions" because "transferee courts that feel entirely free to revisit transfer decisions of a coordinate court threaten to send litigants into a vicious circle of litigation." 18B Wright & Miller, Federal Practice & Procedure § 4478.4 (3d ed. West 2022); N.J. ECF No. 54 at 3. But "vicious circle[s]" arise where a "transferee court" rejects a transferor court's order and transfers the case back, creating the possibility of endless retransfers between the two courts. *See Christianson v. Colt Indus. Operating Corp.*, 486 U.S. 800, 806–07, 816–17 (1988) (discussing "vicious circle" in context where one court of appeals ordered the transfer of a case to another circuit, the court of appeals for which in turn transferred the case back). There is no similar risk of a "vicious circle" where, as here, the Texas District Court issued a non-binding request for retransfer, which I decline, allowing the litigation to proceed in this forum.

Accordingly, I find that neither comity nor law-of-the-case doctrine dictates transfer of Consolidated Action or severance and retransfer of the Texas action to the Western District of Texas.

## IV.   CONCLUSION

In essence, Plaintiffs' transfer motion seeks to turn back the clock to a time before they filed the NJ action in this District.  Indeed, since DD and SAF appealed to the Fifth Circuit the Texas

District Court's decision to sever and transfer the Texas action, a separate NJ action was filed in this Court and a consolidation of that case with the Texas action also occurred, which resulted in additional claims and the inclusion of other plaintiffs.  Accordingly, the considerations for transfer are procedurally and factually distinct from those considered by the Fifth Circuit.  Having conducted independent analyses of all the *Jumara* factors, as I must, for the reasons set forth herein, the motion to transfer is **DENIED**.

An appropriate form of Order is filed herewith.

Date: July 27, 2022                                                 /s/ Freda L. Wolfson
                                                                             Hon. Freda L. Wolfson
                                                                             U.S. Chief District Judge