***NOT FOR PUBLICATION***

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

DEFENSE DISTRIBUTED *et al.*,

                      Plaintiffs,

    v.

MATTHEW J. PLATKIN, Attorney General
of the State of New Jersey,

                      Defendant.

Civ. Action No. 19-04753 (FLW)

OPINION

**WOLFSON, Chief Judge:**

This matter comes before the Court on a motion for reconsideration of this Court's July 27, 2022 decision (the "July 27 Opinion") denying transfer of this case to the Western District of Texas, and on a second motion to transfer based on a concurrence to a September 16, 2022 Order of the Fifth Circuit. The Attorney General of New Jersey opposes the motions. For the reasons set forth herein, the motions are **DENIED**.

**I.**     **FACTUAL BACKGROUND AND PROCEDURAL HISTORY**

The complex factual and procedural background of this case is set forth in detail in the July 27 Opinion. *See Defense Distributed v. Platkin*, No. 19-04753, 2022 WL 2967304, at *1–4 (D.N.J. July 27, 2022). To briefly summarize, until recently, this consolidated action had been comprised of two cases, Civ. No. 21-09867 (the "Texas action") and Civ. No. 19-04753 (the "NJ action"), both of which involve constitutional challenges to enforcement actions that the Attorney General of New Jersey (the "NJAG" or "Defendant") took, under New Jersey law, against entities that seek to disseminate and consume information used to manufacture 3D-printed firearms. Plaintiff Defense

1

Distributed ("DD"), a private corporation that produces and disseminates digital firearms information ("DFI") related to manufacturing firearms using a 3D printer, and Plaintiff Second Amendment Foundation ("SAF"), a nonprofit organization which advocates for the right to keep and bear arms, initiated the Texas action against the NJAG in the Western District of Texas (the "Texas District Court"), alleging that the NJAG's efforts to discontinue DD's publication of DFI in New Jersey were violative of the U.S. Constitution and certain federal statutes. *See id.* Following the Texas District Court's dismissal of the Texas action for lack of personal jurisdiction, rather than waiting for the outcome of their appeal to the Fifth Circuit, DD and SAF filed the NJ action in the District of New Jersey, alleging similar claims against the NJAG and adding five additional plaintiffs, which this Court refers to as the "Non-Texas Plaintiffs."[1] *See id.* When the Fifth Circuit reversed the Texas District Court's dismissal of the Texas action on jurisdictional grounds, DD and SAF amended their complaint in the Texas action, adding claims against the NJAG and the U.S. State Department. *See id.* The NJAG subsequently moved to sever and transfer the claims against him to the District of New Jersey, which the Texas District Court granted. *See id.* (citing *Defense Distributed v. Grewal*, Civ. No. 18-637, 2021 WL 1614328 (W.D. Tex. Apr. 19, 2021)). Once the Texas action was transferred to the District of New Jersey, the Texas action and the NJ action were consolidated upon the unopposed motion of the NJAG. *See id.*

DD and SAF, however, appealed the transfer decision to the Fifth Circuit, which ultimately held that the Texas District Court erred in severing and transferring the claims against the NJAG to the District of New Jersey. *See id.* (citing *Defense Distributed v. Bruck*, 30 F.4th 414 (5th Cir. 2022)).

---

[1] The Non-Texas Plaintiffs are: (1) The Firearms Policy Coalition, Inc.; (2) the Firearms Policy Foundation; (3) The Calguns Foundation; (4) the California Association of Federal Firearms Licensees, Inc.; and (5) Brandon Combs, who is the founder and president of Firearms Policy Coalition, Inc., the founder and president of Firearms Policy Foundation, the secretary and executive director of The Calguns Foundation, and the founder and executive vice president of California Association of Federal Firearms Licensees, Inc. *See id.*

A divided Fifth Circuit panel issued a writ of mandamus, vacating the Texas District Court's transfer order and mandating the Texas District Court to request that the District of New Jersey return the transferred case to the Texas District Court—extraordinary relief that has never been provided in such context. *See id.* Accordingly, the Texas District Court issued an order vacating its severance and transfer order and requested that this Court send the matter back to Texas. *See id.* Because the Fifth Circuit's mandate does not bind this Court, I requested the parties to submit briefing on the propriety of transfer according to Third Circuit law. *See id.* Following briefing, I issued my July 27 Opinion, which denied "requests to transfer the entire Consolidated Action to Texas or, in the alternative, sever and transfer the claims asserted in the Texas action." *Id.* at *6.

Perhaps to gain a tactical advantage, after issuance of the July 27 Opinion, that same day, DD, SAF, and the Non-Texas Plaintiffs voluntarily dismissed their claims originally asserted in the NJ action pursuant to Fed. R. Civ. P. 41(a)(1)(A)(i). ECF No. 60. DD and SAF ("Plaintiffs") then filed a motion for reconsideration of the July 27 Opinion, emphasizing that, due to the voluntary dismissal, they are the only remaining plaintiffs in this case, which now consists solely of the claims originally asserted in the Texas action. ECF No. 61. The NJAG opposed the motion on August 23, 2022. ECF No. 63.

Meanwhile, even though their claims have been transferred to New Jersey, Plaintiffs have continued to litigate their claims against the NJAG in the Texas District Court and the Fifth Circuit. On July 22, 2022, the Texas District Court dismissed Plaintiff's motion for a preliminary injunction against the NJAG with respect to its efforts to preclude distribution of DFI under New Jersey law, reasoning that "limits on its jurisdiction" prevented consideration of claims against the NJAG, unless

this case were returned to Texas.[2] *See Defense Distributed v. U.S. Dep't of State*, No. 18-637 (W.D. Tex.), ECF No. 176. Plaintiffs appealed that decision, which remains pending before the Fifth Circuit. *See Defense Distributed v. Platkin*, No. 22-50669 (5th Cir.).

Relevant here, on September 16, 2022, the same Fifth Circuit panel that issued the writ of mandamus, further issued an order expediting Plaintiffs' appeal as to the preliminary injunction request and, separately, addressed the transfer issue once again. *See Defense Distributed v. Platkin*, 48 F.4th 607 (5th Cir. 2022) (the "September 16 Order"). Specifically, in a concurrence to the September 16 Order, Hon. James C. Ho and Hon. Jennifer Walker Elrod "respectfully ask[ed] the District of New Jersey to return the case to the Western District of Texas as requested, and thereby join its sister district courts nationwide in this act of inter-district comity, mutual respect, and courtesy." *Id.* Subsequently, on September 21, 2022, Plaintiffs filed a second motion to transfer, citing the concurrence to the Fifth Circuit's September 16 Order. ECF No. 64. The NJAG opposed the motion on September 23, 2022. ECF No. 65.

## II. DISCUSSION

The Court addresses both Plaintiffs' motion for reconsideration and second motion to transfer in turn. Simply put, neither motion demonstrates a sufficient factual or legal basis warranting the transfer of this action to the Texas District Court.

### A. Motion for Reconsideration

Federal Rule of Civil Procedure 59(e) and Local Civil Rule 7.1 govern motions for reconsideration, which are considered "extremely limited procedural vehicle[s]." *Resorts Int'l v. Greate Bay Hotel & Casino, Inc.*, 830 F. Supp. 826, 831 (D.N.J. 1992). Indeed, requests for

---

[2] Plaintiffs sought a preliminary injunction in Texas despite there being no claims against the NJAG pending in Texas such that any court there would have a basis to issue an injunction. Indeed, it bears noting that Plaintiffs could, if they so choose, request a preliminary injunction in this Court, where their suit has been pending since April 2021 and proper jurisdiction exists. Yet, they have not.

4

reconsideration "are not to be used as an opportunity to relitigate the case; rather, they may be used only to correct manifest errors of law or fact or to present newly discovered evidence." *Blystone v. Horn*, 664 F.3d 397, 415 (3d Cir. 2011) (citing *Howard Hess Dental Labs., Inc. v. Dentsply Int'l Inc.*, 602 F.3d 237, 251 (3d Cir. 2010)); *see also Church & Dwight Co., Inc. v. Abbott Labs.*, 545 F. Supp. 2d 447, 450 (D.N.J. 2008) ("The Court will grant a motion for reconsideration only where its prior decision has overlooked a factual or legal issue that may alter the disposition of the matter."). Pursuant to Local Civil Rule 7.1(i), a litigant moving for reconsideration must "set[ ] forth concisely the matter or controlling decisions which the party believes the Judge or Magistrate Judge has overlooked." L. Civ. R. 7.1(i).  In doing so, the moving party must demonstrate at least one of the following grounds: (1) "an intervening change in the controlling law"; (2) "the availability of new evidence that was not available" prior to entry of judgment; or (3) "the need to correct a clear error of law or fact or to prevent manifest injustice." *See Blystone*, 664 F.3d at 415.  Importantly, "[a] party seeking reconsideration must show more than a disagreement with the Court's decision, and 'recapitulation of the cases and arguments considered by the court before rendering its original decision fails to carry the moving party's burden.'" *G-69 v. Degnan*, 748 F. Supp. 274, 275 (D.N.J. 1990) (citations omitted).  "A motion that merely raises a disagreement with the Court's initial decision is not an appropriate reconsideration motion, but should be dealt with in the normal appellate process." *Church & Dwight Co.*, 545 F. Supp. 2d at 450.

Here, Plaintiffs' motion, even viewed in the most favorable light, seeks reconsideration based on procedural gamesmanship, but it ultimately fails to raise any grounds for reconsideration beyond mere disagreement with this Court's decision.  Indeed, Plaintiffs' motion is based entirely on their voluntary dismissal of the claims originally asserted in the NJ action.  However, it is clear that the dismissal was prompted by the Court's adverse July 27 Opinion, as an effort to undercut the Court's stated concern regarding duplicative litigation. *See Defense Distributed*, 2022 WL 2967304, at *11–

5

13. Plaintiffs argue that the July 27 Opinion relies on the premise that the Texas action and NJ action would be prosecuted simultaneously in different courts if the claims in the Texas action were transferred back to the Texas District Court. *See* ECF No. 61-1 at 1. Notwithstanding the fact that this aspect of the Court's analysis hardly amounts to the "decision's lynchpin," Plaintiffs now assert that voluntary dismissal of the claims originally brought in the NJ action "puts the issue beyond doubt by establishing as a matter of law that simultaneous litigation cannot occur." *Id.* at 2. By dismissing the Non-Texas Plaintiffs, Plaintiffs acknowledge that the issue of duplicative litigation was a valid concern at the time of the Court's decision. Yet, confusingly, Plaintiffs posit that the Court was "demonstrably wrong" when ruling on this issue. The fact remains that the NJ action had been pending in the District of New Jersey for over three years and had been consolidated with the Texas action since June 2021. *See* ECF No. 43. Plaintiffs' calculated decision in dismissing the claims asserted in the NJ action critically undermines their motion as the dismissal should have been executed, and their "argument . . . could have been raised[,] prior to the entry" of the adverse July 27 Opinion. *See Boretsky v. Governor of N.J.*, 433 F. App'x 73, 78 (3d Cir. 2011). This after-the-fact dismissal does not warrant the Court to reconsider.

In any event, the rationale underpinning the Court's July 27 Opinion holds firm regardless of the voluntary dismissal. First, although Plaintiffs argue that the dismissal now precludes duplicative litigation, the voluntary dismissal "without prejudice," ECF No. 60 at 2, does not represent the Non-Texas Plaintiffs "abandon[ing] their claims." *See Defense Distributed*, 2022 WL 2967304, at *12. As this Court previously recognized, "the Non-Texas Plaintiffs have expressed an intention to litigate their claims, which are distinct from those that DD and SAF assert, regardless of how DD and SAF proceed," and nothing prevents them from re-filing in this Court. *See id.* In this way, voluntary dismissal without prejudice of the Non-Texas Plaintiffs' claims is not materially different from "Plaintiffs' [previous] proposal that the Court transfer DD's and SAF's claims against the NJAG in

6

the Texas action back to Texas, while staying the Non-Texas Plaintiffs' claims in the NJ action"—a proposition this Court has already found "would not prevent duplicative litigation." *See id.* Second, and more importantly, the dismissal of those claims does not impact the various other independent reasons enumerated in the July 27 Opinion for denying Plaintiffs' transfer motion. *See id.* at *10–16. Indeed, even if only the claims originally asserted in the Texas action remain, transfer is not appropriate. While there is no need to rehash this Court's analysis of Plaintiffs' transfer motion under *Jumara v. State Farm Insurance Co.*, 55 F.3d 873 (3d Cir. 1995), those factors, such as this Court's familiarity with New Jersey law, New Jersey's interest in the litigation, and lingering disputes regarding personal jurisdiction over the NJAG in the Texas District Court, continue to weigh heavily against transfer. *See id.* at *10, 13–16. Notably, Plaintiffs' motion fails to offer any arguments that the Court's analysis, pursuant to *Jumara*, is somehow plagued by "a clear error of fact or law." *See Blystone*, 664 F.3d at 415. Accordingly, because Plaintiffs fail to demonstrate grounds for reconsideration of this Court's July 27 Opinion, Plaintiffs' motion to reconsider is denied.

      **B.**      **Second Motion to Transfer**

Plaintiffs' second motion to transfer rests entirely on the concurrence to the September 16 Order of the Fifth Circuit—quoting the concurrence in full (the "Concurrence"). ECF No. 64-1 at 3–4. In sum, the two concurring judges of the Fifth Circuit panel write that there is "no substantive reason . . . why this case should . . . proceed in New Jersey rather than Texas," and "respectfully ask the District of New Jersey to honor" the panel's prior decision in *Defense Distributed v. Bruck* "and grant the request to return the case back to the Western District of Texas—consistent with the judiciary's longstanding tradition of comity, both within and across the circuits, as repeatedly demonstrated by district courts nationwide." *Defense Distributed*, 48 F.4th at 607. Notwithstanding the concurring judges' invitation, the Court is unable to find any valid legal justification warranting transfer based on the rationale expressed in the Concurrence or elsewhere in the record. Indeed, as

7

noted *supra*, my reasons for the decision in the July 27 Opinion remain valid. Because this issue has garnered the continued attention of at least two Fifth Circuit judges, I will fully address the Concurrence's concerns.

First, the circumstances giving rise to the transfer dispute are unprecedented. As recognized by Judge Higginson in his dissent to the Fifth Circuit's mandamus, neither the litigants "nor the majority opinion cites any mandamus case, ever, reversing a grant of a joint severance and transfer motion." *See Bruck*, 30 F.4th at 438 (Higginson, J., dissenting). There is good reason why the Fifth Circuit's mandamus is an isolated outlier, particularly as "once a transferor court sends the case file to the transferee court, 'the transferor court—and the appellate court that has jurisdiction over it—lose all jurisdiction over the case and may not proceed further with regard to it.'" *See Ricketts v. Att'y Gen.*, 897 F.3d 491, 494 (3d Cir. 2018) (quoting *White v. ABCO Eng'g Corp.*, 199 F.3d 140, 143 n.4 (3d Cir. 1999)); *see also In re Red Barn Motors, Inc.*, 794 F.3d 481, 484 (5th Cir. 2015) (stating that "transfer to another circuit removes the case from our jurisdiction" and "using mandamus to undo a completed inter-circuit transfer risks provoking a possible conflict between the Circuits") (internal quotations and citation omitted). As such, the Fifth Circuit's mandamus to vacate the severance and transfer and "[r]equest the District of New Jersey to return the transferred case to the Western District of Texas," and the subsequent order of the Texas District Court, were just that, requests, which do not bind this Court. *Bruck*, 30 F.4th at 436–37. Tellingly, the Fifth Circuit panel repeatedly acknowledged this, finding that it "lack[ed] power to order a return of the case to our circuit" and that this Court is one "over which [the Fifth Circuit] exercises no control." *Id.* at 423. Thus, as to the concurring judges' view that they are "unaware of any district court anywhere in the nation to have ever denied such a request," *see Defense Distributed*, 48 F.4th at 608, I am compelled to note that my decision applied Third Circuit law, and that the Fifth Circuit's request may have been improvidently made. In other words, the purported lack of precedent with respect to this Court's

8

refusal to transfer is preceded by the lack of precedent as to the mandamus vacating the original severance and transfer order when jurisdiction had been divested. *See, e.g.*, *In re United States*, 273 F.3d 380, 383 (3d Cir. 2001) ("This is not to say that an appellate court indefinitely maintains jurisdiction for purposes of evaluating the effectiveness of a transfer. Obviously, once the transferee court proceeds with the transferred case, the decision as to the propriety of transfer is to be made in the transferee court."); *In re Nine Mile Ltd.*, 692 F.2d 56, 57 (8th Cir. 1982) (following transfer out-of-circuit "[n]either we nor the district court could reconsider the transfer order at that time" because "transfer of the case file deprived the courts in this circuit of jurisdiction").

Second, given the nonbinding nature of the Fifth Circuit's mandamus and the Texas District Court's transfer request, principles of comity do not weigh on this Court's transfer decision. *See Defense Distributed*, 2022 WL 2967304, at *16–17 (explaining that "courts invoke[] comity to prevent one district court from granting relief that would have conflicted with another district court's prior binding order" and "there is no prior binding order with which this Court's decision to deny transfer would conflict"). Plaintiffs appear to suggest that, in light of the Concurrence, comity somehow requires that this Court return the case to Texas, despite my independent conclusion that transfer would be inappropriate under Third Circuit law. But comity in no way requires that I substitute the analysis of the Fifth Circuit for my own. As a matter of inter-circuit courtesy, and consistent with this Court's respect for the decisions of other circuits, this Court "duly considered the Fifth Circuit's Opinion" granting mandamus. *See id.* at *16. And, as a district court within the geographic jurisdiction of the Third Circuit, this Court independently assessed the factors enumerated in *Jumara*, concluding that transfer is "neither appropriate nor warranted." *See id* at *6–16. While Plaintiffs and the Concurrence may not agree with that decision, this Court is not obligated to apply nonbinding out-of-circuit law in this case, and the doctrine of comity is not a valid means to achieve such a result. Indeed, the consistent use of language such as "request" and "ask" in the Concurrence

9

represents a continued acknowledgment of the nonbinding effect of Fifth Circuit law on this Court. *See Defense Distributed*, 48 F.4th at 607–08.  For the same reason, law-of-the-case principles do not mandate transfer.  *See Defense Distributed*, 2022 WL 2967304, at *17.

Finally, none of the cases cited in the Concurrence, upon which Plaintiffs exclusively rely, supports transfer here.  The Concurrence cites *In re United States*, 273 F.3d 380 (3d Cir. 2001) for the proposition that federal courts, in the Third Circuit and elsewhere, typically honor out-of-circuit transfer requests.  *See Defense Distributed*, 48 F.4th at 607.  But, in that case, the Third Circuit expressly instructs that "[o]nce the transferee proceeds with the transferred case, the decision as to the propriety of transfer is to be made in the transferee court."  *In re United States*, 273 F.3d at 384.  As the transferee court, this Court "proceed[ed] with the transferred case" by consolidating the Texas action and the NJ action without opposition from Plaintiffs.  *See* ECF No. 43.  Deciding the propriety of the transfer was thus well within the purview of this Court under Third Circuit law.  *See In re United States*, 273 F.3d at 384.

The Concurrence also cites to cases, relied upon by Plaintiffs here, in which the transferee court exercised its own discretion to return a case to the transferor court—a materially and procedurally distinct scenario from where, as here, the transferee court proceeded with the transferred case and independently found that re-transfer would be inappropriate.  *Cf. United States v. Petty*, No. 22-cr-49, 2022 WL 1590609, at *2 (W.D.N.Y. May 19, 2022) ("Under the unique circumstances of this case, this Court finds that it has the authority to transfer the case back . . . and that it should exercise its discretion to do just that."); *Herman v. Cataphora Inc.*, No. 12-04965, 2013 WL 275960, at *2 (N.D. Cal. Jan. 24, 2013) (granting transfer back to transferor court in "extraordinary circumstance" where "[a] grave miscarriage of justice would result if an administrative glitch were to deprive the Plaintiffs of an opportunity to seek appellate review in the transferor circuit").  Nor does Plaintiffs' motion find support in cases where the transferee court stayed its proceedings

10

pending adjudication of a reconsideration motion by the transferor court based on a "stipulation of the parties," *see Tlapanco v. Elges*, No. 15-cv-2852, 2017 WL 4329789, at *3 (S.D.N.Y. Sept. 14, 2017), or in which the transferee court re-transferred the case because the transferor court "made the transfer in error" and "due to a clerical error, the case was physically forwarded too quickly," *see CCA Glob. Partners, Inc. v. Yates Carpet, Inc.*, No. 05-CV-221, 2005 WL 8159381, *2 (N.D. Tex. Dec. 22, 2005). Plainly, those circumstances did not occur here. Even in cases where the transferee returned a case to the transferor court following the request of the corresponding appellate court, re-transfer was entirely discretionary, and the requests, acknowledging jurisdictional limitations, did not at the same time purport to vacate the transferor court's original transfer order. *Cf. In re Nine Mile Ltd.*, 692 F.2d at 57–58 (transferee court, exercising discretion, returned case to transferor court in order to confer jurisdiction "so that the district court could properly reconsider its transfer order, with review in this Court if necessary"); *Fine v. McGuire*, 433 F.2d 499, 500 n.1 (D.C. Cir. 1970) (transferee court, exercising discretion, "return[ed] the file in the District Court action to this jurisdiction to permit orderly consideration" of mandamus challenge to original transfer). In short, the authority cited by Plaintiffs and the Concurrence provides no indication that the transferee court, faced with a request to return a case to the transferor court, is compelled to do so because of the request itself, comity, or otherwise, particularly when doing so would be contrary to the analysis and findings of the transferee court.

This Court has issued a detailed opinion setting forth the reasons why transfer back to the Texas District Court is unwarranted. *See Defense Distributed*, 2022 WL 2967304, at *6–17. Any further disagreement with that decision "should be dealt with in the normal appellate process," *Church & Dwight Co.*, 545 F. Supp. 2d at 450, in the circuit with jurisdiction over the case—the Third Circuit. *See Ricketts*, 897 F.3d at 494.

11

## III.  CONCLUSION

For the reasons set forth above, Plaintiffs' motion for reconsideration and second motion to transfer are **DENIED**.  The parties are directed to proceed with the litigation without additional delay, including in responding to Plaintiffs' Second Amended Complaint. An appropriate Order shall follow.


Date: October 25, 2022                                              /s/ Freda L. Wolfson
                                                                                    Hon. Freda L. Wolfson
                                                                                    U.S. Chief District Judge

12