

**State of New Jersey**
OFFICE OF THE ATTORNEY GENERAL
DEPARTMENT OF LAW AND PUBLIC SAFETY
PO BOX 080
TRENTON, NJ 08625-0080

PHILIP D. MURPHY
*Governor*

SHEILA Y. OLIVER
*Lt. Governor*

MATTHEW J. PLATKIN
*Attorney General*

February 7, 2023

Hon. Michael A. Shipp, U.S.D.J.
United States District Court, District of New Jersey
Clarkson S. Fisher Building & U.S. Courthouse
402 East State St.
Trenton, NJ 08608

    **Re:** ***Defense Distributed, et al. v. Matthew J. Platkin*,**
          **Civil Action Nos. 19-4753 & 21-9867 (Consolidated)**

Dear Judge Shipp:

The Attorney General ("NJAG") respectfully submits this letter brief in opposition to Plaintiffs' Motion to Transfer or Stay. Plaintiffs' motion should be denied. This is Plaintiffs' second motion to reconsider this Court's July 27, 2022 decision denying transfer of this action to the Western District of Texas. Their request is both procedurally improper and without merit. Instead, this Court should proceed to adjudicate the NJAG's fully-briefed and pending motion to dismiss.

## BACKGROUND

By way of brief background, and as Judge Wolfson explained in her prior orders denying transfer, this case involves Plaintiff Defense Distributed's efforts to distribute



computer files that "allow virtually anyone with access to a 3D printer"—even terrorists, felons, and domestic abusers—to print fully functional firearms. *Defense Distributed v. U.S. Dep't of State*, 838 F.3d 451, 455 (5th Cir. 2016). *See* No. 19-4753, ECF 58 at 1-2 (Judge Wolfson's opinion denying motion to transfer) ("Transfer Op."); *see also* ECF 69-1 at 1-7 (NJAG's Motion to Dismiss) ("NJ MTD") (detailing relevant background). New Jersey sought to prevent the distribution of such printable gun files within its borders. Among other things, the State enacted legislation in 2018 that prohibits distribution, to a person in New Jersey who is not a licensed manufacturer, of code that may be used to program a 3D printer to produce a firearm. N.J. Stat. Ann. § 2C:39-9(*l*)(2) ("Subsection (*l*)(2)"); *see also* Transfer Op. at 6; NJ MTD at 3-5.

Judge Wolfson twice detailed the "complex" procedural history of this action. *See* Transfer Op. at 2-9; ECF 66 at 1-4 (Judge Wolfson's opinion denying Plaintiffs' first motion to reconsider transfer denial) ("Reconsideration Op."). In short, after the NJAG sent Texas-based Defense Distributed a cease-and-desist letter demanding that the company not make printable gun code available for use by New Jersey residents, Defense Distributed and other parties sued the NJAG in the Western District of Texas, and later amended their complaint to challenge Subsection (*l*)(2) as well. *See* Transfer Op. at 5-6. The Western District of Texas dismissed the claims against the NJAG for lack of personal jurisdiction, but the Fifth Circuit later reversed. *See id.* at 5, 7. On remand, the Texas district court transferred this lawsuit to this District, where it was

then consolidated—without any opposition—with another action that Defense Distributed had already filed in this District against the NJAG, in which it also sought to enjoin enforcement of Subsection (*l*)(2). *See id.* at 8; ECF 43 (consolidation order).

Even though the transfer to this Court had already been effectuated, Plaintiffs appealed the transfer order to the Fifth Circuit. *See* Transfer Op. at 8. The Fifth Circuit held the transfer erroneous, but found it was without appellate or mandamus jurisdiction to order the case returned. *Id.* at 9. Instead, the Fifth Circuit ordered the Texas district court to "request" the return of the suit. *See Defense Distributed v. Bruck*, 30 F.4th 414, 436-37 (5th Cir. 2022); *see also id.* at 440 (Higginson, J., dissenting) (confirming non-binding nature of this request). Judge Wolfson "duly considered" the Fifth Circuit's opinion, but on July 27, 2022, applying precedent from the Third Circuit, this Court concluded that the transfer would be inappropriate. *See* Transfer Op. at 33-34. Among other things, this Court reasoned that litigation in the Western District of Texas would require jurisdictional discovery and further briefing that would be obviated in this District, making the latter a much more efficient forum; that the District of New Jersey has greater familiarity with interpreting New Jersey laws and sits within a circuit that could certify questions to the New Jersey Supreme Court; and that New Jersey local interests in a lawsuit facially challenging a New Jersey criminal statute were stronger than local interests in Texas. *See id.* at 24-26, 28-33.

After two Fifth Circuit judges issued a separate opinion requesting return of this case a second time, Plaintiffs moved to reconsider this Court's July 27, 2022 order; this Court considered their views again, but issued an opinion on October 25, 2022, once more finding transfer to be improper. *See* Reconsideration Op. at 7-11 (explaining why comity did not require this Court to disregard its own independent judgment and its assessment of Third Circuit law to fulfill an avowedly non-binding request). The Fifth Circuit then concluded that while it believed Judge Wolfson had erred, there was no other proper remedy to be had in that forum or in the Texas district court. *See Defense Distributed v. Platkin*, 55 F.4th 486 (5th Cir. 2022).

Since that time, the parties have fully briefed the NJAG's motion to dismiss. *See* ECF 69-1 (MTD), ECF 72 (Opposition), ECF 76 (Reply). After briefing was complete, this action was reassigned, and six days later Plaintiffs filed the instant Motion to Transfer or Stay. This opposition follows.

## **ARGUMENT**

### **I. THIS COURT SHOULD DENY RECONSIDERATION.**

The Court should reject Plaintiffs' *second* motion for reconsideration both on procedural grounds and on the merits. Because these issues have been thoroughly ventilated by Judge Wolfson's two thorough and thoughtful opinions and by the parties' multiple prior rounds of briefing, *see* ECF 52, 54, 56, 61, 64 (Plaintiffs' filings); ECF 57, 63, 65 (NJAG's filings), this opposition focuses on new issues introduced by this

motion. In short, this reconsideration motion is untimely, cites nothing the district court overlooked, and identifies no intervening development since Judge Wolfson denied Plaintiffs' first reconsideration request in October. Reassignment to another judge in this District does not change the reconsideration standard or analysis.

For one, Plaintiffs' motion is significantly untimely. Local Rule 7.1(i) provides a window of 14 days to seek reconsideration, a period of time that has long elapsed since this Court's opinion on July 27, 2022, and even since the denial of the first reconsideration motion on October 25, 2022. *See Cty. of Essex v. Aetna*, No. 17-13663, 2020 WL 13560099, at *2 (D.N.J. Apr. 20, 2020) (rejecting on timeliness grounds a reconsideration motion filed nearly eight months after underlying decision and nearly five months after reconsideration denial—akin to the six- and three-month delays here).

For another, Local Rule 7.1(i) requires movants "to specifically identify 'the matter or controlling decisions which the party believes the Judge … has overlooked.'" *In re 40 Lakeview Drive, LLC*, No. 18-17742, 2020 WL 907910, at *1 (D.N.J. Feb. 25, 2020); *see United States v. Compaction Sys. Corp.*, 88 F. Supp. 2d 339, 345 (D.N.J. 1999) (reconsideration is only justified where "the court has overlooked matters that, if considered by the court, might reasonably have resulted in a different conclusion"). Far from suggesting that Judge Wolfson *overlooked* any of their arguments, Plaintiffs simply believe her detailed opinion got it wrong. *See* ECF 78-1, Mot. at 4-5.

Nor do Plaintiffs identify any "intervening change in the controlling law" or "new evidence that was not available" at the time of the decision. *Max's Seafood Cafe by Lou-Ann v. Quinteros*, 176 F.3d 669, 677 (3d Cir. 1999). But "[e]vidence or arguments that were available at the time … will not support a motion for reconsideration." *40 Lakeview Drive*, 2020 WL 907910, at *1. In other words, motions for reconsideration do "not provide the parties with an opportunity for a second bite at the apple," *Tischio v. Bontex, Inc.*, 16 F. Supp. 2d 511, 532 (D.N.J. 1998), and a "difference of opinion with the court's decision should be dealt with through the normal appellate process," *Onishi v. Chapleau*, No. 20-13001, 2022 WL 980620, at *2 (D.N.J. Mar. 31, 2022).

Plaintiffs instead argue only that reconsideration is necessary after the reassignment to a new judge, but they are mistaken. Even where a case is reassigned from one District of New Jersey judge to another, this Court consistently relies on the same heightened procedural and substantive standards for reconsideration of previous decisions. *See, e.g.*, *Essex*, 2020 WL 13560099, at *2 (Judge Wigenton applying usual standards for reconsideration to decision by Judge Walls); *40 Lakeview Drive*, 2020 WL 907910, at *1-2 (Judge McNulty doing same as to prior decision by Judge Linares). Nor does *In re School Asbestos Litigation*, 977 F.2d 764 (3d Cir. 1992)—the sole case on which Plaintiffs rely—support a contrary result. There, a district judge failed to recuse himself despite a conflict of interest, and the Third Circuit issued a writ of mandamus to disqualify him. *Id.* at 770. Once that judge was disqualified, it was no longer

appropriate to issue mandamus regarding substantive rulings or other failings in that case, because the newly assigned judge would consider the issues afresh—free from the previous conflict. *Id.* at 795. This situation is different in kind: the prior decisions issued in this case remain in effect, and Plaintiffs make no suggestion that mandamus was needed as to Judge Wolfson's personal involvement in the suit. They simply might pursue mandamus to reverse the substantive decisions with which they disagree. Judge Wolfson's decisions are thus entitled to the traditional respect on reconsideration.

In any event, even were this Court to consider the merits of Judge Wolfson's two thorough transfer orders, there is no "clear error of law or fact" or "manifest injustice" that supports granting Plaintiffs' motion. *Max's Seafood Cafe*, 176 F.3d at 677; *see also, e.g.*, *Interfaith Community Org. v. Honeywell Int'l*, 215 F. Supp. 2d 482, 507 (D.N.J. 2002) (reconsideration "is 'an extraordinary remedy' that is to be granted 'very sparingly'" (citation omitted)). Judge Wolfson was correct to find that judicial efficiencies and local interests overwhelmingly support adjudicating a challenge to a New Jersey law in New Jersey federal court. *See* Transfer Op. 24-26, 28-33; Reconsideration Op. at 7. And Judge Wolfson also properly found that comity did not require her to set aside her independent judgment and her assessment of Third Circuit law in favor of a non-binding request from another circuit. *See* Transfer Op. 33-35; Reconsideration Op. at 9-10. There is no clear error of law or fact, nor any manifest injustice, in allowing the denial to stand.

## II.   THIS COURT SHOULD PROCEED TO THE MERITS.

Instead of transferring this case, the appropriate next step is the one Judge Wolfson already called for: to proceed with the merits. *See* Reconsideration Op. at 12 (directing parties "to proceed with the litigation without additional delay, including in responding to Plaintiffs' Second Amended Complaint"). Far from seeking to "stave off" merits review "by any means necessary," Mot. at 1, the NJAG urges this Court to consider his fully-briefed motion to dismiss, which explains why Plaintiffs' constitutional challenges must fail. *See* ECF 69 at 7-38. Nor is there any basis to stay the case simply because Plaintiffs intend to file for a writ of mandamus *195 days* (and counting) after this Court denied their request for a transfer on July 27, 2022.

The filing of the mandamus petition will not itself divest this court of jurisdiction or stay proceedings. *See, e.g.*, *Francis v. Joint Force Headquarters Nat'l Guard*, No. 05-4882, 2009 WL 1810737, at *5 (D.N.J. June 24, 2009), *aff'd*, 350 F. App'x 608 (3d Cir. 2009) (collecting cases). Instead, to justify a stay of proceedings pending a forthcoming petition for mandamus, Plaintiffs must satisfy the traditional four-factor test that governs all stays pending appeal. *See In re Citizens Bank, N.A.*, 15 F.4th 607, 615 (3d Cir. 2021) (discussing likelihood of success on the mandamus petition, movants' irreparable harm, balance of equities, and public interest). The central questions are whether the future petitioner is likely to obtain mandamus, and whether the lack of a stay works irreparable harm to them. *Id.* To demonstrate a likelihood of

success, Plaintiffs must establish to this Court a sufficient likelihood that Judge Wolfson "clearly and indisputably erred" when she denied transfer to Texas and that "no other adequate alternative remedy [other than mandamus] exists." *Id.* at 616 (laying out the mandamus standard). To prove irreparable harm, Plaintiffs must show they face a risk of imminent injury that cannot be redressed later. *See Instant Air Freight Co. v. C.F. Air Freight, Inc.*, 882 F.2d 797, 801 (3d Cir. 1989). And to establish both a likelihood of success in a mandamus petition and a showing of irreparable harm, Plaintiffs must also have timely filed for mandamus. *See United States v. Olds*, 426 F.2d 562, 565-66 (3d Cir. 1970) ("As with all remedies that are governed by equitable principles, mandamus must be sought with reasonable promptness."); *Pharmacia Corp. v. Alcon Labs.*, 201 F. Supp. 2d 335, 382-83 (D.N.J. 2002) (explaining that delay in seeking emergency relief will "knock[] the bottom out of any claim of immediate and irreparable harm"); *Lanin v. Borough of Tenafly*, 515 F. App'x 114, 117 (3d Cir. 2013) (same).

Plaintiffs cannot meet any of those requirements. First, Plaintiffs will not be able to show that Judge Wolfson "clearly and indisputably erred" in denying transfer to Texas. As detailed above, and as laid out in the Court's transfer and reconsideration opinions and the NJAG's prior briefing, Judge Wolfson was correct to find that judicial efficiencies and local interests all support resolving a facial challenge to a New Jersey law in New Jersey federal court. *See* Reconsideration Op. at 7 ("this Court's familiarity with New Jersey law, New Jersey's interest in the litigation, and lingering disputes

regarding personal jurisdiction over the NJAG in the Texas District Court, continue to weigh heavily against transfer"). And Judge Wolfson acted correctly when finding that comity did not require her to set aside her independent judgment and her assessment of Third Circuit law in favor of a non-binding request from another circuit. *See id.* at 9.

Second, Plaintiffs cannot show that a stay and/or mandamus are needed to stave off any irreparable harm. There is no dispute that any "within-circuit transfer order"—that is, Judge Wolfson's decision to deny transfer—"is appealable after final judgment in the case." *Cioffi v. Gilbert Enters., Inc.*, 769 F.3d 90, 92 (1st Cir. 2014); *see also, e.g.*, *Delalla v. Hanover Ins.*, 660 F.3d 180, 183 n.2 (3d Cir. 2011) (agreeing that where a plaintiff receives "an adverse final judgment in the case," she can "then raise the failure of the district court to re-transfer as grounds for reversal" in the ultimate appeal (citation omitted)). So if this Court decides the motion to dismiss before any mandamus petition is resolved by the Third Circuit, Plaintiffs are no worse off. If this Court denies the motion, Plaintiffs are not harmed. But even if the Court grants it, the same is still true: Plaintiffs could efficiently appeal the venue and merits disputes in a single appeal after final judgment, rather than in this disfavored, piecemeal fashion. There is thus no irreparable harm that a stay prevents, let alone one that lacks other future remedies.

Finally, Plaintiffs cannot establish either a likelihood of obtaining mandamus *or* irreparable harm given their delay in seeking this relief. As of the filing of this opposition brief, 195 days have already passed since Judge Wolfson denied Plaintiffs'

transfer motion, and 105 days have passed since she denied Plaintiffs' first reconsideration motion. During that time, the parties have briefed in full the pending motion to dismiss, and Plaintiffs did not seek either mandamus or a stay in this Court pending that future mandamus petition. The Third Circuit has denied mandamus on the basis of such delays alone. *See Olds*, 426 F.3d at 566 (because petitioner "waited nearly three months before seeking relief in this court" and lacked sufficient excuse for the delay, mandamus petition was "untimely" and so the panel exercised its "discretion" on that basis to "decline to issue the writ"). And this Court regularly finds that similar or shorter delays in seeking relief undermine claims of irreparable harm. *See, e.g.*, *Doris Behr 2012 Irrevocable Trust v. Johnson & Johnson*, No. 19-8828, 2019 WL 1519026, at *4 (D.N.J. Apr. 8, 2019) (finding party's two-month "delay in filing" their emergency application "undermines any arguments of immediate irreparable harm"); *see also New Dana Perfumes Corp. v. Disney Store*, 131 F. Supp. 2d 616, 630 (M.D. Pa. 2001) (five-month delay "alone, precludes a finding of irreparable harm").

And while Plaintiffs may maintain that their delay was justified by their ongoing efforts even after Judge Wolfson's orders to obtain an injunction in the *Fifth Circuit*—notwithstanding that the Fifth Circuit was an improper forum in which to do so, as that court ultimately concluded—even those efforts were rejected on December 15, 2022. *See Defense Distributed v. Platkin*, 55 F.4th at 496 n.12. Plaintiffs still took over a month to file, all while motion-to-dismiss briefing in this Court proceeded.

## **CONCLUSION**

The Court should deny this successive reconsideration motion and proceed to resolve the pending motion to dismiss.

          Respectfully submitted,

          MATTHEW J. PLATKIN
          ATTORNEY GENERAL OF NEW JERSEY

    By: /s/ Tim Sheehan
        Tim Sheehan
        Deputy Attorney General

cc: All counsel of record (via CM/ECF)